**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| DOROTHY L. BIERY, and<br><br>GORDON HOLLOWAY, as successor and representative of decedent GEORGE A. HOLLOWAY,and<br><br>STACY E. JUDY Trust dated March 7, 1994, and<br><br>JULIA R. CHALFANT Etvir Trust,<br><br>K.A.K. FARMS, INC., and<br><br>AMERICAN PACKING CORPORATION, and<br><br>COLLINS INDUSTRIES, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 1:07-cv-693 |

**FIRST AMENDED COMPLAINT**

**JURISDICTION**

1. This Court has jurisdiction pursuant to 28 U.S.C. §1491(a)(1) ("Tucker Act") because this action presents a claim against the United States which is founded upon the Constitution and Statutes of the United States.

## STATUTES AND CONSTITUTIONAL PROVISIONS

2. Plaintiffs' claim is governed by the following statutes and constitutional provision:

(a) The Fifth Amendment to the United States Constitution, which provides, "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

(b) The National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) ("Trails Act").

(c) The Tucker Act, 28 U.S.C. § 1491(a) ("Tucker Act"), which provides in relevant part, "The United States Court of Federal Claims shall have jurisdiction to render judgment on any claim against the United States founded upon the Constitution."

(d) The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) (2000), which provides that just compensation includes, "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

**The Plaintiffs:**

3. Plaintiffs are citizens of the United States of America.

4. Dorothy L. Biery owned fee title to her property, which abuts and underlies the former Burlington Northern Santa Fe ("BNSF") right-of-way, on April 5,

2004. (A copy of the Warranty Deed by which Plaintiff acquired her property, recorded in Book 455, Page 485(1) in the Reno County Recorder of Deeds Office, is attached as "Exhibit A").

5. Gordan Holloway owned fee title to property in Reno County, Kansas that underlies and abuts the former BNSF right-of-way on April 5, 2004. Gordan Holloway acquired this property from his father's estate pursuant to a Probate Order entered July 17, 1992. (A copy of the Probate Order by which Plaintiff acquired his property is attached as "Exhibit B").

6. The Stacy E. Judy Trust, dated March 7, 1994, owned fee title to the property underlying and abutting the former BNSF right-of-way on April 5, 2004. (A copy of the Quitclaim Deed by which Plaintiff acquired its property, recorded in Book 511, Page 588(4) of the Reno County Recorder of Deeds Office, is attached as "Exhibit C").

7. Julia R. Chalfant Trust owned fee title to the property underlying and abutting the former BNSF right-of-way on April 5, 2004. (A copy of the Trust Deed by which Plaintiffs acquired their property, recorded in Book 470, Page 529(1) in the Reno County Recorder of Deeds Office, is attached as "Exhibit D").

8. Plaintiff K.A.K. Farms, Inc. owned fee title to the property underlying and abutting the former BNSF right-of-way by on April 5, 2004. (A copy of the Warranty Deed, recorded in Book 426, Page 49 in the Reno County Recorder of Deeds Office, by which Plaintiff acquired its property is attached as "Exhibit E").

9. American Packing Corporation owned fee title to property underlying and abutting the former BNSF right-of-way on April 5, 2004. (A copy of the Warranty Deed

by which American Packing acquired its property, recorded in Book 479, Page 543(1) in the Reno County Recorder of Deeds Office, is attached as "Exhibit F").

10. Collins Industries, Inc. owned fee title to its property underlying and abutting the former BNSF right-of-way on April 5, 2008. (A copy of the Warranty Deed by which Collins Industries, Inc., by which Collins Industries, Inc. acquired its property, recorded in Book 468, Page 42 in the Reno County Recorder of Deeds Office, is attached as "Exhibit G.").

**The Defendant**:

12. The Defendant in this case is the United States Government, a republic governed by the Constitution and Statutes of the United States. Of America.

**How the Railroad Easement Across the Plaintiff's Land Was Created**

13. On July 24, 1889, pursuant to a Report of Commissioners, The Hutchinson, Oklahoma, and Gulf Railroad Company condemned a railroad easement across strip of land not exceeding 100 feet in width taking lands in Sections 26 and 35, Township 23 South, Range 6 West of the 6th Prime Meridian in Reno County, Kansas, and other lands to the south. (A copy of this condemnation, recorded on October 27, 1889, in Book 5, Page 218 and Book 5, Page 237 of the Reno County Recorder of Deeds Office is attached hereto along with a transcription of the report at "Exhibit H").

14. On June 10, 1891, pursuant to a Report of Commissioners, The Hutchinson & Southern Railroad Company condemned a railroad easement across a strip of land not exceeding 100 feet in width taking lands in Section 23, Township 23, Range 6 West of the 6th Prime Meridian in Reno County, Kansas, and other lands to the north. (A

copy of this condemnation was recorded on October 27, 1899 at Book 5, Page 209 in the Reno County Recorder of Deeds Office and is attached as "Exhibit I").

15. On December 20, 1899, The Hutchinson and Southern Railway Company conveyed to The Atchison, Topeka and Santa Fe Railway Company one-hundred and forty-three and eight-tenths miles of railway lines, lands, and improvements commencing in the City of Hutchinson running southerly into the territory of Oklahoma. This conveyance included the right-of-way that was condemned in Reno County.

16. The BNSF is the successor-in-interest to the Atchison, Topeka and Santa Fe Railway Company. (See Exhibit K).

17. Under settled Kansas law when a railroad condemns land for a right-of-way, the railroad acquires only an easement to use the property for the purpose of operating a railroad. Gen. Stat. 1901, §§1359-1365; *Abercrombie v. Simmons*, 71 Kan. 538, 81 P. 208 (1905); *Harvest Queen Mill & Elevator v. Sanders,* 370 P.2d 419, 423 (Kan. 1962).

**Railroad Use of the Plaintiff's Land Was Abandoned**

18. The Burlington Northern and Santa Fe Railway Company ("BNSF") formerly held an easement for a railroad right-of-way between milepost 0.62 and milepost 3.50, near South Hutchinson in Reno County, Kansas, a distance of approximately 2.88 miles (the "Railroad Line"). (See Exhibit J).

19. On February 20, 2004, BNSF filed with the Surface Transportation Board ("STB") a Notice of Exemption to abandon the railroad corridor between milepost .62 and milepost 3.50 in South Hutchinson, Kansas. (A copy of the Abandonment

Exemption is attached hereto as "Exhibit J" and the accompanying Environmental Assessment is attached at "Exhibit K").

20. BNSF certified to the STB that "no local traffic has moved over the line for at least 2 years[and] there is no overhead traffic to be rerouted." (*See* Exhibit J).

21. On February 25, 2004, the City of South Hutchinson, Kansas, filed a request for the issuance of a Notice of Interim Trail Use ("NITU") pursuant to 16 U.S.C. 1247(d) of the National Trails System Act. (See "Exhibit L" attached hereto).

22. On April 5, 2004, the STB issued a Notice of Interim Trail Use ("NITU") for the approximately 2.88 miles between milepost .62 and milepost 3.50 of the BNSF right-of-way in South Hutchinson, Kansas. (A copy of the April 5, 2004, NITU is attached as Exhibit "L").

23. The April 5, 2004, the STB granted BNSF and the City of South Hutchinson, Kansas, 180 days to negotiate a Trail Use Agreement. The April 5, 2004, NITU was set to expire on October 7, 2004. (See Exhibit L).

24. On September 13, 2004, and September 14, 2004, the City of South Hutchinson, Kansas, filed requests with the STB to extend the NITU negotiating period for an additional 180 days. (See "Exhibit M" attached hereto).

25. On October 4, 2004, the STB extended the NITU for an additional 180 days. (A copy of the October 4, 2003, NITU is attached as "Exhibit M").

**The STB Converted the Abandoned Right-of-Way To Trail Use Under the Trails Act**

26. Pursuant to this NITU and the Trails Act, on March 23, 2005, a Trail Use Agreement was reached between BNSF and the City of South Hutchinson, Kansas.

27. On February 17, 2006, pursuant to the Trails Act, BNSF consummated the Trails Use Agreement by transferring the former Hutchinson, Oklahoma, and Gulf and Hutchinson & Southern rights-of-way to the City of South Hutchinson, Kansas by Quitclaim Deed. (A copy of this Quitclaim Deed is recorded in Book 582, Page 8 in the Reno County Recorder of Deeds Office and attached hereto at "Exhibit N.")

28. The Quit Claim Deed expressly provides that this conveyance was made pursuant to the Trails Act. To Wit: "Subject, to the terms of that certain Railbanking and Donation Contract, dated 3/23, 2005 ("Contract"), which terms shall be incorporated herein, this conveyance is dependent upon and pursuant to the issuance of a Notice of Interim Trail Use ("NITU") in Surface Transportation Board ("STB") Docket No. Ab-6 *** Subject, to interpretation pursuant to and in conformity with Section 8(d) of the National Trails Systems Act, 16 U.S.C. 1247(d), and the rules and regulations of the STB related thereto, all as may be amended from time to time *** ." (*See* Exhibit N).

29. The City is not a railroad and is not authorized by any state or by the federal Surface Transportation Board to operate a railroad.

30. Plaintiffs own fee title to property in Reno County, Kansas that adjoins and underlies a portion of the railroad right-of-way originally established as an easement for the use of BNSF and was subject to the April 5, 2004, NITU.

31. The Plaintiffs owned this property on April 5, 2004. (A copy of the Deeds by which Plaintiffs acquired their properties are attached as "Exhibits A-G".).

**<u>The Federal Trails Act Operated To Take The Plaintiff's Land For Which "Just Compensation" Is Due</u>**

30. The Trails Act provides that "in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner

consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16. U.S.C. 1247(d).

31. But for operation of the Trails Act, the Plaintiffs would have the exclusive right to physical ownership, possession and use of their property free of any present or future easement for recreational trail use and free of any easement for current or future railroad use.

32. Creating an easement for a current or future public access recreational trail across the Plaintiffs' property and appropriating a new easement for possible future railroad use has taken from the Plaintiffs not just the value of the land physically appropriated for this rail-trail corridor but has also greatly diminished the value of the Plaintiffs' adjoining property.

33. The United States Constitution requires the federal government to pay "just compensation" to all those property owners holding fee title to property that was subject to the NITU. *Preseault v. United States,* 494 U.S. 1 (1990) (*Preseault* I); *Preseault v. United States*, 100 F. 3d 1525 (Fed. Cir. 1996) (*Preseault* II); *Towes v. United States,* 376 F. 3d 1371, 1376 (Fed. Cir. 2004).

34. Neither the Hutchinson, Oklahoma and Gulf Railroad Company nor the Hutchinson & Southern Railroad Company easements provided the railroad (or their successor-in-interest Burlington Northern and Santa Fe Railway Company) or any other person or entity the right to use the Plaintiffs' property for a public access recreational trail.

35. Under the terms of the Condemnation Order and under Kansas law, when operation of a railroad was abandoned over the Plaintiffs' property, the easement was abandoned and the Plaintiffs regained the right to use and possess their land free of any easement and to exclude others from their land.

36. The Trails Act allows the conversion of abandoned railroad rights-of-way for use as interim public access recreational trails and preserves the right-of-way for possible future reactivation as a railroad. The Trails Act further provides that such conversion to trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C § 1247 (d).

37. The Plaintiffs' property had never been subject to an easement allowing the public to use the Plaintiffs' property for a recreational trail.

38. The Plaintiffs' property has never been subject to a general right of the public to cross or make use of the Plaintiffs' property for any purpose.

39. Any easement for operation of a railroad across the Plaintiffs' property had been abandoned and extinguished and the Plaintiffs enjoyed under Kansas law the right to use and occupy their land free of any present or future easement for operation of a railroad across their land.

40. The federal government, through operation of the Trails Act and issuance of the NITU, has: (a) forestalled or taken from the Plaintiffs their state law "reversionary"[1] right to their property; (b) appropriated an easement across the Plaintiffs'

---

[1] Plaintiffs use the term "reversionary" or "reversion" in this Complaint in the generic sense to describe the Plaintiffs' property interest. We employ the term in this generic sense because it is commonly used in this manner by courts considering Trails

property for an interim public access recreational trail; and, (c) appropriated an easement for a potential future railroad right-of-way across the Plaintiffs' property and took the Plaintiffs' rights they have under law to the exclusive use and physical occupation of their land.

41. This taking of the Plaintiffs' property occurred when the STB issued the NITU on April 5, 2004. *Caldwell v. United States*, 391 F.3d 1226, 1236 (Fed. Cir. 2004); *Barclay v. United States*, 443 F.3d 1368, 1378 (Fed. Cir. 2006); consolidated on appeal with *Renewal Body Works, Inc. v. United States*.

42. The United States has neither instituted any condemnation proceeding against Plaintiffs or the other class members, nor paid, nor offered to pay, the Plaintiffs for the property it has taken from them.

43. The actions of the United States have resulted in the taking of Plaintiffs' property by reason of the direct physical taking of Plaintiffs' land and by reason of the damage to Plaintiffs' remaining adjacent property which has and will suffer a loss of privacy and other severance damages as a result of the proximity of the public on the adjoining trail. The remaining property is also less valuable by reason of being divided into a smaller parcel by reason of the easement for trail use and adjoining an easement for possible future railroad use.

WHEREFORE, Plaintiffs respectfully request a judgment in favor of Plaintiffs:

---

Act taking cases. This is not a technically correct use of the term. As the Federal Circuit has noted, "as a matter of traditional property law terminology, a termination of the easements would not cause anything to 'revert' to the landowner. Rather, the burden of the easement would simply be extinguished, and the landowner's property would be held free and clear of any such burden." *Towes v. United States,* 376 F. 3d 1371, 1376 (2004).

1. Awarding Plaintiffs the full fair market value of the property taken by the United States on the date it was taken (including any "severance damages" suffered by the Plaintiffs in loss of value to the Plaintiffs' remaining property not actually physically taken but affected by the taking);

3. Compensation for the delay between the date of the government's taking of the Plaintiffs' property and the actual date when the government finally pays "just compensation" to the Plaintiffs;

4. Paying the Plaintiffs' costs and attorneys' fees incurred pursuant to The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4654(c) (2000), which provides that just compensation includes "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

5. Such further relief as this Court may deem just and proper.

DATE: April 18, 2008.

LATHROP & GAGE L.C.

By /s/ Mark F. (Thor) Hearne, II

MARK F. (THOR) HEARNE, II
LINDSAY S.C. BRINTON
MEGHAN S. LARGENT
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
(314) 613-2500
(314) 613-2550 (fax)

ATTORNEYS FOR PLAINTIFFS