34493 SERVICE DATE - MARCH 11, 2004

DO

FR-4915-01-P

DEPARTMENT OF TRANSPORTATION

Surface Transportation Board

[STB Docket No. AB-6 (Sub-No. 406X)]

The Burlington Northern and Santa Fe Railway Company–Abandonment Exemption–in Reno County, KS

The Burlington Northern and Santa Fe Railway Company (BNSF) has filed a notice of exemption under 49 CFR 1152 Subpart F–Exempt Abandonments to abandon a line of railroad between BNSF milepost 0.62 and milepost 3.50, near South Hutchinson, in Reno County, KS, a distance of approximately 2.88 miles. The line traverses United States Postal Service Zip Codes 67501 and 67505.[1]

BNSF has certified that: (1) no local traffic has moved over the line for at least 2 years; (2) there is no overhead traffic to be rerouted; (3) no formal complaint filed by a user of rail service on the line (or by a state or local government entity acting on behalf of such user) regarding cessation of service over the line either is pending with the Board or with any U.S. District Court or has been decided in favor of complainant within the 2-year period; and (4) the requirements at 49 CFR 1105.7 (environmental reports), 49 CFR

---

[1] Pursuant to 49 CFR 1152.50(d)(2), the railroad must file a verified notice with the Board at least 50 days before the abandonment or discontinuance is to be consummated. The applicant initially indicated a proposed consummation date of April 9, 2004, but because the verified notice was filed on February 20, 2004, consummation may not take place prior to April 10, 2004. By facsimile filed on February 24, 2004, applicant's representative confirmed that the consummation date will be April 10, 2004.

EXHIBIT

tabbies

J

1105.8 (historic reports), 49 CFR 1105.11 (transmittal letter), 49 CFR 1105.12 (newspaper publication), and 49 CFR 1152.50(d)(1) (notice to governmental agencies) have been met.

As a condition to this exemption, any employee adversely affected by the abandonment shall be protected under Oregon Short Line R. Co.–Abandonment–Goshen, 360 I.C.C. 91 (1979). To address whether this condition adequately protects affected employees, a petition for partial revocation under 49 U.S.C. 10502(d) must be filed.

Provided no formal expression of intent to file an offer of financial assistance (OFA) has been received, this exemption will be effective on April 10, 2004, unless stayed pending reconsideration. Petitions to stay that do not involve environmental issues,[2] formal expressions of intent to file an OFA under 49 CFR 1152.27(c)(2),[3] and trail use/rail banking requests under 49 CFR 1152.29 must be filed by March 22, 2004. Petitions to reopen or requests for public use conditions under 49 CFR 1152.28 must be filed by March 31, 2004, with the Surface Transportation Board, 1925 K Street, N.W., Washington, DC 20423-0001.

---

[2] The Board will grant a stay if an informed decision on environmental issues (whether raised by a party or by the Board's Section of Environmental Analysis (SEA) in its independent investigation) cannot be made before the exemption's effective date. See Exemption of Out-of-Service Rail Lines, 5 I.C.C.2d 377 (1989). Any request for a stay should be filed as soon as possible so that the Board may take appropriate action before the exemption's effective date.

[3] Each OFA must be accompanied by the filing fee, which currently is set at $1,100. See 49 CFR 1002.2(f)(25).

A copy of any petition filed with the Board should be sent to BNSF's representative: Michael Smith, Freeborn & Peters, 311 S. Wacker Dr., Suite 3000, Chicago, IL 60606-6677.

If the verified notice contains false or misleading information, the exemption is void ab initio.

BNSF has filed an environmental report which addresses the abandonment's effects, if any, on the environment and historic resources. SEA will issue an environmental assessment (EA) by March 16, 2004. Interested persons may obtain a copy of the EA by writing to SEA (Room 500, Surface Transportation Board, Washington, DC 20423-0001) or by calling SEA, at (202) 565-1539. [Assistance for the hearing impaired is available through the Federal Information Relay Service (FIRS) at 1-800-877-8339.] Comments on environmental and historic preservation matters must be filed within 15 days after the EA becomes available to the public.

Environmental, historic preservation, public use, or trail use/rail banking conditions will be imposed, where appropriate, in a subsequent decision.

Pursuant to the provisions of 49 CFR 1152.29(e)(2), BNSF shall file a notice of consummation with the Board to signify that it has exercised the authority granted and fully abandoned the line. If consummation has not been effected by BNSF's filing of a notice of consummation by March 11, 2005, and there are no legal or regulatory barriers to consummation, the authority to abandon will automatically expire.

Board decisions and notices are available on our website at "WWW.STB.DOT.GOV."

Decided: March 3, 2004.

By the Board, David M. Konschnik, Director, Office of Proceedings.

Vernon A. Williams

Secretary

34494 **SERVICE DATE - MARCH 16, 2004**

**SURFACE TRANSPORTATION BOARD**
WASHINGTON, DC 20423

**ENVIRONMENTAL ASSESSMENT**

**STB DOCKET NO. AB-6 (Sub. No. 406X)**
**The Burlington Northern and Sante Fe Railway Company – Abandonment Exemption – in Reno County, KS**

## BACKGROUND

In this proceeding, The Burlington Northern and Sante Fe Railway Company (BNSF) has filed a notice of exemption under 49 CFR 1152.50 seeking exemption from the requirements of 49 U.S.C. 10903 for BNSF to abandon 2.88 miles of rail line located between Milepost 0.62 and Milepost 3.50, in South Hutchinson, Reno County, Kansas. A map depicting the rail line in relationship to the area served is appended to the report. If the notice becomes effective, BNSF will be able to salvage track, ties and other railroad appurtenances and to dispose of the right-of-way.

## DESCRIPTION OF THE LINE

According to BNSF, the right-way for the line proposed for abandonment was acquired between 1896 and 1899 by the Hutchinson & Southern Railway Company, and later by The Atchison Topeka and Sante Fe Railway Company (ATSF). In 1995, ATSF combined with the Burlington Northern Railroad Company to form the Burlington Northern and Santa Fe Railroad Company (BNSF). The BNSF states that all rail traffic across the line ended over two years ago. As a result, there is now no demand for or prospect of rail service over the line, and no traffic has originated, terminated, or moved overhead on this line segment for at least two years. No rail traffic will be diverted to highway mode as a result of the abandonment.

According to BNSF, the line is just west and southwest of the town of South Hutchinson, a suburb of Hutchinson. The population of the Hutchinson itself is 40,787 while the population of South Hutchinson is 2,539. The land along the right-of-way is flat and is used for rural and suburban purposes. The right-of-way width for the line is a total of 100 feet. The city of South Hutchinson has expressed interest in acquiring the right-of-way for a recreational trail. Where BNSF does not own the right-of-way, the owner, local zoning, and development ordinances will control future land use. BNSF is not aware of any restriction on the title to the property which would affect the transfer of title or the use of property for other than rail purposes. Based on the information available to BNSF, the line does not contain federally granted rights-of-way.

EXHIBIT
tabbies
K

BNSF does not indicate that it intends to appreciably remove or alter the contour of the roadbed underlying the rail line to be abandoned. However, they do state that any salvage operations would be completed in accordance with all Federal, state and local laws. In general, the rail line abandonment or any potential subsequent salvage operations do not appear to have the potential to impact any known natural or human resources.

**ENVIRONMENTAL REVIEW**

BNSF submitted an environmental report that concludes the quality of the human environment will not be affected significantly as a result of the abandonment or any post-abandonment activities, including salvage and disposition of the right-of-way. BNSF served the environmental report on a number of appropriate Federal, state, and local agencies as required by the Surface Transportation Board's environmental rules [49 CFR 1105.7(b)]. We have reviewed and investigated the record in this proceeding.

The National Geodetic Survey (NGS) has advised us that six geodetic station markers have been identified that may be affected by the proposed abandonment.

**HISTORIC REVIEW**

BNSF submitted an historic report as required by the Surface Transportation Board's environmental rules [49 CFR 1105.8(a)]. BNSF served the report on the Kansas State Historical Society (SHPO) pursuant to 49 CFR 1105.8©). The SHPO has submitted comments stating that no historic properties listed in or eligible for inclusion in the National Register of Historic Places (National Register) would be affected by the proposed abandonment. We have reviewed the report and the information provided by the SHPO and concur with the SHPO's comments.

Pursuant to the Advisory Council on Historic Preservation's regulations for implementing the section 106 process of the National Historic Preservation Act at 36 CFR 800.4(d)(1) and 36 CFR 800.8, we have determined that the proposed abandonment will not affect historic properties listed in or eligible for inclusion in the National Register. The documentation for this finding, as specified at 36 CFR 800.11(d), consists of BNSF's historic report, all relevant correspondence, and this EA, which have been provided to the SHPO and made available to the public.

**CONDITIONS**

We recommend that the following environmental condition be placed on any decision granting abandonment authority:

1. The National Geodetic Survey (NGS) has identified six geodetic station markers that may be

affected by the proposed abandonment. Therefore, BNSF shall notify NGS 90 days prior to salvage activities in order to plan for their relocation.

## CONCLUSIONS

Based on the information provided from all sources to date, we conclude that, as currently proposed, and if the recommended conditions are imposed, abandonment of the line will not significantly affect the quality of the human environment. Therefore, the environmental impact statement process is unnecessary.

Alternatives to the proposed abandonment would include denial (and therefore no change in operations), discontinuance of service without abandonment, and continued operation by another operator. In any of these cases, the existing quality of the human environment and energy consumption should not be affected.

## PUBLIC USE

Following abandonment and salvage of the rail line, the right-of-way may be suitable for other public use. A request containing the requisite four-part showing for imposition of a public use condition (49 CFR 1152.28) must be filed with the Board and served on the railroad within the time specified in the Federal Register notice.

## TRAILS USE

A request for a notice of interim trail use (NITU) is due to the Board, with a copy to the railroad, within 10 days of publication of the notice of the petition for exemption in the Federal Register. Nevertheless, the Board will accept late-filed requests as long as it retains jurisdiction to do so in a particular case. This request must comply with the Board's rules for use of rights-of-way as trails (49 CFR 1152.29).

## PUBLIC ASSISTANCE

The Board's Office of Public Services responds to questions regarding interim trail use, public use, and other reuse alternatives. You may contact the Office of Public Services directly at (202) 565-1592, or mail inquiries to Surface Transportation Board, Office of Public Services, Washington, DC 20423.

**ENVIRONMENTAL COMMENTS**

If you wish to file comments regarding this environmental assessment, send an **original and two copies** to Surface Transportation Board, Case Control Unit, Washington, DC 20423, to the attention of Catherine Glidden, who prepared this environmental assessment. **Please refer to Docket No. AB-6 (Sub No. 406X) in all correspondence addressed to the Board.** If you have any questions regarding this environmental assessment, you should contact Catherine Glidden, the environmental contact for this case by phone at (202) 565-1552, fax at (202) 565-9000, or e-mail at gliddenc@stb.dot.gov .

Date made available to the public: March 16, 2004.

Comment due date: **March 31, 2004 (15 days).**

By the Board, Victoria Rutson, Chief, Section of Environmental Analysis.

Vernon A. Williams
Secretary

Attachment


NORTH
HUTCHINSON
SOUTH
HUTCHINSON
SOUTH HUTCHINSON, KANSAS TRACKAGE

34580
DO

SERVICE DATE - APRIL 8, 2004

SURFACE TRANSPORTATION BOARD

DECISION AND NOTICE OF INTERIM TRAIL USE OR ABANDONMENT

STB Docket No. AB-6 (Sub-No. 406X)

THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY–ABANDONMENT EXEMPTION– IN RENO COUNTY, KS

Decided: April 5, 2004

The Burlington Northern and Santa Fe Railway Company (BNSF) filed a notice of exemption under 49 CFR 1152 Subpart F-Exempt Abandonments to abandon a line of railroad between BNSF milepost 0.62 and milepost 3.50, near South Hutchinson, in Reno County, KS, a distance of approximately 2.88 miles. Notice of the exemption was served and published in the Federal Register on March 11, 2004 (69 FR 11707). The exemption is scheduled to become effective on April 10, 2004.

The Board's Section of Environmental Analysis (SEA) served an environmental assessment (EA) in this proceeding on March 16, 2004. In the EA, SEA states that the National Geodetic Survey (NGS) has identified six geodetic station markers that could be affected by the proposed abandonment. Therefore, SEA recommends that BNSF provide NGS with 90 days' notice before beginning any salvage activities in order to plan for the potential relocation of the geodetic station markers. Comments to the EA were due by March 31, 2004. No comments were received by the due date. Accordingly, the environmental condition recommended by SEA in the EA will be imposed.

On February 25, 2004, the City of South Hutchinson, KS (the City), filed a request for the issuance of a notice of interim trail use (NITU) for the subject line under the National Trails System Act, 16 U.S.C. 1247(d) (Trails Act), in order to negotiate with BNSF for acquisition of the right-of-way for use as a trail. The City submitted a statement of willingness to assume financial responsibility for the management of, for any legal liability arising from the transfer or use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for payment of any and all taxes that may be levied or assessed against, the right-of-way, and acknowledged that the use of the right-of-way for trail purposes is subject to possible future reconstruction and reactivation for rail service, as required at 49 CFR 1152.29. In a response submitted on March 25, 2004, BNSF states that it supports the issuance of a NITU.

Because the City's request complies with the requirements of 49 CFR 1152.29 and BNSF is willing to negotiate for trail use, a NITU will be issued. The parties may negotiate an agreement during the 180-day period prescribed below. If the parties reach a mutually acceptable final agreement, no

EXHIBIT
tabbies
L

further Board action is necessary. If no agreement is reached within 180 days, BNSF may fully abandon the line. See 49 CFR 1152.29(d)(1). Use of the right-of-way for trail purposes is subject to restoration for railroad purposes.

As conditioned, this decision will not significantly affect either the quality of the human environment or the conservation of energy resources.

It is ordered:

1. The proceeding is reopened.

2. Upon reconsideration, the notice served and published in the Federal Register on March 11, 2004, exempting the abandonment of the line described above is modified to the extent necessary to implement interim trail use/rail banking as set forth below, for a period of 180 days commencing from the April 10, 2004 effective date of the exemption (until October 7, 2004), and subject to the condition that BNSF provide NGS with 90 days' notice before beginning salvage activities in order to plan the relocation of the six geodetic station markers that may be affected by the abandonment.

3. If an interim trail use/rail banking agreement is reached, it must require the trail user to assume for the term of the agreement, full responsibility for management of, for any legal liability arising from the transfer or use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against, the right-of-way.

4. Interim trail use/rail banking is subject to the future restoration of rail service and to the user's continuing to meet the financial obligations for the right-of-way.

5. If interim trail use is implemented, and subsequently the user intends to terminate trail use, it must send the Board a copy of this decision and notice and request that it be vacated on a specified date.

6. If an agreement for interim trail use/rail banking is reached by October 7, 2004, interim trail use may be implemented. If no agreement is reached by that time, BNSF may fully abandon the line, provided the condition imposed in this proceeding are met. See 49 CFR 1152.29(d)(1).

7. This decision is effective on its date of service.

By the Board, David M. Konschnik, Director, Office of Proceedings.

Vernon A. Williams
Secretary

35087
DO

SERVICE DATE - LATE RELEASE OCTOBER 4, 2004

SURFACE TRANSPORTATION BOARD

DECISION

STB Docket No. AB-6 (Sub-No. 406X)

THE BURLINGTON NORTHERN AND SANTA FE RAILWAY–ABANDONMENT EXEMPTION–IN RENO COUNTY, KS

Decided: October 4, 2004

The Burlington Northern and Santa Fe Railway Company (BNSF) filed a notice of exemption under 49 CFR 1152 Subpart F-Exempt Abandonments to abandon a line of railroad between BNSF milepost 0.62 and milepost 3.50, near South Hutchinson, in Reno County, KS, a distance of approximately 2.88 miles. Notice of the exemption was served and published in the Federal Register on March 11, 2004 (69 FR 11707).

By decision and notice of interim trail use or abandonment (NITU) served April 8, 2004, the proceeding was reopened and a 180-day period was authorized for the City of South Hutchinson, KS (the City), to negotiate an interim trail use/rail banking agreement with BNSF for the subject line, under the National Trails System Act, 16 U.S.C. 1247(d) (Trails Act). The trail use negotiating period is scheduled to expire on October 7, 2004.[1]

On September 13, 2004, and September 14, 2004, BNSF and the City, respectively, filed requests to extend the NITU negotiating period for an additional 180 days, because more time is necessary to complete the negotiations.

Where, as here, the carrier is willing to continue trail use negotiations, the negotiating period may be extended. An extension of the negotiating period will promote the establishment of trail use and rail banking consistent with the Trails Act.[2] Accordingly, the NITU negotiating period will be extended for an additional 180 days from October 7, 2004 (until April 5, 2005).

This action will not significantly affect either the quality of the human environment or the conservation of energy resources.

---

[1] The decision and notice also made the exemption subject to the condition that BNSF provide the National Geodetic Survey with 90 days' notice before beginning any salvage activities to plan for the potential relocation of six geodetic station markers.

[2] See Rail Abandonments–Supplemental Trails Act Procedures, 4 I.C.C.2d 152, 157-58 (1987).

EXHIBIT
tabbies
M

It is ordered:

1. The requests to extend the NITU negotiating period are granted and the negotiating period is extended for an additional 180 days (until April 5, 2005).

2. This decision is effective on its service date.

By the Board, David M. Konschnik, Director, Office of Proceedings.

Vernon A. Williams
Secretary

28.

Exc #4

Entered in Transfer Record in My Office the 22 Day of February 06
Sheri A. Lagnelia County Clerk

STATE OF KANSAS } ss
RENO COUNTY
This instrument was filed for record on the 22 day of Feb A.D. 2006 at 3:10 o'clock P M. and duly recorded in Book 582 on Page 61
Fee $ 28.00
REGISTER OF DEEDS

F 16
#12

QUITCLAIM DEED

THIS QUITCLAIM DEED, made this 17th day of February, 2006 by and between BNSF RAILWAY COMPANY (formerly The Burlington Northern and Santa Fe Railway Company), a Delaware corporation ("**BNSF**"), and CITY OF SOUTH HUTCHINSON, a Kansas municipality, with its principal office at 2 South Main, South Hutchinson, Kansas 67505-1598 ("**Donee**").

WITNESSETH: That BNSF, for Ten and No/100 Dollars ($10.00) and other good and valuable consideration, to it in hand paid, the receipt of which is hereby acknowledged, does hereby REMISE, RELEASE and FOREVER QUITCLAIM, without any covenants of warranty whatsoever and without recourse to BNSF, its successors and assigns, unto Donee, its successors and assigns, all of its right, title and interest, if any, in real estate and its rights under any leases related to such real estate, if any, subject however to all existing interests, including but not limited to all reservations, rights-of-way, leases, easements and other encumbrances, of record or otherwise, located in the County of Reno, State of Kansas, more particularly described on the attached **Exhibit A** which is fully incorporated herein by reference (the "**Property**").

SUBJECT, to the terms of that certain Railbanking and Donation Contract, dated 3/23, 2005 ("**Contract**"), which terms shall be incorporated herein, this conveyance is dependent upon and pursuant to the issuance of a Notice of Interim Trail Use ("**NITU**") in Surface Transportation Board ("**STB**") Docket No. AB-6 (Sub-No. 406X), The Burlington Northern and Santa Fe Railway Company – Abandonment Exemption in Reno County, Kansas, in accordance with 16 U.S.C. Section 1247(d), the STB's rules and regulations pertaining to interim trails use, and other applicable authorities, all as amended from time to time;

SUBJECT, to interpretation pursuant to and in conformity with Section 8(d) of the National Trails Systems Act, 16 U.S.C. Section 1247(d), and the rules and regulations of the STB related thereto, all as may be amended from time to time. Donee shall assume, indemnify, defend, and hold harmless BNSF from all financial, managerial and legal responsibility for the Property, including without limitation any liabilities and responsibilities assumed by or placed upon Donee pursuant to and in accordance with the NITU, Donee's Statement of Willingness to Assume Financial Responsibility filed with the STB, and any applicable STB orders related to this conveyance and any leases affecting the Property. Donee acknowledges that any interim trail use by Donee or its assigns shall be subject to the possibility of future restoration of rail service and/or BNSF's retained interests pursuant to the Contract and/or federal law. Donee shall take all steps necessary, at no expense to BNSF, to comply with any and all state and federal requirements relating to such interim trail use and/or restoration;

SUBJECT, to Donee's obligation that interim trail use by Donee shall not impair future restoration of rail service pursuant to the National Trails Systems Act, as amended.

RESERVING, unto BNSF, the right to reactivate and restore rail service on the Property. Should BNSF or any such assignee of BNSF exercise this right at any time, Donee or its assignee shall allow reactivation of rail service on the terms and conditions set forth in the Contract. Upon BNSF's notice of intent to restore rail service, Donee shall reconvey the Property to BNSF free and clear of any encumbrances or liens not in effect prior to Closing at no cost to BNSF except to the extent expressly provided otherwise in said Contract.

Donee has been allowed to make an inspection of the Property and has knowledge as to the past use of the Property. Based upon this inspection and knowledge, Donee is aware of the condition of the Property and **DONEE SPECIFICALLY ACKNOWLEDGES THAT THE PROPERTY IS BEING QUITCLAIMED ON AN "AS-IS**



EXHIBIT
N
tabbies

**WITH ALL FAULTS" BASIS WITH ANY AND ALL PATENT AND LATENT DEFECTS, INCLUDING THOSE RELATING TO THE ENVIRONMENTAL CONDITION OF THE PROPERTY, AND DONEE IS NOT RELYING ON ANY REPRESENTATION OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER FROM BNSF AS TO ANY MATTERS CONCERNING THE PROPERTY,** including, without limitation, the physical condition of the Property; zoning status; tax consequences of this transaction; utilities; operating history or projections or valuation; compliance by the Property with Environmental Laws (defined below) or other laws, statutes, ordinances, decrees, regulations and other requirements applicable to the Property; the presence of any Hazardous Substances (defined below), wetlands, asbestos, lead, lead-based paint or other lead containing structures, urea formaldehyde, or other environmentally sensitive building materials in, on, under, or in proximity to the Property; the condition or existence of any of the above ground or underground structures or improvements, including tanks and transformers in, on or under the Property; the condition of title to the Property; and any leases, easements, reservations, permits, orders, licenses, or other rights or agreements, affecting the Property. **BNSF EXPRESSLY DISCLAIMS ANY WARRANTIES FOR THE PROPERTY OR APPURTENANCES THERETO, INCLUDING, WITHOUT LIMITATION, WARRANTIES AS TO TITLE, MERCHANTABILITY, HABITABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, OR CONFORMITY OF THE PROPERTY TO ITS INTENDED USE.**

Donee acknowledges and represents to BNSF that Donee is aware of the risk that Hazardous Substances may be present on, under, in or about the Property and that Donee has conducted such investigations of the Property, including but not limited to, the physical and environmental conditions thereof, that Donee deemed necessary to satisfy itself as to the condition of the Property and will rely solely upon same and not upon any information provided by or on behalf of BNSF or its agents or employees with respect thereto. **DONEE ASSUMES THE RISK THAT ADVERSE MATTERS MAY NOT HAVE BEEN REVEALED BY DONEE'S INVESTIGATIONS, AND DONEE SHALL INDEMNIFY, HOLD HARMLESS AND HEREBY WAIVES, RELEASES AND DISCHARGES FOREVER BNSF (AND BNSF'S AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, LICENSEES AND INVITEES) FROM ANY AND ALL PRESENT OR FUTURE, KNOWN OR UNKNOWN, CLAIMS, DEMANDS, CAUSES OF ACTION (INCLUDING, BUT NOT LIMITED TO, THOSE IN CONTRACT, TORT AND STRICT LIABILITY), DAMAGES (INCLUDING, WITHOUT LIMITATION, CONSEQUENTIAL AND PUNITIVE), LOSSES, INJURIES, LIABILITIES, COSTS (INCLUDING, BUT NOT LIMITED TO, FINES, PENALTIES, COURT COSTS AND ATTORNEYS' FEES) ARISING FROM OR IN ANY WAY RELATED TO (I) ANY LATENT OR PATENT CONDITIONS OF THE PROPERTY, (II) ANY BODILY INJURY OR DEATH OR LOSS OR DAMAGE TO THE PROPERTY OF ANY PERSON OR PERSONS WHOMEVER, INCLUDING THE PARTIES HERETO, IN ANY MANNER ARISING FROM OR GROWING OUT OF THE ACTS OR OMISSIONS, NEGLIGENT OR OTHERWISE, OF DONEE OR ITS OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, LICENSEES AND INVITEES IN CONNECTION WITH THE ENTRY UPON, OCCUPATION OR USE OF THE PROPERTY, AND/OR (III) ANY ALLEGED OR ACTUAL PRESENCE, USE, STORAGE, GENERATION, MANUFACTURE, TRANSPORT, RELEASE, LEAK, SPILL, DISPOSAL OR OTHER HANDLING OF ANY HAZARDOUS SUBSTANCES IN, ON, UNDER OR ABOUT THE PROPERTY.** As used herein, the term "**Environmental Law**" means any federal, state or local statute, regulation, code, rule, ordinance, order, judgment, decree, injunction or common law pertaining in any way to the protection of human health or the environment, including without limitation, the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Toxic Substances Control Act, and any similar or comparable state or local law. As used herein, the term "**Hazardous Substance**" means any hazardous, toxic, radioactive or infectious substance, material, contaminant or waste as defined, listed or regulated under any Environmental Law, and includes without limitation, petroleum oil and any of its fractions.

If any of the terms under this quitclaim deed shall be unlawful or void for violation of (a) the rule against perpetuities or some analogous statutory provision, or (b) any other statutory or common law rules imposing like or similar time limits, then such terms shall continue only for the period of twenty-one (21) years after the death of the last survivor of the lineal descendants of Elizabeth II, Queen of England, living as of the date hereof.

**Donee acknowledges that, according to BNSF's records, BNSF's interest in the Property may be subject to reversion upon abandonment of use for railroad purposes or cessation of interim trail use, and that the quitclaim deed releases and conveys only BNSF's interest, if any, it may have in the Property.**

**Donee also acknowledges that a material consideration for this conveyance, without which it would not be made, is the agreement by Donee, for itself and for its successors and assigns, that BNSF, its predecessors, successors, and assigns shall be in no manner responsible to Donee, any subsequent owner, purchaser, or any person for any claims, demands, damages, causes of action, including loss of access, or suits regarding the quiet and peaceable possession of the Property, title thereto, or condition thereof.**

**TO HAVE AND TO HOLD** the Property unto the said Donee, its successors and assigns, forever.

[Signature and acknowledgment pages follow]

**IN WITNESS WHEREOF**, the said BNSF has caused this instrument to be signed by its authorized representative, attested by its Assistant Secretary, and its corporate seal to be affixed hereto on the day and year first above written.

BNSF:

BNSF RAILWAY COMPANY,
a Delaware Corporation

By: David P. Schneider
Print Name: David P. Schneider
Title: General Director – Land Revenue Management

Accepted:

DONEE:

CITY OF SOUTH HUTCHINSON, a Kansas municipality

By: Ronald W. Hirst
Print Name: RONALD W. HIRST
Title: Mayor

**STATE OF TEXAS** )
) ss.
**COUNTY OF TARRANT** )

On this 17th day of February, 2006 before me appeared DAVID P. Schneider, to me personally known, who being by me duly sworn, did say that he ~~or she~~ is General Director-Land * of BNSF RAILWAY COMPANY, that the seal affixed to the foregoing instrument is the corporate seal of said corporation and that said instrument was signed and sealed in behalf of said corporation by authority of its Board of Directors and said authorized representative acknowledged said instrument to be the free act and deed of said corporation.
* Revenue Management

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed my notarial seal the day and year last above written.

RHONDA BURTON
My Commission Expires
September 21, 2008

Rhonda Burton
Notary Public

My Commission Expires: 9/21/2008

*[Exhibit A to be attached prior to execution by the parties]*