**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| DOROTHY L. BIERY, and<br><br>GORDON HOLLOWAY, as successor and representative of decedent GEORGE A. HOLLOWAY,and<br><br>STACY E. JUDY Trust dated March 7, 1994, and<br><br>JULIA R. CHALFANT Etvir Trust,<br><br>K.A.K. FARMS, INC., and<br><br>AMERICAN PACKING CORPORATION, and<br><br>COLLINS INDUSTRIES, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 1:07-cv-693 |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

COME NOW, Plaintiffs, by and through their undersigned counsel, and pursuant to RCFC 56, *Celotex Corporation v. Cattrett*, 477 U.S. 317 (1986), *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986), and files with this Court their Motion for Partial Summary Judgment in favor of Plaintiffs and adverse to and against the U.S. Government on the issue of liability for taking the Plaintiffs' property by operation of the Trails Act (16

U.S.C. § 1241) without paying "just compensation" as required by the Fifth Amendment to the United States Constitution.

As demonstrated in the Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment, incorporated herein and filed simultaneously herewith, there are no genuine issues of material fact and Plaintiffs are entitled to judgment as a matter of law. Pursuant to RCFC 56(d)(1), Plaintiffs also incorporate herein and simultaneously file their Proposed Findings of Uncontroverted Facts. For their Motion for Partial Summary Judgment, Plaintiffs state as follows:

1. The seven Plaintiffs are, or were on April 5, 2005, the fee owners of land in Reno County, Kansas.

2. On April 5, 2004, each of the seven Plaintiffs owned fee title to land that was burdened by an easement for a railroad right-of-way.

3. At no time was the Plaintiffs' land ever burdened by an easement allowing the general public to use the Plaintiffs' land for a recreational trail.

4. The railroad right-of-way that crossed the Plaintiffs' land was a portion of a 2.88-mile long railroad line in South Hutchinson, Kansas.

5. This railroad line was originally established in 1889 and 1891 by the Hutchinson, Oklahoma, and Gulf Railroad Company and the Hutchinson & Southern Railroad Company.

6. The Hutchinson, Oklahoma, and Gulf Railroad Company and the Hutchinson & Southern Railroad Company acquired only an easement to use this land. The easement was acquired by condemnation.

7. The easement to use the Plaintiffs' land was limited to use of the Plaintiffs' property for the operation of a railroad.

8. Under Kansas law, at such time as this property was no longer used for the operation of a railroad, the easement was abandoned and extinguished. *Abercrombie v. Simmons*, 81 P. 208 (Kan. 1905) ("[A] right-of-way , although commonly designated as an easement, is an interest in land of a special and exclusive nature, and of a high character *** Whatever its name, the interest was taken for use as a right-of-way, is limited to that use, and must revert when the use is abandoned.")

9. The original right-of-way easement obtained by the Hutchinson, Oklahoma, and Gulf Railroad Company and the Hutchinson & Southern Railroad Company was transferred to several successor railroads, eventually coming to the Burlington Northern and Santa Fe Railway Company ("BNSF").

10. In 2004, BNSF sought to abandon railroad service across the property and filed a notice of abandonment with the federal Surface Transportation Board (STB).

11. On March 3, 2004, the STB granted the request to abandon railroad service across the property but stated that petitions for trail use/rail banking may be considered at a later date.

12. On February 25, 2004, the City of South Hutchinson, Kansas, filed a request with the STB to issue a NITU for the entire 2.88-mile right-of-way between milepost .62 and milepost 3.50 near South Hutchinson, Kansas. (STB Docket No. AB-460X, March 3, 2004).

13. On April 5, 2004, the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use or Abandonment ("NITU").

14. Section 16 U.S.C. 1247(d) of the Trails Act provides, "[I]n the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."

15. The federal Trails Act and the STB's issuance of this NITU operated to preclude or preempt the Plaintiff landowners from regaining their reversionary[1] right to use and possess the land that was subject to this NITU.

16. The United States Supreme Court in *Preseault v. United States,* 494 U.S. 1, 110 S.Ct. 914 (1990) (*Preseault* I) and the Federal Circuit sitting en banc in *Preseault v. United States*, 100 F. 3d 1525 (Fed. Cir. 1996) (*Preseault* II), held "[W]e find that rail-to-trail conversions giving rise to just compensation claims are clearly authorized by § 8(d). That section speaks in capacious terms of 'interim use of *any* established railroad rights-of-way' and does not support petitioners' proposed distinction between conversions that might result in a taking and those that do not. Although Congress did not explicitly promise to pay for any takings, we have always assumed that the Tucker Act is an 'implie[d] promis[e]' to pay just compensation which individual laws need not reiterate."

---

[1] Plaintiffs use the term "reversionary" or "reversion" in this memorandum in the generic sense to describe the Plaintiff's property interest. We employ the term in this generic sense because it is commonly used in this manner by courts considering Trails Act taking cases. This is not a technically correct use of the term. As the Federal Circuit has noted, "as a matter of traditional property law terminology, a termination of the easements would not cause anything to "revert" to the landowner. Rather, the burden of the easement would simply be extinguished, and the landowner's property would be held free and clear of any such burden." *Towes v. United States,* 376 F. 3d 1371, 1376 (2004).

*Preseault I*, 494 U.S. at 13, 11 S.Ct. at 922 (emphases in original). The Federal Circuit reiterated, "We have here a straightforward taking of private property for a public use for which just compensation must be paid. *** When state-defined property rights are destroyed by the Federal Government's preemptive power in circumstances such as those here before us, the owner of those rights is due just compensation." *Preseault II*, 100 F.3d at 1551, 1552.

17. A property owner's interest in their land is taken under the Trails Act at the time the STB issues a NITU. (See *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004); *Barclay v. United States*, 443 F.3d 1368, 1378 (Fed. Cir. 2006); consolidated on appeal with *Renewal Body Works, Inc. v. United States* 443 F.3d 1368, 1378 (Fed. Cir. 2006) ("[W]e adhere to Caldwell and hold that the issuance of the original NITU triggers the accrual of the cause of action.")

18. When the Trails Act denies a property owner their "reversionary" right to their land and imposes new burdens and servitudes upon a property owner's land, such as an easement for the creation of a public-access recreational trail, as well as a future easement for railroad use, it is a taking of that property owner's land for which the Fifth Amendment requires the payment of "just compensation".

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court grant partial summary judgment in their favor and adverse to and against the U.S. Government, finding that: (1) the federal government has taken the Plaintiffs' property by operation of the Trails Act (16 U.S.C. § 1241) on April 5, 2004, when the STB issued a NITU that: (a)

precluded the Plaintiffs' "reversionary" right to their property and (b) imposed two new easements upon the Plaintiff's land, one for interim public trail use and a second for possible future railroad use; (2) that by reason of the Fifth Amendment to the United States Constitution, Plaintiffs are entitled to "just compensation," for this taking of their property; (3) that "just compensation" includes interest on the delay damages from the April 5, 2004, date of the NITU until the Plaintiff's are finally paid "just compensation"; and (4) that pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§4651-4655, the Plaintiffs are entitled to their costs, attorneys' fees, appraisal expenses and other expenses of this action, and for such other and further relief as this Court deems just and proper.

LATHROP & GAGE L.C.

Date: 4/30/08

By /s/ Mark F. (Thor) Hearne, II

MARK F. (THOR) HEARNE, II
LINDSAY S.C. BRINTON
MEGHAN S. LARGENT
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
(314) 613-2500
(314) 613-2550 (fax)
Thornet@ix.netcom.com

ATTORNEYS FOR PLAINTIFFS