**STATEMENT OF DANIEL N. WENK, DEPUTY DIRECTOR, NATIONAL PARK SERVICE, U.S. DEPARTMENT OF THE INTERIOR, BEFORE THE SUBCOMMITTEE ON NATIONAL PARKS OF THE SENATE COMMITTEE ON ENERGY AND NATURAL RESOURCES, CONCERNING S. 2073, TO AMEND THE NATIONAL TRAILS SYSTEM ACT RELATING TO THE STATUTE OF LIMITATIONS THAT APPLIES TO CERTAIN CLAIMS**

**April 23, 2008**

---

Mr. Chairman, thank you for the opportunity to present the views of the Department of the Interior on S. 2073, to amend the National Trails System Act relating to the statute of limitations that applies to certain claims.

On July 13, 2006, the Department of the Interior testified on a similar bill, H.R. 4581, before the House Resources Subcommittee on National Parks. At that time, we were advised by the U.S. Department of Justice that they planned to further evaluate the legislation and would send a report to the Committee that would include a position on the bill. That report was sent to Chairman Devin Nunes in the form of a letter dated August 1, 2006. In that letter the Department of Justice stated that this legislation ". . .would unnecessarily displace settled, well-reasoned case law, as well as raise other concerns, including constitutional ones. We thus note our opposition to the bill." The Department of Justice advises us that S. 2073 has not eliminated these constitutional concerns. The administration therefore opposes this bill.

The National Park Service is aware that there was some confusion created by various court rulings on what date would trigger the Statute of Limitations for rail-to-trail takings cases. We believe this issue was resolved in court rulings issued in 2005 and 2006. In the Caldwell v. United States case concerning a railroad right-of-way in the state of Georgia, the plaintiffs



EXHIBIT
tabbies
Appendix C

alleged that they were the fee owners of land that was burdened by a railroad easement and that the railbanking and interim trail use of this right-of-way under the Trails Act constituted a taking of their property. Both the U.S. Court of Federal Claims (the trial court) and the U.S. Court of Appeals for the Federal Circuit ruled that the statute of limitations for the Caldwell plaintiffs' Trails Act takings claim had expired. However, the two courts ruled differently for establishing when the statute of limitations started to run. The trial court ruled that two events are necessary for a Trails Act takings claim to accrue: (1) the Surface Transportation Board (STB) must issue its decision (the Notice of Interim Trail Use or "NITU") authorizing railbanking, and (2) the railroad and qualified trail sponsor must reach a trail use agreement pursuant to that authorization. The appeals court found the triggering event to be when the STB issued the NITU because that decision forestalled the abandonment proceedings and precluded any state law reversionary interests from taking effect. In 2006, the Federal Circuit reaffirmed the appeals court determination in the Caldwell case ruling in Barclay v. United States that the issuance of the original NITU triggers the running of the statute of limitations. As a result of the Caldwell and Barclay decisions, no confusion remains in the law regarding accrual of rails-to-trails takings claims.

S. 2073 would amend Section 8(d) of the National Trails System Act to state that the claims for damages shall not begin to accrue before the date on which the State, political subdivision, or qualified private organization enters into an agreement with the railroad to assume full responsibility for the right-of-way and interim use of that right-of-way under paragraph (1).

In 1983, Congress recognized the continuing need to preserve linear transportation corridors and

the demand for trails by amending the National Trails System Act (NTSA) to include a "railbanking" clause. Railbanking is defined as the preservation of a railroad corridor for future rail use. Railbanking is accomplished under the NTSA through provisions that allow a railbanked corridor to be used for interim trail use purposes through a voluntary agreement reached between a railroad and a trail manager. In Section 8(d) of the NTSA, the Secretary of the Interior is asked to encourage state and local groups to develop trails on railroad rights-of-way in order to protect and keep these corridors intact in case they are needed for rail service in the future. Section 8(d) also facilitates the development of rail-trail corridors that provide both high-quality recreational opportunities and serve transportation needs.

In cities, these rail-trail corridors benefit the citizens by serving as transportation corridors, providing safe and easily accessible commuting areas for bikers and walkers, helping to mitigate our urban traffic problems and pollution. The present use of these trails has the additional benefit of attracting tourism dollars to communities that have lost income through the disuse of the railroad. Rail-trail corridors attract people to these areas, who in turn spend money on recreational equipment, food, and lodging as they use these trails.

Rail-trail corridors provide important recreational and energy-efficient transportation opportunities throughout the United States. However, it is important to provide a process that will ensure just compensation is provided to private property owners only when railbanking and interim trail use authorized under the NTSA results in a taking of private property.

That concludes my testimony. I would be happy to answer any questions you or other members of the subcommittee may have.