tabbies EXHIBIT Appendix E

For Opinion See 443 F.3d 1368

United States Court of Appeals,Federal Circuit.
John BARCLAY, Constance Barclay, Royer Barclay, Althea Barclay, John Amos, Marcia J. Bacon, Ronald J. Bartel, Melvin Bergen, John E. Boyle, Jonathan Ehrlich, Florence Ehrlich, Donald Graumann, Ruben Kliewer, Alvin Kroupa, Barbara Kroupa, Burdett Ledell, Lee Dale Miller, Vernon Minns, Frank A. Mitchell, Mid Kansas Cooperative Association, John F. Opat, Robert Presnell, Janet Regier, Sonja Regier, Don Reinhardt, Janice Reinhardt, Mary J. Rodgers, Darrell Thompson, Robert Turner, Geneva Turnquist, Donald Turnquist, Clark E. Wiebe, And Marlene J. Weber, Plaintiffs-Appellants,
v.
UNITED STATES, Defendant-Appellee.
No. 05-1255.
July 21, 2006.

Appeal from the United States District Court for the District of Kansas Case No. 04-119-WEB, Senior Judge Wesley E. Brown

Opposition of Federal Appellee to Appellants' Petition for Rehearing en Banc

Sue Ellen Wooldridge, Assistant Attorney General, Environment & Natural Resources Div., Kathryn E. Kovacs, Lane M. Mcfadden, U.S. Department of Justice, P.O. Box 23795, l'Enfant Plaza Station, Washington, D.C. 20026, (202) 353-9022.

*i*Table of Contents*

INTRODUCTION ... 1

BACKGROUND ... 2

ARGUMENT ... 4

I. *This Court's adherence to Caldwell does not conflict with Supreme Court or Federal Circuit precedent* ... 4

II. *This case does not raise an issue of exceptional importance* ... 12

CONCLUSION ... 14

*ii*TABLE OF AUTHORITIES*

FEDERAL CASES

*Alliance of Descendants of Texas Land Grants v. United States,* 37.F.3d 1478 (Fed. Cir. 1994) ... 5, 6

*Barclay v. United States,* 443 F.3d 1368 (Fed. Cir. 2006) ... 1, 2, 3, 7, 13

*Boise Cascade Corp. v. United States,* 296 F.3d 1339 (Fed. Cir. 2002) ... 8

*Caldwell v. United States,* 126 S. Ct. 366 (Oct. 3, 2005) ... 12

*Caldwell v. United States,* 391 F.3d 1226 (Fed. Cir. 2004) ... 1, 4, 5, 8, 9

*Cooley v. United States,* 324 F.3d 1297 (Fed. Cir. 2003) ... 8

*Hash v. United State,* 403 F.3d 1308 (Fed. Cir. 2005) ... 8

*Hendler v. United States,* 952 F.2d 1364 (Fed. Cir. 1991) ... 11

*Nollan v. California Coastal Commission,* 483 U.S. 825 (1987) ... 10

*Preseault v. Interstate Commerce Commission,* 494 U.S. 1 (1990) ... 7

*Preseault v. United States,* 100 F.3d 1525 (Fed. Cir. 1996) ... 4, 5, 6, 7, 11

*Seiber v. United States,* 364 F.3d 1356 (Fed. Cir. 2004) ... 8, 11

*Stearns v. United States,* 396 F.3d 1354 (Fed. Cir. 2005) ... 10

*Toews v. United States,* 376 F.3d 1371 (Fed. Cir. 2004) ... 8

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*United States v. Dow*, 357 U.S. 17(1958) ... 8, 9, 12

*Williamson County Reg'l Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) ... 10

*iii DOCKETED CASES

*Renewal Body Works, Inc. v. United States*, Fed. Cir. No. 05-5109 ... 1

FEDERAL STATUTES AND REGULATIONS

National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) ... 1, 6

28 U.S.C. § 2501 ... 1, 3

49 C.F.R. § 1152.29(a) ... 6, 7

49 C.F.R. § 1152.29(d)(1) ... 5

49 C.F.R. § 1152,29(d)(2) ... 5

FEDERAL RULES

Fed. R. App. P. 35 ... 1, 12

*INTRODUCTION*

This case concerns the accrual date of a claim alleging that conversion of a railroad right-of-way to interim trail use under the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) (the "Trails Act"), constitutes a taking. The panel's majority opinion held that such a claim accrues on the date when the Surface Transportation Board ("STB") issues a Notice of Interim Trail Use or Abandonment ("NITU"). *Barclay v. United States*, 443 F.3d 1368, 1378 (Fed. Cir. 2006).[FN1] The majority opinion followed this Court's prior decision in *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) ("[T]he appropriate triggering event for any takings claim under the Trails Act occurs when the NITU is issued."). Applying *Caldwell*, the majority opinion affirmed the District of Kansas' dismissal of the complaint in this case as untimely, because it was filed well outside the six-year statute of limitations period set forth in 28 U.S.C. § 2501, as measured from the dates of the issuance of the relevant NITUs. *Id.* at 1371-72. Rehearing *en banc* is not warranted under Fed. R. App. P. 35 and Fed. Cir. R. 35 because the majority's opinion creates no conflict with Supreme Court or Federal Circuit precedent, and this case presents no question of exceptional importance.

FN1. This Court's opinion in *Barclay* also decided the claims in *Renewal Body Works, Inc. v. United States*, Fed. Cir. No. 05-5109, in a consolidated published opinion. The Appellant in *Renewal Body Works* has also filed a petition for *en banc* rehearing of this Court's opinion, which the Government has opposed in a separate opposition filed concurrently with this opposition.

BACKGROUND

Appellants in this case are 33 landowners whose properties are allegedly burdened by three former railroad rights-of-way in Kansas. These rights-of-way were transferred to trail managers for interim trail use and railbanking under the authority of the Trails Act, and the landowners alleged a Fifth Amendment taking of their reversionary property interests in the rights-of-way.

Each right-of-way at issue in this case has its own particular factual background, which is described in detail in the parties' briefing to this Court.[FN2] The initial NITUs were issued for each of the three trails at issue in this case on: September 28, 1995 (Meadowlark Trail), April 12, 1996 (Sunflower Trail), and March 31, 1995, and May 24, 1996 (Flint Hills Trail). *See* Barclay, 443 F.3d at 1372 n. 2. Each of these dates is more than six years prior to the landowners' filing of a complaint. 28 U.S.C. § 2501(a) (establishing a six-year statute of limitations).

FN2. On appeal, the landowners attempted to distinguish factually their claims from those at issue in *Caldwell*. Those factual issues are not raised in this petition.

The landowners filed a complaint alleging Trails Act taking claims on April *3 7, 2004, in the United States District Court for the District of Kansas. JA35.[FN3] On December 30, 2004, the district court issued its judgment and opinion, applying the accrual rule announced just two weeks earlier by this Court in *Caldwell* that "it is the issuance of a NITU (Notice of Interim Trail Use or Abandonment) that gives rise

to a cause of action." JA10. Applying this rule, the district court found that the landowners' claims were all barred by the statute of limitations, and granted the Government's motion to dismiss. JA19.[FN4] This appeal then followed and, as noted above, this Court affirmed the district court's dismissal of the complaint.

FN3. The abbreviation "JA" refers to the Joint Appendix filed in conjunction with the landowners' opening brief on appeal to this Court.

FN4. The district court agreed with the landowners that the statute of limitations was tolled while a motion to certify a potential class action (which would have included the landowners) was pending. JA15. Nevertheless, even with this additional time the district court found that the landowners' claims were untimely. This Court agreed with that latter assessment, and therefore did not rule on whether the district court was correct that the statute of limitations was tolled. Barclay, 443 F.3d at 1373 n. 3. The landowners do not raise this issue in their petition for rehearing *en banc*.

ARGUMENT

I. *This Court's adherence to Caldwell does not conflict with Supreme Court or Federal Circuit precedent.*

In *Caldwell,* this Court addressed for the first time the accrual of a takings claim "when, pursuant to the Trails Act, state law reversionary interests are *4 effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." 391 F.3d at 1228 (citing Preseault v. United States, 100 F.3d 1525, 1543 (Fed. Cir. 1996) (*en banc*) (*"Preseault II"*). This Court held that a Trails Act taking "occurs when state law reversionary property interests that would otherwise vest in the adjacent landowners are blocked from so vesting," which happens "when the railroad and trail operator communicate to the [Surface Transportation Board] their intention to negotiate a trail use agreement and the agency issues a NITU that operates to preclude abandonment under section 8(d)." *Id.* at 1233. The landowners do not dispute that, when this rule is applied to their complaint, that complaint is untimely. Rather, the landowners argue, as they did in their briefing of this appeal, that *Caldwell* should be overturned. However, the landowners' petition does not justify rehearing this case *en banc.*

Citing a number of non-Trails Act takings cases, the landowners begin their argument with the uncontroversial proposition that "a taking accrues at the time all events have occurred to fix the government's liability." Pet. at 3 (citing Alliance of Descendants of Texas Land Grants v. United States, 37 F.3d 1478 (Fed. Cir. 1994)). This Court stated in *Caldwell* that, under the applicable regulatory scheme, "the NITU is the only *government* action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of ***5** state law reversionary interests in the right-of-way." 391 F.3d at 1233-34 (emphasis in original). The NITU delays the abandonment of the line for 180 days to allow the rail carrier and the trail group time to negotiate a railbanking and interim trail use agreement. 49 C.F.R. § 1152.29(d)(1).

Although, as the landowners argue in their petition, the issuance of a NITU "puts into play a series of events," Pet. at 3 (quoting Preseault II, 100 F.3d at 1551), and does not finalize a trail agreement, interim trail use is authorized at that point without any further federal action being required. In contrast, abandonment would have required further federal action in the circumstances of this case, where the parties eventually reached a trail use agreement. The trail operators could terminate trail use and abandon the corridors only by petitioning the STB to vacate the applicable NITUs. 49 C.F.R. § 1152.29(d)(2). Absent the NITUs, the railroads would have been able to abandon the corridors, and title would have reverted to the landowners.

The NITU is the only federal government action that might allegedly constitute a taking by preventing the reversion of property rights under state law. *See* Preseault II, 100 F.3d at 1554 (Rader, J., concurring) (explaining that "the United States facilitated that conversion with its laws and regulatory approval"). *Cf.* ***6**Alliance of Descendants of Texas Land Grants v. United States, 37 F.3d 1478, 1482 (Fed. Cir. 1994) (holding that ratification of treaty in 1941 that extinguished legal claims was the "taking action," even though Mexico did not deny claims and leave plaintiffs without compensation until 1989).[FN5] The sale of property for Trails Act purposes does not implicate the United States, but rather is action between two non-federal entities (*e. g.,* a railroad company and a municipality). The regulations do not

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

even require the railroad and the trail operator to notify the STB in the event that title is transferred. In this case, preemption of the landowners' alleged reversionary rights occurred, if at all, well before title was transferred to the trail operators.

FN5. "The language of the Fifth Amendment itself requires that the United States * * * commit the taking action." *Alliance of Descendants*, 37 F.3d at 1482 (Fed. Cir. 1994). The United States has no role in a transfer of the ownership interest in a rail corridor for railbanking and interim trail use. Negotiations are voluntary under the Trails Act, and it does not matter how the parties to those negotiations structure their agreement so long as the trail sponsor assumes responsibility for the property and agrees that interim trail use is subject to reactivation of rail service. *See*16 U.S.C. § 1247(d) (providing that railbanking can be accomplished through "donation, transfer, lease, sale or otherwise"); *see also*49 C.F.R. § 1152.29(a).

The landowners point out in their petition that a claim against the United States cannot accrue until a plaintiff has "suffered-a legally recognizable harm." Pet. at 8. The landowners argue, as they did before the panel, that because the NITU may not necessarily result in a final trail use agreement, it cannot be understood to have actually harmed them. *Id.* The majority opinion rejected this ***7** argument, following *Caldwell,* because this argument misstates the harm imposed by the issuance of a NITU. The landowners protest that "without the *conversion* to trails use, landowners cannot initiate a takings claim for a rails-to-trails *conversion* under the Trails Act." Pet. at 9 (emphasis in original). However, as this Court explained in *Preseault II,* the landowners' takings claim is not premised on the conversion of the right-of-way to a trail, but rather the government's action which blocks the landowners' state law reversionary interests from vesting, as they otherwise would when the right-of-way is abandoned. 100 F.3d at 1550-52. This action, which by preventing those rights from vesting "burdens and defeats the property interest," *Preseault v. Interstate Commerce Comm'n,* 494 U.S. 1, 22 (1990) (O'Connor, J., concurring), is the STB's issuance of a NITU, as the panel's majority recognized. *Barclay,* 443 F.3d at 1373 ("Thus, a Trails Act taking begins and a takings claim accrues, if at all, on issuance of the NITU.").

The landowners incorrectly contend that, in adhering to *Caldwell,* the panel's majority decision here is inconsistent with *Toews v. United States,* 376 F.3d 1371, 1376 (Fed. Cir. 2004), and *Hash v. United States,* 403 F.3d 1308, 1318 (Fed. Cir. 2005), Pet. at 9, as well as a host of additional cases, Pet. at 1. Those cases did not address the question of when a Trails Act taking claim accrues, and neither the Supreme Court nor any other circuit court has decided the question. ***8** This Court resolved that question in *Caldwell,* and concluded that "the NITU operates as a single trigger to several possible outcomes." 391 F.3d at 1234. In the event that a trail use agreement is reached and abandonment of the right-of-way is effectively blocked, then a permanent taking may have resulted from the NITU. *Id.* As the *Caldwell* court noted, "[i]t is not unusual that the precise nature of the takings claim, whether permanent or temporary, will not be clear at the time it accrues." *Id.* (citing *Seiber v. United States,* 364 F.3d 1356, 1365 (Fed. Cir. 2004); *Cooley v. United States,* 324 F.3d 1297, 1299-1300 (Fed. Cir. 2003); and *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1347 (Fed. Cir. 2002)).

In so characterizing the effect of the NITU, *Caldwell* drew upon Supreme Court precedent in *United States v. Dow,* 357 U.S. 17 (1958), for the proposition that a single governmental action may cause either a temporary or permanent taking. *Caldwell,* 391 F.3d at 1234-35. *Dow* was a condemnation action in which the Government entered into physical possession of the land three years before it acquired title by filing a declaration of taking. *Dow,* 357 U.S. at 23. The Supreme Court held that the Government's physical possession of the land had been a taking and "rejected, as bizarre, the argument that there were two different takings of the same property, with some incidents of the taking determined as of one date and some as of the other." *Caldwell,* 391 F.3d at 1235 (quoting ***9***Dow,* 357 U.S. at 24) (internal quotations omitted). Instead, "a taking occurs when the owner is deprived of use of the property," which in the Trails Act context occurs "by blocking the easement reversion." *Id.* Accordingly, to the extent that Supreme Court precedent sheds light on the accrual issue here, *Caldwell* is not inconsistent with that precedent.

The landowners' argument that a NITU might never result in a temporary taking, Pet. at 9-15, and therefore *Caldwell* is incorrect, relies on a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

characterization of the landowners' claim as something other than a claim for the government's prevention of their state law reversionary interests from vesting. In so arguing, the landowners ignore the rather peculiar circumstances of a Trails Act takings claim. Unlike the usual physical occupation case, the landowner in a Trails Act takings case has already been deprived of physical possession of the land subject to the right-of-way. Thus, the question is not when the owner loses the right to physically occupy the property, but rather, when the owner would otherwise have recovered full possession of the easement, were it not for operation of the Trails Act. The landowners' suggestion that their takings claim could not have been brought until the actual date of trail conversion, Pet. at 9, is misplaced in this unique context. The landowners were not in exclusive possession of the corridors subject to railroad rights-of-way in the first place, and their alleged ***10** reversionary rights were interrupted (if at all) long before the completion of a trail use agreement and the transfer of title to the trail operators. This is what separates this case from physical occupation cases such as Nollan v. California Coastal Comm'n, 483 U.S. 825 (1987), and explains why this panel's majority opinion does not conflict with Supreme Court or circuit precedent addressing those different circumstances.

Although the landowners object to this Court's bright-line rule, as described in *Caldwell,* and clarified by the panel's majority opinion in the present case, they provide no alternative date for accrual of their claims that would be consistent with this Court's description of the nature of their claims in cases such as *Preseault II.*[FN6]. The conversion of a railroad right-of-way to interim trail use will ***11** vary from case to case.

FN6. Similarly, the landowners are incorrect that their claims are unripe at the point of the NITU's issuance. Pet. at 13 (citing Stearns v. United States, 396 F.3d 1354, 1358 (Fed. Cir. 2005), and *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172,186 (1985)). After issuing a NITU, the STB has "reached a final decision regarding the application of the regulations to the property at issue," Stearns, 396 F.3d at 1358, because none of the subsequent actions between the railroad and a potential trail operator require STB involvement. *Stearns Co.* held that the trial court erred in finding that a physical taking occurred when a federal agency determined that the plaintiff did not have "valid existing rights" to conduct mining in a national forest. The Court concluded instead that the plaintiff's claim should be treated as one for a regulatory taking, which was not ripe because the plaintiff had not sought a compatibility determination from the agency that if granted would have permitted the plaintiff to engage in mining. *See id.* In the context of a rails-to-trails conversion, the NITU is the final agency action taken in the process, unless a party initiates a new regulatory process by, *e.g.,* petitioning the STB to vacate a previously-issued NITU.

As shown above, the panel majority's adherence to *Caldwell* is consistent with applicable precedent of the Supreme Court and this Court. The landowners, however, suggest that *Caldwell* is inconsistent with this Court's decision in *Seiber.* Pet. at 12. That suggestion is incorrect. *Seiber* does not address the question of when a taking claim accrues in the context of the Trails Act, which is the issue resolved in *Caldwell.* Nor, more broadly, did it involve a physical taking as the result of federal government action, but rather a temporary regulatory takings claim. Seiber, 364 F.3d at 1363-64, 1366-67. The landowners' arguments about the potential for a temporary regulatory takings claim is inapposite in the context of a rails-to-trails conversion, which this Court's precedent seems to have characterized as a physical takings claim. Preseault II, 100 F.3d at 1540. Although *Caldwell* recognized that the issuance of a NITU may not result in a permanent taking (if the trail use agreement is not reached, for instance), this may mean that the result is a taking for a limited period of time, which the landowners' arguments do not address. *See, e.g.,* Dow, 357 U.S. at 26;Hendler v. United States, 952 F.2d 1364, 1383 (Fed. Cir. 1991).

***12** For these reasons, *Caldwell,* which the majority opinion followed here, reflects a permissible construction of the statutory scheme, is consistent with applicable precedent, and does not qualify for rehearing *en banc* under Fed. R. App. P. 35 and Fed. Cir. R. 35.

II. *This case does not raise an issue of exceptional importance.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The landowners characterize this case as presenting the question of "whether [*Caldwell*] should be overruled because it violates this Court's well-settled rule that a takings claim accrues when all events which fix the government's liability have occurred[.]" Pet. at 1. This question does not demonstrate "exceptional importance," as is required by Fed. R. App. 35 and Fed. Cir. R. 35, and merely reargues whether the majority opinion conflicts with Supreme Court or circuit precedent. As shown above, the majority opinion does not so conflict. The landowners have not demonstrated that the issues raised by this appeal are sufficiently important to merit *en banc* rehearing by this Court.[FN7]

FN7. On March 23, 2005, this Court recently denied a petition to rehear *Caldwell* en banc, and the Supreme Court subsequently denied certiorari. *See* *Caldwell v. United States*, 126 S. Ct. 366 (Oct. 3, 2005).

Moreover, this case does not raise an issue of exceptional importance merely because, as the landowners claim in their petition, there are "at least 22 Trails Act takings cases pending" and there are several thousand miles of ***13** abandoned railroad rights-of-way that are potentially subject to the Trails Act. Pet. at 15. The landowners do not suggest that the Trails Act cases currently pending raise a statute of limitations question, and undersigned counsel is aware only of three such cases other than the present case and its companion, *Renewal Body Works*. The issuance of *Caldwell* in December 2004 put all future potential plaintiffs in Trails Act cases on notice that their taking claims accrue when the STB issues the NITU, and this panel's majority opinion provides litigants with "a single bright-line rule" for determining their respective rights and obligations. 443 F.3d at 1378. The majority opinion does not purport to extend to other contexts or other types of takings cases, and is not one of exceptional importance that would merit *en banc* rehearing.

CONCLUSION

For the foregoing reasons, the petition for rehearing *en banc* should be denied.

John BARCLAY, Constance Barclay, Royer Barclay, Althea Barclay, John Amos, Marcia J. Bacon, Ronald J. Bartel, Melvin Bergen, John E. Boyle, Jonathan Ehrlich, Florence Ehrlich, Donald Graumann, Ruben Kliewer, Alvin Kroupa, Barbara Kroupa, Burdett Ledell, Lee Dale Miller, Vernon Minns, Frank A. Mitchell, Mid Kansas Cooperative Association, John F. Opat, Robert Presnell, Janet Regier, Sonja Regier, Don Reinhardt, Janice Reinhardt, Mary J. Rodgers, Darrell Thompson,
2006 WL 2351315 (C.A.Fed.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.