For Opinion See 391 F.3d 1226

United States Court of Appeals,Federal Circuit.
William B. CALDWELL, III and Ben Frank Billings, III, (for themselves and as representative of a class of similarly situated persons)
v.
UNITED STATES, Defendant - Appellee.
No. 03-5152.
March 10, 2005.

Appeal from the United States Court of Federal Claims in 02-CV-1347 Judge Christine O.C. Miller

United States' Opposition to Petition for Rehearing En Banc

Thomas L. Sansonetti, Assistant Attorney General, John Smeltzer, Kristine Tardiff, Kathryn E. Kovacs, U.S. Department of Justice, Environment & Natural Resources, Division, Appellate Section, P.O. Box 23795 l'Enfant Plaza Sta., Washington, D.C. 20026, (202) 514-4010, of Counsel: Evelyn Kitay, Surface Transportation Board, Office of the General Counsel, Washington, D.C. 20423.

*i*TABLE OF CONTENTS*

INTRODUCTION ... 1

ARGUMENT ... 3

I. The majority's opinion does not conflict with Supreme Court or circuit precedent, and the question here does not otherwise warrant rehearing en banc ... 3

II. Caldwell's regulatory takings argument is beyond the scope of this case and is incorrect ... 7

III. The majority opinion does not conflict with binding precedent ... 9

IV. Caldwell's position is not representative of landowners generally ... 11

CONCLUSION ... 12

STATUTORY ADDENDUM

CERTIFICATE OF SERVICE

*ii*TABLE OF AUTHORITIES*

*Cases:*

*Alliance of Descendants of Texas Land Grants v. United States*, 37 F.3d 1478 (Fed. Cir. 1994) ... 6

*Cooley v. United States*, 324 F.3d 1297 (Fed. Cir. 2003) ... 9, 10

*Creppel v. United States*, 41 F.3d 627 (Fed. Cir. 1994) ... 9

*Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573 (Fed. Cir. 1988) ... 9

*National Ass'n of Reversionary Property Owners v. STB*, 158 135 (D.C. Cir. 1998) ... 4

*Preseault v. ICC*, 100 F.3d 1525, 1552 (Fed. Cir. 1996) (en banc) ... 3, 6

*Preseault v. ICC*, 494 U.S. 1 (1990) ... 3

*Wyatt v. United States*, 271 F.3d 1090 (Fed. Cir. 2001) ... 7, 9, 10

*Statutes, Rules and Regulations:*

16 U.S.C. 1247(d) ... 1

28 U.S.C. 2501 ... 1

49 C.F.R. 1152.29 ... 4

EXHIBIT
tabbies
Appendix H

*INTRODUCTION*

This case concerns the accrual date of a claim alleging that conversion of a railroad right-of-way to interim trail use under the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d), constitutes a taking. The majority's opinion does not conflict with any Supreme Court or circuit precedent, and this case does not present any question of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

exceptional importance. Thus, rehearing en banc is not warranted under Rule 35.

The Appellants, William B. Caldwell, III and Ben Frank Billings, III ("Caldwell"), alleged that they own property underlying a railroad corridor in Georgia and that the railbanking of that corridor under the Trails Act worked a taking of their property under the Fifth Amendment. On June 30, 2003, the Court of Federal Claims dismissed the complaint for lack of jurisdiction under 28 U.S.C. § 2501, holding that Caldwell did not file within the six-year statute of limitations. JA1. The United States argued that the claim accrued when the Interstate Commerce Commission ("ICC," now the "STB") issued the Notice of Interim Trail Use or Abandonment ("NITU"); in the alternative, the United States argued that the claim accrued when the railroad and the City reached a trail use agreement. Caldwell filed his complaint more than six years after both of those dates. Caldwell contended that the claim did not accrue until the railroad delivered the deed to the City. The court held that the statute of limitations began to run on July 5, 1996, when the City notified the ICC that it had reached a trail use agreement with the railroad. JA17. The court reasoned that the NITU takes effect only if the right-of-way meets the criteria for abandonment and negotiation of trail use occurs." JA15. It is when the parties reach a trail use agreement that the "taking becomes fixed * * *. Before that date the outcome of the Government action is not certain, so the taking has not been effected." JA17.

On appeal, the United States argued that the trial court held correctly that Caldwell's claim accrued when the railroad and the City reached a trail use agreement. A divided panel of this Court affirmed the judgment, but the majority held, contrary to the government's and the trial court's position, that Caldwell's claim accrued when the ICC issued the NITU, because it was then that his alleged reversionary interest in the corridor was blocked. Slip op. at 11.[FN1] The majority recognized that if the NITU works a taking -- a question the Court expressly declined to answer, *id.* at 14 n.7 -- that taking might turn out to be temporary if trail use does not ensue and the railroad abandons the line. *Id.* at 14. The dissent opined that it was not until title passed to the City that Caldwell's claim accrued, because it was then that the City gained the right to possess and occupy the corridor. Slip dissent at 6.

FN1. The Court's slip opinion is attached to the Appellants' Petition for Rehearing En Banc and is published at *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004).

ARGUMENT

I. *The majority's opinion does not conflict with Supreme Court or circuit precedent, and the question here does not otherwise warrant rehearing en banc.*

Caldwell's complaint alleged that the United States took his property because converting the rail corridor to interim trail use under the Trails Act preempted his reversionary rights under state law. JA39 ¶¶18, 20. Caldwell's allegation is consistent with *Preseault v. United States,* where a plurality of this Court sitting en banc concluded that a taking occurs under the Trails Act "[w]hen state-defined property rights are destroyed by the Federal Government's preemptive power." 100 F.3d 1525, 1552 (Fed. Cir. 1996) (en banc); *see also* Preseault, 494 U.S. at 21-22 (O'Connor, J., concurring). The majority followed that precedent and answered the allegation in Caldwell's complaint when it held that "a Fifth Amendment taking occurs when, pursuant to the Trails Act, state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." Slip op. at 2, 11.

The majority also followed the statutory scheme when it recognized that "the NITU is the only *government* action in the railbanking process that operates *4 to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way." Slip op. at 13 (emphasis in original). The NITU delays the abandonment of the line for 180 days to allow the rail carrier and the trail group time to negotiate a railbanking and interim trail use agreement. 49 C.F.R. § 1152.29(d)(1). In the circumstances of this case, once the NITU issued, interim trail use was authorized without further federal action. After that point, abandonment required further STB involvement: if the railroad and the City had not reached a trail use agreement, the railroad could have abandoned by filing a notice of consummation with the STB "to signify that it has exercised the authority granted and fully abandoned the line," 49 C.F.R. §§ 1152.29(d)(1), (e)(2); *National Ass'n of Reversionary Property Owners v. STB*, 158 F.3d 135, 139 & n.7 (D.C. Cir. 1998); and here, where the parties reached a trail use agreement, the City could only terminate

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

trail use and abandon the corridor by petitioning the STB to vacate the NITU, 49 C.F.R. § 1152.29(d)(2). Absent the NITU the railroad would have been able to abandon the corridor, causing title to revert to Caldwell. Thus, although the majority's conclusion differed from the reading that the United States presented in its brief on appeal, the Court's opinion reflects a permissible construction of the statutory scheme, is consistent with applicable precedent, and does not qualify for rehearing en banc under Rule 35.

*5 Caldwell argues the dissent's position that the taking did not occur until title changed hands and the City acquired the right to possess and occupy the corridor. Slip dissent at 6. That position is inconsistent with the plurality's reasoning in *Preseault,* quoted above, and misunderstands a fundamental point about Trails Act takings claims. Unlike the usual physical occupation case, the landowner in a Trails Act takings case is already deprived of possession. Thus, the question is not when the owner loses the right to possess the property (since he is already not in possession), but rather when he would otherwise have recovered ownership of the easement were it not for the operation of the Trails Act. The dissent's focus on when the City acquired the right to possess and occupy the property is misplaced in this unique context, because Caldwell was not in possession of the corridor in the first place and his alleged reversionary rights were interrupted (if at all) long before title transferred to the City.[FN2]

FN2. Neither the trial court nor this Court determined whether the application of the Trails Act actually preempted Caldwell's reversionary rights under state law. If this case is remanded, Caldwell will have to show that he has an interest in the corridor and that this interest would have reverted to him under state law were it not for the federal action. At that time, the parties can brief the questions raised by the amici regarding which law applies, if necessary. State law is not relevant, however, to the question currently before the Court.

Moreover, the United States has no role in a transfer of the ownership *6 interest in a rail corridor for railbanking and interim trail use.[FN3] "The language of the Fifth Amendment itself requires that the United States * * * commit the taking action." *Alliance of Descendants of Texas Land Grants v. United States,* 37 F.3d 1478, 1482 (Fed. Cir. 1994). The sale of property for Trails Act purposes does not implicate the United States, but is purely private action. Regardless of whether the title ultimately transfers or not, once the parties enter into an agreement, interim trail use is authorized. The NITU is the government action that might allegedly constitute a taking by preventing the reversion of property rights under state law. *See* Preseault, 100 F.3d at 1554 ("the United States facilitated that conversion with its laws and regulatory approval") (Rader, J., concurring). *Compare* Alliance of Descendants, 37 F.3d at 1482 (holding ratification in 1941 of treaty that extinguished legal claims was the "taking action," even though Mexico did not deny claims and leave plaintiffs without compensation until 1989). In this case, that preemption of Caldwell's alleged reversionary rights occurred, if at all, long before title passed to the City, and Caldwell did not have to wait the two years between the issuance of the NITU and the transfer of title before filing suit to *7 collect just compensation.

FN3. As far as the Trails Act is concerned, it makes no difference whether title to the corridor transfers or not. The Trails Act specifically provides that railbanking can be accomplished through "donation, transfer, lease, sale or otherwise." 16 U.S.C. § 1247(d); *see also*49 C.F.R. § 1152.29(a).

II. *Caldwell's regulatory takings argument is beyond the scope of this case and* is incorrect.

In his petition for rehearing en banc, Caldwell extends his argument well beyond the dissenting opinion and asserts for the first time that the issuance of the NITU constitutes a regulatory taking and transfer of title to the trail operator constitutes a separate physical taking. The Court should not address this argument, since Caldwell did not preserve it at earlier stages of the litigation. *See* *Rumsfeld v. Freedom, NY, Inc.,* 346 F.3d 1359, 1361 (Fed. Cir. 2003). Moreover, although the complaint did not specify the type of taking alleged, Caldwell's brief as appellant in this Court expressly disavowed any assertion of a regulatory taking claim, Caldwell Br. at 26-27, and the Court did not address such a claim. Thus, this new regulatory takings argument is beyond the scope of this case.

In any event, the argument that the NITU works a regulatory taking and that a single government action under the Trails Act might work two separate takings

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

is clearly incorrect. First, issuance of the NITU did not constitute a regulatory taking, because it merely delayed abandonment of the corridor, and only an extraordinary regulatory delay can constitute a taking. Wyatt v. United States, 271 F.3d 1090, 1097-1100 (Fed. Cir. 2001). Essentially, the Trails Act is analogous to ***8** other statutes that require a permit for activities under federal jurisdiction in that it requires a railroad to obtain STB authorization to abandon a rail corridor. The NITU is an optional step in that process, triggered by a potential trail operator, which merely adds a layer of analysis and extends a process that is already required before the STB can relinquish its jurisdiction over the line. No court has held that issuance of a NITU might work a regulatory taking.[FN4]

FN4. The United States reserves the right to make additional arguments in defending against a regulatory taking claim if this case is remanded and Caldwell is permitted to amend his complaint to assert such a claim.

Second, Caldwell provides no support for the contention that a single government action might trigger two separate takings. To the contrary, this Court has long held that a single government action might cause a single taking, which might turn out to be temporary; if the taking later becomes permanent, it is merely the continuation of the initial taking, not a separate taking. Under the Trails Act, the STB takes only one action -- it issues the NITU -- that might cause one taking. The taking might turn out to be temporary if, for example, the interim trail use agreement is terminated and the rail carrier subsequently abandons the line. But the temporary taking that might be caused when the NITU and interim trail use agreement prevent reversion under state law does not end when (or if) interim trail use later ensues. Rather, that same potential taking continues and becomes ***9** permanent. *See* Cooley v. United States, 324 F.3d 1297, 1305 (Fed. Cir. 2003) (holding permit denial was final agency action that might give rise to taking claim, but remanding for determination of whether later granting of permit rendered taking temporary); Wyatt, 271 F.3d at 1097 n.6 ("A temporary taking occurs when what would otherwise be a permanent taking is temporally cut short.").

III. *The majority opinion does not conflict with binding precedent.*

Caldwell's contention that the majority opinion conflicts with Supreme Court and circuit precedent is incorrect, since no other court has addressed the question presented here of when a Trails Act taking claim accrues. In particular, neither Hopland Band of Pomo Indians v. United States, 855 F.2d 1573 (Fed. Cir. 1988), nor Creppel v. United States, 41 F.3d 627 (Fed. Cir. 1994), concerned the Trails Act. *See* Pet. at 6-7. Caldwell incorrectly relies on *Hopland Band* for his assertion that the NITU is "irrelevant." *Id.* at 7. On the contrary, the NITU is the only government action that might possibly trigger a taking. Caldwell draws from *Creppel* the argument that even if the NITU triggers a taking, such a claim only becomes ripe when the NITU expires. *Id.* However, the NITU marks the end of the regulatory process for converting a rail corridor to interim trail use; if the parties reach an agreement, the STB has no further involvement in the conversion to interim trail use.

***10** Caldwell also takes issue with the majority's reliance on United States v. Dow, 357 U.S. 17 (1958). Pet. at 8 ff. While *Dow* is obviously distinguishable from this case, as the dissent correctly pointed out, slip dissent at 5-6, Caldwell's criticism of the majority's reliance on it reveals a misreading of the majority opinion. Caldwell reads the majority's citation of Dow as "support[ing] its conclusion that a temporary *regulatory* taking might occur in the situation where the NITU expires without the rail line being converted to a trail." Pet. at 9 (emphasis in original). However, the majority did not hold that issuance of the NITU triggered a regulatory taking; as noted above, Caldwell expressly disavowed any regulatory taking claim, and the Court addressed no such claim. Rather, the majority cited *Dow* for the unsurprising principles that a single governmental action might give rise to a single taking, not multiple takings arising at different points, slip op. at 15, and that "the precise nature of the takings claim, whether permanent or temporary, will not be clear at the time it accrues." *Id.* at 14. Those holdings in *Dow* are consistent with recent holdings of this Court, *e.g.*, Cooley, 324 F.3d at 1305; Wyatt, 271 F.3d at 1097 n.6, and the majority's reliance on that Supreme Court precedent certainly does not merit en banc review.

***11** IV. *Caldwell's position is not representative of landowners generally.*

Although Caldwell's position benefits him in this particular case (as well as the amici in their cases), it

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

disserves landowners generally. Waiting for trail use to actually ensue may take years or, indeed, may never occur. In this case two years elapsed between issuance of the NITU and transfer of title. During that time, the landowner cannot make use of land that would have reverted were it not for the operation of the Trails Act. The landowner need not wait for this potentially lengthy process to result in an actual transfer of title before having a ripe claim.

Caldwell's recitation of the impacts of the majority opinion, Pet. at 12, extend well beyond the narrow holding in this case. The majority held only that in the circumstances of this case, Caldwell's taking claim ripened when the ICC issued the NITU. Certainly, that holding will have implications in other Trails Act takings cases, but there is no ground for drawing grandiose conclusions outside the circumstances of the Trails Act. The majority's opinion was consistent with controlling precedent, and the issue presented in this case does not warrant en banc review under Rule 35.

***12***CONCLUSION*

For the foregoing reasons, the petition for rehearing en banc should be denied.

Appendix not available.

William B. CALDWELL, III and Ben Frank Billings, III, (for themselves and as representative of a class of similarly situated persons) v. UNITED STATES, Defendant - Appellee.
2005 WL 4146730 (C.A.Fed.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

For Opinion See 443 F.3d 1368

United States Court of Appeals, Federal Circuit.

John BARCLAY, Constance Barclay, Royer Barclay, Althea Barclay, John Amos, Marcia J. Bacon, Ronald J. Bartel, Melvin Bergen, John E. Boyle, Jonathan Ehrlich, Florence Ehrlich, Donald Graumann, Ruben Kliewer, Alvin Kroupa, Barbara Kroupa, Burdett Ledell, Lee Dale Miller, Vernon Minns, Frank A. Mitchell, Mid Kansas Co-operative Association, John F. Opat, Robert Presnell, Janet Regier, Sonja Regier, Don Reinhardt, Janice Reinhardt, Mary J. Rodgers, Darrell Thompson, Robert Turner, Geneva Turnquist, Donald Turnquist, Clark E. Wiebe, and Marlene J. Weber, Plaintiffs - Appellants,

v.

UNITED STATES, Defendant - Appellee.

Nos. 05-1255, 05-5109.

November 23, 2005.

On Appeal from the United States District Court for the District of Kansas

Supplemental Brief of the United States in Response to the Brief of Amici Curiae

Sue Ellen Wooldridge, Assistant Attorney General, John E. Arbab, Lane M. McFadden, U.S. Department of Justice, P.O. Box 23795 (L'Enfant Plaza Station), Washington, D.C. 20026, (202) 353-9022.

*i TABLE OF CONTENTS

ARGUMENT ... 1

1. *Amici's new claim is not properly presented in this appeal* ... 1

2. *Even if amici's new arguments are considered, the trial courts in Barclay and Renewal Body Works correctly interpreted this Court's decision in Caldwell* ... 2

3. *Adoption of amici's reading of Caldwell would be fatal to the takings claim in Renewal Body Works* ... 4

4. *The trial courts' reading of Caldwell in Barclay and Renewal Body Works will not lead to adverse "practical consequences* ... 5

CONCLUSION ... 5

CERTIFICATE OF SERVICE ... 8

*ii TABLE OF AUTHORITIES

Cases:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004), cert. denied, 126 S. Ct. 366 (2005) ... 1, 2, 5

*Christian v. United States*, 337 F.3d 1338 (Fed. Cir. 2003) ... 2

*Hash v. United States*, 403 F.3d 1308 (Fed. Cir. 2005) ... 4

*In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) ... 1

*Preseault v. ICC*, 494 U.S. 1 (1990) ... 3, 4

*Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) ... 3, 4

*Renewal Body Works, Inc. v. United States*, No. 05-5109, at 37 ... 1

*Toews v. United States*, 376 F.3d 1371 (Fed. Cir. 2004) ... 3, 4

*United Parcel Service v. Mitchell*, 451 U.S. 56 (1981) ... 1

STATUTES, RULES and REGULATIONS:

Trails Act

Section 8(d), 16 U.S.C. § 1247(d) ... 2, 4

***1** Pursuant to this Court's order of November 10,2005, the United States hereby submits its supplemental brief in response to the brief of *amici curiae* Sarah and Gale Illig *et al.*

ARGUMENT

1. *Amici's new claim is not properly presented in this appeal.* In both *Barclay v. United States* and the companion case of *Renewal Body Works, Inc. v. United States*, the respective appellants contend that *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004), *cert. denied*, 126 S. Ct. 366 (2005), was wrongly decided.[FN1] *Amici*, however, rely on an entirely new argument: they state that their "brief alone presents the Court with an understanding of *Caldwell v. United States* * * * that assumes its validity and is consistent with binding precedent." Unopposed Motion of Sarah Illig and Gale Illig for Leave to Respond to the Expedited Motion of United States to Strike Brief of *Amici Curiae* at 1-2 (Nov. 9, 2005).

FN1. *See, e.g.*, Appellants' Opening Brief in *Barclay v. United States*, No. 05-1255, at 23 n. 5 ("Appellant-Landowners argue first for overruling *Caldwell* * * * because * * * *Caldwell* was wrongly decided."); Appellant's Opening Brief in *Renewal Body Works, Inc. v. United States*, No. 05-5109, at 37 ("*Caldwell* is incorrect and should be reversed.").

The law is clear that "[an] amicus may not rely on new arguments not presented below." *In re Alappat*, 33 F.3d 1526, 1536 (Fed. Cir. 1994) (citing *United Parcel*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Service v. Mitchell*, 451 U.S. 56, 60 n. 2 (1981)). Where, as here, none of the parties *2 has made or adopted the arguments of *amici*, this Court will not consider those arguments. *Christian v. United States*, 337 F.3d 1338, 1345 (Fed. Cir. 2003).

2. *Even if amici's new arguments are considered, the trial courts in Barclay and Renewal Body Works correctly interpreted this Court's decision in Caldwell. Amici* assert (Br. 16) that "the Court of Federal Claims' reading of *Caldwell* is certainly wrong" insofar as the trial court concluded that a takings claim arising under section 8(d) of the Trails Act, 16 U.S.C. § 1247(d), accrues when the Surface Transportation Board (STB) issues a Notice of Interim Trail Use or Abandonment (NITU). *Amici* are incorrect.

The trial courts in *Barclay* and *Renewal Body Works* correctly interpreted the *Caldwell* decision. The *Caldwell* court explained that the question before it was "in the context of an exemption proceeding, when are state law reversion interests forestalled by operation of section 8(d) of the Trails Act?" 391 F.3d at 1233. This Court answered that question as follows: "We conclude that this occurs when the railroad and trail operator communicate to the STB their intention to negotiate a trail use agreement and the agency issues an NITU that operates to preclude abandonment under section 8(d)." *Id.* In so concluding, this Court emphasized that "[t]he issuance of the NITU is the only *government* action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law *3 reversionary interests in the right-of-way." *Id.* at 1233-34 (emphasis in original). The Court could not have been clearer about the scope of its accrual holding: "We therefore hold that the appropriate triggering event for any takings claim under the Trails Act occurs when the NITU is issued. The NITU marks the 'finite start' to either temporary or permanent takings claims by halting abandonment and the vesting of state law reversionary interests when issued." *Id.* at 1235. *See also id.* at 1228 ("[A]ppellants' claim accrued when the exemption proceedings were halted by issuance of a [NITU].").

Contrary to *amici's* suggestion (Br. 13), the trial courts' reading of *Caldwell* in *Barclay* and *Renewal Body Works* does not contravene the precedent of the United States Supreme Court or this Court "regarding the operation of the Trails Act on property rights defined by state [law]." For that contention, *amici* primarily rely on the majority and concurring opinions in *Preseault v. ICC*, 494 U.S. 1 (1990), the plurality opinion in *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) *(en banc)*, and *Toews v. United States*, 376 F.3d 1371 (Fed. Cir. 2004). However, none of these opinions addresses *when* a cause of action accrues for a Trails Act takings claim. The Supreme Court's opinion in *Preseault* recognizes that whether a taking has in fact occurred - that is, the question of liability, as distinguished from the separate and antecedent question of accrual - generally involves an issue of state law. *4 *See Preseault*, 494 U.S. at 16 (noting that under state law "[s]ome rights-of-way are held in fee simple" and "[o]thers are held as easements that do not revert upon interim use as nature trails"); *id.* at 21

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(opinion of O'Connor, J.) (explaining that "[d]etermining what interest petitioners would have enjoyed under Vermont law * * * will establish whether petitioners possess the predicate property interest that must underlie any takings claim"). This Court's decisions in *Preseault* and *Toews* recognize the same principle.[FN2] But none of these decisions holds that state property law determines when a takings cause of action accrues under 16 U.S.C. § 1247(d).[FN3]

FN2. *See Preseault,* 100 F.3d at 1541-44 (concluding that under Vermont law the easement granted to the railroad was not sufficiently broad in scope to embrace use as a public recreational trail); *Toews,* 376 F.3d at 1376-79 (reaching a similar conclusion under California law).

FN3. Nor did *Hash v. United States,* 403 F.3d 1308 (Fed. Cir. 2005), *cited by* Br. at 9, address the question of when a takings claim accrued; that case was limited to threshold questions of title.

3. *Adoption of amici's reading of Caldwell would be fatal to the takings claim in Renewal Body Works. Amici* contend (Br. 5) that, properly understood, *Caldwell* holds that "[i]f the railroad easement would have terminated under state law prior to issuance of the NITU, then a Trails Act taking occurs at the moment the NITU issues, for it prevents the railroad easement from in fact terminating." *Caldwell* did not so hold, and the accrual principle advanced by *amici* would be fatal to the takings claim in *Renewal Body Works.* In its opening brief, Renewal contends (Br. 21) that "[t]he ***5** state law easement was abandoned in the summer of 1995, several months before the NITU issued. Therefore Renewal's cause of action did not accrue when the NITU issued." This result, however, is precisely the opposite of that which would obtain under *amici's* proposed reading of *Caldwell:* under that reading, Renewal's takings claim accrued when the NITU was issued (and thus is time-barred) because, according to Renewal, the railroad abandoned its easement under state law prior to the issuance of the NITU.

4. *The trial courts' reading of Caldwell in Barclay and Renewal Body Works will not lead to adverse "practical consequences."* Although *amici* contend (Br. 22) that it would make "no sense" to require property owners to file suit when a NITU issues, *Caldwell* states that this is the point at which state law reversion interests are forestalled, and thus the injury-in-fact requirement is met. *See* 391 F.3d at 1233-34. Furthermore, the rule proposed by *amici* would require landowners to delay their suits unnecessarily until a trail use agreement is reached, which could potentially take years during which the landowners' property rights have been interfered with.

CONCLUSION

The judgments of the district court in No. 05-1255 and of the Court of Federal Claims in No. 05-5109 should be affirmed.

John BARCLAY, Constance Barclay, Royer Barclay, Althea Barclay, John Amos, Marcia

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

J. Bacon, Ronald J. Bartel, Melvin Bergen, John E. Boyle, Jonathan Ehrlich, Florence Ehrlich, Donald Graumann, Ruben Kliewer, Alvin Kroupa, Barbara Kroupa, Burdett Ledell, Lee Dale Miller, Vernon Minns, Frank A. Mitchell, Mid Kansas Co-operative Association, John F. Opat, Robert Presnell, Janet Regier, Sonja Regier, Don Reinhardt, Janice Reinhardt, Mary J. Rodgers, Darrell Thompson,
2005 WL 5630861 (C.A.Fed.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.