St. of Kansas - Butler Co. } SS
Recorded JANUARY 7, 2002
At 9:00 A.M. #226
Book 1037 Page 67
Fee(s) XXX (7)
Marcia McCoy-Register of Deeds

RTN-Butler Co. Economic Dev.
Larry Powell
P O Box 77
Andover, KS 67002

# QUITCLAIM DEED

Grantor, **THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY**, a Delaware corporation, of 2500 Lou Menk Drive, Fort Worth, Texas 76131-2830, hereby donates, conveys and quitclaims to Grantee, **BUTLER COUNTY**, a municipal corporation in the State of Kansas, of 205 West Central street, El Dorado, Kansas 67042, without any covenants of warranty whatsoever and without recourse to Grantor, its successors or assignees, all of Grantor's rights, title and interest, if any, in real estate and improvements constituting Grantor's rail corridor between Milepost 483.62 in Augusta, Kansas, and Milepost 494.22 near Andover, Kansas, which real estate and improvements are situated in Butler County, Kansas, the boundaries of which are more particularly described in **Attachment 1**, attached hereto (hereinafter "Premises").

**SUBJECT**, however, to all existing interests in the Premises, including but not limited to all reservations, easements and other encumbrances, of record or otherwise.

**EXCEPTING AND RESERVING** unto Grantor, all of the coal, oil, gas, casing-head gas and all ores and minerals of every kind and nature, underlying the surface of the Premises, together with access easements across any portion of the Premises to explore, or drill for, and to protect, conserve, mine, take, remove and market, any and all such products in any manner which will not damage structures on the surface of the Premises or materially interfere with, or disrupt, Grantee's use of the Premises for railroad transportation purposes.

COMP J
NUM
CMP
SHO

KSA 79-1437
No Questionnaire
pursuant to Ex.# 4

**IN WITNESS WHEREOF,** Grantor has caused this instrument to be signed by its authorized representative, and its corporate seal to be affixed hereto, on the 21st day of December, 2001.

**THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY,**
a Delaware corporation

By: [signature]
Peter J. Rickershauser
Its: Vice President

**ATTEST:**

THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY
CORPORATE
SEAL
DELAWARE

By: [signature] Patricia Zbichorski
Its: Assistant Secretary

*BNSF 02625 August to Andover, KS qcd*



BOOK 1037 PAGE 67

**ACCEPTED:**

**BUTLER COUNTY,**
a Kansas municipal corporation

By: W.K. Shriver
W.K. Shriver
Its: Chairman of the County Commission

**STATE OF KANSAS** §
§ ss.
**COUNTY OF BUTLER** §

On this 10 day of December, 2001, before me, the undersigned, a Notary Public in and for the State of ~~Texas~~ Kansas, duly commissioned and sworn, personally appeared W.K. Shriver, Chairman, of **BUTLER COUNTY**, the Kansas municipal corporation that executed the foregoing instrument, and acknowledged the execution thereof to be the free and voluntary act and deed of such officer and the voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he is authorized to execute the foregoing instrument on behalf of said corporation.

Witness my hand and official seal affixed the day and year first above written.

KATHY L. BALLEW
State of Kansas
My Appt. Exp. 9-22-02

Kathy L. Ballew
Notary Public

My commission expires: 9-22-02

*BNSF 02625 August to Andover, KS qcd*

STATE OF TEXAS §
§ ss.
COUNTY OF TARRANT §

On this 21st day of December, 2001, before me, the undersigned, a Notary Public in and for the State of Texas, duly commissioned and sworn, personally appeared Peter J. Rickershauser, Vice President- Network Development, and ~~an~~ Patricia Zbichorski, Assistant Secretary, respectively, of **THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY**, the Delaware corporation that executed the foregoing instrument, and acknowledged the execution thereof to be the free and voluntary act and deed of such officer and the voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that they are authorized to execute the foregoing instrument and that the seal affixed in the corporate seal of said corporation.

Witness my hand and official seal affixed the day and year first above written.

JODY SCOTT JONES
Notary Public
STATE OF TEXAS
My Comm. Exp. 11/28/05

[signature]
Notary Public

My commission expires: 11/28/05

## Attachment 1

All that portion of The Burlington Northern and Santa Fe Railway Company's (formerly St. Louis-San Francisco Railway Company) Augusta to Andover, Kansas Branch Line right of way between Milepost 483.62 at Augusta to Milepost 494.22 near Andover upon, over and across Butler County, Kansas, more particularly described as follows, to-wit:

The Southerly 25 feet of Lots 48, 49, 50, 51 and 52, inclusive, Block P of Herman and McKittrick's Addition to Augusta, **EXCEPTING THEREFROM**, that portion of said Lot 52 lying Southeasterly of a line drawn parallel with and 50.0 feet normally distant Northwesterly from The Burlington Northern and Santa Fe Railway Company's (formerly The Atchison, Topeka and Santa Fe Railway Company) most Northwesterly Ellinor to Wellington, Kansas Main Track centerline as now located and constructed.

**ALSO,**

All that portion of said Railway Company's 100.0 foot wide Branch Line right of way, being 50.0 feet wide on each side of said Railway Company's Main Track centerline, as originally located and constructed upon, over and across the NE¼NE¼ of Section 27, Township 27 South, Range 4 East of the 6th P. M. in the City of Augusta, bounded on the West by the West line of said NE¼NE¼, bounded on the Northeast by the North line of said NE¼NE¼ and bounded on the East by a line drawn parallel with and 50.0 feet normally distant Northwesterly from The Burlington Northern and Santa Fe Railway Company's (formerly The Atchison, Topeka and Santa Fe Railway Company) most Northwesterly Ellinor to Wellington, Kansas Main Track centerline as now located and constructed; also,

An additional 100.0 foot wide strip of land lying contiguous to and Southerly of the hereinabove described 100.0 foot wide Branch Line right of way, situated in the NE¼NE¼ of said Section 27, lying between two lines drawn parallel with and distant, respectively, 50.0 feet and 150.0 feet Southerly, as measured at right angles to said Main Track centerline, bounded on the East by the West right of way line of Dearborn Street, and bounded on the West by the West line of said NE¼NE¼; also,

All of Lots 7, 8, 9 and 10, inclusive, Block 27, and all of Lots 7, 8, 9, 16, 17 and 18, Block 26, all of the Original Town of Augusta; also,

All of Lot 21 and those portions of Lots 7, 8, 22 and 23, Block 25 of the Original Town of Augusta lying Northerly of a line drawn parallel with and distant 12.0 feet Southerly, as measured at right angles from said Main Track centerline;

All of Lots 11, 12, 13, 14, 29 and 30, Block 24, and all of Lots 5 and 6, Block 23, all of the Original Town of Augusta; also,

All of said Railway Company's right, title and interest, if any, in Seventh Avenue (U. S. Highway No. 54 and No. 77), Osage Street, School Street, State Street and Walnut Street (U. S. Highway No. 77) all in the City of Augusta, Kansas; also,

All that portion of said Railway Company's 100.0 foot wide Branch Line right of way, being 50.0 feet wide on each side of said Railway Company's Main Track centerline, as originally located and constructed upon, over and across the N½NW¼ of Section 27, the NE¼, the SE¼NW¼ and the N½SW¼ of Section 28, the N½S½ of Section 29, the N½NE¼SE¼ and the S½N½ of Section 30, all in Township 27 South, Range 4 East, the NE¼ and the NE¼NE¼NW¼ of Section 25, the SW¼SW¼SE¼ and the SW¼ of Section 24, the NE¼NE¼SE¼ and the N½ of Section 23, and the NE¼NE¼ of Section 22, the S½ of Section 15, the NE¼SE¼, the S½NE¼ and the NW¼ of Section 16, the NE¼NE¼ of Section 17, the S½ of Section 8, and the N½S½ of Section 7, all in Township 27 South, Range 3 East, bounded on the East by the East line of said N½NW¼ of Section 27, Township 27 South, Range 4 East, and bounded on the West by the West line of said Section 7, Township 27 South, Range 3 East; also,

All of said Railway Company's right, title and interest, if any, in the NW¼NW¼ of said Section 27, Township 27 South, Range 4 East lying Southerly of the hereinabove described 100.0 foot wide Branch Line right of way; also,

All of said Railway Company's right, title and interest, if any, in the NE¼NW¼ of said Section 27, Township 27 South, Range 4 East lying Southerly of the hereinabove described 100.0 foot wide Branch Line right of way, and Westerly of a line drawn parallel with and 25.0 feet normally distant Easterly from said Railway Company's East Leg Wye Track centerline, as originally located and constructed; also,

All of said Railway Company's right, title and interest, if any, in that certain 50.0 foot wide right of way for said Railway Company's Tail Track situated in the S½NW¼ and the N½SW¼ of said Section 27, Township 27 South, Range 4 East, being 25.0 feet wide on each side of the centerline of said Tail Track described as follows: Commencing at the point of intersection of

the West line of said Section 27 with said Railway Company's Main Track centerline, said point being 1066.9 feet South of the Northwest corner of said Section 27; thence Northeasterly along said Main Track centerline 55.7 feet to a point of curve; thence Northeasterly along a tangential curve concave Southeasterly having a radius of 5778.2 feet an arc length of 1376.5 feet; thence South, making an angle of 102° 19' to the right with tangent at end of last described curve, along the centerline of said Tail Track produced Northerly, a distance of 730 feet, more or less, to the North line of the S½NW¼ of said Section 27 and the True Point of Beginning; thence continuing South along the last described course a distance of 1720 feet and there terminating; also,

An additional strip of land lying contiguous to and Southwesterly of the hereinabove described 100.0 foot wide Branch Line right of way situated in the SE¼SE¼ of said Section 15, Township 27 South, Range 3 East, lying between two lines drawn parallel with and distant, respectively, 50.0 feet and 125.0 feet Southwesterly, as measured at right angles from said Main Track centerline, bounded on the South by the South line of said Section 15, and bounded on the Northwest by a line drawn at right angles to said Main Track centerline at a point distant 814.0 feet Northwesterly from the South line of said Section 15, as measured along said Main Track centerline; also,

An additional 25.0 foot wide strip of land lying contiguous to and Southerly of the hereinabove described 100.0 foot wide Branch Line right of way at Andover, Kansas, situated in the NE¼SE¼ of said Section 7, Township 27 South, Range 3 East, lying between two lines drawn parallel with and distant, respectively, 50.0 feet and 75.0 feet Southerly, as measured at right angles from said Main Track centerline, bounded on the East and West by the East and West lines of said NE¼SE¼; also,

An additional 50.0 foot wide strip of land lying contiguous to and Northerly of the hereinabove described 100.0 foot wide Branch Line right of way at Andover, Kansas, situated in the NE¼SE¼ of said Section 7, Township 27 South, Range 3 East, lying between two lines drawn parallel with and distant, respectively, 50.0 feet and 100.0 feet Northerly, as measured at right angles from said Main Track centerline, bounded on the East and West by the East and West lines of said NE¼SE¼.

WITH THE ONLY COMPLETE SET OF ABSTRACT RECORDS IN BUTLER COUNTY, KANSAS

BOOK 656 PAGE 585

Since 1868
**F.S. ALLEN**
Abstract and Title Company
125 West Central Avenue / EL DORADO, KANSAS

RTN: Thad J. Colling
TN: Rt. #5, Box 748
Augusta, Ks. 67010

DEED – General Warranty – Joint Tenancy

THIS INDENTURE, Made this 10th day of December, 19 92 between THAD J. COLLING, a single person

of Butler County, in the State of Kansas, of the first part,

and THAD J. COLLING, a single person and JENNIFER L. MCLAUGHLIN, a single person

of Butler County, in the State of KAnsas, of the second part;

WITNESSETH, That said party of the first part, in consideration of the sum of No Consideration

the receipt whereof is hereby acknowledged, does by these presents, grant, bargain, sell, and convey unto the said parties of the second part, and the survivor of them, as joint tenants, and not as tenants in common, all the following-described real estate, situated in the County of Butler State of Kansas, to-wit:

Lots Numbered 17, 18, 19, 20 and 21 in Block Numbered 14, in the FIRST ADDITION TO KELLOGG HEIGHTS, a Subdivision in the West Half of Section Numbered 23, Township Numbered 27 South, Range Numbered 3 East of the 6th P.M., in Butler County, Kansas.

Pursuant to K.S.A. 79-1437 a real estate validation questionnaire is not required due to exception No. 9.

TO HAVE AND TO HOLD THE SAME, Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, forever.

And said party of the first part, for himself, his, heirs, executors, and administrators does hereby covenant, promise, and agree to and with said parties of the second part, that at the delivery of these presents, he is lawfully seized in his own right of an absolute and indefeasible estate of inheritance, in fee simple, of and in all and singular the above-granted and described premises, with the appurtenances; that the same are free, clear, discharged, and unincumbered of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments, and incumbrances, of what nature or kind soever; EXCEPT easements, restrictions, reservations, and rights of way of record, if any

and that he will WARRANT AND FOREVER DEFEND the same unto the said parties of the second part, their assigns, and the heirs and assigns of the survivor of them, against the said party of the first part, his heirs, and all and every person or persons whomsoever lawfully claiming or to claim the same.

IN WITNESS WHEREOF, The said party of the first part has hereunto set his hand, the day and year first above written.

Thad J. Colling (signature)
Thad J. Colling

STATE OF KANSAS, Butler COUNTY, ss.

BE IT REMEMBERED, That on this 10th day of December, A.D., 19 92, before me, the undersigned, a Notary Public in and for the County and State aforesaid, came

THAD J. COLLING, a single person

who is personally known to me to be the same person who executed the within instrument of writing and such person duly acknowledged the execution of the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, the day and year last above written.

Patrice D Humig (signature)
Patrice D. Humig
Notary Public

PATRICE D. HUMIG
State of Kansas
My Appt. Exp.

Term expires September 26, 19 95

Entered in Transfer Records in my office, this 6th day of January, A.D., 1993

Ernest Sifford (signature)
County Clerk

STATE OF KANSAS, BUTLER County } ss.

This instrument was filed for record on the 6th day of January, A.D., 19 93, at 12:20 o'clock P.M., and duly recorded in Book 656 of [illegible] at page 585 DOC.# 190

Marcia McCoy (signature)
Marcia McCoy Register of Deeds

By [signature] Deputy

FEE-$6.00

✓

Biery v. US, No. 07-693L & 07-675L
Defendant's Exhibit 13
Page 1 of 1

ENTERED
Office of Proceedings
FEB 20 2004
Part of
Public Record

FEB 20 2004
RECEIVED

BEFORE THE

SURFACE TRANSPORTATION BOARD

Abandonment of a line of Railroad
Between BNSF M.P. 0.62 and
M.P. 3.50 near South Hutchinson,
Reno County, Kansas

NOTICE OF EXEMPTION
Docket No. AB-6
(Sub-No. 406X)

210114

TO THE SURFACE TRANSPORTATION BOARD:

The Burlington Northern and Santa Fe Railway (BNSF) hereby notifies the Board that it intends to abandon its line of railroad between BNSF M.P. 0.62 and M.P. 3.50 near South Hutchinson, Reno County, Kansas, a total distance of 2.88 miles, pursuant to the Board's Exemption of Out of Service Rail Lines, 49 C.F.R. § 1152.50 and in support of the Notice, respectfully provides the following information:

FILED
FEB 20 2004
SURFACE
TRANSPORTATION BOARD

I. Proposed consummation date for the abandonment.

April 9, 2004

II. Certification required in 49 C.F.R. § 1152.50(b)

The attached Certification of Michael Smith certifies that no formal complaint filed by a user of rail service on this line (or a state or local government entity acting on behalf of such user) regarding cessation of service over the line is pending with the Board or any U.S. District Court or has been decided in favor of a complainant within the last two years. The attached Verification of Richard A. Batie certifies that no local traffic has moved over this line for at least two (2) years and any overhead traffic on the line can be rerouted over other lines.

III. Information required by C.F.R. § 1152.22(a)(1-4), (7), (8) and (e)(4).

(a) General

(1) Exact name of Applicant.

The Burlington Northern and Santa Fe Railway Company

(2) Whether applicant is a common carrier by railroad subject to 49 U.S.C. Subtitle IV, Chapter 105.

Applicant is a common carrier by railroad subject to 49 U.S.C. Subtitle IV, Chapter 105.

(3) Relief sought.

BNSF seeks an exemption from Surface Transportation Board approval authorizing the abandonment and discontinuance of service of the South Hutchinson, Kansas line specified above.

(4) Detailed map of the subject line.

See Exhibit A.

(5) Name, title and address of representative of applicant to whom correspondence should be sent.

Michael Smith
Freeborn & Peters
311 S. Wacker Dr., Suite 3000
Chicago, IL 60606-6677

(6) List of all United State Postal Service ZIP Codes that the line traverses.

The South Hutchinson, Kansas line traverses United States Postal Service Zip codes 67501 and 67505.

(7) Statement of whether the properties proposed to be abandoned are suitable for other public purposes, including roads or highways, other forms of mass transportation, conservation, energy production or transmission or recreation. If the applicant is aware of any restriction on the title to the property, including any reversionary interest, which would affect the transfer of title or the use of property for other than rail purposes, this shall be disclosed.

The right of way may be suitable for use for other public purposes such as a trail. On part of the properties involved, title considerations may affect the conveyance of the land for use other than railroad purposes. Based on information in our possession, the line does not contain federally granted rights-of-way. Any documentation in the railroad's possession will be made available promptly to those requesting it.

IV. Level of protection.

The interest of railroad employees will be protected by the conditions imposed in Oregon Short Line RR Co. - Abandonment - Goshen, 360 I.C.C. 91 (1979)

V. Certification that the notice requirements of §§ 1152.50(d)(1) and 1105.11 have been met is attached.

Respectfully submitted,

Michael Smith
Freeborn & Peters
311 S. Wacker Dr. Suite 3000
Chicago, Illinois 60606-6677
Phone: (312) 360-6724
Fax: (312) 360-6598

Date: February 18, 2004

**VERIFICATION**

STATE OF TEXAS )
)ss
COUNTY OF TARRANT )

Richard A. Batie makes oath and says he is Manager, Shortline Development in the Network Development department of The Burlington Northern and Santa Fe Railway Company; that he has been authorized by the Applicant to verify and file with the Surface Transportation Board the foregoing Notice of Exemption in AB-6 (Sub-No. 406X ); that he affirms that the line has had no local traffic in the prior two (2) years and that there is no overhead traffic to be rerouted; that he has carefully examined all of the statements in the Notice; that he has knowledge of the facts and matters relied upon in the Notice; and that all representations set forth therein are true and correct to the best of his knowledge, information, and belief.

Richard A. Batie

Richard A. Batie
Manager, Shortline Development

Subscribed and sworn to before me the 17 day of February 2004.

SHARON H. HEYWOOD
Notary Public, State of Texas
My Commission Expires
January 18, 2006

Sharon H. Heywood
Notary Public

THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY
NO. AB-6 (Sub No. 406X )

**CERTIFICATION**

I hereby certify that (1) no formal complaint filed by a user of rail service on this line (or a state or local government entity acting on behalf of such user) regarding cessation of service over the line is pending with the Board or any U.S. District Court or has been decided in favor of a complainant within the last two (2) years; (2) service of notice upon the U.S. Department of the Interior, National Park Service, Recreation Park Service, Land Resource Division; the Department of Defense, Military Traffic Management Command; the Kansas Corporation Commission; the Kansas Department of Transportation; and the Chief Forest Service, U.S. Department of Agriculture was accomplished by mailing a copy thereof on January 14, 2004; (3) the environmental and historic reports were serviced upon the agencies identified in 49 C.F.R. § 1105.7(b) and the State Historic Preservation Offices on January 14, 2004; (4) service of notice upon the State Clearinghouses was accomplished by mailing a copy thereof on January 14, 2004; and (5) the publication requirements of 49 C.F.R. § 1105.12 have been complied with, to wit: publication of notice was accomplished on January 17, 2004 in the Hutchinson News, affidavit of publication is attached.

Michael Smith
Freeborn & Peters
311 S. Wacker Dr. Suite 3000
Chicago, Illinois 60606-6677
Phone: (312) 360-6724
Fax: (312) 360-6598

Date: February 18, 2004

209864

JAN 15 2004
RECEIVED

January 14, 2004

Victoria Rutson
Chief, SEA
Surface Transportation Board
1925 K Street, N.W.
Washington, DC 20423-0001

***Re: Surface Transportation Board Docket No. AB-6 (Sub-No. 406X); The Burlington Northern and Santa Fe Railway Company Abandonment of South Hutchinson, Kansas***

*Attorneys at Law*

311 South Wacker Drive
Suite 3000
Chicago, Illinois
60606-6677
Tel 312.360.6000

Michael A. Smith
Senior Counsel
Direct 312.360.6724
Fax 312.360.6598
msmith@
freebornpeters.com

*Chicago*

*Springfield*

Dear Ms. Rutson:

On or after February 4, 2004, we are filing with the Surface Transportation Board ("STB") a Notice of Exemption seeking authority to abandon or discontinue service of 2.88 miles of railroad line between 0.62 and Milepost 3.50 near South Hutchinson, Kansas, which traverses through United States Postal ZIP Codes 67501 and 67505 in Reno County, Kansas. Attached are the original and ten copies of the Environmental and Historic Report describing the proposed action and any expected environmental or historic effects, as well as a map of the affected area.

Sincerely,

Michael A. Smith

Enclosures

ENTERED
Office of Proceedings
JAN 15 2004
Part of
Public Record

209864

JAN 15 2004
RECEIVED

BEFORE THE

SURFACE TRANSPORTATION BOARD

In the Matter of The
Burlington Northern and Santa Fe
Railway Company Notice of Exemption
to Abandon Its Line of Railroad
Between M.P. 0.62 and M.P. 3.50
in South Hutchinson, Kansas

ENTERED
Office of Proceedings
JAN 15 2004
Part of
Public Record

Docket No. AB-6
(Sub No. 406X)

**ENVIRONMENTAL REPORT**

The following information is submitted to the Surface Transportation Board by The Burlington Northern and Santa Fe Railway Company (BNSF) in accordance with the Board's reporting requirements as set forth in 49 C.F.R. § 1105.7 for the purpose of assisting the Board's preparation of an environmental document regarding BNSF's Notice of Exemption for abandonment of its line between M.P. 0.62 and M.P. 3.50 in South Hutchinson, Reno County, Kansas, total distance of 2.88 miles.

**(1) Proposed action and Alternatives:** Describe the proposed action, including commodities transported, the planned disposition (if any) of any raillline and other structures that may be involved, and any possible changes in current operations or maintenance practices. Also describe any reasonable alternatives to the proposed action. Include a readable, detailed map and drawings clearly delineating the project.

BNSF seeks to abandon and discontinue service of the line. A map of the line is attached as Exhibit A.

**(2) Transportation system:** Describe the effect of the proposed action on regional or local transportation systems and patterns. Estimate the amount of traffic (passenger or freight) that will be diverted to other transportation systems or modes as a result of the proposed action.

The proposed abandonment will have no affect on existing transportation systems or patterns as the line is out of service.

**(3) <u>Land Use</u>:**

(i) Based on consultation with local and/or regional planning agencies and/or review of the official planning documents prepared by such agencies, state whether the proposed action is consistent with existing land use plans. Describe any inconsistencies.

BNSF believes that the proposed exemption will not be inconsistent with local or regional land use plans. The Reno County Board of Commissioners were notified by letter dated August 5, 2003. See Exhibit B, letter to the Board of Commissioners, Reno County, Kansas. As of the date of this report, the Board of Commissioners has not responded. BNSF will provide the Board copies of any response it may receive.

(ii) Based on consultation with the U.S. Soil Conservation Service, state the effect of the proposed action on any prime agriculture land.

BNSF believes that the proposed exemption will not have any effect on prime agricultural land. The Natural Resources Conservtion Service has been notified by letter dated August 5, 2003. See Exhibit C. As of the date of this report, the Natural Resources Conservation Service has not responded. BNSF will provide the Board copies of any response it may receive.

(iii) If any action affects land or water uses within a designated coastal zone, include the coastal zone information required by § 1105.9

N/A

(iv) If the proposed action is abandonment, state whether or not the right-of-way is suitable for alternative public use under 49 U.S.C. § 10906 and explain why.

The Reno County Board of Commissioners was notified by letter dated August 5, 2003. See Exhibit B, letter to the Board of Commissioners, Reno County, Kansas. As of the date of this report, the Board of Commissioners has not responded. BNSF will provide the Board copies of any response it may receive. The city of South Hutchinson, Kansas has expressed interest in acquiring the right of way for a recreational trail.

**(4) Energy:**

(i) Describe the effect of the proposed action on transportation of energy.

To the best of BNSF's knowledge there are no undeveloped energy resources such as oil, natural gas or coal in the vicinity of this line.

(ii) Describe the effect of the proposed action on recyclable commodities.

This abandonment and discontinuance will not adversely affect movement or recovery of recyclable commodities as the line is out of service.

(iii) State whether the proposed action will result in an increase or decrease in overall energy efficiency and explain why.

This abandonment will not result in an increase or decrease in overall energy efficiency as the line is out of service.

(iv) If the proposed action will cause diversions from rail to motor carriage of more than:

(A) 1,000 rail carloads a year, or

(B) An average of 50 rail carloads per mile per year for any part of the affected line, quantify the resulting net change in the energy

consumption and show the data and methodology used to arrive at the figure given.

There will be no diversions of traffic because the line is out of service.

**(5) Air:**

(i) If the proposed action will result in either:

(A). An increase in rail traffic of at least 100% (measured in gross ton miles annually) or an increase of at least eight trains a day on any segment of the line effected by the proposed, or

No.

(B). An increase in rail yard activity of at least 100% (measured by carload activity), or

No.

(C). An average increase in truck traffic of more than 10% of the average daily traffic or 50 vehicles a day on any affected road segment, quantify the anticipated effect on air emissions.

The action will not involve an increase in truck traffic of more than 10% or 50 vehicles a day on any affected road segment as the line is out of service.

(ii) If the proposed action affects a Class I or nonattainment area under the Clean Air Act, and will result in either:

(A) An increase in rail traffic of at least 50% (measured in gross ton miles annually) or an increase of at least three train a day on any segment of rail line, or

(B) An increase in rail yard activity of at least 20% (measured by carload activity), or

(C) An average increase in truck traffic or more than 10-% of the average daily traffic of 50 vehicles a day on a given road segment, then state whether any expected increased emissions are within the parameters established by State implementation Plan. However, for a rail construction

under 49 U.S.C. § 10901 (or 49 U.S.C. § 10505) or in a case involving the reinstitution of service over a previously abandoned line, only the three train a day threshold in this item shall apply.

The proposed abandonment will not result in an increase of rail or truck traffic because the line is out of service.

(iii) If the transportation of ozone depleting materials (such as nitrogen oxide and from) is contemplated, identify: the materials and quantity; the frequency of service; safety practices (including any speed restrictions); the applicant's safety record (to the extent available) on derailments, accidents and spills; contingency plans to deal with accidental spills; and the likelihood of an accidental release of ozone depleting materials in the event of a collision or derailment.

The proposed abandonment will not result in an increase of rail or truck traffic because the line is out of service.

**(6)** **Noise:** If any of the thresholds identified in item (5)(c) of this section are surpassed, state whether the proposed action will cause:

(i) An incremental increase in noise levels of three decibels Ldn or more,

N/A

(ii) An increase to a noise level of 76 decibels Ldn or greater. If so, identify sensitive receptors (e.g. schools, libraries, hospitals, residences, retirement communities and nursing homes) in the project area and quantify the noise increase for those receptors if the thresholds are surpassed.

N/A

**(7)** **Safety**:

(i) Describe any effects of the proposed action on public health and safety (including vehicle delay time at railroad crossings).

This abandonment should have no adverse effect on health or public safety. There are 2 public crossings and 2 private crossings. During salvage operations on the line, if any may be required, precautions will be

taken to ensure public safety, and contractors will be required to satisfy all applicable health and safety laws and regulations.

(ii) If hazardous materials are expected to be transported, identify: the materials and quantity; the frequency of service; whether chemicals are being transported that, if mixed, could react to form more hazardous compounds; safety practices (including any speed restrictions); the applicant's safety record (to the extent available) on derailments, accidents and hazardous spills; the contingency plans to deal with accidental spills, and the likelihood of and accidental release of hazardous materials.

Abandonment will not result in transportation of hazardous materials.

(iii) If there are any known hazardous waste site or sites where there have been known hazardous materials spills on the right-of-way, identify the location of those sites and the types of hazardous materials involved.

There is no evidence of known hazardous waste site or sites were there have been known hazardous materials spills on the right of way.

**(8) <u>Biological resources</u>:**

(i) Based on consultation with the U.S. Fish and Wildlife Service, state whether the proposed action is likely to adversely affect endangered or threatened species or areas designated as a critical habitat, and if so, describe the effects.

The proposed abandonment will have no adverse impacts to fish and wildlife resources, including threatened and endangered species. See Exhibit D, letter from the U.S. Fish and Wildlife Service. The proposed abandonment will have no significant impacts to crucial wildlife habitats or any currently listed threatened or endangered species in need of conservation. See Exhibit E, letter from Kansas Department of Wildlife and Parks.

(ii) State whether wildlife sanctuaries or refuges, National or State parks or forests will be affected, and describe any effects.

The project will not impact any public recreational areas. See Exhibit E, letter from the Kansas Department of Wildlife and Parks. There are no Federal lands administered by the Bureau of Land Management along the proposed abandonment. See Exhibit F, letter from the Bureau of Land Management.

**(9) <u>Water</u>:**

(i) Based on consultation with State water quality officials, state whether the proposed action is consistent with applicable Federal, State or local water quality standards. Describe any inconsistencies.

BNSF believes that the proposed exemption will be consistent with applicable Federal, State or local water quality standards. The Kansas Department of Health and Environment was notified by letter dated August 5, 2003. See Exhibit G As of the date of this report, the Kansas Department of Health and Environment has not responded. BNSF will provide the Board copies of any response it may receive.

(ii) Based on consultation with the U.S. Army Corps of Engineers, state whether permits under Section 404 of the Clean Water Act (33 U.S.C. § 1344) are required for the proposed action and whether any designated wetlands or 100-year floodplains will be affected. Describe the effects.

Permits under 404 of the Clean Water Act are not required for the proposed exemption. See Exhibit H, letter from the Army Corps of Engineers. The proposed exemption will not affect the 100-year floodplain. See Exhibit I, letter from the Reno County Emergency Management.

(iii) State whether permits under Section 402 of the Clean Water Act (33 U.S.C. § 1344) are required for the proposed action. (Applicants should contact

the U.S. Environmental Protection Agency or the state environmental protection or equivalent agency if they are unsure whether such permits are required.

BNSF believes that permits under 402 of the Clean Water Act are not required for the proposed exemption. The Kansas Department of Health and Environment was notified by letter dated August 5, 2003. See Exhibit G. As of the date of this report, the Kansas Department of Health and Environment has not responded. BNSF will provide the Board copies of any response it may receive.

**(10) <u>Proposed Mitigation</u>:** Describe any actions that are proposed to mitigate adverse environmental impacts, indicating why the proposed mitigation is appropriate.

Any salvage operations that may result will be in accordance with BNSF's general practice of requiring its private contractors to comply with all federal, state and local laws and regulations pertaining to the environment, including, but not limited to noise, air quality, water quality, and items of archaeological significance. The project itself should mitigate the environmental effects of reinstating active rail operations.

Respectfully Submitted,

Michael Smith
Freeborn & Peters
311 S. Wacker Dr. Suite 3000
Chicago, Illinois 60606-6677
Phone: (312) 360-6724
Fax: (312) 360-6598

Date: January 12, 2004

BEFORE THE

SURFACE TRANSPORTATION BOARD

In the Matter of The
Burlington Northern and Santa Fe
Railway Company Notice of Exemption
to Abandon Its Line of Railroad
Between M.P. 0.62 and M.P. 3.50
in South Hutchinson, Kansas

Docket No. AB-6
(Sub No. 406X)

## HISTORICAL REPORT

The following is submitted to the Surface Transportation Board by The Burlington Northern and Santa Fe Railway Company (BNSF) in accordance with the Board's reporting requirements set forth in 49 C.F.R. § 1105.8 for the purpose of assisting the Board's environmental and historical assessment regarding BNSF's Notice of Exemption to abandon its line of railroad between M.P. 0.62 in to M.P. 3.50 near South Hutchinson, Kansas a total distance of 2.88 miles.

(1) A U.S.G.S. topographic map (or alternate map drawn to scale and sufficiently detailed to show buildings and other structures in the vicinity of the proposed action) showing the location of the proposed action, and the locations and approximate dimensions of the railroad structures that are 50 years old or older and are part of the proposed action;

One copy of a U.S.G.S. Topographical map has been provided to the Kansas State Historical Society and one copy is being provided to the Surface Transportation Board's Section of the Environmental Analysis upon filing of this Report.

(2) A written description of the right-of-way (including approximate widths, to the extent known) and the topography and urban and/or rural characteristics of the surrounding area:

The South Hutchinson, Kansas Trackage is located adjacent and southwest of the town of South Hutchinson, a suburb of Hutchinson, Kansas. Hutchinson has a population of 40,787 and South Hutchinson has a population of 2,539. The land adjoining the right of way is generally flat with rural and suburban uses. The right of way is 100 feet wide.

(3) Good quality photographs (actual photographic prints, not photocopies) of railroad structures on the property that are 50 years old or older and of the immediately surrounding area;

There are no bridges that are 50 years or older in the immediate area of the abandonment.

(4) The date(s) of construction of the structures, and the date(s) and extent of any major alterations, to the extent such information is known;

N/A

(5) A brief narrative history of carrier operations in the area, and an explanation of what, if any, changes are contemplated as a result of the proposed action:

The right of way was acquired by the Hutchinson & Southern Railway Company (H&S) between 1896 and 1899. The H&S was a predecessor to The Atchison Topeka and Santa Fe Railway Company (ATSF). In 1995 the ATSF merged with the Burlington Northern Railroad (BN) in 1995 to become The Burlington Northern and Santa Fe Railway Company (BNSF).

(6) A brief summary of documents in the carrier's possession, such as engineering drawings, that might be useful in documenting a structure that is to be historic;

Documents in BNSF's possession concerning this abandonment may include alignment maps showing the right-of-way and/or station maps. Such documents are too

large for practical reproduction in this report, but can be furnished upon request, if they are available.

(7) An opinion (based on readily available information in the railroad's possession) as to whether the site and/or structures meet the criteria for listing on the National Register of Historic Places (36 C.F.R. § 60.4), and whether there is a likelihood of archaeological resources or any other previously unknown historic properties in the project area, and the basis for these opinions (including any consultations with the State Historic Preservation Office, local historical societies or universities);

To the best of BNSF's knowledge, the proposed abandonment should have no appreciable effects on any known sites or properties listed, or eligible for listing in the National Register of Historic Places. The proposed abandonment should have no effects on any property listed on the National Register of Historic Places or otherwise identified in the files of the Kansas State Historical Society as having historical significance. See Exhibit J, letter from the Kansas State Historical Society.

(8) A description (based on readily available information in the railroad's possession) of any known prior subsurface ground disturbance or fill, environmental conditions (naturally occurring or manmade) that might affect the archaeological recovery of resources (such as swampy conditions or the presence of toxic wastes), and the surrounding terrain.

BNSF is not aware of any known prior subsurface ground disturbance or fill or any other environmental conditions (naturally occurring or man-made) that might affect the recovery of archaeological resources.

Respectfully submitted,

Michael Smith
Freeborn & Peters
311 S. Wacker Dr. Suite 3000
Chicago, Illinois 60606-6677
Phone: (312) 360-6724
Fax: (312) 360-6598

Date: January 12, 2004

210169

# City of South Hutchinson

2 South Main • South Hutchinson, Kansas 67505-1598 • (620) 663-7104 • Fax (620) 663-7168

FEB 25 2004 RECEIVED

January 30, 2004

Mr. Vernon A. Williams, Secretary
Surface Transportation Board
1925 K Street, NW
Washington, DC 20423-0001

RE: Surface Transportation Board Docket No. AB-6 (Sub-No. 406X); The Burlington Northern and Santa Fe Railway Company (BNSF) Abandonment of the South Hutchinson, Reno County, KS Trackage Located in Reno County, Kansas.

**STATEMENT OF WILLINGNESS TO ASSUME FINANCIAL RESPONSIBILITY**

In order to establish interim trail use and rail banking under 16 U.S.C. 1247 (d) and 49 CFR 1152.29, the City of South Hutchinson is willing to assume full responsibility for management of, for any legal liability arising out of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against the right of way owned and operated by The Burlington Northern and Santa Fe Railway Company (Railroad) with respect to that portion of the right of way in Reno County, Kansas. The property extends from Milepost 0.62 on the North to Milepost 3.5 on the South, a distance of approximately 2.88 miles in Reno County, Kansas. The right of way is part of the lines proposed for abandonment in Docket AB-6 (Sub-No. 406X).

A map of the right of way is attached.

The City of South Hutchinson acknowledges that use of the right of way is subject to the user's continuing to meet its responsibilities described above and subject to possible future reconstruction and reactivation of the right of way for rail service. A copy of this statement is being served on the railroad on the same date it is being served on the Board.

The City of South Hutchinson, Kansas

Signed, Steve Rippie, Mayor

ENTERED
Office of Proceedings
FEB 26 2003
Part of
Public Record

CC: The BNSF
Mr. Rich Batie, Mgr. Shortline Development
2600 Lou Menk Drive, 2nd Floor
Fort Worth, TX 76131


SOUTH HUTCHINSON, KANSAS TRACKAGE
HUTCHINSON
MILEPOST 0.62
SOUTH HUTCHINSON
NORTH
MILEPOST 3.50
Sherman Sch
Ave A Sch
Water
Sylvan Park
Elmdale Park
CARPENTER
WALKER
Trailer Park
Salt Wells
SANTA FE
PACIFIC
Creek
RIVER
South Hutchinson
Drive-in Theater
Sandpit
Sewage Disposal
Pit
MISSOURI
R E N O
Mills

**BNSF**

SARAH WHITLEY BAILIFF
*Senior General Attorney*

**The Burlington Northern and Santa Fe Railway Company**

2500 Lou Menk Drive, 3rd Floor
P.O. Box 961039
Fort Worth, Texas 76161-0039
(817) 352-2354 - Telephone
(817) 352-2397 – Fax
Sarah.Bailiff@BNSF.com

**VIA UPS OVERNIGHT MAIL**

210391

March 24, 2004

ENTERED
Office of Proceedings
MAR 25 2004
Part of
Public Record

MAR 25 2004
RECEIVED

Mr. Vernon A. Williams
Secretary
Surface Transportation Board
1925 K Street, N.W.
Washington, DC 20423-0001

**Re: Surface Transportation Board Docket No. AB-6 (Sub-No. 406X); The Burlington Northern and Santa Fe Railway Company ("BNSF") Abandonment in South Hutchinson, Kansas**

Dear Secretary Williams:

In reply to the City of South Hutchinson's letter to you dated January 30, 2004, BNSF does not object to the issuance of a Notice of Interim Trails Use.

Sincerely,

Sarah Whitley Bailiff

Sarah Whitley Bailiff

SWB/js

cc: Richard Batie
Peter Luedtke

SEP. 14. 2004 1:16PM LAW DEPT schalk 6206633888 NO. 454 P. 2 p. 1

211281

# City of South Hutchinson

2 South Main • South Hutchinson, Kansas 67505-1598 • (620) 663-7104 • Fax (620) 663-7168

RECEIVED SEP 14 2004

September 10, 2004

Mr. Vernon A. Williams, Secretary
Surface Transportation Board
1925 K Street, NW
Washington, DC 20423-0001

RE: Surface Transportation Board Docket No. AB-6 (Sub-No. 406X); The Burlington Northern and Santa Fe Railway Company (BNSF) Abandonment of the South Hutchinson, Reno County, KS Trackage Located in Reno County, Kansas.

Request for Extension:

FILING FEE WAIVED

Dear Secretary William,

On February 25, 2004, the City of South Hutchinson, KS (the City), filed a request for the issuance of a notice of interim trail use (NITU) for the subject line under the National Trails System Act, 16 U.S.C. 1247(d) (Trails Act), in order to negotiate with BNSF for acquisition of the right-of-way for use as a trail. The City submitted a statement of willingness to assume financial responsibility for the management of, for any legal liability arising from the transfer of use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for payment of any and all taxes that may be levied or assessed against, the right-of-way, and acknowledged that the use of the right-of-way for trail purposes is subject to possible future reconstruction and reactivation for rail service, as required at 49 CFR 1152.29. In a response submitted on March 25, 2004, BNSF states that it supports the issuance of a NITU.

On April 5, 2004, The Surface Transportation Board exempted the abandonment of the line described above to the extent necessary to implement interim trail use/rail banking, for a period of 180 days commencing from the April 10, 2004 effective date of the exemption (until October 7, 2004), and subject to the condition that BNSF provide NGS with 90 days' notice before beginning salvage activities in order to plan the relocation of the six geodetic station markers that may be affected by the abandonment.

The City of South Hutchinson, Kansas respectfully requests an extension to negotiate our agreement for interim trail use/rail banking for an additional 180 days from October 7, 2004.

If additional information is required, please don't hesitate to contact me.

The City of South Hutchinson, Kansas

FILED SEP 14 2004 SURFACE TRANSPORTATION BOARD

Signed, Donald Gottschalk, City Attorney

Enclosure:

CC: The BNSF
Mr. Rich Batie, Mgr. Shortline Development
2600 Lou Menk Drive, 2nd Floor
Fort Worth, TX 76131

ENTERED
Office of Proceedings
SEP 14 2004
Part of
Public Record

**BNSF**

SIDNEY L. STRICKLAND, JR.
*Associate General Counsel*

**The Burlington Northern and Santa Fe Railway Company**
700 13th Street NW, Suite 220
Washington, DC 20005-5915
(202) 347-8667 - Telephone
(202) 347-8675 – Fax
Sidney.Strickland@BNSF.com

21584

**VIA UPS OVERNIGHT MAIL**

September 10, 2004

ENTERED
Office of Proceedings
SEP 14 2004
Part of
Public Record

SEP 13 2004
RECEIVED

Honorable Vernon A. Williams
Secretary
Surface Transportation Board
1925 K Street, N.W.
Washington, DC 20423-0001

Re: Surface Transportation Board Docket No. AB-6 (Sub-No. 406X); The Burlington Northern and Santa Fe Railway Company Abandonment in South Hutchinson, Reno County, Kansas

Dear Secretary Williams:

Please reference the City of South Hutchinson's letter dated September 10, 2004, regarding the above-referenced matter. On April 8, 2004, the Board issued a decision in the above-referenced proceeding imposing a notice of interim trail use/rail banking (NITU) condition. The Board imposed a deadline of October 7, 2004 on the NITU. Due to ongoing negotiations with the City of South Hutchinson, BNSF requests an extension of the NITU for an additional 180 days (until April 7, 2005).

If you have any questions, please contact me at (202) 347-8667.

Sincerely,

Sidney L. Strickland / js

Sidney L. Strickland, Jr.

SLS/js

cc: Donald Gottschalk (City of South Hutchinson)
James Gallegos
Richard Batie
John Sims

# BNSF RAILWAY COMPANY

## RAILBANKING AND DONATION CONTRACT

This Railbanking and Donation Contract (the "**Contract**") is entered into this 23RD day of MARCH, 2005 by and between BNSF Railway Company (hereafter, "**BNSF**"), a Delaware corporation, and City of South Hutchinson (hereafter, "**Donee**"), a Kansas municipality.

WITNESSETH

WHEREAS, pursuant to 16 U.S.C. Section 1247(d) of the National Trails Systems Act, as amended, and the terms and conditions set forth herein, BNSF is willing to effect a donation to Donee of all of BNSF's right, title and interest, subject to any reservations set forth hereinbelow, (i) in a rail corridor and trail-related structures (including land, bridges, culverts, trestles, ballast and earthwork) situated between MP 0.62 and MP 3.50 in Reno County, Kansas, as more particularly described on **Exhibit A** attached hereto and made a part hereof, and (ii) under any leases affecting the Property, including without limitation the leases set forth on **Exhibit A-1** attached hereto and made a part hereof. Collectively, the real property and personal property conveyed herein shall be referred to as the "**Property**".

WHEREAS, Donee is willing to accept the donation of the Property on the terms and conditions set forth herein;

NOW, THEREFORE, for and in consideration of the mutual covenants and conditions set forth herein, the parties hereby agree as follows:

1. Property to be Donated.

(a) Subject to and in accordance with the terms, covenants, conditions, restrictions and reservations contained in this Contract, BNSF will donate and quitclaim the Property to Donee by Quitclaim Deed, in the exact form attached hereto as **Exhibit B** (the "**Deed**") and, if applicable, by Bill of Sale in the exact form attached hereto as **Exhibit C** (the "**Bill of Sale**"). No monetary consideration shall be paid by Donee to BNSF for the Property. Donee shall accept the Property and shall assume responsibility for the Property and shall comply with the terms and conditions of this Contract. Any and all personal property owned by BNSF or any third parties located on the Property and not expressly conveyed herein may be removed by BNSF prior to the Closing (hereinafter defined). Except as may be expressly provided otherwise herein, any and all personal property of BNSF remaining on the Property as of Closing and not reserved herein, in the Deed or in the Bill of Sale or used in BNSF's daily operations shall pass to Donee. Donee acknowledges and affirms that Donee's assumption of the Property in no way entitles Donee to any right, title, interest or use in, to and of any BNSF trademark, service mark or other intellectual property.

(b) Donee acknowledges and affirms that BNSF may not hold fee simple title or any other particular interest in the Property, that BNSF's interest in the Property, if any, may rise only to the level of an easement for railroad purposes. **DONEE IS WILLING TO ACCEPT BNSF'S TITLE TO THE PROPERTY, IF ANY, ON THIS BASIS AND EXPRESSLY RELEASES BNSF, ITS SUCCESSORS AND ASSIGNS FROM ANY CLAIMS THAT**

**DONEE OR ITS SUCCESSORS MAY HAVE AS A RESULT OF THE DONATION OR CONVEYANCE TO BE MADE AT CLOSING. IN LIGHT OF BNSF'S DISCLOSURE THAT IT MAY NOT HOLD FEE SIMPLE TITLE OR ANY OTHER INTEREST IN THE PROPERTY, DONEE SHALL INDEMNIFY, DEFEND AND HOLD BNSF HARMLESS FROM ANY SUIT OR CLAIM FOR DAMAGES, PUNITIVE OR OTHERWISE, EXPENSES, ATTORNEYS' FEES, OR CIVIL PENALTIES THAT MAY BE IMPOSED ON BNSF AS THE RESULT OF ANY PERSON OR ENTITY CLAIMING AN INTEREST IN THE PROPERTY OR CLAIMING THAT BNSF DID NOT HAVE THE RIGHT TO TRANSFER THE PROPERTY TO DONEE.**

(c) The parties acknowledge that portions of the Property are or may be subject to leases (collectively, the "**Leases**"), including without limitation those certain leases listed on **Exhibit A-1** attached hereto and made a part hereof. Donee accepts all of BNSF's right, title and interest in and to the Property subject to all of the terms and conditions of the Leases, and further covenants and agrees to assume all of BNSF's obligations as landlord under such Leases. This Section 1(c) shall survive the Closing of the transaction contemplated under this Contract.

2. Interim Trails Use. This Contract and any conveyance pursuant to its terms shall be interpreted to conform to Section 8(d) of the National Trails Systems Act, 16 U.S.C. Section 1247(d), and the rules and regulations of the U.S. Surface Transportation Board ("**STB**") related thereto, all as amended from time to time.

(a) **DONEE SHALL ASSUME, INDEMNIFY, DEFEND AND HOLD HARMLESS BNSF FROM ALL FINANCIAL, MANAGERIAL AND LEGAL RESPONSIBILITY AND LIABILITY FOR SAID PROPERTY, INCLUDING WITHOUT LIMITATION ANY LIABILITIES AND RESPONSIBILITIES ASSUMED BY OR PLACED UPON DONEE PURSUANT TO AND IN ACCORDANCE WITH THE NITU (AS HEREINAFTER DEFINED), STATEMENT OF WILLINGNESS TO ASSUME FINANCIAL RESPONSIBILITY FILED BY DONEE WITH THE STB, AND ANY APPLICABLE STB ORDERS RELATED TO THIS TRANSACTION.** Donee acknowledges that any interim trail use by Donee or its assigns shall be subject to the possibility of future restoration of rail service pursuant to federal law and/or BNSF's retained interests. Donee further agrees to take all steps necessary, at no expense to BNSF, to comply with any and all state and federal requirements relating to such interim trail use and/or restoration.

(b) It is agreed and understood that the use of the Property by Donee (or its assignees) shall not impair future restoration of rail service pursuant to the National Trails System Act and Donee acknowledges that BNSF reserves the right to reactivate and restore rail service on the Property. Should BNSF or any such assignee of BNSF exercise this right at any time, Donee (or its assigns) shall allow reactivation of rail service on the terms and conditions herein. Upon BNSF's notice of intent to restore rail service, Donee shall reconvey the Property to BNSF free and clear of any encumbrances or liens not in effect prior to Closing (or shall otherwise commit to clear such encumbrances and/or liens within a reasonable period of time) at no cost to BNSF (except to the extent expressly provided otherwise hereinbelow), and this Contract shall be terminated (subject to survival of all rights, obligations, liabilities, and indemnities which arose or accrued prior to the termination). Upon termination of this Contract pursuant to this subparagraph, Donee shall have the right to salvage any non-rail-related facilities or improvements on the Property, provided such salvage shall be completed within one hundred eighty (180) days of written notice of intent to restore rail service, and any materials not salvaged

within said time period shall be forfeited by Donee absent written waiver by BNSF. In the event BNSF, or its successor, provides a notice of intent to restore rail service pursuant to the National Trails Systems Act, as amended, any reconveyance of the Property shall be at fair market value, which shall be determined by a neutral appraisal process agreed upon between the parties, with the costs thereof to be shared equally. In the event any dispute arises between the parties as to the fair market value determination or process for determination, such disputes shall be finally resolved pursuant to the dispute resolution procedures set forth in **Section 17** of this Contract.

(c) In no event shall this Contract be construed to create a joint enterprise for the use or operation of the Property.

(d) In the event of restoration of rail service, BNSF shall not be liable for any penalties or direct, indirect, or consequential damages or costs, losses, or expenses arising out of such restoration.

(e) Donee acknowledges that, according to BNSF's records, BNSF's interest in the Property may be subject to reversion upon abandonment of use for railroad purposes or cessation of interim trail use, and that the Deed releases and conveys only BNSF's interest, if any, it may have in the Property.

3. Inspections.

(a) In accordance with the provisions of this Section, and subject to Donee's signing the Entry and Confidentiality Agreement, attached as **Exhibit D** to this Contract, Donee, or its designated representatives, shall have reasonable access to the Property and may conduct, at its sole cost and expense, such surveys, studies, tests, or inspections as it deems appropriate in accordance with the terms and provisions of the Entry and Confidentiality Agreement; provided, however, prior to the conduct of any intrusive "Phase II Level" environmental or other intrusive testing or any borings or sampling of any material or media, including soil, surface water, or ground water, Donee further agrees to enter into BNSF's standard agreement(s) for such testing, borings or sampling, which agreement(s) shall detail, without limitation, the specific scope of testing, borings, sampling or other work to be performed and the consultant or persons that will be performing such testing, borings, sampling or other work. Donee shall promptly provide copies of all such reports to BNSF. Prior to conducting any such surveys, studies, tests, or inspections on the Property, Donee shall require all contractors doing any test or inspection of the Property to provide BNSF with a certificate of insurance evidencing Commercial General Liability insurance coverage of at least $1,000,000 with BNSF named as an additional insured and showing worker's compensation coverage with a waiver of subrogation rights against BNSF. Donee shall conduct all surveys, studies, tests, and inspections of the Property in a manner that will not interfere with the operations of BNSF thereon and will not harm or damage the Property or cause any claim adverse to BNSF, and immediately following such surveys, studies, tests, and inspections Donee shall restore the Property to the condition existing immediately prior to such activities. Donee shall give BNSF reasonable prior notice of any such surveys, studies, tests, or inspections and BNSF shall have the right to be present during any such surveys, studies, tests, or inspections. Donee shall not disclose the results of any such surveys, studies, tests, or inspections to any third parties except as required by applicable law or with written consent of BNSF.

(b) Donee shall have 30 days from the full execution of this Contract to terminate this Contract on written notice to BNSF for any or for no reason, including without limitation the

environmental condition of the Property. If Donee does so terminate this Contract, neither party shall have any further obligation hereunder except those that expressly survive termination.

4. Conditions to Closing. The following shall be conditions to BNSF's obligation to consummate the transaction. In the event any of these conditions are not satisfied by the applicable date indicated below (or if no date is indicated below then by the date that is forty-five (45) days after the Contract Date), BNSF may in its sole discretion elect to extend such date or terminate this Contract by written notice to Donee. In the event BNSF elects to proceed to Closing, the following terms and conditions, to the extent they remain unfulfilled, shall survive Closing.

(a) The STB shall have issued a Notice of Interim Trail Use ("**NITU**") in STB Docket No. AB-6 (Sub-No. 406X), near South Hutchinson, in Reno County, Kansas, in accordance with 16 U.S.C. Section 1247(d), the STB's rules and regulations pertaining to interim trails use, and other applicable authorities. The terms hereof shall be governed by and construed in accordance with the issuance of a NITU in the referenced STB docket as requested by Donee and acceded to by BNSF. Prior to Closing, contingent upon authority of the STB, BNSF will have discontinued service on the Property and canceled applicable common carrier rates and service. In lieu of notice of consummation of abandonment, if required by STB's rules and regulations, BNSF shall provide notice to STB of consummation and implementation of this Contract. Notice of consummation shall not be a condition of Closing.

(b) Donee shall execute and deliver to BNSF (i) the Acknowledgment Section of Internal Revenue Service Form 8283, attached as **Exhibit E** to this Contract, (ii) a Charitable Contribution Receipt, attached as **Exhibit F** to this Contract, and (iii) a copy of its letter from the Internal Revenue Service stating that it is a tax exempt entity which is qualified to receive tax deductible donations. In addition, Donee shall take all actions and execute and deliver such other documents that are necessary or advisable to allow BNSF to take a tax deduction with regard to the donation described in this Contract.

(c) If the approval of any federal, state or local governmental agency is required for the donation of the Property, it is understood and agreed that the consummation of this Contract is conditioned upon obtaining such approval and that both parties shall use their best efforts to obtain such approval. In the event any governmental agency shall impose additional material terms or conditions upon this conveyance or revoke the authority to enter into such agreement, either party may terminate this Contract without liability to the other, regardless of whether the transaction has closed. In such event, Donee shall not be entitled to any reimbursement for payment of any fees or costs of the transaction.

(d) Donee shall obtain and deliver to BNSF by the date that is thirty (30) days after the Contract Date, at Donee's sole cost and expense, any survey or plat if required by the applicable city, county or other governmental authority to convey the Property. Such survey or plat shall be subject to BNSF's approval in its sole discretion.

(e) At its sole option, BNSF may: (i) obtain an appraisal report(s) acceptable to BNSF in its sole discretion that provides a market value estimate of the Property, and upon BNSF's request, Donee agrees that it shall promptly reimburse BNSF for the cost of such appraisal report(s), and/or (ii) require Donee, at Donee's sole cost and expense, to provide to BNSF an MAI appraisal report from an appraiser approved by BNSF in its reasonable discretion

**ENVIRONMENTAL CONDITION OF THE PROPERTY, AND THAT DONEE IS NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER FROM BNSF AS TO ANY MATTERS CONCERNING THE PROPERTY,** including the physical condition of the Property; zoning status; tax consequences of this transaction; utilities; operating history or projections or valuation; compliance by the Property with Environmental Laws (defined below) or other laws, statutes, ordinances, decrees, regulations and other requirements applicable to the Property; the presence of any Hazardous Substances (defined below), wetlands, asbestos, lead, lead-based paint or other lead containing structures, urea formaldehyde, or other environmentally sensitive building materials in, on, under, or in proximity to the Property; the condition or existence of any of the above ground or underground structures or improvements, including tanks and transformers in, on or under the Property; the condition of title to the Property; and any leases, easements, reservations, permits, orders, licenses, or other rights or agreements, affecting the Property. **BNSF EXPRESSLY DISCLAIMS ANY WARRANTIES FOR THE PROPERTY OR APPURTENANCES THERETO, INCLUDING, WITHOUT LIMITATION, WARRANTIES AS TO TITLE, MERCHANTABILITY, HABITABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, OR CONFORMITY OF THE PROPERTY TO ITS INTENDED USE.**

8. Environmental.

(a) Donee represents to BNSF that Donee is aware of the risk that Hazardous Substances may be present on, under, in or about the Property and that Donee has conducted, or will conduct prior to Closing, such investigations of the Property, including but not limited to, the physical and environmental conditions thereof, as Donee deems necessary to satisfy itself as to the condition of the Property and will rely solely upon same and not upon any information provided by or on behalf of BNSF or its agents or employees with respect thereto. **DONEE ASSUMES THE RISK THAT ADVERSE MATTERS MAY NOT HAVE BEEN REVEALED BY DONEE'S INVESTIGATIONS, AND DONEE SHALL INDEMNIFY, HOLD HARMLESS AND HEREBY WAIVES, RELEASES AND DISCHARGES FOREVER BNSF (AND BNSF'S AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, LICENSEES AND INVITEES) FROM ANY AND ALL PRESENT OR FUTURE, KNOWN OR UNKNOWN, CLAIMS, DEMANDS, CAUSES OF ACTION (INCLUDING, BUT NOT LIMITED TO, THOSE IN CONTRACT, TORT AND STRICT LIABILITY), DAMAGES (INCLUDING, WITHOUT LIMITATION, CONSEQUENTIAL AND PUNITIVE), LOSSES (HEREIN DEFINED), INJURIES, LIABILITIES, COSTS (INCLUDING, BUT NOT LIMITED TO, FINES, PENALTIES, COURT COSTS AND ATTORNEYS' FEES) ARISING FROM OR IN ANY WAY RELATED TO (I) ANY LATENT OR PATENT CONDITIONS OF THE PROPERTY, (II) ANY BODILY INJURY OR DEATH OR LOSS OR DAMAGE TO THE PROPERTY OF ANY PERSON OR PERSONS WHOMEVER, INCLUDING THE PARTIES HERETO, IN ANY MANNER ARISING FROM OR GROWING OUT OF THE ACTS OR OMISSIONS, NEGLIGENT OR OTHERWISE, OF DONEE OR ITS OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, LICENSEES AND INVITEES IN CONNECTION WITH THE ENTRY UPON, OCCUPATION OR USE OF THE PROPERTY, AND/OR (III) ANY ALLEGED OR ACTUAL PRESENCE, USE, STORAGE, GENERATION, MANUFACTURE, TRANSPORT, RELEASE, LEAK, SPILL, DISPOSAL OR OTHER HANDLING OF ANY HAZARDOUS SUBSTANCES IN, ON, UNDER OR ABOUT THE PROPERTY.** As used in this Section, the term **"Losses"** shall include without limitation (a) the cost of any investigation, removal, remedial or other response action that is required by any Environmental Law, that is required by judicial order or by order of

or agreement with any governmental authority, or that is necessary or otherwise is reasonable under the circumstances and (b) costs imposed under any Environmental Law enacted after Closing. As used in this Contract, the term "**Environmental Law**" means any federal, state or local statute, regulation, code, rule, ordinance, order, judgment, decree, injunction or common law pertaining in any way to the protection of human health or the environment, including without limitation, the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Toxic Substances Control Act, and any similar or comparable state or local law. As used in this Contract, the term "**Hazardous Substance**" means any hazardous, toxic, radioactive or infectious substance, material, contaminant or waste as defined, listed or regulated under any Environmental Law, and includes without limitation, petroleum oil and any of its fractions.

(b) The rights of BNSF under this Section shall be in addition to and not in lieu of any other rights or remedies to which it may be entitled under this Contract or otherwise. This indemnity specifically includes the obligation of Donee to remove, close, remediate, reimburse or take other actions requested or required by any governmental agency concerning any Hazardous Substances or contaminants on the Property.

9. Indemnifications.

**(a) TO THE FULLEST EXTENT PERMITTED BY LAW, DONEE SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS BNSF AND BNSF'S AFFILIATES, OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, SUCCESSORS AND ASSIGNS (COLLECTIVELY, THE "INDEMNITEES") FOR, FROM AND AGAINST ANY AND ALL LIABILITIES, CLAIMS, DAMAGES, LOSSES, LIENS, FINES, PENALTIES, COSTS, CAUSES OF ACTION, SUITS, JUDGMENTS, AND EXPENSES (INCLUDING, WITHOUT LIMITATION, CLAIMS AND LIABILITIES RELATING TO PERSONAL INJURY, BODILY INJURY OR PROPERTY DAMAGE) (COLLECTIVELY, THE "CLAIMS") OF ANY PERSON OR ENTITY WHOMSOEVER, DIRECTLY OR INDIRECTLY ARISING OUT OF, RESULTING FROM OR RELATED TO (IN WHOLE OR IN PART) (I) ANY ACTION OF ANY PERSON OR FIRM ENTERING THE PROPERTY ON DONEE'S BEHALF TO PERFORM THE INSPECTION CONTEMPLATED UNDER SECTION 3 OR OTHERWISE; (II) DONEE'S OWNERSHIP OR USE OF THE PROPERTY; (III) ANY BREACH BY DONEE OF ANY OF ITS REPRESENTATIONS OR WARRANTIES SET FORTH HEREIN, OR ANY FAILURE BY DONEE TO PERFORM ANY OF ITS OBLIGATIONS UNDER THIS CONTRACT; (IV) ANY CLAIMS OF THIRD PARTIES CAUSED BY DONEE'S NONPERFORMANCE OR PERFORMANCE AFTER CLOSING UNDER ANY CONTRACT, LEASE, PERMIT, LICENSE, EASEMENT OR COMMITMENT RELATING TO THE PROPERTY; (V) BNSF'S ABANDONMENT OR DISCONTINUANCE OF ANY LINE OF RAIL RUNNING OVER OR ADJACENT TO THE PROPERTY OR (VI) ANY ACT OR OMISSION, INCLUDING NEGLIGENCE, OF DONEE, ITS EMPLOYEES, INDEPENDENT CONTRACTORS, SUBCONTRACTORS, LESSEES, LICENSEES, PERMITTEES, INVITEES, OR ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY OR UNDER THE CONTROL OF ANY OF THEM, EVEN IF SUCH CLAIMS ARISE IN WHOLE OR IN PART FROM ANY NEGLIGENCE OF ANY INDEMNITEE. THE ONLY CLAIMS WITH RESPECT TO WHICH DONEE'S OBLIGATION TO INDEMNIFY THE INDEMNITEES DOES NOT APPLY ARE CLAIMS TO THE EXTENT FINALLY ADJUDICATED TO HAVE BEEN**

**PROXIMATELY CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF AN INDEMNITEE.**

**(b) DONEE SHALL PROMPTLY ADVISE BNSF IN WRITING OF ANY ACTION, ADMINISTRATIVE OR LEGAL PROCEEDING OR INVESTIGATION AS TO WHICH THIS INDEMNIFICATION MAY APPLY, AND DONEE, AT DONEE'S EXPENSE, SHALL ASSUME ON BEHALF OF BNSF (AND THE OTHER INDEMNITEES), AND CONDUCT WITH DUE DILIGENCE AND IN GOOD FAITH THE DEFENSE THEREOF WITH COUNSEL SELECTED BY DONEE WHO IS REASONABLY SATISFACTORY TO BNSF; PROVIDED, HOWEVER, THAT BNSF SHALL HAVE THE RIGHT, AT ITS OPTION, TO BE REPRESENTED THEREIN BY ADVISORY COUNSEL OF ITS OWN SELECTION AND AT ITS OWN EXPENSE. IN THE EVENT OF FAILURE BY DONEE TO FULLY PERFORM IN ACCORDANCE WITH THIS INDEMNIFICATION, BNSF, AT ITS OPTION, AND WITHOUT RELIEVING DONEE OF ITS OBLIGATIONS HEREUNDER, MAY SO PERFORM, BUT ALL COSTS AND EXPENSES SO INCURRED BY BNSF IN THAT EVENT SHALL BE REIMBURSED BY DONEE TO BNSF, TOGETHER WITH INTEREST ON THE SAME FROM THE DATE ANY SUCH EXPENSE WAS PAID BY BNSF UNTIL REIMBURSED BY DONEE, AT THE RATE OF INTEREST PROVIDED TO BE PAID ON JUDGMENTS BY THE LAW OF THE JURISDICTION TO WHICH INTERPRETATION OF THIS CONTRACT IS SUBJECT. THIS INDEMNIFICATION SHALL NOT BE LIMITED TO DAMAGES, COMPENSATION OR BENEFITS PAYABLE UNDER INSURANCE POLICIES, WORKERS' COMPENSATION ACTS, DISABILITY BENEFIT ACTS, OR OTHER EMPLOYEES' BENEFIT ACTS.**

**(c) TO THE FULLEST EXTENT PERMITTED BY LAW, DONEE FURTHER AGREES, REGARDLESS OF ANY NEGLIGENCE OR ALLEGED NEGLIGENCE OF ANY INDEMNITEE, TO INDEMNIFY AND HOLD HARMLESS THE INDEMNITEES AGAINST AND SHALL ASSUME THE DEFENSE OF ANY LIABILITIES ASSERTED AGAINST OR SUFFERED BY ANY INDEMNITEE UNDER OR RELATED TO THE FEDERAL EMPLOYERS' LIABILITY ACT ("FELA") WHENEVER EMPLOYEES OF DONEE OR ANY OF ITS AGENTS, INVITEES, CONTRACTORS OR SUBCONTRACTORS CLAIM OR ALLEGE THAT THEY ARE EMPLOYEES OF ANY INDEMNITEE OR OTHERWISE. THIS INDEMNITY SHALL ALSO EXTEND, ON THE SAME BASIS, TO FELA CLAIMS BASED ON ACTUAL OR ALLEGED VIOLATIONS OF ANY FEDERAL, STATE OR LOCAL LAWS OR REGULATIONS, INCLUDING BUT NOT LIMITED TO THE SAFETY APPLIANCE ACT, THE BOILER INSPECTION ACT, THE OCCUPATIONAL HEALTH AND SAFETY ACT, THE RESOURCE CONSERVATION AND RECOVERY ACT, AND ANY SIMILAR STATE OR FEDERAL STATUTE.**

10. Default/Remedies. In the event either party breaches any of its obligations hereunder or under the Entry and Confidentiality Agreement and such breach is not cured within five (5) business days after written notice thereof from the non-breaching party, the non-breaching party may, at its election and without prejudice, terminate this Contract. If such breach occurs prior to Closing, the non-breaching party shall be entitled to stipulated damages in the amount of $5,000.00 from the breaching party, and the parties shall have no further obligation hereunder except for those that expressly survive termination. The parties acknowledge and agree that actual damages are difficult to ascertain and that such sum represents a reasonable estimate of a party's actual damages in the event of such breach. Nothing contained in the foregoing shall be deemed to limit any liability, obligation or remedy related to (i)

Donee's indemnification obligations set forth herein or in the Entry and Confidentiality Agreement or (ii) any breach of this Contract occurring after Closing.

11. Authority. Donee warrants and affirms that it has the necessary authority to enter into this Contract and that all of the obligations hereunder are enforceable and legally binding on the Donee and its successors. Donee represents and warrants to BNSF it is a municipality in the State of Kansas, validly existing and in good standing under applicable law. The person executing this Contract on behalf of the Donee warrants and affirms that he or she is fully authorized to do so for and on behalf of the Donee.

12. Notices. All notices and other communications under this Contract shall be in writing and deemed properly served if delivered by hand to the party addressed or, if mailed, when received by the United States Postal Service in registered or certified mail, postage prepaid, or, if sent by a national overnight service, when received by the carrier service in a prepaid mailer, return receipt required, addressed as follows:

BNSF: Assistant Vice President
Property Management Department
BNSF Railway Company
P.O. Box 961050
2650 Lou Menk Drive
Fort Worth, TX 76161-0050

Donee: City Clerk
City of South Hutchinson
2 South Main
South Hutchinson, Kansas 67505-1598

Either party hereto may change the address or addressee to which notices are to be given by providing written notice of the change to the other party without need of amendment to this Contract.

13. Survival of Rights and Obligations; Term. This Contract and the rights and obligations hereunder shall survive Closing, shall not be merged into the Deed and shall be continuing in nature. Unless earlier terminated pursuant to the terms of this Contract, this Contract shall survive Closing and shall continue in force and effect during the pendency of interim trail use. Donee's indemnification obligations set forth in this Contract shall survive termination of this Contract.

14. Real Estate Commissions. If any real estate broker or agent can establish a valid claim for commission or other compensation as a result of Donee having used their services in connection with the grant of the Property, all such commission or other compensation shall be borne by Donee.

15. Successors and Assigns. Wherever referred to herein, the term Donee shall imply, mean and apply to Donee, its successors, assigns, heirs, executors, administrators, or designees, who shall be severally and collectively liable for any and all performance hereunder. Wherever referred to herein, the term BNSF shall imply, mean and apply to BNSF, its successors, assigns, heirs, executors, administrators, or designees, who shall be severally and collectively liable for any and all performance hereunder.

16. Governing Law. This Contract shall be governed by and construed in accordance with the internal laws of the State in which the majority of the Property is located and applicable federal laws pertaining to NITUs, without reference to the conflicts of laws or choice of law provisions thereof.

17. **ARBITRATION.**

**(A) IF AT ANY TIME A QUESTION OR CONTROVERSY SHALL ARISE BETWEEN THE PARTIES HERETO IN CONNECTION WITH THIS CONTRACT UPON WHICH THE PARTIES CANNOT AGREE, SUCH QUESTION OR CONTROVERSY SHALL BE SUBMITTED TO AND SETTLED BY BINDING ARBITRATION. UNLESS OTHER PROCEDURES ARE AGREED TO BY THE PARTIES IN WRITING, ARBITRATION BETWEEN THE PARTIES PURSUANT TO THIS SECTION SHALL BE GOVERNED BY THE RULES AND PROCEDURES SET FORTH IN THIS SECTION.**

**(B) IF THE PARTIES TO THE DISPUTE ARE ABLE TO AGREE UPON A SINGLE COMPETENT AND DISINTERESTED ARBITRATOR WITHIN TWENTY (20) DAYS AFTER WRITTEN NOTICE BY ONE PARTY OF ITS DESIRE FOR ARBITRATION TO THE OTHER PARTY, THEN THE QUESTION OR CONTROVERSY SHALL BE SUBMITTED TO AND SETTLED BY THAT SINGLE ARBITRATOR. OTHERWISE, ANY PARTY (THE "NOTIFYING PARTY") MAY NOTIFY THE OTHER PARTY (THE "NOTICED PARTY") IN WRITING OF ITS REQUEST FOR ARBITRATION AND NOMINATING ONE ARBITRATOR. WITHIN TWENTY (20) DAYS AFTER RECEIPT OF SAID NOTICE, THE NOTICED PARTY SHALL APPOINT AN ARBITRATOR AND NOTIFY THE NOTIFYING PARTY IN WRITING OF SUCH APPOINTMENT. SHOULD THE NOTICED PARTY FAIL WITHIN TWENTY (20) DAYS AFTER RECEIPT OF SAID NOTICE TO NAME ITS ARBITRATOR, SAID ARBITRATOR MAY BE APPOINTED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") UPON APPLICATION BY EITHER PARTY AFTER TEN (10) DAYS' WRITTEN NOTICE TO THE OTHER PARTY. THE TWO ARBITRATORS SO CHOSEN SHALL SELECT ONE ADDITIONAL ARBITRATOR TO COMPLETE THE BOARD. IF THE ARBITRATORS SO CHOSEN FAIL TO AGREE UPON AN ADDITIONAL ARBITRATOR, THE SAME SHALL, UPON APPLICATION OF A PARTY, BE APPOINTED BY SAID AAA IN THE MANNER HERETOFORE STATED.**

**(C) UPON SELECTION OF THE ARBITRATOR(S), SAID ARBITRATOR(S) SHALL, WITH REASONABLE DILIGENCE, DETERMINE THE QUESTIONS AS DISCLOSED IN SAID NOTICE OF ARBITRATION, SHALL GIVE THE PARTIES REASONABLE NOTICE OF THE TIME AND PLACE (OF WHICH THE ARBITRATOR(S) SHALL BE THE JUDGE) OF HEARING EVIDENCE AND ARGUMENT, MAY TAKE SUCH EVIDENCE AS THE ARBITRATOR(S) SHALL DEEM REASONABLE OR AS EITHER PARTY MAY SUBMIT WITH WITNESSES REQUIRED TO BE SWORN, AND HEAR ARGUMENTS OF COUNSEL OR OTHERS. IF AN ARBITRATOR DECLINES OR FAILS TO ACT, THE PARTY (OR PARTIES IN THE CASE OF A SINGLE ARBITRATOR) BY WHOM THE ARBITRATOR WAS CHOSEN OR THE AAA SHALL APPOINT ANOTHER TO ACT IN THE ARBITRATOR'S PLACE.**

(D) AFTER CONSIDERING ALL EVIDENCE, TESTIMONY AND ARGUMENTS, SAID SINGLE ARBITRATOR OR THE MAJORITY OF SAID BOARD OF ARBITRATORS SHALL PROMPTLY STATE SUCH DECISION OR AWARD AND THE REASONING FOR SUCH DECISION OR AWARD IN WRITING WHICH SHALL BE FINAL, BINDING, AND CONCLUSIVE ON ALL PARTIES TO THE ARBITRATION WHEN DELIVERED TO THEM. THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION THEREOF AND ENFORCED AS BETWEEN THE PARTIES WITHOUT FURTHER EVIDENTIARY PROCEEDING, THE SAME AS ENTERED BY THE COURT AT THE CONCLUSION OF A JUDICIAL PROCEEDING IN WHICH NO APPEAL WAS TAKEN. UNTIL THE ARBITRATOR(S) SHALL ISSUE THE FIRST DECISION OR AWARD UPON ANY QUESTION SUBMITTED FOR ARBITRATION, PERFORMANCE UNDER THIS CONTRACT SHALL CONTINUE IN THE MANNER AND FORM EXISTING PRIOR TO THE RISE OF SUCH QUESTION. AFTER DELIVERY OF SAID FIRST DECISION OR AWARD, EACH PARTY SHALL FORTHWITH COMPLY WITH SAID FIRST DECISION OR AWARD IMMEDIATELY AFTER RECEIVING IT.

(E) EACH PARTY TO THE ARBITRATION SHALL PAY ALL COMPENSATION, COSTS, AND EXPENSES OF THE ARBITRATOR APPOINTED IN ITS BEHALF AND ALL FEES AND EXPENSES OF ITS OWN WITNESSES, EXHIBITS, AND COUNSEL. THE COMPENSATION, COST, AND EXPENSES OF THE SINGLE ARBITRATOR OR THE ADDITIONAL ARBITRATOR IN THE BOARD OF ARBITRATORS SHALL BE PAID EQUALLY BY BNSF AND DONEE.

(F) THE PARTIES MAY OBTAIN DISCOVERY AND OFFER EVIDENCE IN ACCORDANCE WITH THE FEDERAL RULES OF CIVIL PROCEDURE RULES 26 - 37, AND FEDERAL RULES OF EVIDENCE, AS EACH MAY BE AMENDED FROM TIME TO TIME.

(G) INTEREST COMPUTED ANNUALLY, AT A RATE EQUAL TO THE PRIME RATE PLUS TWO (2) PERCENTAGE POINTS, SHALL BE APPLIED TO ANY AND ALL ARBITRATOR'S AWARDS REQUIRING THE PAYMENT OF MONEY AND SHALL BE CALCULATED FROM THIRTY (30) DAYS FOLLOWING THE DATE OF THE APPLICABLE ARBITRATION DECISION. THE TERM "PRIME RATE" SHALL MEAN THE MINIMUM COMMERCIAL LENDING RATE CHARGED BY BANKS TO THEIR MOST CREDIT-WORTHY CUSTOMERS FOR SHORT-TERM LOANS, AS PUBLISHED DAILY IN THE WALL STREET JOURNAL.

18. Section Headings. The titles of sections and subsections herein have been inserted as a matter of convenience of reference only and shall not control or affect the meaning or construction of any of the terms or provisions herein.

19. Effect of Waiver. Any waiver by BNSF or failure of BNSF to insist upon full and complete performance of Donee's obligations set forth herein shall not constitute a waiver or release of BNSF's right to insist upon full and complete performance of any other obligations herein, or a waiver or release of BNSF's right to insist upon full and complete performance of the obligations that were waived or not enforced for periods prior to, or following, the waiver or failure to insist upon full and complete performance.

20. Amendments. No amendment to, or waiver of any provision of, this Contract shall be binding on any of the parties hereto unless such amendment or waiver is in writing and, if an amendment, is executed by both parties, and if a waiver, is executed by the party against whom enforcement of such waiver is sought.

21. Time of Essence. Time is of the essence in the performance of this Contract.

22. Attorneys' Fees. If any action at law or in equity is necessary to enforce or interpret the terms of this Contract, the prevailing party shall be entitled to recover all costs and expenses incurred by it in connection therewith, including its reasonable attorneys' fees, costs and necessary disbursements in addition to any other relief to which it may be entitled.

**23. CONSTRUCTION. BNSF AND DONEE ACKNOWLEDGE THAT EACH PARTY AND, IF IT SO CHOOSES, ITS COUNSEL, HAVE REVIEWED AND REVISED THIS CONTRACT AND THAT THE NORMAL RULE OF CONSTRUCTION TO THE EFFECT THAT ANY AMBIGUITIES ARE TO BE RESOLVED AGAINST THE DRAFTING PARTY WILL NOT BE EMPLOYED IN THE INTERPRETATION OF THIS CONTRACT OR ANY AMENDMENTS OR EXHIBITS HERETO.**

24. Severability. If any provision of this Contract is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable and this Contract shall be construed and enforced as if such illegal, invalid or unenforceable provision is not a part hereof, and the remaining provisions hereof shall remain in full force and effect. In lieu of any illegal, invalid or unenforceable provision herein, there shall be added automatically as a part of this Contract a provision as similar in its terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

25. Rule Against Perpetuities. If any of the terms under this Contract shall be unlawful or void for violation of (a) the rule against perpetuities or some analogous statutory provision, or (b) any other statutory or common law rules imposing like or similar time limits, then such terms shall continue only for the period of twenty-one (21) years after the death of the last survivor of the lineal descendants of Elizabeth II, Queen of England, living as of the date hereof.

26. Entire Agreement. This Contract contains the entire agreement of the parties hereto with respect to the Property and any other prior understandings or agreements are merged herein and no representations, inducements, promises or agreements, oral or otherwise, between the parties not embodied herein or incorporated herein by reference shall be of any force or effect.

27. Counterparts. To facilitate execution, this Contract may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature or acknowledgement of, or on behalf of, each party, or that the signature of all persons required to bind any party or the acknowledgment of such party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Contract to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, and the respective acknowledgments of, each of the parties hereto. Any signature or acknowledgment page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures or acknowledgments thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature or acknowledgment pages.

Accepted and agreed to the 23RD day of MARCH, 2005 (the "**Contract Date**").

BNSF:

BNSF RAILWAY COMPANY, a Delaware Corporation

By: [signature]
Print Name: Jerome M. Johnson
Title: Asst VP

DONEE:

City of South Hutchinson, a Kansas municipality

By: [signature]
Print Name: RONALD W. HIRST
Title: Mayor

Attachments:

| | |
|---|---|
| Exhibit A - | Description of Property |
| Exhibit A-1- | Description of Leases |
| Exhibit B- | Quitclaim Deed |
| Exhibit C- | Bill of Sale |
| Exhibit D- | Entry and Confidentiality Agreement |
| Exhibit E- | IRS Form 8283 |
| Exhibit F- | Charitable Contribution Receipt |

**EXHIBIT A**

DESCRIPTION OF PROPERTY

All that portion of The Burlington Northern and Santa Fe Railway Company's (formerly The Atchison, Topeka and Santa Fe Railway Company) Old H & S Subdivision Branch Line right of way at South Hutchinson, Kansas, between MP 0.63 to MP 3.50, situated upon, over and across Sections 23, 26 and 35, all in Township 23 South, Range 6 West of the 6th P. M., Reno County, Kansas, described as follows, to-wit:

All of said Railway Company's 150.0 foot wide right of way, being 75.0 feet wide on each side of said Railway Company's Main Track centerline, as originally located and constructed upon, over and across the N½ of said Section 23, lying North of the old Chicago, Rock Island & Pacific Railroad Company's right of way, and bounded on the North by the North line of said Section 23; also,

All of said Railway Company's 100.0 foot wide right of way, being 50.0 feet wide on each side of said Railway Company's Main Track centerline, as originally located and constructed upon, over and across the N½ of said Section 23, lying South of the old Chicago, Rock Island & Pacific Railroad Company's right of way, the Westerly portion being bounded on the South by a line parallel with and 100 feet South of the North line of Blanchard's Second Addition in the City of Hutchinson, and the Easterly portion bounded on the South by the North line of said Blanchard's Second Addition in the City of Hutchinson; also,

All of said Railway Company's right of way granted to the Hutchinson & Southern Railroad Company by Ordinance No. 84 and Ordinance No. 164 through and along Monroe and Jackson streets from Eleventh Avenue to and including Avenue F in the City of South Hutchinson; also,

Those portions of streets and alleys in Blanchard's Second Addition to the City of Hutchinson, lying West of a line parallel with and 50.0 feet normally distant Easterly from said Main Track centerline; also,

Lots 126 and 128, 8th Avenue West, Lots 125 and 127, 8th Avenue West, Lots 126 and 128, 7th Avenue West, Lots 125 and 127, 7th Avenue West, Lots 168 and 170, 6th Avenue West, all in Blanchard's Second Addition to the City of Hutchinson; also,

Those portions of the streets and alleys in Blanchard's Third Addition to the City of Hutchinson, lying West of a line parallel with and 50.0 feet normally distant Easterly from said Main Track centerline; also,

Lots 125 and 127, 4th Avenue West, Lots 126 and 128, 3rd Avenue West, Lots 125 and 127, 3rd Avenue West, Lots 126 and 128, 2nd Avenue West, Lots 125 and 127, 2nd Avenue West, Lots 126 and 128, 1st Avenue West, Lots 125 and 127, 1st Avenue West, Lots 126 and 128, Blanchard Avenue West, Lots 125 and 127, Blanchard Avenue West, Lots 126 and 128, Avenue A West, Lots 125 and 127, Avenue A West, Lots 126 and 128, Avenue B West, Lots 125 and 127, Avenue B West, Lots 126 and 128, Avenue C West, Lots 125 and 127, Avenue C West, Lots 126 and 128, Avenue D West, Lots 125 and 127, Avenue D West, Lots 126 and 128, Avenue E West, Lots 125 and 127, Avenue E West and Lots 126 and 128, Avenue F West, all in Blanchard's Third Addition to the City of Hutchinson; also,

That portion of the SW¼ of said Section 23, lying East of a line parallel with and 35.0 feet normally distant Westerly from said Main Track centerline; also,

All that portion of said Railway Company's 100.0 foot wide right of way situated in the E½E½SW¼ and the W½W½SE¼ of said Section 26, and the E½E½W½ and the W½W½E½ of Section 35, bounded on the North by the East-West centerline of said Section 26, and bounded on the South by a line drawn at right angles to said Main Track centerline at Milepost 3.50, which is 310 feet, more or less, Northerly of the South line of said Section 35, as measured along said Main Track centerline.

South Hutchinson, KS

BNSF RAILWAY

**SIDNEY L. STRICKLAND, JR.**
*Associate General Counsel*

**BNSF Railway Company**
700 13th Street NW, Suite 220
Washington, DC 20005-5915

Telephone: 202-347-8667
Fax: 202-347-8675
E-mail: Sidney.Strickland@BNSF.com

213618

ENTERED
Office of Proceedings
MAR 25 2005
Part of
Public Record

**VIA UPS OVERNIGHT MAIL**

MAR 25 2005

March 24, 2005

Honorable Vernon A. Williams, Secretary
Surface Transportation Board
1925 K Street, N.W.
Washington, DC 20423-0001

**Re: Surface Transportation Board Docket No. AB-6 (Sub-No. 406X); BNSF Railway Company ("BNSF") Abandonment in South Hutchinson, Kansas**

Dear Secretary Williams:

On February 19, 2004, BNSF filed a Notice of Exemption seeking authority to abandon or discontinue service of a 2.88-mile line of railroad between railroad milepost 0.62 and railroad milepost 3.50 near South Hutchinson, Reno County, Kansas. The line traverses United States Postal Service Zip Codes 67501 and 67505. An Interim Trails Use Railbanking Agreement, dated March 23, 2005, was entered into between BNSF and the City of South Hutchinson, in lieu of consummation of abandonment.

Please acknowledge receipt of this letter by date stamping the enclosed copy of this letter and returning it to me in the enclosed self-addressed stamped envelope.

Ten (10) additional copies of this letter are enclosed for the Board's use and distribution.

Sincerely,

Sidney L. Strickland /jg

Sidney L. Strickland, Jr.

SLS/js

cc: Kansas Corporation Commission
Kansas Department of Transportation
Peter Rickershauser
Jerome Johnson
James Gallegos
Richard Batie
Donald Gottschalk (City of South Hutchinson, KS)
Rail Services Update