IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DOROTHY L. BIERY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 07-693L<br>(consolidated with No. 07-675L)<br><br>Honorable Nancy B. Firestone |

**DEFENDANT'S RESPONSE TO THE BIERY PLAINTIFFS' PROPOSED FINDINGS OF FACT**

Pursuant to RCFC 56(h), Defendant submits these responses to the Biery Plaintiffs' Proposed Findings of Uncontroverted Fact (Case No. 07-693L, Doc. 24).

**Proposed Fact No. 1**: The Hutchinson, Oklahoma, and Gulf Railroad Company acquired its railroad right-of-way by a condemnation order, see "Report of Commissioners" dated July 24, 1889 and recorded on October 27, 1899. *See* Tab A.

**Defendant's Response:** Defendant agrees in part that the Hutchinson, Oklahoma, and Gulf Railroad Company acquired a railroad right-of-way and other lands by condemnation under Kansas law. However, the railroad did not acquire all of the subject right-of-way through condemnation. The railroad also acquired portions of the subject right-of-way by voluntary grant. See Declaration of Cindi A.R. Straup in Biery v. United States ("Biery Straup Decl.") (Def. Ex. 22); see also Def. Ex. 22-1 (Commissioners' Report).

**Proposed Fact No. 2:** Tab A represents a true and accurate copy of the condemnation order "Report of Commissioners" to the Hutchinson, Oklahoma, and Gulf Railroad Company on July 24, 1889, recorded in Book 5, Page 218 at the Reno County Recorder of Deeds Office. (A true and accurate copy of the Report of Commissioners is attached as Tab A).

**Defendant's Response:** Defendant disagrees that Tab A represents a true and accurate copy of the condemnation order. Tab A appears to be a later transcription of the original handwritten condemnation order. See Def. Ex. 22; Def. Ex. 22-1. However, Defendant agrees that the condemnation order "Report of Commissioners" to the Hutchinson, Oklahoma, and Gulf Railroad Company was dated July 24, 1889 and recorded in Book 5, Page 218. However, Defendant does not believe the relevant language of the Commissioners' Report is disputed in this case.

**Proposed Fact No. 3:** The Hutchinson & Southern Railroad Company acquired its railroad right-of-way by a condemnation order, see "Report of Commissioners" dated June 10, 1891, and recorded on October 27, 1899. *See* Tab B.

**Defendant's Response:** Defendant agrees in part that the Hutchinson & Southern Railroad Company acquired a railroad right-of-way and other lands by condemnation under Kansas law. However, the railroad did not acquire all of the subject right-of-way through condemnation. The railroad also acquired portions of the subject right-of-way by voluntary grant. See Def. Ex. 22.

**Proposed Fact No. 4:** Tab B represents a true and accurate copy of the condemnation order "Report of Commissioners" to the Hutchinson & Southern Railroad Company on June 10, 1991, and recorded in Book 5, Page 209 of the Reno County Recorder of Deeds Office. (A true and accurate copy of the Report of Commissioners dated June 10, 1891, is attached at Tab B. Tab B-1 contains the transcribed text of this deed.).

**Defendant's Response:** Defendant partly agrees that Tab B represents a true and accurate copy of the condemnation order. Defendant agrees that the "Report of Commissioners" to the Hutchinson & Southern Railroad Company recorded in Book 5, Page 209 is part of Tab B. However, it also appears that other documents, not a part of the Commissioners' Report to the Hutchinson & Southern Railroad Company, are also included in Tab B. See Def. Ex. 22; Def. Ex. 22-3.

**Proposed Fact No. 5:** On December 20, 1899, The Hutchinson and Southern Railway Company conveyed to The Atchison, Topeka and Santa Fe Railway Company one-hundred and forty-three and eight-tenths miles of railway lines, lands, and improvements commencing in the City of Hutchinson running southerly into the territory of Oklahoma. This conveyance included the right-of-way that was condemned in Reno County. (A true and accurate copy of this Warranty Deed is attached at Tab C, and the transcribed text of this Warranty Deed is attached at Tab C-1).

**Defendant's Response:** Defendant agrees, but notes that the property interests conveyed to the Atchison, Topeka and Santa Fe Railway ("A, T & S.F. Railway") are described in more specific terms in the referenced warranty deed.

**Proposed Fact No. 6:** The BNSF is the successor-in-interest to the Atchison, Topeka and Santa Fe Railway Company. (*See* Tab K).

**Defendant's Response:** Defendant agrees. See also Def. Ex. 15, p. 11 (BNSF Historic Report, p. 2).

**Proposed Fact No. 7:** Dorothy L. Biery owned fee title to her land, which abuts and underlies the former Burlington Northern Santa Fe ("BNSF") right-of-way, on April 5, 2004. (A copy of the Warranty Deed by which Plaintiff acquired her property, recorded in Book 455, Page 485(1) in the Reno County Recorder of Deeds Office, is attached at Tab D).

**Defendant's Response:** Defendant agrees that Dorothy L. Biery owned a parcel of land that abuts the subject right-of-way on April 5, 2004 (see map at Def. Ex. 22-9), but disagrees that April 5, 2004 is a relevant date in this case. As set forth in Defendant's summary judgment brief, the claims at issue in the Biery case accrued on April 8, 2004, the date on which the STB issued the relevant NITU in that case. Defendant also does not dispute that Dorothy L. Biery owned a parcel of land that abuts the subject right-of-way on April 8, 2004.

However, Defendant does not agree with Plaintiffs' assertion that the land owned by Dorothy Biery "underlies" the subject right-of-way. Under RCFC 56(h)(1), each fact set forth in Plaintiffs' proposed findings of fact must be supported with "citations to the opposing party's pleadings or to documentary evidence, such as affidavits or exhibits, filed with the motion or otherwise part of the record in the case." Plaintiffs provide no evidence that the land owned by Dorothy Biery "underlies" all or some of the subject right-of-way. The only evidence submitted by Plaintiffs is a copy of the deed by which

Dorothy Biery acquired a parcel of land that abuts the subject right-of-way. See Biery Deed (Pls.' Proposed Facts, Tab D). The legal description of this parcel contained in Biery's deed describes that parcel as "[b]eginning at a point 2395 feet west of the southeast corner of the Northwest Quarter (NE/4) of Section 23, Township 23 South, Range 6 West of the 6th P.M., thence west 193-1/3 feet; thence north 450 feet; thence east 193-1/3 feet; thence south 450 feet to the place of beginning, containing 2 acres." Biery Pls.' Proposed Facts, Tab D (Doc. 24). The conveyance expressly excepts and is subject to "[e]asements and restrictions of record." Id. Because the legal description in this deed does not expressly encompass the lands within the right-of-way, and because Plaintiffs have not submitted any other deeds in Biery's chain-of-title, it is impossible to determine from the evidence before the Court whether Biery owns any portion of the servient estate subject to the railroad easement that abuts her property. Accordingly, Defendant cannot agree to this proposed fact on the record presented by Plaintiffs.

**Proposed Fact No. 8:** Gordon Holloway owned fee title to his land in Reno County, Kansas that underlies and abuts the former BNSF right-of-way on April 5, 2004. Gordan Holloway acquired this property from his father's estate pursuant to a Probate Order entered July 17, 1992. (A copy of the Probate Order by which Plaintiff acquired his property is attached at Tab E).

**Defendant's Response:** Defendant agrees that Gordon Holloway owned a parcel of land that abuts the subject right-of-way on April 5, 2004 (see map at Def. Ex. 22-10), but disagrees that April 5, 2004 is a relevant date in this case. As set forth in Defendant's summary judgment brief, the claims at issue in the Biery case accrued on April 8, 2004, the date on which the STB issued the relevant NITU in that case. Defendant also does

not dispute that Gordon Holloway owned a parcel of land that abuts the subject right-of-way on April 8, 2004.

However, Defendant does not agree with Plaintiffs' assertion that the land owned by Gordon Holloway "underlies" the subject right-of-way. Under RCFC 56(h)(1), each fact set forth in Plaintiffs' proposed findings of fact must be supported with "citations to the opposing party's pleadings or to documentary evidence, such as affidavits or exhibits, filed with the motion or otherwise part of the record in the case." Plaintiffs provide no evidence that the land owned by Gordon Holloway "underlies" all or some of the subject right-of-way. The only evidence submitted by Plaintiffs is a copy of the probate order entered on July 17, 1992, by which Gordon Holloway acquired a parcel of land that abuts the subject right-of-way. See Holloway Deed (Pls.' Proposed Facts, Tab E). This conveyance instrument contains a legal description of several parcels of land, including the following parcel that abuts the subject right-of-way: "[t]he Northwest Quarter Southeast Quarter (NW/4 SE/4) Section Twenty-six (26), Township Twenty-three (23) South, Range Six (6) West of the 6th P.M., Reno County, Kansas, containing 40 acres, more or less, *except for the 100 feet of right-of-way of the railway along the West side thereof*[.]" Id., Tab E (emphasis added). It is not clear from this deed alone whether the 100-feet of right-of-way excepted from the conveyance is actually part of the parcel conveyed to Holloway, or whether the right-of-way "along the West side" of the parcel is reference to identify the western boundary of the Holloway parcel. Plaintiffs' briefing on this point is equally ambiguous. Plaintiffs do not specify in this proposed fact or in their summary judgment brief whether Holloway is claiming ownership of the servient estate beneath the entire right-of-way by virtue of this deed (or earlier deeds in the chain-of-

title), or whether Holloway is only claiming ownership to the centerline. However, because the Stacy Judy Trust (see Defendant's Response to Proposed Fact No. 9, below) owns the parcel of land situated west of the right-of-way and directly across from the Holloway parcel pursuant to a deed that includes no reference to the right-of-way (id., Tab F), Defendant assumes that Holloway only claims title to the east one-half of the right-of-way, and that the Stacy Judy Trust is claiming to own the west one-half of the right-of-way. In any event, the evidence presented by Plaintiffs is insufficient to prove whether ownership of the servient estate at this location is split between the abutting landowners or whether one of the abutting landowners owns the servient estate beneath the entire right-of-way. Accordingly, Defendant cannot agree based on the evidence submitted by Plaintiffs that the land owned by Gordon Holloway "underlies" the subject right-of-way.

**Proposed Fact No. 9:** The Stacy E. Judy Trust, dated March 7, 1994, owned fee title to the land underlying and abutting the former BNSF right-of-way on April 5, 2004. (A copy of the Quitclaim Deed by which Plaintiff acquired its property, recorded in Book 511, Page 588(4) of the Reno County Recorder of Deeds Office, is attached at Tab F).

**Defendant's Response:** Defendant agrees that the Stacey E. Judy Trust ("Judy Trust") owned a parcel of land that abuts the subject right-of-way on April 5, 2004 (see maps at Def. Ex. 22-11), but disagrees that April 5, 2004 is a relevant date in this case. As set forth in Defendant's summary judgment brief, the claims at issue in the Biery case accrued on April 8, 2004, the date on which the STB issued the relevant NITU in that case. Defendant also does not dispute that the Judy Trust owned a parcel of land that

abuts the subject right-of-way on April 8, 2004.

However, Defendant does not agree with Plaintiffs' assertion that the land owned by the Judy Trust "underlies" the subject right-of-way. Under RCFC 56(h)(1), each fact set forth in Plaintiffs' proposed findings of fact must be supported with "citations to the opposing party's pleadings or to documentary evidence, such as affidavits or exhibits, filed with the motion or otherwise part of the record in the case." Plaintiffs provide no evidence that the land owned by the Judy Trust "underlies" all or some of the subject right-of-way. The deed by which the Judy Trust acquired the parcel of land that abuts the right-of-way includes no reference to the right-of-way. See Pls.' Prop. Facts, Tab F. However, because the parcel owned by the Judy Trust is situated east of the right-of-way and directly across from the Holloway parcel (see Defendant's Response to Proposed Fact No. 8, above), Defendant assumes that the Judy Trust only claims title to the west one-half of the right-of-way, and that the Holloway is claiming to own the east one-half of the right-of-way. In any event, the evidence presented by Plaintiffs is insufficient to prove whether ownership of the servient estate at this location is split between the abutting landowners or whether one of the abutting landowners owns the servient estate beneath the entire right-of-way. Accordingly, Defendant cannot agree based on the evidence submitted by Plaintiffs that the land owned by Judy Trust "underlies" the subject right-of-way.

**Proposed Fact No. 10:** Julia R. Chalfant Trust owned fee title to the land underlying and abutting the former BNSF right-of-way on April 5, 2004. (A copy of the Trust Deed by which Plaintiffs acquired their property, recorded in Book 470, Page 529(1) in the Reno County Recorder of Deeds Office, is attached at Tab G).

**Defendant's Response:** Defendant agrees that the Julia R. Chalfant Trust ("Chalfant Trust") owned a parcel of land that abuts the subject right-of-way on April 5, 2004 (see map at Def. Ex. 22-12), but disagrees that April 5, 2004 is a relevant date in this case. As set forth in Defendant's summary judgment brief, the claims at issue in the Biery case accrued on April 8, 2004, the date on which the STB issued the relevant NITU in that case. Defendant also does not dispute that the Chalfant Trust owned a parcel of land that abuts the subject right-of-way on April 8, 2004.

However, Defendant does not agree with Plaintiffs' assertion that the land owned by the Chalfant Trust "underlies" the subject right-of-way. Under RCFC 56(h)(1), each fact set forth in Plaintiffs' proposed findings of fact must be supported with "citations to the opposing party's pleadings or to documentary evidence, such as affidavits or exhibits, filed with the motion or otherwise part of the record in the case." Plaintiffs provide no evidence that the land owned by the Chalfant Trust "underlies" all or some of the subject right-of-way. The trust deed by which the Chalfant Trust acquired the parcel of land that abuts the right-of-way conveyed "[a]ll of the Grantors' interest in and to the West Half of the Northeast Quarter of Section 35, Township 23 South, Range 6 West of the 6th P.M.; subject to restrictions of record, oil and gas leases of record, if any, and highway rights of way of record." Pls.' Tab G. This trust deed contains no other legal description of the property conveyed and makes no specific reference to railroad right-of-way that traverses

Section 35. Accordingly, Plaintiffs' evidence does not establish that the Chalfant Trust owns any portion of the land the "underlies" the subject right-of-way.

Moreover, a review of the chain of title for Section 35 shows that in 1889 the railroad obtained an easement by condemnation for its right-of-way across all of Section 35 of Township 23 Range 6 West in Reno County from Thomas Fair for $645.70 for the land and an additional $30 for land damages. Def. Ex. 22; Def. Ex. 22-3 (condemnation instrument); Def. Ex. 23 (excerpt of Valuation Schedule). A decade later, Julia Ann Fair, the widow of Thomas Fair, executed a quitclaim deed conveying a "strip of land one hundred <100> feet wide being fifty <50> feet on each side of the centerline of the railroad . . . as the same is now located and constructed over and across section Thirty-five <35> . . . ." Def. Ex. 22; Def. Ex. 22-4 (Fair quitclaim deed). By this 1899 quitclaim deed from Julia Ann Fair, the railroad paid an additional $3,500, or approximately $296 per acre, to acquire fee title to the land over which it already held an easement. Def. Ex. 22-4; Def. Ex. 23. The quitclaim deed executed by Julia Ann Fair in 1899 contained no use restrictions or other limitations on the interest conveyed. Def. Ex. 22-4. Under Kansas law, this deed conveyed fee title to the segment of the subject right-of-way that traverses Section 35. Because the Chalfant Trusts' predecessors-in-title conveyed fee simple title to right-of-way lands in 1899, they had no interest in those lands to convey to their successors-in-title, including the Chalfant Trust. Accordingly, the Chalfant Trust does not own any interest in the lands within or underlying the right-of-way.

**Proposed Fact No. 11:** Plaintiff K.A.K. Farms, Inc. owned fee title to the land underlying and abutting the former BNSF right-of-way by on April 5, 2004. (A copy of the Warranty Deed, recorded in Book 426, Page 49 in the Reno County Recorder of Deeds Office, by which Plaintiff acquired its property is attached at Tab H).

**Defendant's Response:** Defendant agrees that K.A.K. Farms, Inc. ("KAK Farms") owned a parcel of land that abuts the subject right-of-way on April 5, 2004, but disagrees that April 5, 2004 is a relevant date in this case. As set forth in Defendant's summary judgment brief, the claims at issue in the Biery case accrued on April 8, 2004, the date on which the STB issued the relevant NITU in that case. Defendant also does not dispute that KAK Farms owned a parcel of land that abuts the subject right-of-way on April 8, 2004.

However, Defendant does not agree with Plaintiffs' assertion that the land owned by KAK Farms "underlies" the subject right-of-way. Under RCFC 56(h)(1), each fact set forth in Plaintiffs' proposed findings of fact must be supported with "citations to the opposing party's pleadings or to documentary evidence, such as affidavits or exhibits, filed with the motion or otherwise part of the record in the case." Plaintiffs provide no evidence that the land owned by KAK Farms "underlies" all or some of the subject right-of-way. The warranty deed by which KAK Farms acquired the parcel of land that abuts the right-of-way conveyed the "East Half of the Northwest Quarter of Section 35, Township 23 South, Range 6, less Bar Pit and Highway." Pls.' Tab H. Excepted from this conveyance are "Easements and rights of way of record." Id. This warranty deed contains no metes and bounds description of the property. Accordingly, Plaintiffs' evidence does not establish that KAK Farms owns any portion of the land the "underlies"

the subject right-of-way. Instead, to determine whether KAK Farms owns such an interest, it is necessary to go back through KAK Farms' chain of title.

The chain of title for Section 35 is described above in Defendant's Response to Proposed Fact No. 10 regarding the Chalfant Trust property. The Chalfant Trust property and the KAK Farms property are located across the subject right-of-way from one another. See Def. Ex. 22-12, 22-13 and 22-16 (maps). As described above, the chain of title for Section 35 shows that in 1899 the railroad obtained an easement by condemnation for its right-of-way across all of Section 35, and then a decade later acquired fee title to the same right-of-way lands from Julia Ann Fair, the widow of Thomas Fair for an additional $3,500. Def. Ex. 22; Def. Ex. 22-3; Def. Ex. 22-4. Because KAK Farms' predecessors-in-title conveyed fee simple title to right-of-way lands in 1899, they had no interest in those lands to convey to their successors-in-title, including both KAK Farms and the Chalfant Trust. Accordingly, KAK Farms does not own any interest in the lands within or underlying the right-of-way.

**Proposed Fact No. 12:** American Packing Corporation owned fee title to the land underlying and abutting the former BNSF right-of-way on April 5, 2004. (A copy of the Warranty Deed by which American Packing acquired its property, recorded in Book 479, Page 543(1) in the Reno County Recorder of Deeds Office, is attached at Tab I).

**Defendant's Response:** Defendant agrees that the American Packing Corporation ("APC") owned a parcel of land that partially abuts the subject right-of-way on April 5, 2004 (see map at Def. Ex. 22-14), but disagrees that April 5, 2004 is a relevant date in this case. As set forth in Defendant's summary judgment brief, the claims at issue in the

Biery case accrued on April 8, 2004, the date on which the STB issued the relevant NITU in that case. Defendant also does not dispute that APC owned a parcel of land that abuts the subject right-of-way on April 8, 2004.

However, Defendant does not agree with Plaintiffs' assertion that the land owned by APC "underlies" the subject right-of-way. Under RCFC 56(h)(1), each fact set forth in Plaintiffs' proposed findings of fact must be supported with "citations to the opposing party's pleadings or to documentary evidence, such as affidavits or exhibits, filed with the motion or otherwise part of the record in the case." The only evidence cited by Plaintiffs to support this fact is the warranty deed of April 30, 1987, by which APC acquired a parcel of property east of the subject right-of-way. Pls.' Tab I. This warranty deed describes the parcel conveyed to APC as extending "*to a point on the East right-of-way line of the A.T. & S.F. R.R.* that is 645.0 feet North of the South line of said Southeast 1/4; thence South *along the said right-of-way line* 645.0 feet to the place of beginning[.]" Id. Excepted from this conveyance are "Easements, restrictions and rights-of-way of record, if any." Id. Although this deed conveys a parcel of property that abuts the subject right-of-way, the deed itself does not purport to convey any ownership interest in the lands within or underlying the right-of-way. Accordingly, Defendant does not agree that the evidence cited by Plaintiffs supports the assertion that APC owns some unspecified portion of the lands underlying the right-of-way.

Moreover, a review of the documents in the chain-of-title for this segment of the subject right-of-way shows that after the railroad acquired an easement by condemnation, it subsequently obtained fee title by a quitclaim deed to "the West sixty-six (66) feet of the west half (½) of the South East quarter (1/4) of Section number Twenty-three (23) in

Township number Twenty-three, Range number six (6) East in Reno County, Kansas." Def. Ex. 22; Def. Ex. 22-5. Because parts of the properties owned by Plaintiffs APC and Collins abut these lands that the railroad acquired in fee, those Plaintiffs cannot establish an ownership interest in the subject right-of-way based solely on the contention that they own land abutting the railroad land.

**Proposed Fact No. 13:** Collins Industries, Inc. owned fee title to the land underlying and abutting the former BNSF right-of-way on April 5, 2008. (A copy of the Warranty Deed by which Collins Industries, Inc., by which Collins Industries, Inc. acquired its property, recorded in Book 468, Page 42 in the Reno County Recorder of Deeds Office, is attached at Tab J).

**Defendant's Response:** Defendant disagrees that Collins Industries, Inc. ("Collins") owned a parcel of land that abuts and underlies the subject right-of-way on April 5, 2004. Defendant also disagrees that April 5, 2004 is a relevant date in this case. As set forth in Defendant's summary judgment brief, the claims at issue in the Biery case accrued on April 8, 2004, the date on which the STB issued the relevant NITU in that case. In any event, Collins did not own any land abutting the subject right-of-way in April of 2004.

In support of their assertion that Collins owned a parcel of land abutting and underlying the subject right-of-way, Plaintiffs submit a warranty deed dated July 31, 1984, by which Collins conveyed a parcel of property west of the subject right-of-way to the City of South Hutchinson, Kansas. Pls.' Tab J. This warranty deed describes the parcel conveyed by Collins to the City as extending "to a point 50.0 feet Easterly from, measured at right angles to the center line of The Atchison, Topeka and Santa Fe Railway's H & S District main track, as now located and operated; thence in a Northerly

direction along a line 50.0 feet Easterly from and parallel with said main track center line, a distance of 880.0 feet, more or less[.]" Id. Accordingly, this deed only shows that Collins owned a parcel of property abutting the right-of-way prior to July 31, 1984, and that Collins conveyed that parcel to the City of South Hutchinson on that date. This evidence contradicts Plaintiffs' assertion that Collins owned property abutting and underlying the subject right-of-way in April of 2004.

Moreover, a review of the deeds in the chain-of-title for this property after July 1, 1984, shows that the parcel of land abutting the right-of-way was conveyed by the City of South Hutchinson to Collins Bus Corporation by a Special Warranty Deed dated October 26, 2006. Def. Ex. 24. Then, by a General Corporation Warranty Deed dated October 31, 2006, the Collins Bus Corporation conveyed this property to Collins Industries, Inc. Def. Ex. 25. Accordingly, the available title evidence demonstrates that Collins Industries, Inc. did not own a parcel of land abutting and/or underlying the subject right-of-way as of April 8, 2004, which is the relevant date in this case.

**Proposed Fact No. 14:** The Burlington Northern and Santa Fe Railway Company ("BNSF") formerly held an easement for a railroad right-of-way between milepost 0.62 and milepost 3.50, near South Hutchinson in Reno County, Kansas, a distance of approximately 2.88 miles (the "Railroad Line"). (*See* Tab K).

**Defendant's Response:** Defendant disagrees. Although portions of the subject right-of-way were acquired by the railroad (BNSF and its predecessors) as an easement, BNSF's predecessor acquired fee simple title to certain segments of the 2.88-mile right-of-way. See Defendant's Response to Plaintiffs' Proposed Fact Numbers 10 and 11, above.

**Proposed Fact No. 15:** On February 20, 2004, BNSF filed with the Surface Transportation Board ("STB") a Notice of Exemption to abandon the railroad corridor between milepost .62 and milepost 3.50 in South Hutchinson, Kansas. (A copy of the Abandonment Exemption is attached hereto at Tab K, and the accompanying Environmental Assessment is attached at Tab K-1).

**Defendant's Response:** Defendant disagrees in part. Defendant agrees that on February 20, 2004, BNSF filed with the STB a verified notice of exemption under 49 C.F.R. § 115.250 seeking exemption from the requirements of 49 U.S.C. § 10903. See Def. Ex. 14 (excerpt of Abandonment Exemption filed by BNSF). Through the exemption process, BNSF obtained authorization to abandon the rail line between milepost 0.62 and milepost 3.50, near South Hutchinson in Reno County, Kansas. See Pls.' Tab K. However, the abandonment of a rail line, which is regulated by the STB, is not necessarily the same as abandoning the railroad's property interests in the railroad corridor over which that line is located. See Biery Summary Judgment Brief at 10 n.32.

**Proposed Fact No. 16:** BNSF certified to the STB that "no local traffic has moved over the line for at least 2 years [and] there is no overhead traffic to be rerouted." (*See* Tab K).

**Defendant's Response:** Defendant agrees that BNSF's notice of exemption included this certification. A copy of the full certification/verification filed by BNSF as part of its Abandonment Exemption is included for the record as Defendant's Exhibit 14.

**Plaintiffs' Proposed Fact No. 17:** On February 25, 2004, the City of South Hutchinson, Kansas, filed a request for the issuance of a Notice of Interim Trail Use ("NITU") pursuant to 16 U.S.C. 1247(d) of the National Trails System Act. (*See* Tab L).

**Defendant's Response:** Defendant agrees in part. The Statement of Willingness to Assume Financial Responsibility that the City of South Hutchinson filed with the STB is dated January 30, 2004. Def. Ex. 16. This Statement was first received by the STB on February 25, 2004. Id.; see also Pls.' Tab L. By a letter dated March 24, 2004, BNSF indicated that it had no objection to the issuance of a NITU requested by the City of South Hutchinson. Def. Ex. 17.

**Plaintiffs' Proposed Fact No. 18:** On April 5, 2004, the STB issued a NITU for the approximately 2.88 miles between milepost .62 and milepost 3.50 of the BNSF right-of-way in South Hutchinson, Kansas. (A copy of the April 5, 2004, NITU is attached at Tab L).

**Defendant's Response:** Defendant disagrees. The referenced NITU was not issued by the STB to the parties or the public until April 8, 2004, the service date identified at the top of the first page of the decision. See Pls.' Tab L.

**Plaintiffs' Proposed Fact No. 19:** The April 5, 2004, the STB granted BNSF and the City of South Hutchinson, Kansas, 180 days to negotiate a Trail Use Agreement. The April 5, 2004, NITU was set to expire on October 7, 2004. (*See* Tab L).

**Defendant's Response:** Defendant disagrees in part. The referenced NITU was not issued until April 8, 2004. See Defendant's Response to Plaintiffs' Proposed Fact No. 18; Pls.' Tab L. Defendant agrees that the NITU issued on April 8, 2004, granted BNSF

and the City 180 days to negotiate a railbanking and interim trial use agreement.

**Plaintiffs' Proposed Fact No. 20:** On September 13, 2004, and September 14, 2004, the City of South Hutchinson, Kansas, filed requests with the STB to extend the NITU negotiating period for an additional 180 days. (*See* Tab M).

**Defendant's Response:** Defendant agrees in part. By letter dated September 10, 2004, the City of South Hutchinson requested an extension of an additional 180 days to negotiate a railbanking and interim trail use agreement with BNSF. Def. Ex. 18. By a separate letter dated September 10, 2004, and received by the STB on September 13, 2004, BNSF also requested a 180-day extension of the negotiating period. Def. Ex. 19.

**Plaintiffs' Proposed Fact No. 21:** On October 4, 2004, the STB extended the NITU for an additional 180 days. (A copy of the October 4, 2003, NITU is attached at Tab M).

**Defendant's Response:** Defendant agrees that by a decision issued on October 4, 2004, the STB granted the requests by BNSF (Def. Ex. 19) and the City (Def. Ex. 18) to extend the negotiation period provided by the NITU issued on April 8, 2004, by an additional 180 days. Defendant agrees that a copy of the STB's decision of October 4, 2004, is attached to Plaintiffs' Proposed Findings of Fact at Tab M.

**Plaintiffs' Proposed Fact No. 22:** Pursuant to this NITU and the Trails Act, on March 23, 2005, a Trail Use Agreement was reached between BNSF and the City of South Hutchinson, Kansas.

**Defendant's Response:** Defendant agrees that on March 23, 2005, BNSF and the City of South Hutchinson entered into a railbanking and interim trail use agreement. A copy of this agreement is included for the record as Defendant's Exhibit 20. BNSF notified the STB of this agreement by a letter dated March 24, 2005. Def. Ex. 21. This agreement – identified as a "Railbanking and Donation Contract" – is also referenced in the quitclaim deed of February 17, 2006, from BNSF to the City of South Hutchinson that is included in the record as Pls.' Tab N.

**Plaintiffs' Proposed Fact No. 23:** On February 17, 2006, pursuant to the Trails Act, BNSF consummated the Trails Use Agreement by transferring the former Hutchinson, Oklahoma, and Gulf and Hutchinson & Southern rights-of-way to the City of South Hutchinson, Kansas by Quitclaim Deed. (A copy of this Quitclaim Deed is recorded in Book 582, Page 8 in the Reno County Recorder of Deeds Office and attached at Tab N).

**Defendant's Response:** Defendant agrees in part. BNSF entered into a railbanking and trails use agreement on March 23, 2005. See Def. Ex. 20. BNSF subsequently conveyed its interest in the subject right-of-way and other properties by a quitclaim deed dated February 17, 2006. This conveyance is subject to terms of the referenced Railbanking and Donation Contract of March 23, 2005, and the terms of the NITU issued by the STB.

**Plaintiffs' Proposed Fact No. 24:** The Quit Claim Deed expressly provides that this conveyance was made pursuant to the Trails Act. To Wit: "Subject, to the terms of that certain Railbanking and Donation Contract, dated 3/23, 2005 ("Contract"), which terms shall be incorporated herein, this conveyance is dependent upon and pursuant to the issuance of a Notice of Interim Trail Use ("NITU") in Surface Transportation Board ("STB") Docket No. Ab-6 *** Subject, to interpretation pursuant to and in conformity with Section 8(d) of the National Trails Systems Act, 16 U.S.C. 1247(d), and the rules and regulations of the STB related thereto, all as may be amended from time to time *** ." (*See* Tab N).

**Defendant's Response:** Defendant agrees that this proposed fact accurately quotes portions of the referenced quitclaim deed that is included in the record at Plaintiffs' Tab N. The quitclaim deed further states that the Donee (the City) "acknowledges that any interim trail use by Donee or its assignees shall be subject to the possibility of future restoration of rail service and/or BNSF's retained interests pursuant to the Contract and/or federal law." Tab N. The conveyance to the City is also expressly subject to the "Donee's obligation that interim trail use shall not impair future restoration of rail service pursuant to the National Trails System Act, as amended." Finally, the quitclaim deed expressly reserves unto BNSF "the right to reactivate and restore rail service on the Property."

**Plaintiffs' Proposed Fact No. 25:** The City is not a railroad and is not authorized by any state or by the federal Surface Transportation Board to operate a railroad.

**Defendant's Response:** This proposed fact is not supported by citations to any evidence in the record, as required by RCFC 56(h)(1). Defendant is not required to respond to

proposed facts that are not properly supported. Moreover, this proposed fact is not relevant or material to any of the issues presented in Plaintiffs' motion for partial summary judgment or Defendant's cross-motion. Subject to these objections, Defendant does not dispute that the City of South Hutchinson is not a railroad corporation.

**Plaintiffs' Proposed Fact No. 26:** Plaintiffs own fee title to the land in Reno County, Kansas that adjoins and underlies a portion of the railroad right-of-way originally established as an easement for the use of BNSF and was subject to the April 5, 2004, NITU.

**Defendant's Response:** Defendant disagrees. This generalized proposed fact is not supported by citations to any evidence in the record, as required by RCFC 56(h)(1). Accordingly, no response is required. Moreover, Defendant notes that this proposed fact is duplicative of proposed fact numbers 7 through 13, above. Defendant incorporates its response to those proposed facts by reference.

**Plaintiffs' Proposed Fact No. 27:** The Plaintiffs owned this land on April 5, 2004. (See Tabs D through J).

**Defendant's Response:** Defendant disagrees for the reasons set forth in more detail in its responses to Plaintiffs' proposed findings of fact numbers 7 through 13, above.

Respectfully submitted this 2nd day of June, 2008,

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

s/ Kristine S. Tardiff
KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577
E-MAIL: kristine.tardiff@usdoj.gov

AYAKO SATO
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
60 D Street, N.W., 3rd Flr. Room 3133
Washington, DC 20004
TEL: (202) 305-0239
FAX: (202) 305-0506
E-MAIL: ayako.sato@usdoj.gov

Attorneys for Defendant

Of Counsel:

ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Office of General Counsel
395 E Street, SW
Washington, DC 20024