IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DOROTHY L. BIERY, *et al.*, Plaintiffs, | ) | No. 07-693L (consolidated with No. 07-675L) |
| v. | ) | Honorable Nancy B. Firestone |
| THE UNITED STATES OF AMERICA, Defendant. | ) | |

**DEFENDANT'S RESPONSE TO THE PANKRATZ PLAINTIFFS' PROPOSED FINDINGS OF FACT**

Pursuant to RCFC 56(h), Defendant submits these responses to the Pankratz Plaintiffs' Proposed Findings of Uncontroverted Fact (Case No. 07-675L, Doc. 33).

**Proposed Fact No. 1:** The St. Louis Wichita and Western Railway Company acquired its railroad right-of-way by conveyance from private landowners and from a Condemnation Right-of-Way recorded on October 23, 1879, and October 25, 1879, respectively. *See* Tab A.

**Defendant's Response:** Defendant does not agree that the St. Louis Wichita and Western Railway Company acquired its railroad right-of-way by conveyance from private landowners and from a Condemnation Right-of-Way recorded on October 23, 1879, and October 25, 1879. The railroad acquired the subject 10.6 miles of the right-of-way from milepost 483.62 to milepost 494.22 through condemnation and various voluntary grants. Moreover, Defendants do not agree that Tab A contains true and correct copies of the relevant source conveyance documents for the named Pankratz Plaintiffs. The only relevant source documents abutting the named Pankratz Plaintiffs'

properties are the condemnation record in the form of a Commissioners' report that is recorded in Deed Book S, page 466 recorded November 4, 1879, and the quitclaim deed that is recorded in Deed Book V, page 5 recorded November 3, 1879. See Declaration of Cindi Straup in Pankratz v. United States ("Pankratz Straup Decl.) (Def. Ex. 10). A copy of these documents are included as Defendant's Exhibit 10-1 (Commissioners' Report, Book S, page 466) and Defendant's Exhibit 10-1 (quitclaim deed, Book V, page 5).

**Proposed Fact No. 2:** Tab A represents a true and accurate copy of the easement conveyance granted by C.R. Nol and Laura Nol. to the St. Louis Wichita and Western Railway Company on October 23, 1879, recorded in Deed Book Vol. S, Page 465 in the Butler County Recorder of Deed's Office. (A true and accurate copy of this deed is attached as Tab A. Tab A-1 contains and enlarged copy and the transcribed text of this deed.).

**Defendant's Response:** Defendants do not agree that Tab A contains true and accurate copy of a relevant source conveyance document for the named Pankratz Plaintiffs. See Def. Ex. 10 (Pankratz Straup Decl., ¶ 7). The only relevant source documents abutting the named Pankratz Plaintiffs' properties are the condemnation record, in the form of a Commissioners' report, that is recorded in Deed Book S, page 466 recorded November 4, 1879, and the quitclaim deed that is recorded in Deed Book V, page 5 recorded November 3, 1879. Id. A copy of these documents are included as Defendant's Exhibits 10-1 and 10-2.

**Proposed Fact No. 3:** This conveyance explicitly states that the easement was granted solely

"for a right-of-way" and that "[i]n Case said Railway Company shall fail or cease to use said land for said purposes then this grant and title shall revert to the undersigned grantors heir heir or assigns." See Tab A.

**Defendant's Response:** Defendant disagrees. As stated in Defendant's Responses to Proposed Fact No. 1, 2 and 4, the conveyance document in Tab A of Plaintiffs' Proposed Finding of Uncontroverted Fact is not a relevant source conveyance document for the named Pankratz Plaintiffs.

**Proposed Fact No. 4:** Tab A also represents a true and accurate copy of the Condemnation Order granting the St. Louis Wichita and Western Railway Company a right-of-way easement across the described land on October 25, 1879, recorded in Deed Book Vol. S, Page 466 in the Butler County Recorder of Deed's Office. (A true and accurate copy of this deed is attached as Tab A. Tab A-2 contains an enlarged copy of this deed and the transcribed text of this deed.).

**Defendant's Response:** Defendants do not agree that Tab A contains a true and accurate copy of the Condemnation Order. The only relevant source documents abutting the named Pankratz Plaintiffs' properties are the condemnation record, in the form of a Commissioners' report, that is recorded in Deed Book S, page 466 recorded November 4, 1879, and the quitclaim deed that is recorded in Deed Book V, page 5 recorded November 3, 1879. See Def. Ex. 10. A copy of these documents are included as Defendant's Exhibit 10-1 and 10-2.

**Proposed Fact No. 5:** The Pankratz Family originally acquired its property through a warranty deed on April 27, 2004, recorded in Book 1246, Page 178 of the Butler County Recorder of Deeds office. (A copy of the Warranty Deed by which the Pankratz's acquired title to this property is attached as Tab B.)

**Defendant's Response:** Defendant agrees the Jerramy and Erin Pankratz acquired a parcel of property in Butler County, Kansas, by a warranty deed dated April 27, 2004. Defendant does not dispute the authenticity of the copy of that deed included in the record as Pls.' Tab B.

**Proposed Fact No. 6:** The Pankratz's Family property underlies and abuts the abandoned railroad right-of-way that was subject to the September 13, 2004, Notice of Interim Trail Use ("NITU") and the June 1, 2005, NITU extending the negotiating period for Butler County Economic Development and Butler County to negotiate a Trail Use Agreement. (A copy of the September 13, 2004, NITU is attached as Tab C, and a copy of the June 1, 2005, NITU is attached as Tab D. (See also Pankratz's Warranty Deed at Tab B)).

**Defendant's Response:** Defendant agrees that Jerramy and Erin Pankratz owned a parcel of land that abuts the subject right-of-way (see map at Def. Ex. 10-3), and that they owned this property in 2004 and in 2005. However, Defendant does not agree with Plaintiffs' assertion that the land owned by the Pankratz family "underlies" the subject right-of-way, and therefore disagrees with the assertion that the Pankratz family's land was subject to either of the referenced NITUs.

Under RCFC 56(h)(1), each fact set forth in Plaintiffs' proposed findings of fact must be supported with "citations to the opposing party's pleadings or to documentary

evidence, such as affidavits or exhibits, filed with the motion or otherwise part of the record in the case." Plaintiffs provide no evidence that the land owned by the Pankratz family "underlies" all or some of the subject right-of-way. The only evidence submitted by Plaintiffs is a copy the warranty deed by which the Pankratzs acquired their property on April 27, 2004. Tab B. The legal description of the property acquired by this deed is "Lot 4, Block B, Prairie Meadow, Butler County, Kansas." Id. This parcel is conveyed "[s]ubject to all easements, restrictions, reservations and covenants, if any, now of record." Id. However, the deed does not identify any such easements. This description is insufficient to establish whether the Pankratz own land underlying the entire right-of-way, the land underlying half of the right-of-way (to the center line), or none of land underlying the right-of-way (because that land is owned by the abutting landowner on the other side of the right-of-way). Accordingly, Defendant cannot agree based on the evidence submitted by Plaintiffs that the land owned by Jerramy and Erin Pankratz "underlies" the subject right-of-way.

**Proposed Fact No. 7:** Donald E. Wedell and Evangeline Wedell, husband and wife, acquired their property, a portion of which underlies the railroad right-of-way, by warranty deed in 1971, recorded in Book 305, Page 48, in the Butler County Recorder of Deed's Office. (A copy of the Warranty Deed by which the Wedell's acquired title to this property is attached as Tab E.)

**Defendant's Response:** Defendant agrees the Donald and Evangeline Wedell acquired a parcel of property in Butler County, Kansas, by a general warranty deed dated February 2, 1971, and recorded in Butler County on February 3, 1971, in Book 305 at page 48.

Defendant does not dispute the authenticity of the copy of that deed included in the record as Pls.' Tab E.

However, Defendant disagrees with Plaintiffs' assertion that the land owned by the Wedells "underlies" the subject right-of-way. Under RCFC 56(h)(1), each fact set forth in Plaintiffs' proposed findings of fact must be supported with "citations to the opposing party's pleadings or to documentary evidence, such as affidavits or exhibits, filed with the motion or otherwise part of the record in the case." Plaintiffs provide no evidence that the land owned by the Wedells "underlies" all or some of the subject right-of-way. The only evidence submitted by Plaintiffs is a copy the 1971 warranty deed by which the Wedells acquired their property. Tab E (Doc. 33-2, pp. 15-16). This warranty deed identifies the property conveyed by the lot number in a particular block of an existing subdivision. Id. There is no reference to the subject right-of-way in the legal description of the lot conveyed, nor anywhere else in the deed. Although Defendant does not dispute that the Wedell property abuts the subject right-of-way (see map at Def. Ex. 10-4), the legal description in the deed is insufficient to establish whether the Wedells own land underlying the entire right-of-way, the land underlying half of the right-of-way (to the center line), or none of land underlying the right-of-way (because that land is owned by the abutting landowner on the other side of the right-of-way). Accordingly, Defendant cannot agree based on the evidence submitted by Plaintiffs that the land owned by the Wedells "underlies" the subject right-of-way.

**Proposed Fact No. 8:** The Wedell's property underlies and abuts the abandoned railroad right-of-way that was subject to the September 13, 2004, Notice of Interim Trail Use ("NITU") and the June 1, 2005, NITU extending the negotiating period for Butler County Economic Development and Butler County to negotiate a Trail Use Agreement. (See Tabs C, D, and E).

> **Defendant's Response:** Defendant agrees that the Wedells owned a parcel of property that abuts the subject right-of-way in 2004 and in 2005. See Def. Ex. 10-4 (map). However, for the reasons stated in its response to Proposed Fact No. 7, above, the evidence cited by Plaintiffs does not support the assertion that the land owned by the Wedells "underlies" the subject right-of-way. Accordingly, Plaintiffs have not proven that they own and portion of the right-of-way that is subject to either of the two referenced NITUs. Defendant also disagrees with the assertion that the NITU that was issued on June 2, 2005 (not June 1, 2005) "extended" the negotiating period authorized in the NITU that was issued by the STB on September 14, 2004 (not September 13, 2004). On this last point, Defendant incorporates by reference its responses to Plaintiffs' Proposed Fact Nos. 27–31, *infra*, and the legal arguments on this issue set forth in its memorandum in support of its cross-motion for summary judgment and opposition to Plaintiffs' motions for partial summary judgment.

**Proposed Fact No. 9:** Thad J. Colling acquired his property, a portion of which underlies the railroad right-of-way, by Statutory Warranty Deed in 1986, recorded in Book 389, Page 169, of the Butler County Recorder of Deed's Office. (A copy of the Statutory Warranty Deed by which Colling acquired title to his property is attached as Tab F).

**Defendant's Response:** Defendant agrees that Thad J. Colling acquired a parcel of property in Butler County, Kansas, by a Statutory Warranty Deed, executed on October 26, 1986, and recorded in the County records on December 2, 1986, in Book 389, at page 169. Pls.' Tab F. Defendant does not dispute the authenticity of the copy of that deed included in the record as Plaintiffs' Tab F. However, Defendant does not agree that a portion of the Colling property underlies the subject railroad right-of-way. The deed, which is the only evidence cited by Plaintiffs in support of this proposed fact, does not support that proposed fact. See Def.'s Resp. to Pls.' Proposed Fact No. 10, *infra*.

**Proposed Fact No. 10:** Colling's property underlies and abuts the abandoned railroad right-of-way that was subject to the September 13, 2004, Notice of Interim Trail Use ("NITU") and the June 1, 2005, NITU extending the negotiating period for Butler County Economic Development and Butler County to negotiate a Trail Use Agreement. (See Tabs C, D, and F).

**Defendant's Response:** Defendant agrees in part. Defendant agrees that the property acquired by the Colling in 1986 abuts the subject right-of-way. Although this is not evident from the cited Statutory Warranty Deed alone, Defendant has verified the location of the property by looking at parcel maps maintained by Butler County. However, the evidence submitted by Plaintiffs does not establish that this property "underlies" the subject right-of-way, nor have Plaintiffs cited any evidence in this proposed fact to support the assertion that this right-of-way has been "abandoned," as required by RCFC 56(h)(1). Defendant disputes both of those factual assertions.

The Statutory Warranty Deed at Tab F describes the property conveyed to the Colling only by reference to a subdivision plat as follows: "Lots 17, 18, 19, 20 and 21 in

Block 14, in the First Addition to Kellogg Heights, a Subdivision in the W ½ of Section 23, Township 27 South, Range 3 East of the 6th P.M., in Butler County, Kansas." Pls.' Tab F (Doc. 33-2, p. 17 of 20). The deed conveys this property subject to "easements, restrictions, covenants of record if any." Id. The deed cited by Plaintiffs is insufficient to establish whether the Colling owns any portion of the lands underlying the subject right-of-way. Accordingly, Defendant cannot agree based on the evidence submitted by Plaintiffs that the land owned by the Colling "underlies" the subject right-of-way. For the same reasons, Defendant does not agree that any portion of Colling's property was subject to the referenced NITUs.

Moreover, to the extent this proposed fact implies that Thad J. Colling was the sole owner of the parcel of property he acquired in 1986 at the time that either of the referenced NITUs was issued, Defendant disagrees with that proposed fact. According to the Butler County deed records, on December 10, 1992, Thad J. Collings executed a General Warranty – Joint Tenancy Deed conveying that same property to himself and Jennifer L. McLaughlin. A copy of this deed is included as Defendant's Exhibit 13.

**Proposed Fact No. 11:** The Thick Gon Mar Revocable Trust, Thick Gon Mar, Trustee ("Thick Gon Mar"), acquired fee title to property in Butler County, Kansas, by Quit Claim Deed recorded in the Butler County Recorder of Deed's Office Book 1072, Page 191, on June 28, 2002. (A copy of the Quit Claim Deed by which Thick Gon Mar acquired its property is attached as Tab G).

**Defendant's Response:** Defendant agrees that the Thick Gon Mar Revocable Trust acquired property in Butler County by a quitclaim deed executed and recorded on June

28, 2002. Defendant does not dispute the authenticity of the copy of this deed that is included at Plaintiffs' Tab G. However, under Kansas law, "'a quitclaim deed to land will convey to the grantee all the rights, interests, title and estate of the grantor in and to the land, unless otherwise specified by the deed itself.'" Platt v. Woodland, 246 P. 1017, 1019 (Kan. 1926) (citation omitted). The Trust only acquired "fee title" to the property identified in its quitclaim deed if that is the interest held by the grantors.

**Proposed Fact No. 12:** Thick Gon Mar's property underlies and abuts the abandoned railroad right-of-way that was subject to the September 13, 2004, Notice of Interim Trail Use ("NITU") and the June 1, 2005, NITU extending the negotiating period for Butler County Economic Development and Butler County to negotiate a Trail Use Agreement. (See Tabs C, D, and G).

**Defendant's Response:** The deed relied on by the Thick Gon Mar Trust to establish that they own the land underlying the subject right-of-way also contains no specific reference to the right-of-way. See Pls.' Tab G (Doc. 33-2, pp. 19-20). However, Defendant's review of the legal description of the Mar Trust's property and the Butler County maps showing the location of that property confirm that the right-of-way traverses that property (i.e., the Mar Trust owns the property on both sides of the right-of-way). See Def. Ex. 10-6 (map). Accordingly, Defendant does not dispute that the Mar Trust's property underlies and abuts the subject railroad right-of-way.

However, the evidence cited by Plaintiffs does not support the assertion that the subject railroad right-of-way was "abandoned." The question of whether this right-of-way was abandoned is a disputed issue in this case that is addressed in both parties' summary judgment briefs.

**Proposed Fact No. 13:** Michael A. Woods and Marcia J. Woods, husband and wife, owned fee title to property in Butler County, Kansas. The Woods acquired their title by Joint Tenancy Warranty Deed recorded with the Butler County Recorder of Deed's Office on June 5, 1997. (A copy of the Joint Tenancy Warranty Deed is attached as Tab H).

> **Defendant's Response:** Defendant agrees the Michael and Marcia Woods acquired a parcel of property in Butler County, Kansas, by a Joint Tenancy Warranty Deed dated May 30, 1997, and recorded in the Butler County Recorder of Deeds Office on June 5, 1997. Defendant does not dispute the authenticity of the copy of that deed included in the record as Pls.' Tab H.

**Proposed Fact No. 14:** The Woods' property underlies and abuts the abandoned railroad right-of-way that was subject to the September 13, 2004, Notice of Interim Trail Use ("NITU") and the June 1, 2005, NITU extending the negotiating period for Butler County Economic Development and Butler County to negotiate a Trail Use Agreement. (See Tabs C, D, and H).

> **Defendant's Response:** Defendant agrees in part. Defendant agrees that the property acquired by the Woods in 1997 abuts the subject right-of-way. See Def. Ex. 10-7 (map). Although this is not evident from the cited deed alone, Defendant has verified the location of the Woods property by looking at parcel maps maintained by Butler County. However, the evidence submitted by Plaintiffs does not establish that this property "underlies" the subject right-of-way, nor have Plaintiffs cited any evidence in this proposed fact to support the assertion that this right-of-way has been "abandoned," as required by RCFC 56(h)(1). Defendant disputes both of those factual assertions.

The warranty deed at Tab H describes the property conveyed to the Woods only by reference to a subdivision plat as follows: "Lot Numbered 5, Block Lettered "B", PRAIRIE MEADOW, a subdivision in the Northeast Quarter of Section Numbered 25, Township Numbered 27 South, Range 3 East of the 6th P.M., in Butler County, Kansas." Pls.' Tab H (Doc. 33-3, p. 1 of 16). The deed conveys this property subject to "easements, restrictions, reservations and rights-of-way of public records," but the railroad right-of-way is not specifically identified in this deeds as such an easement or right-of-way. Id. The deed cited by Plaintiffs is insufficient to establish whether the Woods own land underlying the entire right-of-way, the land underlying half of the right-of-way (to the center line), or none of land underlying the right-of-way (because that land is owned by the abutting landowner on the other side of the right-of-way). Accordingly, Defendant cannot agree based on the evidence submitted by Plaintiffs that the land owned by the Woods "underlies" the subject right-of-way.

**Proposed Fact No. 15:** Floyd E. Myers and Becky M. Myers obtained fee title to property in Butler County, Kansas by Quit Claim Deed recorded in the Butler County Recorder of Deed's Office on June 13, 1995 in Book 742, Page 70. (A copy of the Quit Claim Deed by which the Myers 'acquired their property is attached as Tab I).

**Defendant's Response:** Defendant agrees in part. Defendant agrees that Floyd and Becky Myers acquired in interest in land in Butler County through a quitclaim deed executed on April 1, 1995, and recorded in the Butler County Recorder of Deed's Office on June 13, 1995, in Book 742, at page 70. Defendant does not dispute the authenticity of the copy of this deed that is included in the record as Plaintiffs' Tab. I. However,

under Kansas law, "'a quitclaim deed to land will convey to the grantee all the rights, interests, title and estate of the grantor in and to the land, unless otherwise specified by the deed itself.'" Platt v. Woodland, 246 P. 1017, 1019 (Kan. 1926) (citation omitted). The Myers only acquired "fee title" to the property identified in their quitclaim deed if the grantors held fee title.

**Proposed Fact No. 16:** The Myers' property underlies and abuts the abandoned railroad right-of-way that was subject to the September 13, 2004, Notice of Interim Trail Use ("NITU") and the June 1, 2005, NITU extending the negotiating period for Butler County Economic Development and Butler County to negotiate a Trail Use Agreement. (See Tabs C, D, and I).

**Defendant's Response:** Defendant agrees in part. Defendant agrees that the property acquired by the Myers by the quitclaim deed of April 1, 1995 (Pls.' Tab I) abuts the subject right-of-way. See Def. Ex. 10-8 (map). Although this is not evident from the quitclaim deed alone, Defendant has verified the location of the property by looking at parcel maps maintained by Butler County. However, the evidence submitted by Plaintiffs does not establish that the Myers' property "underlies" the subject right-of-way, nor have Plaintiffs cited any evidence in this proposed fact to support the assertion that this right-of-way has been "abandoned," as required by RCFC 56(h)(1). Defendant disputes both of those factual assertions.

The quitclaim deed at Tab I describes the property quitclaimed to the Myers only by reference to a subdivision plat as follows: "Kellogg Hgts 1st Addition, Lots 10, 11, 12, 13, 14, 15, 16; Block 14, Section 23, Township 27, Range 3 East, Butler County, Kansas." Tab I (Doc. 33-3, p. 3 of 16). This deed, which is the only evidence cited by

Plaintiffs to support the proposed facts relating to the Myers' ownership of property, is insufficient to establish whether the Myers own land underlying any of the subject right-of-way. Accordingly, Defendant cannot agree based on the evidence submitted by Plaintiffs that the land owned by the Myers "underlies" the subject right-of-way. For the same reasons, Defendant disputes the assertion the Myers' property was subject to the NITUs issued by the STB on September 14, 2004 (Tab C), and on June 2, 2005 (Tab D).

**Proposed Fact No. 17:** In January 2002, the STB issued a notice of an Acquisition Exemption by Butler County, Kansas, that applied to the 10.6 miles of the original St. Louis Wichita and Western right-of-way then used by the St. Louis Wichita and Western's successor, the Burlington Northern and Santa Fe Railway Company ("BNSF") for operation of a railroad. (*See* STB Docket No. FR-4915-00-P, January 11, 2002; a copy of which is attached as Tab J).

**Defendant's Response:** Defendant agrees in part. Defendant agrees that on January 11, 2002, the STB issued or served an Acquisition Exemption notice in STB Finance Docket No. 34139. A copy of this Acquisition Exemption appears at Plaintiffs' Tab J. In the notice of exemption filed by the County under 49 C.F.R. § 1150.31, the County proposed to acquire (by donation) approximately 10.6 miles of rail line from BNSF. The referenced Acquisition Exemption at Tab J does not state whether this 10.6-mile segment of BNSF's rail lines was previously part of the St. Louis Wichita and Western right-of-way, but Defendant does not dispute this fact. See Def. Ex. 3, p. 3 (BNSF Historic Report, p. 3). Moreover, Defendant notes that this historical fact is not relevant or material to any of the issues presented in Plaintiffs' motion for partial summary judgment.

**Proposed Fact No. 18:** This portion of the BNSF right-of-way runs between milepost 483.62 in Augusta, Kansas, and milepost 494.22, near Andover, Kansas. (See Tab J).

**Defendant's Response:** Defendant agrees.

**Proposed Fact No. 19:** Butler County, Kansas, acquired the right-of-way from BNSF on or about December 21, 2001, with the intent of reinstating the operation of a railroad by a third party rail operator. (See Tab J, fn. 1, which states as follows: "The County states that the line is currently out of service and will be rehabilitated after the acquisition is consummated. The County further states that it is its intent to have the above line operated by a yet-to-be-determined third party rail operator. Anticipated rail operations by a third party over BNSF's trackage are subject to the Board's approval or exemption.")

**Defendant's Response:** Defendant agrees in part. The cited document states that the County's acquisition of the subject rail line was "expected to be consummated on or shortly after December 19, 2001[.]" Defendant notes that the date of this acquisition does not appear to be relevant or material to any issues presented in Plaintiffs' motion for partial summary judgment. Defendant agrees that this proposed fact accurately quotes from the referenced Acquisition Notice.

**Proposed Fact No. 20:** Subsequently, the County determined that operation of a railroad on the right-of-way was no longer feasible and sought authority from the STB to abandon railroad service on the right-of-way and filed a Notice of Exemption under 49 C.F.R. 1152.50 seeking STB authority to abadonon railroad service on this right-of-way. (STB Docket No. AB-870X, Abandonment Exemption, Decided June 24, 2004, a copy of which is attached at Tab K).

**Defendant's Response:** Defendant agrees in part. Defendant agrees that the County filed a notice of exemption seeking authorization to abandon the 10.6-mile rail line in question. See Pls.' Tab K. The reasons for this request are not stated in the notice of Abandonment Exemption that is cited by Plaintiffs and included at Tab K. However, Defendant notes that in the Environmental Report filed by the County with its exemption notice, the County stated that it had acquired the line by donation from BNSF in 2001 and that it had intended to rehabilitate the line and locate an operator to preserve rail service in the area, but had not been able to locate a suitable operator. Def. Ex. 2, p. 1 (Environmental Report).

**Proposed Fact No. 21:** The STB's order authorizing abandonment found, "no local or overhead traffic had moved over the line for the previous two years." (*See* Tab K).

**Defendant's Response:** Defendant disagrees. The referenced Abandonment Exemption that was issued or served on July 2, 2004, states that Butler County "has certified that: (1) no local or overhead traffic has moved over the line for at least two years." Tab K, p. 1 (Doc. 33-3, p. 6 of 16).

**Proposed Fact No. 22:** The STB's order of July 2, 2004, provided that "trail use/rail banking requests under 49 C.F.R. 1152.29 must be filed by July 12, 2004." (*See* Tab K).

**Defendant's Response:** Defendant agrees that the Abandonment Exemption issued and served by the STB on July 2, 2004, states that "trail use/rail banking requests under 49 CFR 1152.29 must be filed by July 12, 2004." Tab K, p. 3 (Doc. 33-3, p. 8 of 16).

**Proposed Fact No. 23:** In its order of July 9, 2004, the STB ruled that the "board will accept late-filed [trail use] requests as long as it retains jurisdiction to do so." (*See* STB Docket No. AB-870X, Environmental Assessment, Butler County, Kansas – Abandonment Exemption – in Butler County, KS, July 9, 2004, a copy of which is attached at Tab L).

> **Defendant's Response:** Defendant agrees in part. The referenced document (Tab L) is not an STB "order"; it is an Environmental Assessment prepared by the STB's Section of Environmental Analysis as part of the exemption proceedings involving the subject 10.6-mile rail line. Defendant agrees that this Environmental Assessment was served and made available to the public for comment on July 9, 2004. Tab L, pp. 1 and 4 (Doc. 33-3, pp. 10 and 13). Defendant also agrees that this Environmental Assessment includes a section captioned "Trails Use" which states that the STB "will accept late-filed requests as long as it retains jurisdiction to do so in a particular case." Tab L, p. 3.

**Proposed Fact No. 24:** Abandonment of the right-of-way was to become effective on August 4, 2004. However, on July 28, 2004, the STB granted a request from the Board's Section of Environmental Analysis to keep the proceeding open for an additional 90 days. (*See* STB Docket No. AB-870X, Butler County, Kansas – Abandonment Exemption – in Butler County, KS, July 28, 2004, a copy of which is attached at Tab M).

> **Defendant's Response:** Defendant disagrees. Under the applicable regulations, the Abandonment Exemption issued on July 2, 2004, authorized the County to abandon the subject rail line beginning on August 4, 2004. In other words, that authorization was effective on August 4, 2004. However, the County had to exercise that authorization before the rail line would be considered "abandoned" under the STB's regulations. The

need for the County to actually exercise that authority is reflected in the terms of the Abandonment Exemption, which states that,

> Pursuant to the provisions of 49 CFR 1152.29(e)(2), the County shall file a notice of consummation with the Board to signify that it has exercised the authority granted and fully abandoned the line. If consummation has not been effected by the County's filing of a notice of consummation by July 2, 2005, and there are no legal or regulatory barriers to consummation, the authority to abandon will automatically expire.

Abandonment Exemption in STB Docket No. AB-870X (Pls.' Tab L, at 4 (Doc. 33-3, p. 9 of 16)).

Defendant agrees that the STB issued a decision on August 2, 2004, which modified the exemption served and published on July 2, 2004, by making the exemption "subject to the condition that the County consult with [the National Geodetic Survey (NGS)] and provide NGS with 90 days' notice before disturbing or destroying any geodetic markers" that might be affected by the proposed abandonment of the 10.6-mile rail line. Tab M, p. 1 (Doc. 33-3, p. 15 of 16).

**Proposed Fact No. 25:** Pictures taken on or about April 3, 2008, show that the ties and tracks have been removed from the right-of-way. (A copy of pictures of the right-of-way across Plaintiff, Jerramy Pankratz's, property are attached at Tab N, along with Jerramy Pankratz's Affidavit at Tab N-1).

**Defendant's Response:** Defendant does not dispute that the ties and tracks were removed from the subject right-of-way as of April 3, 2008. Defendant further notes that the Decision and NITU issued by the STB on September 14, 2004, allowed the County to salvage the ties and tracks subject to the following conditions:

> 4. Consistent with the public use and interim trail use/rail banking conditions imposed on this decision and notice, the County may discontinue service, and salvage track and related materials. The County shall otherwise keep intact the right-of-way underlying the tracks, including bridges, trestles, culverts, tunnels, and rock ballast, for a period of 180 days from the effective date of the abandonment exemption (until January 31, 2005), to enable any state or local government agency, or other interested person to negotiate the acquisition of the line for public use. . . .

STB Decision and NITU, issued Sept. 14, 2004, at 3 (Doc. 33-2, p. 10 of 20).

**Proposed Fact No. 25A[1]:** On July 30, 2004, Prairie Travelers, Inc. ("PTI") "a non-profit organization, late-filed a request for the issuance of a notice of interim trail use (NITU) for the entire line under the National Trails System Act, 16 U.S.C. 1247(d) (Trails Act),[fn2] and for a public use condition under 49 U.S.C. 10905, [fn3] in order to negotiate with the County for acquisition of the right-of-way for use as a recreational trail." (*See* Tab C).

**Defendant's Response:** Defendant agrees that this proposed fact accurately quotes from the first page of the Decision and NITU issued on September 14, 2004, and that a copy of this Decision and NITU appears at Plaintiffs' Tab C. A copy of PTI's letter of July 30, 2004, is included in the record as Defendant's Exhibit 4.

**Proposed Fact No. 26:** On September 9, 2004, the Count sent a facsimile to the STB indicating that it had not yet consummated abandonment of the right-of-way. (*See* Tab C).

**Defendant's Response:** Defendant agrees that on September 9, 2004, Butler County faxed a letter to the STB in response to the letter filed on July 30, 2004, by PTI. In the

[1] The Pankratz Plaintiffs' Proposed Findings of Fact include two paragraphs that are numbered as paragraph 25. To avoid confusion, Defendant has identified the second paragraph 25 and paragraph or proposed fact number 25A.

letter of September 9, the County notified the STB that it "has no consummated the abandonment of the lines and is willing to negotiate for trail use with Prairie Travelers." See Def. Ex. 5.

**Proposed Fact No. 27:** On September 13, 2004, the STB issued a Notice of Interim Trail Use ("NITU"). (*See* Tab C).

**Defendant's Response:** Defendant disagrees. The referenced NITU, which is included in the record at Plaintiffs' Tab C, was not "issued" until September 14, 2004, the date on which that Decision and NITU was served.

**Proposed Fact No. 28:** The NITU states that Butler County's exemption was to become effective on August 4, 2004, however, on July 30, 2004, PTI filed a request for the STB's issuance of a NITU covering the entire 10.6-mile right-of-way. (*See* Tab C).

**Defendant's Response:** Subject to the clarification contained in Defendant's response to Proposed Fact No. 24, which Defendant incorporates herein by reference, Defendant agrees with this proposed fact. A copy of PTI's request is included as Defendant's Exhibit 4.

**Proposed Fact No. 29:** The September 13, 2004, NITU was set to expire on March 13, 2005. (*See* Tab C).

**Defendant's Response:** Defendant agrees in part. The negotiating period authorized by NITU issued on September 14, 2004, was set to expire on March 13, 2005. See Tab C, p. 4 (Doc. 33-2, p. 11 of 20). PTI and Butler County failed to reach a railbanking and

interim trail use agreement before that date and the authorization to negotiate such an agreement expired on that date. See Tab D, p. 1 n.1 (Doc. 33-2, p. 12 of 20). Consequently, as of March 13, 2005, Butler County was fully authorized to abandon the rail line that is the subject of the exemption proceedings in which the referenced NITU was issued. Tab C, p. 4.

**Proposed Fact No. 30:** On June 1, 2005, the STB extended the September 13, 2004, NITU until November 29, 2005. (*See* Tab D).

**Defendant's Response:** Defendant disagrees. The NITU issued by the STB on September 14, 2004, expired according to its own terms on March 13, 2005. See Tab C, p. 4 ("If an agreement for interim trail use/rail banking is reached by [] March 13, 2005, interim trail use may be implemented. If no agreement is reached by that time, the County may fully abandon the line."); Tab D, p. 1 n.1 ("The NITU issued to PTI expired on March 13, 2005, without an agreement being reached."). Accordingly, the NITU issued on June 1, 2005, did not "extend" the earlier NITU.

**Proposed Fact No. 31:** The June 1 NITU stated that on May 2, 2005, Butler County Economic Development ("BCED" also known as the Butler County Board of Commissioners), filed a request to the STB for an issuance of a NITU covering the entire 10.6-mile line from Augusta to Andover. (*See* Tab D).

**Defendant's Response:** Defendant agrees in part. The referenced NITU was not issued or served until June 2, 2005. Tab D, p. 1. Otherwise Defendant does not dispute that this proposed fact accurately summarizes language found on page 1 of the referenced NITU.

A copy of BCED's letter of April 26, 2005, requesting the issuance of a NITU is included in the record for this case as Defendant's Exhibit 6. Butler County's responses to that letter are contained in letters of May 16, 2005, and May 23, 2005, that were filed with the STB. Copies of these two letters are included as Defendant's Exhibit 7–8.

**Proposed Fact No. 32:** The June 1, 2005, NITU stated that "the September 13, 2004, [NITU] was issued to [PTI] to negotiate with the Couty for acquisition of the right-of-way for use as a recreational trail" and that it expired on March 13, 2005, without an agreement being reached. (*See* Tab H).

**Defendant's Response:** Defendant disagrees in part. The NITU issued on June 2, 2005, which is at Tab D (not Tab H) does not include the language quoted in this proposed fact. The NITU issued on June 2, 2005, states as follows: "By decision served on September 14, 2004, a notice of interim trail use (NITU) was issued to Prairie Travelers, Inc. (PTI) to negotiate with the County for acquisition of the right-of-way for use as a recreational trail for a period of 180 days. The NITU issued to PTI expired on March 13, 2005, without an agreement being reached." NITU served June 2, 2005, at 1 n.1 (Pls.' Tab D).

**Proposed Fact No. 33:** The STB noted that according to the July 2, 2004, notice of exemption all requests for a NITU were to be filed by July 12, 2004. *(See* Tab D).

**Defendant's Response:** Defendant agrees that the NITU issued on June 2, 2005, the STB stated in footnote 2 on page 1 that the notice of exemption of July 2, 2004, provided that requests for trail use/rail banking had to be filed by July 12, 2004. The STB further stated that it "retained the policy of accepting filings after the due date when good cause

is shown." Tab D, p. 1 n.2.

**Proposed Fact No. 34:** The STB granted BCED's request. (*See* Tab D).

**Defendant's Response:** Defendant agrees that the STB granted BCED's request for the issuance of a NITU. Tab D. A copy of BCED's letter of April 26, 2005, requesting the issuance of a NITU is included in the record for this case as Defendant's Exhibit 6. Butler County's responses to that letter are contained in letters of May 16, 2005, and May 23, 2005, that were filed with the STB. Copies of these two letters are included as Defendant's Exhibit 7–8.

**Proposed Fact No. 35:** The June 1, 2005, NITU stated that "Upon reconsideration, the decision and notice served on September 14. 2004, exempting the abandonment of the line described above is modified to the extent necessary to implement interim trail use/rail banking" and allowed the parties, BCED and Butler County to negotiate a Trail Use Agreement. (*See* Tab D).

**Defendant's Response:** Defendant agrees in part. The referenced NITU was issued on June 2, 2005. See Tab D, p. 1. In addition, the decision of September 14, 2004 (which authorized Butler County to abandon the rail line at issue), was modified to allow the County and BCED 180 days to negotiate a railbanking and interim trail use agreement. Id., p. 2.

**Proposed Fact No. 36:** The June 1, 2005, NITU was set to expire on November 29, 2005. (*See* Tab D).

**Defendant's Response:** Defendant agrees in part. The referenced NITU was issued by the STB on June 2, 2005. Tab D, p. 1. Defendant agrees that the 180-day negotiating period authorized by that NITU was set to expire on November 29, 2005. Tab D, p. 2.

**Proposed Fact No. 37:** The parties, Butler County and BCED, reached a Trail Use Agreement on June 3, 2005, prior to expiration of the NITU.

**Defendant's Response:** Defendant agrees, but notes that the agreement is a railbanking and trail use agreement. Specifically, by a letter dated June 3, 2005, Karl Morell, Attorney for Butler County, notified the STB that Butler County and BCED had "consummated a trail use/railbanking agreement for the Line" located between milepost 483.62, at Augusta, and milepost 494.22, near Andover, in Butler County. Def. Ex. 9.

**Proposed Fact No. 38:** On April 2, 2008, Butler County Planning and Development sent a letter to Plaintiff, Jerramy Pankratz, stating, "[I]t seems I misspoke when I told you that some of the right of way east of Augusta had been returned to adjacent property owners. This is not the case. The County has sold some excess areas in Augusta, but has retained ownership of a minimum of 100 feet of right of way all across the County. I was correct in telling you that the Board of County Commissioners has not decided what to do with the right of way at this time. *** I can reconfirm that you do not have the right to make any improvements to the land within the right of way (including fencing, erecting structures, or grading out the rail bed.)" (A copy of this letter is attached at Tab O).

> **Defendant's Response:** Defendant agrees that this proposed fact accurately quotes a portion of the referenced letter of April 2, 2008, and Defendant does not dispute the authenticity of the copy of that letter included in the record as Plaintiffs' Tab O. However, Defendant notes that this letter is not relevant or material to any of the issues presented in Plaintiffs' motion for partial summary judgment or to Defendant's cross-motion and opposition. Defendant further notes that Plaintiff Pankratz has not yet met his burden of proving that he is the fee owner of any portion of the lands subject to the right-of-way at issue in this case. See Def.'s Resp. to Pls.' Proposed Fact Nos. 5–6, *supra*.

Respectfully submitted this 2nd day of June, 2008,

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

s/ Kristine S. Tardiff
KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577
E-MAIL: kristine.tardiff@usdoj.gov

AYAKO SATO
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
60 D Street, N.W., 3rd Flr. Room 3133
Washington, DC 20004
TEL: (202) 305-0239
FAX: (202) 305-0506
E-MAIL: ayako.sato@usdoj.gov

Attorneys for Defendant

Of Counsel:

ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Office of General Counsel
395 E Street, SW
Washington, DC 20024