**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| DOROTHY L. BIERY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 07-693L<br>(consolidated with No. 07-675L)<br><br>Honorable Nancy B. Firestone |

**PLAINTIFFS' RESPONSES TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND ITS OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Plaintiffs' General Statements**

Plaintiffs note that Defendant's Responses to Plaintiffs' Proposed Findings of Uncontroverted Fact are not in compliance with RCFC 56(h)(1). According to this Rule, "[t]he opposing party shall file, together with its opposition, a response to the requested findings by indicating, immediately below each finding, whether it agrees or disagrees with the finding as stated. If the opposing party does not agree with the proposed finding, it shall note the basis for its objection and may draft a proposed revision of the finding directly below the challenged finding."

In Defendant's Responses, however, the Defendant "disputed" numerous proposed findings because they were "not relevant or material." Defendant failed to note whether it "agreed" or "disagreed" with the finding and the basis for any such disagreement. "Disputing" a

proposed finding because it is allegedly "not relevant or material" is not a valid response under RCFC 56(h).

## PANKRATZ FACTS

1. The railroad right-of-way at issue in Pankratz is a 10.6-mile right-of-way that extends between milepost 483.62 in Augusta, Kansas and milepost 494.22, near Andover, Kansas.

**Plaintiffs' Response: Agree.**

2. This 10.6-mile right-of-way and rail line was originally constructed by the St. Louis, Wichita & Western Railway Company ("SLW&W") and formed a part of the Oswego to Wichita line. Def. Ex. 3 (Historic Report, Ex. E to Abandonment Exemption). The railroad acquired its interests in the segments of this 10.6-mile right-of-way that are at issue in this case by means of two written instruments. The first is the condemnation instrument, which includes segments of the subject right-of-way that abut the lands owned by the six Plaintiffs.[1] See Def. Ex. 10 (Pankratz Straup Decl. at ¶ 5); Def. Ex. 10-1 (Condemn. Commissioners' Report, dated Nov. 4, 1879).[2] The second is a quitclaim deed by which the railroad acquired a portion of the right-of-way that abuts the property owned by Plaintiff Coiling. Def. Ex. 10-2. The railroad acquired other parcels along the

[1] Pankratz Plaintiffs include (1) Jerramey and Erin Pankratz; (2) Donald and Evangeline Wedell; (3) Thad J. Colling; (4) the Thick Gon Mar Trust; (5) Michael and Marcia Woods; and (6) Floyd and Becky Myers. The Pankratz Plaintiffs have indicated that they plan to file a motion for class certification but have not done so yet. Plaintiffs' motion for partial summary judgment is limited to the claims of the named Plaintiffs, as is this cross-motion.

[2] Defendant's Exhibit 10 is the Declaration of Cindi Straup addressing certain title records relating to the Pankratz Plaintiffs. The exhibits attached to her declaration are identified by reference to the exhibit number assigned to the declaration (10) and the number assigned to each exhibit attached to that declaration. Accordingly, exhibit 1 to Straup's declaration is identified as Defendant's Exhibit 10-1.

subject right-of-way not abutting the named Pankratz Plaintiffs by various conveyance instruments in addition to the condemnation instrument.

**Plaintiffs' Response: Disagree. Plaintiffs object to this finding of fact as being in contravention of Rule 56(h)(1) which requires that each fact be in a "concise separately numbered paragraph(s)." Plaintiffs further disagree with this proposed finding because of the vagueness of the term "interest."**

**Plaintiffs' Proposed Revision: This 10.6-mile right-of-way and rail line was originally constructed by the St. Louis, Wichita & Western Railway Company ("SLW&W") and formed a part of the Oswego to Wichita line. Def. Ex. 3 (Historic Report, Ex. E to Abandonment Exemption). The railroad held an easement to operate a railroad over this 10.6-mile right-of-way at issue in this case by means of a Condemnation Decree, which includes segments of the subject right-of-way that abut the lands owned by the six Plaintiffs.[3] See Def. Ex. 10 (Pankratz Straup Decl. at ¶ 5); Def. Ex. 10-1 (Condemn. Commissioners' Report, dated Nov. 4, 1879).[4] The second is a quitclaim deed by which the railroad acquired an easement for purposes of operating a railroad right of way over a portion of the property that abuts the property owned by Plaintiff Colling. Def. Ex. 10-2. The railroad acquired an easement for a railroad right of way over other parcels not**

[3] Pankratz Plaintiffs include (1) Jeremey and Erin Pankratz; (2) Donald and Evangeline Wedell; (3) Thad J. Colling; (4) the Thick Gon Mar Trust; (5) Michael and Marcia Woods; and (6) Floyd and Becky Myers. The Pankratz Plaintiffs have indicated that they plan to file a motion for class certification but have not done so yet. Plaintiffs' motion for partial summary judgment is limited to the claims of the named Plaintiffs, as is this cross-motion.

[4] Defendant's Exhibit 10 is the Declaration of Cindi Straup addressing certain title records relating to the Pankratz Plaintiffs. The exhibits attached to her declaration are identified by reference to the exhibit number assigned to the declaration (10) and the number assigned to each exhibit attached to that declaration. Accordingly, exhibit 1 to Straup's declaration is identified as Defendant's Exhibit 10-1.

**abutting the named Pankratz Plaintiffs by various conveyance instruments in addition to the condemnation instrument.**

3. Construction of this railroad began in 1879 and was completed by May 1880. Def. Ex. 3 (Hist. Report). Through a series of railroad mergers, ownership of the subject right-of-way was transferred to the Burlington Northern Santa Fe Railway Company ("BNSF") in 1995. Id.

**Plaintiffs' Response: Disagree. Plaintiffs dispute that any railroad held an "ownership" interest in the right of way. Rather, they held an easement for railroad right of way purposes.**

**Plaintiffs' Proposed Revision: Construction of this railroad began in 1879 and was completed by May 1880. Def. Ex. 3 (Hist. Report). Through a series of railroad mergers, the right to use the subject right-of-way for railroad purposes was transferred to the Burlington Northern Santa Fe Railway Company ("BNSF") in 1995. Id.**

4. On January 11, 2002, the STB issued or served an Acquisition Exemption notice in STB Finance Docket No. 34139. A copy of this Acquisition Exemption appears at Tab J of the Pankratz Plaintiffs' Proposed Facts (Doc. 33-3, pp. 4-5). In the Notice of Exemption filed by the County under 49 C.F.R. § 1150.31, the County proposed to acquire (by donation) approximately 10.6 miles of rail line from BNSF.

**Plaintiffs' Response: Agree.**

5. Butler County (the "County") acquired this 10.6-mile railway line by donation from the BNSF. The County intended to rehabilitate the line and locate an operator in order to

preserve the rail service in the area. Def. Ex. 2, p. 1 (BNSF Environmental Report); Pankratz Pls.' Proposed Facts, Tab J (Doc. 33-3, p. 4).

**Plaintiffs' Response: Disagree. Plaintiffs dispute that Butler County acquired the railway line. Rather, Butler County acquired – at most - the right to run trains over and across Plaintiffs' land burdened by the then existing railroad easement.**

**Plaintiffs' Proposed Revision: Butler County (the "County") acquired the right to run trains over the 10.6-mile easement for railroad purposes by donation from the BNSF. The County intended to rehabilitate the line and locate an operator in order to preserve the rail service in the area. but was not successful in locating any such railroad to resume railroad service over this rail line. Def. Ex. 2, p. 1 (BNSF Environmental Report); Pankratz Pls.' Proposed Facts, Tab J (Doc. 33-3, p. 4).**

6. When the County was unable to locate an operator, it filed a Notice of Exemption under 49 C.F.R. § 1152.50 seeking authority to abandon the 10.6 miles of rail line. See Pankratz, Pls.' Proposed Facts, Tab K (Doc. 33-3, pp. 6-7) and Tab M (Doc. 33-3, pp. 15-16). The exemption became effective on August 4, 2004, meaning that on that date, and absent any further orders from the STB, the County would be authorized to abandon the rail line. Id., Tab C (Doc. 33-2); Tab K (Doc. 33-3); and Tab M (Doc. 33-3).

**Plaintiffs' Response: Agree.**

7. The Abandonment Exemption issued by the STB stated in part that,

> Pursuant to the provisions of 49 CFR 1152.29(e)(2), the County shall file a notice of consummation with the Board to signify that it has exercised the authority granted and fully abandoned the line. If

> consummation has not been effected by the County's filing of a notice of consummation by July 2, 2005, and there are no legal or regulatory barriers to consummation, the authority to abandon will automatically expire.

Abandonment Exemption in STB Docket No. AB-870X (Pankratz Pls.' Proposed Facts, Tab L, at 4 (Doc. 33-3, p. 9 of 16)).

**<u>Plaintiffs' Response</u>: Agree.**

8. The STB issued a decision on August 2, 2004, which modified the exemption served and published on July 2, 2004, by making the exemption "subject to the condition that the County consult with [the National Geodetic Survey (NGS)] and provide NGS with 90 days' notice before disturbing or destroying any geodetic markers" that might be affected by the proposed abandonment of the 10.6-mile rail line. Pankratz Pls.' Proposed Facts, Tab M, p. 1 (Doc. 33-3, p. 15 of 16).

**<u>Plaintiffs' Response</u>: Agree.**

9. By a letter dated July 30, 2004, Prairie Travelers, Inc. ("PTI") expressed an interest in negotiating a railbanking and interim trail use agreement with the County. Def. Ex. 4.

**<u>Plaintiffs' Response</u>: Agree.**

10. On September 9, 2004, Butler County faxed a letter to the STB in response to the letter filed on July 30, 2004, by PTI. In the letter of September 9, the County notified the STB that it "has not consummated the abandonment of the lines and is willing to negotiate for trail use with Prairie Travelers." Def. Ex. 5.

**<u>Plaintiffs' Response</u>: Agree. Plaintiffs note that the County's statement that it "has not consummated the abandonment" has no legal relevance to the issue of whether the County had abandoned the right of way under Kansas state law and refers only to abandonment under federal railroad regulatory law.**

11. On September 14, 2004, the STB issued a NITU which provided a 180-day period during which the parties could negotiate a voluntary agreement. Pankratz Pls.' Proposed Facts, Tab C.

**<u>Plaintiffs' Response</u>: Agree.**

12. Butler County and PTI did not reach a railbanking and interim trail use agreement during the 180-day negotiating period provided by the NITU of September 14, 2004, nor did either party request an extension of that negotiating period. The 180-day negotiating period expired on March 13, 2005. <u>See</u> Tab C, p. 4 ("If an agreement for interim trail use/rail banking is reached by [] March 13, 2005, interim trail use may be implemented. If no agreement is reached by that time, the County may fully abandon the line."); Tab D, p. 1 n.1 ("The NITU issued to PTI expired on March 13, 2005, without an agreement being reached.").

**<u>Plaintiffs' Response</u>: Agree.**

13. After March 13, 2005, the County was once again fully authorized to abandon the line. Pankratz Pls.' Proposed Facts, Tab C at 4 (Doc. 33-3, p. 11 of 20).

**<u>Plaintiffs' Response</u>: Agree. Plaintiffs dispute, however the characterization "once again" to the extent that it may imply that prior to March 13, 2005 but after the original NITU**

**was issued the railroad at any time lacked the ability to consummate regulatory abandonment of the rail line.**

14. By a letter dated April 26, 2005, Butler County Economic Development ("BCED") requested the issuance of a new NITU for the subject right-of-way. Def. Ex. 6. This letter was received by the STB on May 2, 2005. Id.

**Plaintiffs' Response: Agree.**

15. By letters dated May 16, 2005, and May 23, 2005, Butler County responded to BCED's request, and indicated that it had not yet abandoned the line and agreed to negotiate a railbanking agreement. Def. Ex. 8-9.

**Plaintiffs' Response: Disagree. Plaintiffs believe that the actual text of the letters is the most accurate characterization of the statement intended to be communicated in the letters. To the extent that the government seeks to characterize or summarize the effect of these letters, the Plaintiffs note that BCED's indication in its letters of May 16, 2005, and May 23, 2005, that state it had not yet abandoned the line have no bearing on whether the right of way would have been deemed abandoned under Kansas state law. Plaintiffs further dispute that the letters indicated that it had agreed "to negotiate a railbanking agreement." Rather, Butler County's letters only indicate its willingness to negotiate for interim trail and make no mention of "railbanking."**

**Plaintiffs' Proposed Revision: By letters dated May 16, 2005, and May 23, 2005, Butler County responded to BCED's request, and indicated that it had not yet abandoned the line and agreed to negotiate "for interim trail use." Def. Ex. 8 and 9.**

16. On June 2, 2005, the STB issued a Decision and NITU in response to the request from BCED. Pankratz Pls.' Proposed Facts, Tab D. The Decision and NITU of June 2, 2005, modified the STB's decision of September 14, 2004 (which authorized Butler County to abandon the rail line at issue), to allow the County and BCED 180 days to negotiate a railbanking and interim trail use agreement. Id., p. 2.

**Plaintiffs' Response: Agree.**

17. By a letter dated June 3, 2005, Karl Morell, Attorney for Butler County, notified the STB that Butler County and BCED had "consummated a trail use/railbanking agreement for the Line" located between milepost 483.62, at Augusta, and milepost 494.22, near Andover, in Butler County. Def. Ex. 9.

**Plaintiffs' Response: Agree.**

18. By a warranty deed executed on April 27, 2004, and recorded on May 4, 2004, Jerramy and Erin Pankratz acquired a parcel of property in Butler County, Kansas. Pankratz Pls.' Proposed Facts, Tab B. The legal description of the property acquired by this deed is "Lot 4, Block B, Prairie Meadow, Butler County, Kansas." Id. This parcel is conveyed "[s]ubject to all easements, restrictions, reservations and covenants, if any, now of record." Id. The deed does not identify any such easements.

**Plaintiffs' Response: Agree that the quoted language is found in the referenced instrument. Plaintiffs note, however, that the intent and effect of the referenced instrument is to be taken from the instrument as a whole and not from just extracted portions of the instrument.**

19. By a general warranty deed executed on February 2, 1971, and recorded on February 3, 1971, Plaintiffs Donald E. and Evangeline Wedell acquired a parcel of property in Butler County, Kansas. Pankratz Pls.' Proposed Facts, Tab E (Doc. 33-2, pp. 15-16). This warranty deed identifies the property conveyed by the lot number in a particular block of an existing subdivision. Id. There is no reference to the subject right-of-way in the legal description of the lot conveyed, nor anywhere else in the deed. Id.

**Plaintiffs' Response: Agree that the quoted language is found in the referenced instrument. Plaintiffs note, however, that the intent and effect of the referenced instrument is to be taken from the instrument as a whole and not from just extracted portions of the instrument.**

20. Plaintiff Thad J. Colling acquired a parcel of property in Butler County, Kansas, by a Statutory Warranty Deed, executed on October 26, 1986, and recorded in the County records on December 2, 1986, in Book 389, at page 169. Pankratz Pls.' Proposed Facts, Tab F (Doc. 33-2, pp. 17-18 of 20. This warranty deed describes the property conveyed to Colling as "Lots 17, 18, 19, 20 and 21 in Block 14, in the First Addition to Kellogg Heights, a Subdivision in the W ½ of Section 23, Township 27 South, Range 3 East of the 6th P.M., in Butler County, Kansas." Id. The conveyance is made subject to "easements, restrictions, covenants of record if any." Id.

**Plaintiffs' Response: Agree that the quoted language is found in the referenced instrument. Plaintiffs note, however, that the intent and effect of the referenced instrument is to be taken from the instrument as a whole and not from just extracted portions of the instrument.**

21. After December 10, 1992, Plaintiff Thad J. Collings was not the sole owner of the property he acquired by the warranty deed of October 26, 1986 found at Tab F. According to the Butler County deed records, on December 10, 1992, Thad J. Collings executed a General Warranty – Joint Tenancy Deed conveying that same property to himself and Jennifer L. McLaughlin. A copy of this deed is included as Defendant's Exhibit 13. McLaughlin is not named as a plaintiff in the Pankratz complaint. See Pankratz Second Amended Complaint, filed April 10, 2008 (Case No. 07-675L, Doc. 29).

**Plaintiffs' Response: Disagree. Jennifer L. McLaughlin has retained Plaintiffs' attorneys as her counsel, and, as such, Plaintiffs would amend the caption of this case, if deemed necessary by the Court, to reflect her participation in this case.**

22. By a quitclaim deed executed and recorded on June 28, 2002, the Thick Gon Mar Trust acquired a parcel of property in Butler County, Kansas. Pankratz Pls.' Proposed Fact, Tab G. A review of the legal description of the Trust's property and the Butler County maps showing the location of that property confirm that the subject right-of-way traverses that property (i.e., the Trust owns the property on both sides of the right-of-way). Def. Ex. 10-6.

**Plaintiffs' Response: Agree.**

23. By a Joint Tenancy Warranty Deed dated May 30, 1997, and recorded in the Butler County Recorder of Deeds Office on June 5, 1997, Plaintiffs Michael and Marcia Woods acquired a parcel of property in Butler County, Kansas. Pankratz Pls.' Proposed Facts, Tab H. The warranty deed at Tab H describes the property conveyed to the Woods only by reference to a subdivision plat as follows: "Lot Numbered 5, Block Lettered "B",

PRAIRIE MEADOW, a subdivision in the Northeast Quarter of Section Numbered 25, Township Numbered 27 South, Range 3 East of the 6th P.M., in Butler County, Kansas." Pls.' Tab H (Doc. 33-3, p. 1 of 16). The deed conveys this property subject to "easements, restrictions, reservations and rights-of-way of public records," but the railroad right-of-way is not specifically identified in this deeds as such an easement or right-of-way. Id.

**Plaintiffs' Response: Agree that the quoted language is found in the referenced instrument. Plaintiffs note, however, that the intent and effect of the referenced instrument is to be taken from the instrument as a whole and not from just extracted portions of the instrument.**

24. By a quitclaim deed executed on April 1, 1995, and recorded on June 13, 1995, Plaintiffs Floyd and Becky Myers acquired in interest in land in Butler County, Kansas. Pankratz Pls.' Proposed Facts, Tab I. This deed describes the property quitclaimed to the Myers only by reference to a subdivision plat as follows: "Kellogg Hgts 1st Addition, Lots 10, 11, 12, 13, 14, 15, 16; Block 14, Section 23, Township 27, Range 3 East, Butler County, Kansas." Id. (Doc. 33-3, p. 3 of 16).

**Plaintiffs' Response: Agree that the quoted language is found in the referenced instrument. Plaintiffs note, however, that the intent and effect of the referenced instrument is to be taken from the instrument as a whole and not from just extracted portions of the instrument.**

25. The segments of the 10.6-mile right-of-way at issue in this case (Case No. 07-675) that abut the properties owned by the following Plaintiffs were first acquired by the railroad

by condemnation in 1879: Pankratz, Wedell, Colling, Mar Trust, Woods and Myers. See Def. Ex. 10 (Declaration of Cindi A.R. Straup for Pankratz v. United States ("Pankratz Straup Decl.")).

**Plaintiffs' Response: Agree.**

26. The conveyance instrument referenced as a Quitclaim Deed conveying title from C.R. Noe and Lana Noe, his wife, to the Saint Louis, Witchita and Western Railway Company, dated October 23, 1879, and recorded in Book S, page 465 (attached as Tab A of Pankratz Plaintiffs' Proposed Findings of Uncontroverted Fact) is not a source conveyance document (i.e., original conveyance to the railroad) that conveyed any portion of the corridor that abuts any of the named Pankratz Plaintiffs' properties. Def. Ex. 10 (Pankratz Straup Decl., ¶ 7).

**Plaintiffs' Response: Agree.**

## BIERY FACTS

27. The property at issue in Biery is a 2.88-mile stretch of railroad right-of-way between milepost 0.62 and milepost 3.50, near South Hutchinson, in Reno County Kansas. This railroad line was originally acquired by the Hutchinson & Southern Railroad ("H&S") between 1896 and 1899. Def. Ex. 15 (BNSF Historic Report at 2 ).

**Plaintiffs' Response: Disagree. Plaintiffs dispute the phrase the "railroad line was acquired" as used in Defendant's Proposed Finding of Fact No. 27, as such phrase is vague and ambiguous.**

**<u>Plaintiffs' Proposed Revision</u>: The property at issue in <u>Biery</u> is a 2.88-mile stretch of railroad right-of-way between milepost 0.62 and milepost 3.50, near South Hutchinson, in Reno County Kansas. This easement for a railroad right of way was originally acquired by the Hutchinson & Southern Railroad ("H&S") between 1896 and 1899. Def. Ex. 15 (BNSF Historic Report at 2 ).**

28. The railroad originally acquired its interests in the segments of the corridor that abut the Biery Plaintiffs' properties by way of several different conveyance instruments. Two of these instruments are condemnation instruments in the form of commissioners' reports. <u>See</u> Def. Ex. 22 (Declaration of Cindi A.R. Straup for <u>Biery v. United States</u> ("Biery Straup Decl.")). In addition, the railroad acquired portions of the right-of-way that abut the properties owned by the Biery Plaintiffs by various voluntary grants. <u>Id</u>. at ¶ 5.

**<u>Plaintiffs' Response</u>: Disagree. Plaintiffs further disagree with this proposed finding because of the vagueness of the term "interest." Plaintiffs also dispute Defendant's description of the Plaintiffs' land as abutting the right of way, when, in fact, the Plaintiffs' land abuts and underlies the right of way.**

**<u>Plaintiffs' Proposed Revision</u>: The railroad originally acquired its easement in the segments of the corridor that abut the Biery Plaintiffs' properties by way of several different conveyance instruments. Two of these instruments are condemnation instruments in the form of commissioners' reports or Condemnation Decrees. <u>See</u> Def. Ex. 22 (Declaration of Cindi A.R. Straup for <u>Biery v. United States</u> ("Biery Straup Decl.")). In addition, the railroad acquired portions of the right-of-way easement that abut and**

**underlie the properties owned by the Biery Plaintiffs by various voluntary grants. Id. at ¶ 5.**

29. Through a series of railroad mergers, ownership of this 2.88-mile right-of-way and rail line, as well as other property not relevant to this case, was transferred to BNSF in 1995. Specifically, the McPherson, Texas & Gulf and the Hutchinson, Oklahoma & Gulf Railroads were consolidated under the name of the Hutchinson & Southern ("H&S"), and the articles of incorporation were filed with the secretary of state on October 7, 1889. Byers, Otto, *The Conceptions and Growth of a Kansas Railroad* in KANSAS HISTORICAL COLLECTIONS, vol. XI (1911-1912). The H&S was the predecessor railroad to The Atchison Topeka and Santa Fe Railway Company ("ATSF"). Id. In 1995 the ATSF merged with the BN to become the BNSF Railway Company. Id. See also Def. Ex. 15, p. 11 (BNSF Historical Report, p. 2).

**Plaintiffs' Response: Disagree. Plaintiffs dispute Defendant's use of the term "ownership" referring to BNSF's interest in the easement for railroad right of way purposes.**

**Plaintiffs' Proposed Revision: Through a series of railroad mergers, the right to use this 2.88-mile railroad right-of-way easement, as well as other property not relevant to this case, was transferred to BNSF in 1995. Specifically, the McPherson, Texas & Gulf and the Hutchinson, Oklahoma & Gulf Railroads were consolidated under the name of the Hutchinson & Southern ("H&S"), and the articles of incorporation were filed with the secretary of state on October 7, 1889. Byers, Otto, *The Conceptions and Growth of a Kansas Railroad* in KANSAS HISTORICAL COLLECTIONS, vol. XI (1911-1912). The H&S was the predecessor railroad to The Atchison Topeka and Santa Fe Railway Company ("ATSF").**

**<u>Id</u>. In 1995 the ATSF merged with the BN to become the BNSF Railway Company. <u>Id</u>. <u>See also</u> Def. Ex. 15, p. 11 (BNSF Historical Report, p. 2).**

30. On February 20, 2004, BNSF filed with the STB a verified Notice of Exemption under 49 C.F.R. § 115.250 seeking exemption from the requirements of 49 U.S.C. § 10903. Def. Ex. 14 (Excerpt of Abandonment Exemption filed by BNSF); Biery, Pls.' Proposed Facts, Tab K. Through the exemption process, BNSF obtained authorization to abandon the rail line between milepost 0.62 and milepost 3.50, near South Hutchinson in Reno County, Kansas. Def. Ex. 14.

**<u>Plaintiffs' Response</u>: Agree.**

31. On February 25, 2004, the STB received a Statement of Willingness to Assume Financial Responsibility for the subject right-of-way from the City of South Hutchinson, Kansas ("City"). Def. Ex. 16. The letter from the City that included this Statement is dated January 30, 2004. <u>Id</u>.; <u>see also</u> Biery Pls.' Proposed Facts, Tab L.

**<u>Plaintiffs' Response</u>: Agree.**

32. By a letter dated March 24, 2004, BNSF indicated that it had no objection to the issuance of a NITU requested by the City. Def. Ex. 17.

**<u>Plaintiffs' Response</u>: Agree.**

33. On April 8, 2004, the STB issued a Decision and NITU, which allowed a 180-day period during which BNSF and the City could negotiate an agreement for railbanking and interim trail use. Biery Pls.' Proposed Facts, Tab L.

**<u>Plaintiffs' Response</u>: Disagree. Plaintiffs contest that the STB's NITU issued on April 8, 2004, used the term "railbanking." The most accurate expression of the language and intent of the referenced document is that actual document not the government's characterization of the document.**

**<u>Plaintiffs' Proposed Revision</u>: On April 8, 2004, the STB issued a Decision and NITU, which allowed a 180-day period during which BNSF and the City could negotiate an agreement for interim trail use. Biery Pls.' Proposed Facts, Tab L.**

34. By letter dated September 10, 2004, the City requested an extension of an additional 180 days to negotiate a railbanking and interim trail use agreement with BNSF. Def. Ex. 18. Copies of this letter were received by the STB on September 14, 2004. <u>Id</u>. By a separate letter dated September 10, 2004, and received by the STB on September 13, 2004, BNSF also requested a 180-day extension of the negotiating period. Def. Ex. 19. <u>See also</u> Biery Pls.' Proposed Facts, Tab M.

**<u>Plaintiffs' Response</u>: Disagree. Plaintiffs contend that the City's letter requests the extension to negotiate and interim trail use agreement. The most accurate characterization of the letter is the actual text of the letter.**

**<u>Plaintiffs' Proposed Revision</u>: By letter dated September 10, 2004, the City requested an extension of an additional 180 days to negotiate an interim trail use agreement with BNSF. Def. Ex. 18. Copies of this letter were received by the STB on September 14, 2004. <u>Id</u>. By a separate letter dated September 10, 2004, and received by the STB on September 13, 2004, BNSF also requested a 180-day extension of the negotiating period. Def. Ex. 19. <u>See also</u> Biery Pls.' Proposed Facts, Tab M.**

35. By a decision issued on October 4, 2004, the STB granted the requests by BNSF (Def. Ex. 19) and the City (Def. Ex. 18) to extend the negotiation period provided by the NITU issued on April 8, 2004, by an additional 180 days. A copy of the STB's decision of October 4, 2004, is attached to the Biery Plaintiffs' Proposed Findings of Fact at Tab M.

**Plaintiffs' Response: Agree.**

36. On March 23, 2005, BNSF and the City of South Hutchinson entered into a railbanking and interim trail use agreement. Def. Ex. 20. BNSF notified the STB that the parties had reached this agreement by a letter dated March 24, 2005. Def. Ex. 21. This agreement – identified as a "Railbanking and Donation Contract" – is also referenced in the quitclaim deed of February 17, 2006, from BNSF to the City of South Hutchinson that is included in the record as Pls.' Tab N.

**Plaintiffs' Response: Agree.**

37. The railbanking agreement between BNSF and the City states in part:

> Donee acknowledges that any interim trail use by Donee or its assigns shall be subject to the possibility of future restoration of rail service pursuant to federal law and/or BNSF's retained interests . . . It is agreed and understood that the use of the Property by Donee (or its assignees) shall not impair future restoration of rail service pursuant to the National Trails System Act and Donee acknowledges that BNSF reserves the right to reactivate and restore rail service on the Property. Should BNSF or any such assignee of BNSF exercise this right at any time, Donee (or its assigns) shall allow reactivation of rail service on the terms and conditions herein.

Def. Ex. 20 at p. 2.

**Plaintiffs' Response: Agree.**

38. BNSF conveyed its interest in the subject right-of-way and other properties by a quitclaim deed dated February 17, 2006. Biery Pls.' Proposed Facts, Tab N. This conveyance is expressly subject to terms of the referenced Railbanking and Donation Contract of March 23, 2005 (Def. Ex. 20), and the terms of the NITU issued by the STB (Biery Pls.' Proposed Facts, Tabs L & M).

**Plaintiffs' Response: Agree that the referenced language is found in the referenced instrument. Plaintiffs note, however, that the intent and effect of the referenced instrument is to be taken from the instrument as a whole and not from just extracted portions of the instrument. Plaintiffs, however, contend that by virtue of the quitclaim deed, the City of South Hutchinson became the assignee of BNSF and that the City of South Hutchinson is not an entity authorized to run trains over the subject right of way.**

39. The 2006 quitclaim deed from BNSF to the City states, in part, that "Donee acknowledges that any interim trail use by Donee or its assigns shall be subject to the possibility of future restoration of rail service and/or BNSF's retained interests . . ." Biery Pls.' Proposed Facts, Tab N at 1. The deed also states that "Donee's obligation that interim trail use by Donee shall not impair future restoration of rail service pursuant to the National Trails Systems Act, as amended." Id.

**Plaintiffs' Response: Agree that the quoted language is found in the referenced instrument. Plaintiffs note, however, that the intent and effect of the referenced instrument is to be taken from the instrument as a whole and not from just extracted portions of the instrument.**

40. The 2006 quitclaim deed expressly reserves unto BNSF "the right to reactivate and restore rail service on the Property." Biery Pls.' Proposed Facts, Tab N.

**Plaintiffs' Response: Disagree. Plaintiffs contend that the legal effect of BNSF quitclaiming its entire interest in the right of way easement to the City of South Hutchinson Extinguished and abandoned that easement as a matter of Kansas law (if such easement had not already been abandoned) and any future right to restore railroad service is not specific to the BNSF but is subject to the STB's approval and available to any railroad. Further, the prospect of such future railroad service is speculative and indefinite and arises by operation of the federal Trails Act an not any provision of Kansas law.**

**Plaintiff's Proposed Revision: The 2006 quitclaim deed references "the right to reactivate and restore rail service on the Property," as arising by virtue of the federal Trails Act. Biery Pls.' Proposed Facts, Tab N.**

41. The deed by which Plaintiff Dorothy Biery acquired a parcel of land that abuts the subject right-of-way is included in the record as Tab D to the Pankratz Plaintiffs' Proposed Facts (Doc. 24). The legal description of this parcel contained in Biery's deed describes that parcel as "[b]eginning at a point 2395 feet west of the southeast corner of the Northwest Quarter (NE/4) of Section 23, Township 23 South, Range 6 West of the 6th P.M., thence west 193-1/3 feet; thence north 450 feet; thence east 193-1/3 feet; thence south 450 feet to the place of beginning, containing 2 acres." Id. The conveyance expressly excepts and is subject to "[e]asements and restrictions of record." Id. The legal description in the Biery deed does not expressly encompass the lands within the right-of-way.

**Plaintiffs' Response: Disagree. To the extent that the Defendant references *Pankratz* Plaintiffs' Proposed Facts Tab D as containing the Biery deed, Plaintiffs disagree and note that the Biery deed is found at Tab D of the *Biery* Plaintiffs' Proposed Findings of Fact. Plaintiffs disagree with this proposed finding in that it mischaracterizes the relationship between this property and the subject right-of-way.**

**Plaintiffs' Proposed Revision: The deed by which Plaintiff Dorothy Biery acquired a parcel of land that abuts and underlies the subject right-of-way is included in the record as Tab D to the Biery Plaintiffs' Proposed Facts (Doc. 24). The legal description of this parcel contained in Biery's deed describes that parcel as "[b]eginning at a point 2395 feet west of the southeast corner of the Northwest Quarter (NE/4) of Section 23, Township 23 South, Range 6 West of the 6th P.M., thence west 193-1/3 feet; thence north 450 feet; thence east 193-1/3 feet; thence south 450 feet to the place of beginning, containing 2 acres." Id. The conveyance states "EXCEPT AND SUBJECT TO: Easements and restrictions of record." Id. Under Kansas law this instrument conveyed title to the land underlying the abutting right of way. The reference to "Except and subject to" means that the estate in this land conveyed by such instrument was subject to then existing easements and restrictions – not that it did not convey the land underlying such easements**

42. A portion of the 2.88-mile right-of-way at issue in this case (Case No. 07-693) that abuts the property owned by Plaintiff Biery (as described above in Proposed Fact No. 41), was first acquired by the railroad by condemnation in 1899. See Def. Ex. 22 (Biery Straup Decl.). Another portion of the right-of-way that abuts the Biery parcel was acquired by the railroad by a warranty deed dated August 11, 1899, from the Phillips Investment Company. Id.

**<u>Plaintiffs' Response</u>: Agree. Plaintiffs further state that the warranty deed dated August 11, 1899, conveyed only an easement to the railroad.**

43. Plaintiff Gordon Holloway acquired certain property in Butler County through a probate order entered on July 17, 1992. <u>See</u> Pankratz Pls.' Proposed Facts, Tab E. This conveyance instrument contains a legal description of several parcels of land, including the following parcel that abuts the subject right-of-way: "[t]he Northwest Quarter Southeast Quarter (NW/4 SE/4) Section Twenty-six (26), Township Twenty-three (23) South, Range Six (6) West of the 6th P.M., Reno County, Kansas, containing 40 acres, more or less, *except for the 100 feet of right-of-way of the railway along the West side thereof*[.]" <u>Id</u>. (emphasis added).

**<u>Plaintiffs' Response</u>: Agree that the quoted language is found in the referenced instrument. Plaintiffs note, however, that the intent and effect of the referenced instrument is to be taken from the instrument as a whole and not from just extracted portions of the instrument.**

44. The segment of the 2.88-mile right-of-way at issue in this case that abuts the property owned by Plaintiff Gordon Holloway was acquired by the railroad by condemnation in 1899. Def. Ex. 22 (Biery Straup Decl.).

**<u>Plaintiffs' Response</u>: Disagree. Plaintiffs disagree with this proposed finding in that it mischaracterizes the relationship between this property and the subject right-of-way. <u>Plaintiffs' Proposed Revision</u>: The segment of the 2.88-mile right-of-way at issue in this case that abuts <u>and underlies</u> the property owned by Plaintiff Gordon Holloway was acquired by the railroad by condemnation in 1899. Def. Ex. 22 (Biery Straup Decl.).**

45. The Stacy E. Judy Trust acquired land in Reno County, Kansas through a quitclaim deed executed by Stacy E. Judy and Martha Helen Judy, husband and wife, on March 7, 1994. Biery Pls.' Proposed Facts, Tab F. This quitclaim deed conveys a parcel of land that abuts the subject right-of-way on the western side of that right-of-way. Id.; see also Def. Ex. 22-11 (map of Stacy Judy Trust property). The quitclaim deed by which the Stacy E. Judy Trust acquired this property includes no reference to the right-of-way. See Pls.' Prop. Facts, Tab F.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding in that it mischaracterizes the relationship between this property and the subject right-of-way.**

**Plaintiffs' Proposed Revision: The Stacy E. Judy Trust acquired land in Reno County, Kansas through a quitclaim deed executed by Stacy E. Judy and Martha Helen Judy, husband and wife, on March 7, 1994. Biery Pls.' Proposed Facts, Tab F. This quitclaim deed conveys a parcel of land that abuts and underlies the subject right-of-way on the western side of that right-of-way. Id.; see also Def. Ex. 22-11 (map of Stacy Judy Trust property). The quitclaim deed by which the Stacy E. Judy Trust acquired this property includes no reference to the right-of-way. See Pls.' Prop. Facts, Tab F.**

46. A portion of the land owned by the Stacy E. Judy Trust is situated west of the right-of-way and directly across from the Holloway parcel, which is located east of the right-of-way. Biery Pls.' Proposed Facts, Tab E (Holloway probate order) and Tab F (Judy Trust quitclaim deed); Def. Ex. 22-10 and 22-11 (maps).

**Plaintiffs' Response: Agree.**

47. The segment of the 2.88-mile right-of-way at issue in this case that abuts the property owned by the Stacy E. Judy Trust was acquired by the railroad by condemnation in 1899. Def. Ex. 22 (Biery Straup Decl.).

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding in that it mischaracterizes the relationship between this property and the subject right-of-way.**

**Plaintiffs' Proposed Revision: The segment of the 2.88-mile right-of-way at issue in this case that abuts and underlies the property owned by the Stacy E. Judy Trust was acquired by the railroad by condemnation in 1899. Def. Ex. 22 (Biery Straup Decl.).**

48. Plaintiff Julia R. Chalfant Trust ("Chalfant Trust") acquired a parcel of property in Reno County, Kansas by a Trust Deed executed on December 21, 1984, and recorded on April 2, 1985. Biery Pls.' Proposed Facts, Tab G. This Trust Deed conveyed "[a]ll of the Grantors' interest in and to the West Half of the Northeast Quarter of Section 35, Township 23 South, Range 6 West of the 6th P.M.; subject to restrictions of record, oil and gas leases of record, if any, and highway rights of way of record." Id. This trust deed contains no other legal description of the property conveyed and makes no specific reference to railroad right-of-way that traverses Section 35.

**Plaintiffs' Response: Agree that the quoted language is found in the referenced instrument. Plaintiffs note, however, that the intent and effect of the referenced instrument is to be taken from the instrument as a whole and not from just extracted portions of the instrument.**

49. In 1889, the railroad obtained an easement by condemnation for its right-of-way across all of Section 35 of Township 23 Range 6 West in Reno County from Thomas Fair for

$645.70 for the land and an additional $30 for land damages. Def. Ex. 22 (Biery Straup Decl.).

**Plaintiffs' Response: Agree.**

50. In 1899, Julia Ann Fair, the widow of Thomas Fair, executed a quitclaim deed conveying a "strip of land one hundred <100> feet wide being fifty <50> feet on each side of the centerline of the railroad . . . as the same is now located and constructed over and across section Thirty-five <35> . . . ." Def. Ex. 22 and Def. Ex. 22-4. The quitclaim deed executed by Julia Ann Fair in 1899 contained no use restrictions or other limitations on the interest conveyed. By this 1899 quitclaim deed from Julia Ann Fair, the railroad paid an additional $3,500, or approximately $296 per acre, to acquire fee title to the land over which it already held an easement. Def. Ex. 22-4 and Def. Ex. 23 (excerpt of Valuation Schedule).

**Plaintiffs' Response: Disagree. Plaintiffs contend that Defendant mischaracterizes the interest acquired by the railroad by virtue of the deeds referenced. See Defendant's Exhibits 22-3 and 22-4. A transcribed version of the Julia Fair Quitclaim Deed is attached at Tab 11 of Plaintiffs' Proposed Findings of Fact in Response to the Government's Cross Motion for Summary Judgment [Facts in Response].**

**Plaintiffs' Proposed Revision: In 1899, Julia Ann Fair, the widow of Thomas Fair, executed a quitclaim deed conveying a "strip of land one hundred <100> feet wide being fifty <50> feet on each side of the centerline of the railroad . . . as the same is now located and constructed over and across section Thirty-five <35> . . . ." Def. Ex. 22-4; Tab 11 of Pltf's Facts in Response. The quitclaim deed executed by Julia Ann Fair in 1899 contained**

**no use restrictions or other limitations on the interest conveyed. By this 1899 quitclaim deed from Julia Ann Fair, the railroad paid an additional $3,500, or approximately $296 per acre, to acquire an easement to use certain portions of the land then owned by Julia Ann Fair for the operation of a railroad. Def. Ex. 22-4 and Def. Ex. 23 (excerpt of Valuation Schedule); and Tab 11 of Pltf's Facts in Response.**

51. When Julia Ann Fair, the widow of Thomas Fair, conveyed the right-of-way lands across Section 35 in fee to the railroad in 1899, she did not retain any interest in those lands to convey to her successors-in-title for the remaining lands within Section 35. Def. Ex. 22-4.

**Plaintiffs' Response: Disagree.**

**Plaintiffs' Proposed Revision: When Julia Ann Fair, the widow of Thomas Fair, conveyed the right of way across Section 35 to the railroad in 1899, she conveyed only and easement and, therefore, she retained and conveyed to her successors-in-title the fee simple absolute estate in the land underlying the right of way, subject to the right of way interest conveyed to the railroad.**

52. By a warranty deed dated February 5, 1976, and recorded on June 12, 1976, Plaintiff K.A.K. Farms, Inc. acquired a parcel of land described in that deed as the "East Half of the Northwest Quarter of Section 35, Township 23 South, Range 6, less Bar Pit and Highway." Biery Pls.' Proposed Facts, Tab H. Excepted from this conveyance are "Easements and rights of way of record." Id. This warranty deed contains no metes and bounds description of the property, nor makes any express reference to the railroad right-of-way that traverses Section 35.

**<u>Plaintiffs' Response</u>: Agree that the quoted language is found in the referenced instrument. Plaintiffs note, however, that the intent and effect of the referenced instrument is to be taken from the instrument as a whole and not from just extracted portions of the instrument.**

53. The properties owned by the Chalfant Trust and K.A.K. Farms are located in Section 35 of Township 23 South, Range 6 in Reno County, Kansas. Biery Pls.' Proposed Facts, Tabs G and H. <u>See also</u> Def. Ex. 22-12 and 22-13.

**<u>Plaintiffs' Response</u>: Agree.**

54. The Chalfant Trust and K.A.K. Farms are successors-in-title to Thomas Fair and his widow, Julia Ann Fair. <u>See</u> Biery Pls.' Proposed Facts, Tabs G and H; Def. Ex. 22.

**<u>Plaintiffs' Response</u>: Agree.**

55. The Chalfant Trust has no ownership interest in the subject right-of-way that traverses Section 35 and abuts the property it acquired by the Trust Deed found at Tab G of the Biery Plaintiffs' Proposed Facts. <u>See</u> Def. Ex. 22-4.

**<u>Plaintiffs' Response</u>: Disagree. As noted in Plaintiffs' Proposed Revision to Defendant's Proposed Finding of Fact No. 51, Julia Ann Fair conveyed only an easement to the railroad and, therefore, conveyed to her successors-in-interest an estate in the land in fee simple absolute subject to the railroad's easement.**

56. K.A.K. Farms has no ownership interest in the subject right-of-way that traverses Section 35 and abuts the property it acquired by the warranty deed found at Tab H of the Biery Plaintiffs' Proposed Facts. See Def. Ex. 22-4.

**Plaintiffs' Response: Disagree. As noted in Plaintiffs' Proposed Revision to Defendant's Proposed Finding of Fact No. 51, Julia Ann Fair conveyed only an easement to the railroad and, therefore, conveyed to her successors-in-interest an estate in the land in fee simple absolute subject to the railroad's easement. Plaintiffs further disagree with this proposed finding in that it mischaracterizes the relationship between this property and the subject right-of-way.**

**Plaintiffs' Proposed Revision: K.A.K. Farms has an ownership interest in the subject right-of-way that traverses Section 35 and abuts and underlies the property it acquired by the warranty deed found at Tab H of the Biery Plaintiffs' Proposed Facts. See Def. Ex. 22-4.**

57. Plaintiff American Packaging Corporation ("APC") acquired a parcel of land in Reno County, Kansas by a warranty deed executed and recorded on April 30, 1987. Biery Pls.' Proposed Facts, Tab I. See also Def. Ex. 22-14 (map). The warranty deed describes the parcel conveyed to APC as extending "*to a point on the East right-of-way line of the A.T. & S.F. R.R.* that is 645.0 feet North of the South line of said Southeast 1/4; thence South *along the said right-of-way line* 645.0 feet to the place of beginning[.]" Biery Pls.' Proposed Facts, Tab I. Excepted from this conveyance are "Easements, restrictions and rights-of-way of record, if any." Id.

**<u>Plaintiffs' Response</u>: Agree that the quoted language is found in the referenced instrument. Plaintiffs note, however, that the intent and effect of the referenced instrument is to be taken from the instrument as a whole and not from just extracted portions of the instrument.**

58. By a warranty deed dated July 31, 1984, Plaintiff Collins Industries, Inc. ("Collins") conveyed a parcel of property west of the subject right-of-way to the City of South Hutchinson, Kansas. Biery Pls.' Proposed Facts, Tab J; Def. Ex. 22-15 (map). This warranty deed describes the parcel conveyed by Collins to the City as extending "to a point 50.0 feet Easterly from, measured at right angles to the center line of The Atchison, Topeka and Santa Fe Railway's H & S District main track, as now located and operated; thence in a Northerly direction along a line 50.0 feet Easterly from and parallel with said main track center line, a distance of 880.0 feet, more or less[.]" Pls.' Tab J.

**<u>Plaintiffs' Response</u>: Agree.**

59. Between July 31, 1984, and October 31, 2006, Plaintiff Collins did not own any land abutting or underlying the subject right-of-way. Biery Pls.' Proposed Facts, Tab J; Def. Ex. 24-25.

**<u>Plaintiffs' Response</u>: Disagree.**

**<u>Plaintiffs' Proposed Revision</u>: Between July 31, 1984, and October 31, 2006, Plaintiff Collins Industries, and not the City of South Hutchinson, paid taxes on the land described in the deed to the City of South Hutchinson dated July 31, 1984. According to the Reno County tax records, Plaintiff Collins Industries was the owner of the land described in such**

**deed. See Tab 27 of Pltf's Facts in Response which contains the tax history of the property described in the warranty deed of July 31, 1984.**

60. The segments of the 2.88-mile right-of-way at issue in this case and certain other properties that abut the property owned by APC and the property formerly owned by Plaintiff Collins was acquired by the railroad by condemnation in 1899, and by a quitclaim deed executed in 1896 and two additional quitclaim deeds executed in 1901. Def. Ex. 22 (Biery Straup Decl., ¶ 5); Def. Ex. 22-1, 22-5, 22-6 and 22-7.

**Plaintiffs' Response: Agree.**

61. Along the right-of-way corridor and overlapping the length of the right-of-way are tracts of land that were later acquired by the railroad through three different quitclaim deeds. See Biery Straup Decl., at ¶ 5; id., Ex. 22-5, 22-6 and 22-7 (quitclaim deeds). Two of the quitclaim deeds convey various lots described in Blanchard's Third Addition to the City of Hutchinson. See id., at Ex. 22-6 (quitclaim deed at Book 56, page 483) and Ex. 22-7 (quitclaim deed at Book 73, page 204). These same tracts are referenced in and conveyed by the quitclaim deed that transferred title of the subject corridor from the BNSF Railway to the City of South Hutchinson in 2001. Compare Biery Pls.' Proposed Facts, Tab N, Exhibit A with Def. Ex. 22-6 and Def. Ex. 22-7.

**Plaintiffs' Response: Agree that the quoted language is found in the referenced instrument. Plaintiffs note, however, that the intent and effect of the referenced instrument is to be taken from the instrument as a whole and not from just extracted portions of the instrument.**

62. The legal description of the third quitclaim deed between the Irrigation Loan and Trust Co. and the Atchison, Topeka and Santa Fe Railway Company does not reference the lots in Blanchard's Third Addition, but merely reads "the West sixty-six (66) feet of the west half (½) of the South East quarter (1/4) of Section number Twenty-three (23) in Township number Twenty-three, Range number six (6) East in Reno County, Kansas." Def. Ex. 22-5 (quitclaim deed recorded at Book 70, page 143).

**Plaintiffs' Response: Agree that the quoted language is found in the referenced instrument. Plaintiffs note, however, that the intent and effect of the referenced instrument is to be taken from the instrument as a whole and not from just extracted portions of the instrument.**

63. None of these original source quitclaim deeds to the railroad contains any use restriction or reversionary clause. See Def. Ex. 22-5, 22-6 and 22-7.

**Plaintiffs' Response: Agree that the quoted language is found in the referenced instrument. Plaintiffs note, however, that the intent and effect of the referenced instrument is to be taken from the instrument as a whole and not from just extracted portions of the instrument. Stating further, Plaintiff snote that under Kansas law these instruments conveyed to the railroad only an easement to use the described property as a right of way for the operation of a railroad.**

64. The railroad acquired fee title to the parcels or lots of lands conveyed to it by the three quitclaim deeds described above. See Def. Ex. 22-5, 22-6 and 22-7.

**Plaintiffs' Response: Disagree.**

**Plaintiffs' Proposed Revision: The three referenced quitclaim deeds conveyed to the railroad only an easement to use the referenced property as a right of way for the operation of a railroad.**

65. Parts of the parcels or lots conveyed to the railroad by the quitclaim deeds described above abut the land owned by APC. See id., at Ex. 22-14 (map).

**Plaintiffs' Response: Plaintiffs further disagree with this proposed finding in that it mischaracterizes the relationship between this property and the subject right-of-way.**

**Plaintiffs' Proposed Response: Parts of the parcels or lots conveyed to the railroad by the quitclaim deeds described above abut and underlie the land owned by APC. See id., at Ex. 22-14 (map).**

Respectfully submitted,

LATHROP & GAGE L.C.

Date: July 24, 2008

By /s/ Mark F. (Thor) Hearne, II

MARK F. (THOR) HEARNE, II
LINDSAY S.C. BRINTON
MEGHAN S. LARGENT
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
(314) 613-2500
(314) 613-2550 (fax)
Thornet@ix.netcom.com

ATTORNEYS FOR PLAINTIFFS