# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DOROTHY L. BIERY, et al., and<br><br>JERRAMY and ERIN PANKRATZ, for Themselves and a Class of Similarly Situated Persons,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No. 1:07-cv-693<br>(Consolidated with<br>Case No. 1:07-cv-695)<br><br>Honorable Nancy B. Firestone |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

MARK F. (THOR) HEARNE, II
LINDSAY S.C. BRINTON
MEGHAN S. LARGENT
Lathrop & Gage, LC
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
314.613.2500 (Phone)
314.613-2550 (fax)
Thornet@ix.netcom.com

ATTORNEYS FOR PLAINTIFFS

## TABLE OF CONTENTS


I. Introduction ..... 1

II. We agree on 4 essential points. ..... 2

A. For the Pankratz Landowners, the parties agree that all six landowners held fee title to an estate in the land abutting the former St. Louis Wichita & Western Railway, Co. right of way and that the railroad held only an easement to use this land for railroad purposes. For one of the Pankratz Landowners, the Mar Trust, the parties agree that the Mar Trust also owned the land underlying the right of way. ..... 2

B. The parties agree that trains have not operated across the Butler County Right of Way since the 1990's, the Rails and Ties have been removed, the STB has authorized the termination of railroad service across the railroad line, the BNSF Quit Claimed any interest it had in the Right of Way to a non-railroad, the STB issued a NITU authorizing abandonment of railroad service on this corridor and conversion of the Right of Way to public recreational trail use and Butler County entered into a Trail Use Agreement for the conversion of the right of way to public-access recreational trail use. ..... 4

C. The parties agree that six of the seven Biery Landowners held fee title to an estate in the land abutting the Reno County right of way and that (for those portions of the right of way acquired by condemnation) the railroad held only an easement to use the land for railroad purposes. ..... 6

D. Trains have not operated across the Reno County Right of Way since before 2002, the rails and ties have been removed, the STB has authorized the termination of railroad service, the BNSF Quit Claimed any interest it had in the right of way to a non-railroad stating specifically that it did not claim to hold anything more than an easement in the right of way, the STB issued a NITU authorizing abandonment of railroad service on this corridor and conversion of the right of way to public recreational trail use and the City of South Hutchinson entered into a Trail Use Agreement for the conversion of the right of way to public-access recreational trail use. ..... 8

E. We also agree on five essential points of law: (i) by condemnation a railroad only obtains an easement (and not a fee estate in the land), (ii) that the owner of the fee estate in land retains that fee estate and title to land subject to a railroad easement, (iii) that a conveyance of land abutting a railroad is presumed to carry title to the centerline of the abutting railroad; (iv) that when railroad use of an easement is terminated the fee owner's land is relieved of the burden of the easement; and, (v) that the Trails Act operates upon the STB's issuance of a NITU to preempt state law that would otherwise hold the railroad easement to be abandoned. ..... 10

III. We disagree on four points which we present to this Court for resolution ..... 11

A. While the government and the Plaintiffs agree that the Biery and Pankratz Plaintiffs own the land abutting the right of way, and the parties agree that three of the Plaintiffs own the land underlying the right of way, the parties disagree whether four of the Biery Landowners and six of the Pankratz Landowners have carried the burden of establishing their ownership of the land underlying the right of way. .......... 12

B. While the government and the Plaintiffs agree that the Butler County Right of Way and the Reno County Right of Way were "largely" established by Condemnation and, as such, the railroad acquired only an easement to use the land and not fee simple ownership of the land, the parties disagree whether four instruments relating to small segments of the Reno County Right of Way conveyed the railroad a fee simple estate in the land used for a right of way or an easement to use the land for a railroad right of way .......... 13

C. Did the railroad's right to use the Plaintiffs' land for operation of a railroad include the ability of a non-railroad to use the land as a public-access recreational trail and indefinitely "railbank" this land under the federal Trails Act? .......... 14

D. Did the Pankratz Landowners claim for a taking of their land arise when the STB issued the original NITU invoking the Trails Act and authorizing conversion of the right of way to trail use or did this claim arise when the STB issued the second NITU? .......... 15

E. The Plaintiffs' Response to the Government's Argument Is Presented In Two Parts. .......... 17

IV. Part One: Point One. All The Plaintiffs Own The Land Upon Which The Former Railway Right Of Way Was Located .......... 18

A. The government agrees that all the landowners hold title to the land abutting the right of way but argues that several of them have not carried the burden of establishing title to the land under the right of way because the deed by which they acquired title references the edge of the right of way as the boundary .......... 18

B. It is a long-established principle of real estate law that a conveyance describing land, whether described by metes and bounds or by Plat and Block, as abutting a railroad is presumed to carry fee title to the center of the adjoining railroad. .......... 19

C. Kansas has expressly adopted the presumption that a deed describing land with a railroad right of way as a boundary carries title to the centerline of the adjoining railroad right of way .......... 21

D. The Defendant Is Aware Of This Presumption of Real Estate Law And Has Acknowledged this Presumption In This As Well as Other Trails Act Taking Cases. .......... 22

E. All the Plaintiffs Have Satisfied the Presumption That They Hold Title To The Land Abutting AND Underlying The Right Of Way and the Government has Not Rebutted this Presumption. .......... 22

V. Part One: Point Two The Four Specific Conveyances Referenced By The Government Did Not Convey A Fee Simple Estate In The Land To The Railroad. .......... 23

A. As A General Matter Of Kansas Law, A Conveyance to A Railroad for a "Right of Way" grants the railroad only an Easement to use the land and does not convey a fee estate in the land itself. .......... 23

B. The Terms of the Conveyance Instruments Demonstrate the Grantor's Clear Intention to Convey Only an Easement .......... 29

i. The Rose J. Arnold Warranty Deed .......... 30

ii. Irrigation Loan and Trust Company Quitclaim Deed**Error! Bookmark not defined.**

iii. E.L. Rowland Quitclaim Deeds .......... 31

iv. Julia Fair Quitclaim Deed ..........**Error! Bookmark not defined.**

VI. Part Two: Neither Public-Access Recreational Trail Use Nor "Railbanking" Are a "Railroad Purpose" Under Kansas Law .......... 33

A. The uses of the subject rights-of-way authorized by the Trails Act – railbanking and interim trail use – are NOT permissible present uses of those rights-of-way under Kansas law. .......... 34

i. The government's "'railbanking' is a railroad purpose" argument has been repeatedly rejected by every court to consider the argument. .......... 34

ii. As a matter of plain English, "Railbanking" and recreational trail use are not a "railroad purpose". .......... 37

i. The definition of "Railway" and "Railroad" .......... 38

ii. The definition of a "recreational trail". .......... 38

iii. The definition of "railbanking" .......... 39

iv. Conclusion: "railbanking" and recreational trail use have nothing to do with the operation of a railroad and are not a "railroad purpose". .......... 39

iii. The 1983 Amendments To The Trails Act Provided For Railbanking and Recreational Trail Use of Abandoned Railroad Rights of Way Precisely Because Such Uses Were NOT A "Railroad Purpose" Under Existing State Law. .......... 40

iv. *Harvey* and *Humberg* Provide No Support For The Government's Argument That "Railbanking" is a Railroad Purpose Under Kansas Law. .......... 45

v. Recreational Trail Use Is Absolutely and Decidedly NOT a "Railroad Purpose" Under Kansas Law .................................................. 48

B. It is not necessary to establish that the Railroad has abandoned the right of way. But, to the extent that abandonment is considered, it is absolute and unequivocal that the Reno and Butler County Rights of way have been abandoned for any railroad use as a matter of fact and as a matter of law. .......... 50

i. It is not necessary to establish that a railroad right of way was abandoned in order for landowners to bring a claim for the Trails Act Taking their Reversionary Interest in their land. .............................. 50

ii. To the extent that a showing of abandonment is necessary, the Butler County and Reno County Railroad Rights Of Way have been absolutely and unequivocally abandoned as a matter of fact. .......... 51

iii. To the extent that a showing of abandonment is necessary, the Butler County and Reno County Railroad Rights Of Way have been absolutely and unequivocally abandoned as a matter of law. .......... 52

C. The So-Called "Shifting Public Use" doctrine has been rejected by the Supreme Court, the Federal Circuit and is Not Recognized Under Kansas Law ........................................................................................................ 56

i. The So-Called "Shifting Public Use Doctrine" Has Been Rejected by the U.S. Supreme Court, Federal Circuit, the D.C. Circuit and other Courts .............................................................................................. 57

ii. Kansas Does Not Recognize the "Shifting Public Use Doctrine" ............ 59

iii. Even Advocates of the So-Called Shifting Public Use Doctrine" Agree that it does not apply to Recreational Hiking Trails. ..................... 60

VII. CONCLUSION ........................................................................................... 61

# TABLE OF AUTHORITIES

## Cases

*ABERCROMBIE V. SIMMONS*, 71 Kan. 538, 81 P. 208 (Kan., 1905) .................................. 13, 26, 28

*ATCHINSON, TOPEKA & SANTA FE RAILWAY COMPANY V. O'LEARY*, 100 P.628 (Kan., 1909) .......... 47

*ATICHSON, TOPEKA & SANTA FE RY. CO. V. HUMBERG*, 9 Kan. App. 2d 205, 675 P.2d 375 (Kan., 1984) ........................................................................................ 27, 44, 45, 46

*Banks v. Ogden*, 2 Wall. 68........................................................................................ 19

*BARCLAY V. UNITED STATES* 443 F.3d 1368 (Fed. Cir., 2006) .......................................... 16, 41, 50

*BARKER V. LASHBROOK*, 279 P. 12 (Kan., 1929)........................................................ 10, 12, 21, 26

*BECKER V. SURFACE TRANSPORTATION BOARD*, 132 F. 3d 60 (D.C. Cir, 1997)............................. 40

*BIRT V. STB*, 90 F.3d 580 (D.C. Cir., 1996)........................................................................ 11, 40

*BOWERS V. ATCHISON, T&S.F. RY. CO.*, 237 P. 913 (Kan., 1925)........................................... passim

*BOYLES V. MISSOURI FRIENDS OF THE WABASH TRACE NATURE TRAIL, INC.*, 981 S. W. 2d 644 (Mo App, W.D., 1998)........................................................................................ 37

*Brown v. Penn Central Corp.*, 510 N.E.2d 641 (Ind.1987)................................................ 24, 62

*Brown v. Weare*, 348 Mo. 135 S.W. 2d 649 (1941) ............................................................. 61

*Buhl et. al v. U.S. Sprint Communications Co.* 840 S.W. 2d 904 (1992, Tenn)......................... 61

*CALDWELL V. UNITED STATES*, 391 F. 3d 1226 (Fed Cir., 2004) ........................................ 11, 41

*Chatham v. Brainerd*, 11 Conn. 60-85........................................................................... 20

*Chevy Chase Land Co. v. United States*, 158 F.3d 574 (Fed. Cir., 1998) ................................ 34

*Chevy Chase Land Co. v. United States*, 355 Md. 110, 733 A.2d 1055 (1999) ......................... 34

*CHEVY CHASE LAND CO. V. UNITED STATES*, 733 A.2d 1055 (Md., 1999) ................................. 33

*CHEVY CHASE LAND V. UNITED STATES*, 230 F.3d 1375 (Fed. Cir., 2000) ............................ 33, 34

*CITIZENS AGAINST RAILS-TO-TRAILS V. SURFACE TRANSPORTATION BOARD*, 267 F. 3d 1144 (D.C. Cir, 2001) ............................................................................................ 40, 43

*Coon v. Sonoma Magnesite Co.* 183 Cal. 597 189 P. 271 (1920) ............................................ 61

*Cooper v. Selig*, 48 Cal. App. 228, 191 P. 983 ................................................................ 61

*Cox v. Freedley*, 33 Pa. 124 ........................................................................................ 20

*DANIELSON V. WOESTEMEYER*, 131 Kan. 796, 263 P. 507 (Kan., 1930) ................................... 26

*Davis v. MCI* 606 So. 2d 734 (1992) ............................................................................ 24

*DISNEY V. LANG*, 90 Kan. 309 P. 572 (Kan. 1913)............................................................ 13

*Faus v. City of Las Angeles*, 67 Cal.2d 350, 62 Cal.Rptr. 193, 431 P.2d 849 (1967) ................ 59

*Fed. Farm Mortg. Corp. v. Smith*, 89 P2d 838 (Kan., 1939) ........................................... passim

*Fritsch v. I.C.C.*, 59 F. 3d 248, (D.C. Cir., 1995)............................................................... 41

*Glosemeyer v. United States*, 45 Fed. Cl. 771 (2000) ........................................ 33, 35, 37, 57

*Goos v. ICC*, 911 F.2d 1283 (8th Cir., 1990) ........................................................ 11, 38, 40

*Grantwood Village v. Mo Pac*, 95 F. 3d 654 (8th Cir, 1996) ........................................... 40, 42

*Harvest Queen Mill & Elevator v. Sanders, 189 Kan. 536, 370 P.2d 419 (Kan. 1962)*13, 26, 29

*Harvey v. Missouri Pac. R. Co.*, 111 Kan. 371, 207 P. 761 (Kan., 1922) ................ 27, 44, 45, 46

*Hash v. United States*, 403 F. 3d 1308 (Fed. Cir., 2005)............................................ 41, 48, 57

*Hastings v. Whitney*, 132 U.S. 357 (1889)........................................................................ 57

*Henry v. Columbus Depot Co.,* 135 Ohio St. 311, 20 N.E.2d 921 (1939).................................. 25

*Highland Realty Co. v. City of San Rafael, 46 Cal.2d 669, 298 P2d 15 (1956)* ............... 24, 61

*Illig v. United States*, 58 Fed. Cl. 619 (2003)..................................................................... 21

*Japanese War Notes v. United States*, 178 Ct. Cl. 630, 373 F. 2d 356 (1967).......................... 16

*Johnson v. Ocean Shore R.R.,* 16 Cal.App.3d 429, 94 Cal.Rptr. 68 (1971) ............................... 25

*Jost v. Surface Transp Bd.* 194 F. 3d 79 (D.C. Cir, 1999).................................................... 40

*Kansas Electric Power Co. v. Walker*, 142 Kan. 808, 51 P.2d 1002 (Kan., 1935) ............ 58, 59

*L&G Realty & Construction Co. v. Indianapolis*, 127 Ind. App. 35, 139 N.E.2d 580 (1957)................................................................................................................. 62

*Lawson v. State*, 107 Wash.2d 444, 730 P.2d 1308 (Wash., 1986)............................... 33, 49, 57

*Leo Sheep Co. v. United States*, 440 U.S. 668 (1979) ............................................................. 57

*Loveland v. CSX*, 620 So.2d 1120 (1993)............................................................................49

*Mammoth Cave National Park Ass'n v. State Highway Commission*, 261 Ky. 769, 88 S.W.2d 931 (Ky. App., 1935) ........................................................................................ 49, 52

*Martell v. Stewart,* 6 Kan. App. 2d 387, 628 P.2d 1069 (Kan. App., 1981)............................ 53

*Maryland & Pa. R.R. Co. v. Mer-Safe, etc.*, 224 Md. 34, 166 A. 2d 247 (Md., 1960)........ 51, 52

*Matlack v. City of Wichita*, 407 P. 2d 510, 511 (Kan., 1965) ............................................. 53

*Michigan DNR v. Carmody-Lahti Real Estate, Inc.* 472 Mich. 359, 699 N.W. 2d 272 (Mich., 2005) ................................................................................................ 33, 49, 57

*Miller v. St. Louis, Southwestern Railway Company*, 239 Kan. 198, 718 P.2d 610 (Kan., 1986) ........................................................................................... 27, 44, 45, 47

*Moakley v. Los Angeles Pacific Ry. Co.* 139 Cal App 421, 34 P2d 218 (1934) .......................... 61

*NATIONAL ASSOCIATION OF REVERSIONARY PROPERTY OWNERS V. SURFACE TRANSPORTATION BOARD*, 158 F. 3d 135 (D.C. Cir, 1998) ........ 40

*NATIONAL WILDLIFE FOUNDATION V. ICC*, 850 F. 2d 694 (D.C. Cir., 1988) ........ passim

*NEWHALL V. IRESON*, 8 Cush. 595 ........ 20

*NORTHERN PACIFIC RAILROAD COMPANY V. SMITH*, 171 U.S. 261 (1903) ........ 48

*NORTHERN PACIFIC RAILWAY CO. V. ELY*, 197 U.S 1 (1898) ........ 48

*NORTHERN PACIFIC RY. V. TOWNSEND* 190 U.S. 267 (1905) ........ 48

*NOTT V. BEIGHTEL*, 155 Kan. 94, P.2d 747 (Kan., 1942) ........ 27

*Ocean Shore Railroad v. Doelger*, 127 Cal. App. 2d 392, 274 P.2d 23 (1954) ........ 61

*Peck v. Denniston*, 121 Mass. 17 ........ 20

*Penn. Cent. Corp. v. U.S.R.R. Vest Corp.* 955 F. 2d 1158. (1992, 7th Cir, Ind.) ........ 24

*People, By and Through Department of Public Works v. Thompson,* 43 Cal 2d 13, 271 P 2d 507 (1954) ........ 61

*POLLNOW V. STATE*, 88 Wis. 2d 350, 276 N.W.2d 738 (Wisc., 1979) ........ 33, 49

*Pratt v. Griese*, 196 Kan. 182, 409 P.2d 777 (Kan., 1966) ........ passim

*PRESEAULT V. UNITED STATES, 100 F.3D 1525 (FED.CIR. EN BANC 1996)* ........ passim

*Preseault v. United States,* 494 U.S. 1 (1990) ........ passim

*REIGER V. PENN CENTRAL CORP.*, No. 85-CA-11, slip op. (Ct. App. Greene County, Ohio, May 21, 1985) ........ 33

*Richard S. Brunt Trust v. Plantz,* Ind. App. 458 N.E.2d 251 (1983) ........ 62

*RLTD V. SURFACE TRANSPORTATION BOARD*, 166 F. 3d 808 (6th Cir, 1999) ........ 40

*Ross, Inc. v. Legler,* 245 Ind. 655, 199 N.E.2d 346 (1964) ........ 24

*San Rafael Ranch Co. v. Ralph Rogers Co.* 154 Cal. 76, 96 P. 1092 (1908) ........ 61

*Schuermann Enterprises, Inc. v. St. Louis County*, 436 S.W. 2d 666 (Mo. 1969) ........ 61

*Sherman v. Petroleum Exploration,* 280 Ky. 105, 132 S.W.2d 768 (1939) ........ 24, 62

*STONE V. U.S.D. NO. 222*, 278 Kan. 166, 91 P.3d 1194 (Kan., 2004) ........ 26

*SWISHER V. UNITED STATES*, 176 F. Supp. 2d 1100 (D. Kan., 2001) ........ 34

*Tamalpais Land & Water Co. v. Northwestern Pac. R. Co.* 73 Cal. App 2d 917, 167 P2d 825 (1946) ........ 62

*TOEWS V. UNITED STATES,* 376 F.3d 1371 (Fed. Cir., 2004) ........ passim

*WASHINGTON WILDLIFE PRES., INC. V. MINNESOTA*, 329 N.W. 2d 543 (Minn., 1983) ........ 33

*WILCOX V. JACKSON*, 13 Pet. 498, 10 L. Ed. 264 ........ 57

*WINKEL V. KANSAS DEP'T OF TRANSP.*, 131 P. 3d 570, No. 94,008, 2006 WL 903159 (Kan. Ct. Apr. 7, 2006) ........ 53

### Other Authorities

11 U.S.C.§ 101 ........ 37

16. U.S.C. §1247 ........ 38

3 *Washb.Real Prop.*(5th Ed.) ........ 19

49 U.S.C. §10906 (1982) ........ 41

Carroll, Lewis, "*THROUGH THE LOOKING GLASS*" ........ 39

D. Robert White, Esq. *THE OFFICIAL LAWYER'S HANDBOOK*. Simon & Schuster, Inc. (1983), p. 185-86 ........ 39

H.R. Rep. No. 28, 98th Cong., 1st Sess. 8-9 (1983) ........ 42

Heftman, Jeffery M., RAILROAD RIGHT-OF-WAY EASEMENTS, UTILITY APPORTIONMENTS, AND SHIFTING TECHNOLOGICAL, REALITIES, Univ of Illinois L. Rev. Vol 2002, p. 1401........ 59

K. S. A. § 8-1454 ........ 37

K.S.A. § 21-3761 ........ 37

K.S.A. §8-1452 ........ 37

National Trails System Act, 16 U.S. C. 1247(d) ........ 8

*Thompson on Real Property*, Perm Ed., Vol. 2, pp. 11-12, s 461 and p. 14, s 462 and 132 A.L.R. 142-187 ........ 62

*U.S. CODE CONG. & ADMIN. NEWS* 1983 ........ 42

U.S. House of Representatives, Judiciary Committee, Subcommittee on Commercial and Administrative Law, "Litigation and Its Effect on the Rails-to-Trails Program," June 20, 2002 ........ 43

*YEAR BOOK OF 17 EDWARD III,* A.D. 1343 ........ 20

### APPENDICES

**A - Other State Court Decisions Holding Similar Instruments as Conveying Only an Easement and Not a Fee Estate in the Land**

**B -** **Copy of Condemnation Order creating the Butler County Right of Way (Transcribed)**

**C-** **Copy of Voluntary Conveyance Creating the Butler County Right of Way (Transcribed)**

**D -** **Copy of Condemnation Order Creating the Reno County Right of Way (Transcribed)**

**E -** **Copy of Condemnation Order Creating the Reno County Right of Way (Transcribed)**

**F -** **Rose J. Arnold Deed (Transcribed)**

**G -** **Julia Fair Deed (Transcribed)**

**H-** **Irrigation Loan & Trust Company Deed (Transcribed)**

**I-** **E.L. Rowland Deed (Transcribed)**

**J -** **Irrigation Loan & Trust Company Deed (Transcribed)**

**K -** **Government's Motion to Withdraw Argument in ILLIG V. UNITED STATES**

# I. Introduction

The present matter involves two separate cases in which Kansas landowners claim that the federal government, through operation of the Trails Act[1], took their "reversionary"[2] right to their land and burdened their land with two new easements, one for a public-access recreational trail and a second perpetual easement across the land for possible future railroad use. While the federal government has the ability to take private property in this manner, the Fifth Amendment requires that the landowners from whom the property is taken receive "just compensation".

The *PANKRATZ* case (No. 1:07-cv-695) involves claims brought by six landowners in Butler County, Kansas who own land upon which the former St. Louis Wichita & Western Railway railroad right of way was located ("*PANKRATZ* landowners").[3] The *BIERY* case (No. 1:07-cv-693) involves similar claims by seven landowners in Reno County, Kansas upon which the former Hutchinson, Oklahoma & Gulf Railroad and the Hutchinson & Southern Railroad right of way was located ("*BIERY* landowners".)[4] For many of these landowners, the property involved is their home or a family business or farm.

---

[1] Pub.L. 98-11, 97 Stat. 48, to the National Trails System Act, Pub.L. 90-543, 82 State. 919 (certified, as amended, at 16 U.S.C. §1241 et seq. (Supp. II 1996).

[2] The use of the term "Reversionary" is in the generic sense as used by the Federal Circuit in *TOEWS V. UNITED STATES*, 376 F.3d 1371 (Fed. Cir. 2004) in similar Trails Act cases and is not meant to imply that the railroad held a fee simple determinable (or conditional) interest in the land.

[3] The *PANKRATZ* plaintiffs are Jerramy and Erin Pankratz, Donald E. and Evangeline Wedell, Thad J. Colling, Thick Gon Mar, Trustee of the Thick Gon Mar Revocable Trust, dated November 7, 1995, Michael A. and Marcia J. Woods, and Floyd E. and Becky Myers. The present motion for summary judgment concerns only these named plaintiffs. However, there is a pending motion for the Pankratz case to be certified as a class action pursuant to RCFC 23 (Docket No. 11.)

[4] The *BIERY* Plaintiffs are Dorothy L. Biery, Gordon Holloway, as successor and representative of decedent George A. Holloway, Stacy E. Judy Trust dated March 7, 1994, Julia R. Chalfant Etvir Trust, K.A.K. Farms, Inc., American Packing Corporation, and Collins Industries, Inc. There is no motion for the *BIERY* case to be certified as a class action.

This Court has consolidated these two cases for briefing on the issue of liability – namely the government's obligation to pay "just compensation" to the named Plaintiffs for the taking of their property.[5] The Plaintiffs have filed a motion for summary judgment on this issue pursuant to RCFC 56[6] and the government has filed a cross-motion for summary judgment.[7] This memorandum is the Plaintiffs' response to the government's cross-motion for summary judgment.

## II. We agree on 4 essential points.

We commence our discussion from a point of common agreement. On the following essential points the Plaintiffs and the government are in accord. We draw these points of agreement from the government's own pleadings and exhibits.

### *A. For the Pankratz Landowners, the parties agree that all six landowners held fee title to an estate in the land abutting the former St. Louis Wichita & Western Railway, Co. right of way and that the railroad held only an easement to use this land for railroad purposes. For one of the Pankratz Landowners, the Mar Trust, the parties agree that the Mar Trust also owned the land underlying the right of way.*

1. The railroad right of way which is the subject of the *PANKRATZ* Landowners' claim is a 10.6 mile long right of way between Augusta, Kansas and Andover, Kansas in Butler County.[8] (For convenience, when referring to this railroad line in its entirety we refer to it as the "Butler County Right of Way.")
2. The Butler County Right of Way was originally established by a Condemnation Decree[9] dated November 4, 1879 and a conveyance from William and Ann Chase to the St. Louis

---

[5] Order filed by this Court on May 9, 2008 in *BIERY v. U.S.* (07-693L) (Docket No. 29.).

[6] Docket #23.

[7] Docket #31.

[8] Govt's Memo p.6.

[9] The Condemnation Decree is attached as Exhibit 10-1 to the government's Memo and a transcribed copy is attached to this memo as Appendix B.

Wichita & Western Railway, Co. dated November 3, 1879[10] and was constructed between 1879 and May 1880.[11]

3. Five of the *PANKRATZ* landowners own the land abutting the portion of the right of way established by the Condemnation Decree.[12]
4. *PANKRATZ* landowner Colling owns the land abutting the portion of the right of way established by the Chase conveyance.[13]
5. Each of the *PANKRATZ* landowners held title to a fee simple estate in the land abutting the right of way on September 14, 2004.[14]
6. *PANKRATZ* landowner Mar held fee simple estate in the land underlying the right of way.[15]
7. For that portion of the right of way subject to a Condemnation Decree, the railroad obtained only an easement to use the property and did not own a fee estate in the land.[16]
8. "Defendant concedes that the railroad acquired only an easement with regard to the small segment of the subject right-of-way [described in the Chase deed] because the legal

---

[10] The Chase conveyance is attached as Exhibit 10-2 to the government's Memo and a transcribed copy is attached as Appendix C.

[11] Govt's Memo, Exhibit 3 (historical report), p.3.

[12] Govt's Memo, p. 6 – 7. The specific *PANKRATZ* landowners abutting this portion of the right of way established by Condemnation Decree are Jerramy and Erin Pankratz, Donald E. and Evangeline Wedell, Thick Gon Mar, Trustee of the Thick Gon Mar Revocable Trust, dated November 7, 1995, Michael A. and Marcia J. Woods, and Floyd E. and Becky Myers

[13] Govt's Memo, p. 7 and Govt's Exhibit 10.

[14] "Defendant does not dispute that each of the Pankratz Plaintiffs owned a parcel of land that abuts the subject right-of-way as of September 13, 2004." Govt's Memo at p. 30; Govt's Proposed Finding of Uncontroverted Fact Nos. 18 through 24.

[15] "Defendant's review of the legal description of the Mar Trust's property and the county maps showing the location of that property confirm that the right-of-way traverses that property. (i.e. the Mar Trust owns the property on both sides of the right-of-way.) Accordingly, the Defendant does not dispute that under Kansas law, the Mar Trust is the fee owner of the land subject to a railroad easement." Govt's Memo, p. 32

[16] "Most of the segments of the rights-of-way at issue in *BIERY* and *PANKRATZ* were acquired by the railroad though condemnation proceedings between 1879 and 1899. As set forth below, under state law then in effect, the railroad acquired an easement to these segments by condemnation." Gov't Memo, p. 18

description of the deed clearly shows that the use of the land was restricted for railroad purposes and the deed contains a reversionary clause."[17]

## *B. The parties agree that trains have not operated across the Butler County Right of Way since the 1990's, the Rails and Ties have been removed, the STB has authorized the termination of railroad service across the railroad line, the BNSF Quit Claimed any interest it had in the Right of Way to a non-railroad, the STB issued a NITU authorizing abandonment of railroad service on this corridor and conversion of the Right of Way to public recreational trail use and Butler County entered into a Trail Use Agreement for the conversion of the right of way to public-access recreational trail use.*

9. The Burlington Northern Santa Fe Railroad ("BNSF") is the successor to the St. Louis Wichita & Western Railway Co.[18]

10. "By the mid-1990's, all operations on the Line had ceased. The line is in poor condition and has not seen any traffic in recent years. In order to restart freight operations, significant rehabilitation would be required. [N]o traffic has moved on the line in about ten years."[19]

11. In 2002 Butler County, a "noncarrier," filed a notice with the STB to acquire the rail line from the BNSF pursuant to 49 CFR 1150.31. The County stated that "the line is currently out of service and will be rehabilitated after the acquisition is consummated. The County further state[ed] that it is its intent to have the above line operated by a yet-to-be determined third party rail operator."[20]

---

[17] Govt's Memo, p. 22.

[18] Govt's Memo, Exhibit 3 (Historic Report), p. 3.

[19] Govt's Memo, Exhibit 3 (Historic Report), p. 3-4.

[20] STB Finance Docket No. 34139, January 11, 2002, attached at Tab J to Pankratz Plaintiffs' Proposed Findings of Uncontroverted Fact [PFUF].

12. The BNSF quit claimed to Butler County "all of [BNSF]'s rights, title and interest, if any, in real estate and improvements constituting [BNSF]'s rail corridor between Milepost 483.62 in Augusta, Kansas and Milepost 494.22 near Andover, Kansas."[21]

13. Butler County was unable to find any "third party rail operator" to operate a railroad over the line and in 2004 filed a notice of abandonment with the STB in which the County stated that it sought to abandon railroad service over the entire 10.6 mile long rail line and that, "no local traffic has moved over the line for at least 2 years" and "there has been no overhead traffic on the line during the past 2 years."[22] "The County states that since December 2001, no local traffic as moved over the line. The line is stub-ended and, therefore, not capable of handling overhead traffic."[23]

14. The rails and ties have been removed from the right of way.[24]

15. "By decision served on September 14, 2004, a notice of interim trail use (NITU) was issued [by the STB] to Prairie Travelers, Inc. (PTI), to negotiate with the County for acquisition of the right-of-way for use as a recreational trail."[25] This order provided that "the County may discontinue service, and salvage track and related materials."

16. "The NITU issued to PTI expired on March 13, 2005, without an agreement being reached."[26]

---

[21] Govt's Memo, Exhibit 11, p. 1, recorded at Book 1037, Page 67 *et seq.* of the Butler County Recorder of Deeds' Office.

[22] STB Docket No. AB-870X, Service Date, July 2, 2004, attached at Tab K of Pankratz Plaintiffs' PFUF.

[23] STB Docket No. AB-870X, Service Date July 9, 2004 (Environmental Assessment), attached at Tab L of Pankratz Plaintiffs' PFUF.

[24] Pankratz Plaintiffs' PFUF, No. 25.

[25] STB Docket No. AB-870X, Service Date, June 2, 2005 (citing prior STB NITU issued September 14, 2004), attached as Tab C to Pankratz Plaintiffs' PFUF.

[26] *Id.*

17. "On May 2, 2005, Butler County Economic Development (BCED), also known as the Butler County Board of Commissioners, late-filed a request for the issuance of a NITU for the entire line pursuant to section 8(d) of the National Trails System Act, 16 U.S.C. 1247(d) and 49 CFR 1152.29 in order to rail bank its own line." The STB granted this request and issued a second NITU ordering, *inter alia*, that "If an agreement for interim trail use/rail banking is reached by November 29, 2005 (the 180th day after service of this decision and notice), interim trail use may be implemented."[27]

18. "On June 2, 2005, the County and BCED executed a trail use/railbanking agreement for the line."[28]

19. On April 2, 2008, the Butler County Planning and Development department sent a letter to Jerramy Pankratz stating, "I can reconfirm that you do not have the right to make any improvements to the lands within the right of way (including fencing, erecting structures, or grading out the rail bed.)"[29]

### C. The parties agree that six of the seven Biery Landowners held fee title to an estate in the land abutting the Reno County right of way and that (for those portions of the right of way acquired by condemnation) the railroad held only an easement to use the land for railroad purposes.

20. The railroad right of way which is the subject of the *BIERY* landowners' claim is a 2.88 mile long right of way near South Hutchinson, Kansas in Reno County.[30] (For convenience when referring to this right of way in its entirety we refer to it as the "Reno County Right of Way".)

---

[27] *Id.*

[28] Govt's Memo, p. 8.

[29] Govt's Response to Plaintiffs' PFUF No. 38. A complete copy of the referenced letter is attached to Pankratz Plaintiffs' PFUF at Tab O.

[30] Govt's Memo, p. 8.

21. The Reno County railroad right of way was established by two Condemnation Decrees and five instruments from grantors that were fee owners of the land. To Wit: The Hutchinson Oklahoma & Southern Railway Co. acquired a portion of this right of way by Condemnation Decree dated August 1, 1889,[31] the Hutchinson & Southern Railway Co. acquired a portion of the right of way by Condemnation Decree dated October 27, 1899[32] and five sections were acquired by five separate instruments, from Rose Arnold dated May 15, 1895,[33] from Julia Ann Fair dated November 22, 1899,[34] from the Irrigation Loan & Trust Co. dated November 1, 1901[35] and from E.L Rowland dated September 1, 1896,[36] and another from the Irrigation Loan & Trust Company dated 1901.[37]

22. Six of the seven *BIERY* landowners own title to a fee simple estate in the land that abuts the right of way.[38]

---

[31] Govt's Memo, Exhibit 22, p. 2-3. A transcribed copy of the Condemnation Decree is attached as Appendix D.

[32] Govt's Memo, Exhibit 22, p. 2-3. A transcribed copy of the Condemnation Decree is attached as Appendix E.

[33] Govt's Memo, Exhibit 22, p. 2-3. A transcribed copy of the The Rose J. Arnold Warranty Deed is attached as Appendix F.

[34] *Id.* A transcribed copy of the Julia Ann Fair instrument is attached as Exhibit F. However, as discussed more fully below, Julia Ann Fair's husband, Thomas A. Fair was owner whose land was taken by Condemnation Decree on August 1, 1889.

[35] *Id.* A transcribed copy of the Irrigation Loan & Trust Co. instrument is attached as Appendix H.

[36] *Id.* A transcribed copy of the E.L. Rowland instrument is attached as Appendix I.

[37] *Id.* A transcribed copy of the Irrigation Loan & Trust Co. instrument is attached as Appendix J.

[38] Govt's Memo, p. 24. "Each Plaintiff (with the exception of Collins Industries, Inc. ***) is the owner of a parcel of land that abuts the subject rights-of-way." Plaintiffs, however, maintain that Collins Industries Inc. exercised all the indicia of ownership of the parcel of land described in the deed attached at Tab J to Biery Plaintiffs' PFUF. See Plaintiffs' PFUF in Response to Defendant's Cross Motion for Summary Judgment [PFUF in Response], Tab 27.

23. "[T]he railroad rights of way at issue in this case were established, largely by condemnation, between 1879 and 1899. Under Kansas law in effect at that time, the railroad acquired only an easement by condemnation meaning that the 'land condemned for a right of way for a railroad or other public purposes continues to be the property of its fee owner.'"[39]

### D. *Trains have not operated across the Reno County Right of Way since before 2002, the rails and ties have been removed, the STB has authorized the termination of railroad service, the BNSF Quit Claimed any interest it had in the right of way to a non-railroad stating specifically that it did not claim to hold anything more than an easement in the right of way, the STB issued a NITU authorizing abandonment of railroad service on this corridor and conversion of the right of way to public recreational trail use and the City of South Hutchinson entered into a Trail Use Agreement for the conversion of the right of way to public-access recreational trail use.*

24. In March 2004, the BNSF filed a notice of its intent to abandon the 2.88 mile long railroad line near South Hutchinson, Kansas. The BNSF certified that "no local traffic has moved over the line for at least 2 years."[40]

25. "All rail traffic across the line ended over two years ago (prior to 2004). As a result, there is now no demand for or prospect of rail service over the line, and no traffic has originated, terminated, or moved overhead on this segment for at least two years."[41]

26. "On February 25, 2004, the City of South Hutchinson, KS (the City), filed a request for the issuance of a notice of interim trail use (NITU) for the subject line under the National

---

[39] Govt's Memo, p. 25. (Citing *FED. FARM MORTG. CORP. V. SMITH*, 89 P2d 838, 839 (Kan., 1939)).

[40] STB Docket No. AB-6 (Sub-No. 406X), Service Date, March 11, 2004, attached at Tab K to Biery Plaintiffs' PFUF.

[41] STB Docket No. AB-6 (Sub. No. 406X), Service Date, March 16, 2004 (Environmental Assessment), attached at Tab K-1 to Biery Plaintiffs' PFUF.

Trails System Act, 16 U.S. C. 1247(d) (Trails Act), in order to negotiate with BNSF for acquisition of the rights-of-way for use as a trail."[42]

27. The STB granted an extension to the NITU negotiating period "for an additional 180 days from October 7, 2004 (until April 5, 2005)."[43]

28. On March 23, 2005, the BNSF and the City of South Hutchinson entered into a "Railbanking And Donation Contract." This agreement provided that, "Donee [the City of South Hutchinson] acknowledges and affirms that BNSF may not hold fee title or any other particular interest in the Property, that BNSF's interest in the Property, if any, may rise only to the level of an easement for railroad purposes. DONEE IS WILLING TO ACCEPT BNSF'S TITLE TO THE PROPERTY, IF ANY, ON THIS BASIS AND EXPRESSELY RELEASES BNSF, ITS SUCESSORS AND ASSIGNS FROM ANY CLAIMS THAT DONEE OR ITS SUCESSORS MAY HAVE AS A RESULT OF THE DONATION OR CONVEYANCE TO BE MADE AT CLOSING. IN LIGHT OF BNSF'S DISCLOSURE THAT IT MAY NOT HOLD FEE SIMPLE TITLE OR ANY OTHER INTEREST IN THE PROPERTY, DONEE SHALL INDEMNIFY, DEFEND AND HOLD BNSF HARMLESS FROM ANY SUIT OR CLAIM FOR DAMAGES, PUNITIVE OR OTHERWISE, EXPENSES, ATTORNEYS' FEES, OR CIVIL PENALTIES THAT MAY BE IMPOSED ON BNSF AS THE RESULT OF ANY PERSON OR ENTITY CLAIMING AN INTEREST IN THE PROPERTY OR CLAIMING THAT BNSF DID NOT HAVE THE RIGHT TO TRANSFER THE PROPERTY TO DONEE." (All capitals in original). [44]

---

[42] STB Docket No. AB-6 (Sub-No. 406X), Service Date April 8, 2004 (NITU), attached at Tab L to Biery Plaintiffs' PFUF.

[43] STB Docket No. AB-6 (Sub-No. 406X), Service Date October 4, 2004, attached at Tab M to Biery Plaintiffs' PFUF.

[44] Govt's Memo, Exhibit 20, p. 1 – 2.

29. After the agreement between BNSF and the City of South Hutchinson, the City of South Hutchinson opened the South Hutchinson Nature Trail along the right of way.[45]

### E. *We also agree on five essential points of law: (i) by condemnation a railroad only obtains an easement (and not a fee estate in the land), (ii) that the owner of the fee estate in land retains that fee estate and title to land subject to a railroad easement, (iii) that a conveyance of land abutting a railroad is presumed to carry title to the centerline of the abutting railroad; (iv) that when railroad use of an easement is terminated the fee owner's land is relieved of the burden of the easement; and, (v) that the Trails Act operates upon the STB's issuance of a NITU to preempt state law that would otherwise hold the railroad easement to be abandoned.*

30. When a railroad acquires a right of way by condemnation, the railroad acquires only an easement to use the land for railroad purposes.[46]

31. "The ultimate title to land subject to railroad purposes does not cease to be in the owner of the adjacent freehold from which it was derived, and the termination of its use for railroad purposes has no effect upon fee title. It merely relieves the underlying fee of the dominant estate."[47]

32. As a matter of law and public policy, Kansas "disfavored 'separate ownership of long, narrow strips of land distinct from the territory adjoining on each side'" so the following rule of deed construction applies "to determine ownership of the fee subject to a railroad right-of-way: 'When an owner conveys a tract of land abutting on a railroad right of way tract, in which such grantor owns the servient estate and the railroad the dominant estate for right of way purposes, his conveyance passes to his grantee such servient estate, unless the intention not to do so be clearly indicated.'"[48]

---

[45] See Tab 31 of Plaintiffs' PFUF in Response.

[46] Govt's Memo, p. 25.

[47] Govt's Memo, p. 25 (Citing and quoting, *Fed Farm Mortg,* 89 P. 2d at 841.)

[48] Govt's Memo, p. 25 (Citing and quoting *Bowers v. Atchison, T&S.F. Ry. Co.,* 237 P. 913 (Kan., 1925) and *Barker v. Lashbrook*, 279 P. 12, 14 (Kan., 1929)).

33. "There is no dispute that if the segments of the subject right-of-way that were acquired as easements (by condemnation or deed) were abandoned as a matter of state law, those segments would be returned to the fee owner of those lands (i.e. the owner of the servient estate.)"[49]

34. "The NITU operates to preserve the STB's jurisdiction, thereby preempting the application of applicable law that would otherwise apply in the event that the railroad were to fully abandon its rail line. If a railbanking and interim trailuse agreement is reached, the NITU automatically authorizes the interim trail use, the trail sponsor may then assume management of the right of way, subject only to the right of a railroad to restore active rail service."[50]

35. The Trails Act operates, *inter alia*, by authorizing a third party (trail sponsor) to assume management responsibility and liability for the corridor including the obligation to pay taxes and other costs and relieves the railroad of such responsibility and costs.[51]

## III. We disagree on four points which we present to this Court for resolution.

From these points of common agreement the parties cross motions for summary judgment present this court with two points of disagreement for this Court to resolve.

---

[49] Govt's Memo, p. 26.

[50] Govt's Memo, p. 6. (citing, *Caldwell v. United States*, 391 F. 3d 1226, 1229-30 (Fed Cir., 2004); *Goos v. ICC*, 911 F.2d 1283, 1295 (8th Cir., 1990); and *Birt v. STB*, 90 F.3d 580, 583 (D.C. Cir., 1996).

[51] Govt's Memo, p. 44.

### A. *While the government and the Plaintiffs agree that the Biery and Pankratz Plaintiffs own the land abutting the right of way, and the parties agree that three of the Plaintiffs own the land underlying the right of way, the parties disagree whether four of the Biery Landowners and six of the Pankratz Landowners have carried the burden of establishing their ownership of the land underlying the right of way.*

While acknowledging that all of the *PANKRATZ* and all of the *BIERY* Plaintiffs own the land abutting the respective right of way and acknowledging that three of the *BIERY* Plaintiffs own the land underlying the respective right of way,[52] the government claims that all six of the *PANKRATZ* Plaintiffs and four of the *BIERY* Plaintiffs have not "carried the burden" of establishing that they own the land underlying the right of way. The government argues that the disputed Plaintiffs deeds "establish only that they own a parcel of land that abuts the right-of-way. In order to establish ownership of the lands underlying the right-of-way, Plaintiffs must produce additional documents from their chains-of-title establishing that their predecessors-in-title owned the lands underlying the right-of-way and that such land was conveyed to them."[53] As such, the government contends that deeds describing the Plaintiffs' land as bordering the railroad right of way do not establish ownership of the land under the right of way.

The Plaintiffs show that the long-established principle of real estate law (repeatedly recognized in Kansas and acknowledge by the government[54]) holds that when a deed uses a railroad as a property boundary in the description of the land conveyed, the title to the land

---

[52] The government acknowledge that the Mar Trust has established ownership of the land underlying the right of way (Govt's Memo, p. #32) and is willing to concede that Holloway and Stacy Judy Trust have established ownership of the land underlying the right of way provided they submit an affidavit agreeing to the centerline as the boundary between their properties. (Govt's Memo, p. 28, note 19). The Holloways and Stacy Judy Trust have provided this stipulation even though such stipulation is not necessary under Kansas law. Thus, the government has conceded the Holloway, Stacy Judy Trust and Mar Trust to have established their ownership of the fee estate in the land underlying the Reno County Right of Way. See Tab 21 (Holloway) and Tab 23 (Stacy E. Judy Trust) of Plaintiffs' PFUF in Response.

[53] Govt's Memo, p. 31.

[54] See note 48, *supra*.

conveyed is presumed to include the land to the centerline of the abutting right or way.[55] This is a presumption that all of the Plaintiffs have satisfied and, accordingly, as a matter of Kansas law they have carried the burden of establishing that they hold title to the land underlying as well as abutting the former railroad right of way. The government requested and was provided opportunity to conduct extensive title research to rebut this presumption. The government does not contend that there is any basis upon which it rebuts this presumption (i.e., the government has not come forward with any deed or other instrument by which it can be asserted that some predecessor in title to the Plaintiff specifically exempted the land underlying the abutting right of way from the conveyance and retained title to this strip of land). Absent this, the presumption lies and, under Kansas law, each of the *PANKRATZ* landowners and each of the *BIERY* landowners have carried the burden of establishing their ownership of the land underlying the respective portion of the right of way.

### B. While the government and the Plaintiffs agree that the Butler County Right of Way and the Reno County Right of Way were "largely" established by Condemnation and, as such, the railroad acquired only an easement to use the land and not fee simple ownership of the land, the parties disagree whether five instruments relating to small segments of the Reno County Right of Way conveyed the railroad a fee simple estate in the land used for a right of way or an easement to use the land for a railroad right of way.

There is no dispute that for the entirety of the Butler County Right of Way the railroad held only an easement and this is so for both the portion acquired by condemnation and by a private instrument. However, the government contends that for those portions of the Reno County Right of Way referenced in the Julia Fair, Rose Arnold, E.L. Rowland and Irrigation Loan & Trust Co. instruments the railroad acquired a fee simple estate in the land.

The Plaintiffs show that under Kansas law these instruments granted the railroad only an easement to use the land as a right of way for the purpose of operating a railroad. The Kansas Supreme Court has held it to be the long-settled law that,

---

[55] *BOWERS V. ATCHISON, T & S.F. RY. CO.*, 237 P. 913 (Kan., 1925) and *BARKER V. LASHBROOK*, 279 P. 12 (Kan., 1929).