The government is wrong for three reasons: (1) this so-called "shifting public use doctrine" has been rejected by the Supreme Court, Federal Circuit and the D.C. Circuit – among other courts, (2) Kansas law does not recognize the "Shifting Public Use Doctrine"; and, (3) even advocates of the "Shifting Public Use Doctrine" agree that it does not apply to recreational trail use.[142]

### i. The So-Called "Shifting Public Use Doctrine" Has Been Rejected by the U.S. Supreme Court, Federal Circuit, the D.C. Circuit and other Courts.

In suggesting that the So-Called "Shifting Public Use Agreement" allows an abandoned railroad easement to be used for a public-access recreational trail the government is making an argument that has been specifically considered and rejected by every court to consider the argument, including the U.S. Supreme Court, the Federal Circuit and the D.C. Circuit among others. Indeed, there is no decision of any court known to the Plaintiff's that has allowed a state or federal law to redefine property interests in the manner proposed under the "Shifting Public Use Doctrine" without requiring the payment of "just compensation".

Most directly, the Federal Circuit in *TOEWS* wrote, "[A] public transportation easement defined as one for railroad purposes is not stretchable into an easement for a recreational trail and linear park for skateboarders and picnickers, however desirable such uses may be for these linear strips of land." TOEWS, 376 F.3d at 1379.[143] Similarly, the Federal Circuit *en banc* held that "[property] interests were fixed at the time of their creation." PRESEAULT II, 100 F.3d at 1540

---

[142] The government is also wrong for a fourth reason. The government's argument is an attempted logical and linguistic *ledger de main*. The government contends that since a "railroad serves a public purpose" the term "railroad" is equivalent to "public purpose" and, therefore, any "public purpose" such as a linear park is within the meaning of "railroad". Were this logic valid, use of the land for a sports stadium, court house or airport would be equally permissible. This is another variation of the attempt to do, as Humpty Dumpty declared above at page 39 and pour into a word whatever meaning served its present purposes.

[143] In *TOEWS* the Federal Circuit applied California law. As we show below, Kansas is even more inhospitable to the "Public Use Doctrine" than is California.

and the Federal Circuit went on to a lengthy consideration – and rejection – of the so-called "Shifting Public Use Doctrine" applied to Trails Act conversions of railroad rights of way to public trail use. (See, discussion at PRESEAULT II, 100 F.3d at 1541 – 1544.)

The Federal Circuit specifically rejected the "Shifting Public Use Doctrine" in *PRESEAULT II* and noted with approval the state supreme court cases of *POLLNOW V. DNR*, 276 N.W. 2d. 738 (Wisc., 1979) and *LAWSON V. STATE*, 107 Wash. 2d 444, 730 P.2d1308 (1986) that rejected the "Shifting Public Use Doctrine". See especially the discussion of the Washington State Supreme Court in *POLLNOW*. (We could add to this *GLOSEMEYER V. UNITED STATES*, 45 Fed. Cl. 771 (2000), *MICHIGAN DNR V. CARMODY-LAHTI REAL ESTATE*, 472 Mich: 359, 699 N.W.2d 272 (Mich., 2005) and other cases that have reached a similar conclusion.) The D.C. Circuit has similarly rejected this argument. See, *NATIONAL WILDLIFE FEDERATION*, 850 F.2d at 706 – 709.

The U.S. Supreme Court has rejected the notion that either Congress or a state may redefine existing property interests without incurring the Fifth Amendment's obligation to pay "just compensation" for the redefinition or destruction of the property. See, *LEO SHEEP CO. V. UNITED STATES*, 440 U.S. 668 (1979), ("This Court has traditionally recognized the special need for certainty and predictability where land titles are concerned, and we are unwilling to upset settled expectations to accommodate some ill-defined power to construct public thoroughfares without compensation.") and *HASTINGS V. WHITNEY*, 132 U.S. 357 (1889) ("The doctrine first announced in *WILCOX V. JACKSON*, 13 Pet. 498, 10 L. Ed. 264, that a tract lawfully appropriated to any purpose becomes thereafter severed from the mass of public lands, and that no subsequent law or proclamation will be construed to embrace it, or to operate upon it, although no exception be made of it, has been reaffirmed and applied by this court in such a great number and variety of cases that it may now be regarded as one of the fundamental principles underlying the land system of this country.") The Federal Circuit cited both of the forgoing cases and applied these holding to reject the government's attempt to argue that the federal Trails Act redefined a landowner's property interests. *HASH V. UNITED STATES*, 403 F.3d 1308 (Fed. Cir., 2005).

In a sentence, the Federal Circuit and the Supreme Court (as well as state supreme courts) recognize the fundamental point that the Fifth Amendment means nothing if it allows the government to avoid paying "just compensation" by redefining a citizens' property interest out

of existence. That is precisely what the so-called "Shifting Public Use Doctrine" seeks to accomplish. And, accordingly, it should be rejected.

### ii. Kansas Does Not Recognize the "Shifting Public Use Doctrine"

The Federal Circuit rejected the government's "Shifting Public Use Doctrine" argument in *PRESEAULT II*. In doing so the Federal Circuit noted, "We have found no Vermont case, either in this century or the last, and the parties point to none, in which the Vermont courts establish or apply something called the 'shifting public use' doctrine." PRESEAULT II, 100 F.3d at 1541

Similarly, there is no Kansas case that has recognized the so-called "Shifting Public Use Doctrine". The government points to only one Kansas case in support of their "shifting Public Use" argument, *KANSAS ELECTRIC POWER CO. V. WALKER*, 142 Kan. 808, 51 P.2d 1002 (Kan., 1935). The government characterizes *KANSAS ELECTRIC POWER*, "involved a change in use from electric street car service to gasoline driven busses."[144] Based upon this single case the government argues that Kansas law recognizes that "a right-of-way may be converted from one public use (active rail service) to another (rail banking and interim trail use) without causing termination of the right-of-way and a corresponding reversion of any underlying interests in the land."[145]

*KANSAS ELECTRIC & POWER V. WALKER* most definitely does NOT stand for this proposition. Walker held that a passenger bus line in Lawrence, Kansas with an easement to use land had abandoned the easement by using "gasoline driven rubber-tired busses" instead of "electric street cars". "The main question involved is whether the change of method of transportation by the substitution of gasoline driven rubber-tired busses for electric street car

---

[144] Govt's Memo at p. 54.

[145] Govt's Memo at p. 54.

service with steel track is an abandonment of the right of way or privilege of the plaintiff company to cross over the property of the defendants." WALKER, 51 p. 2d at 1002.[146]

This is not unlike the same argument that the government made – and which was rejected – in *PRESEAULT II* and *TOEWS*. In *PRESEAULT II* the Federal Circuit recognized that a railroad's ability to replace a "plank road" was rails as being within the scope of a railroad's easement did not warrant converting a railroad to a recreational trail. *PRESEAULT II*, 100 F.3d at 1541. Similarly, in TOEWS, the Federal Circuit rejected the argument that a California case, *FAUS v. CITY OF LAS ANGELES*, 67 Cal.2d 350, 62 Cal.Rptr. 193, 431 P.2d 849 (1967) which held that a "public motor coach service could be substituted for public electric railway service over rights of way that were granted for an electric railway", justified using a railroad easement for a recreational trail. The Federal Circuit specifically held that converting an electric railway to motor coach was precedent to convert a railroad to a trail. *TOEWS*, 376 F.3d at 1377. This is precisely the situation the government is arguing with *KANSAS ELECTRIC & POWER v. WALKER*.

### iii. Even Advocates of the So-Called Shifting Public Use Doctrine" Agree that it does not apply to Recreational Hiking Trails.

The "Shifting Public Use Doctrine" contends that an easement granted in, say, 1900 for the purpose of providing a right of way to allow use of the property by a specific technology implicitly includes the right of the holder of the easement to use the land for the same purpose using new technology that was unknown at the time the easement was granted but which would have been allowed had the parties known of the technology at the time the easement was granted. The best example of the "Shifting Public Use Doctrine" is the use of easements granted for telegraph lines for the location of fiber-optic cables.

---

[146] *KANSAS ELECTRIC & POWER v. WALKER*, 51 P.2d AT 1003, is also distinguished on the point that the change from a steel wheeled trolley to a rubber-tired bus did not change the nature of the use of the property and specifically that this did not involve inviting the public onto the property. "Such use [of the property by the public as a street and by pedestrians] has not been authorized or encouraged by the plaintiff which posted signs advising the public against its use."

The flaw of the government's attempt to use the "Shifting Public Use Doctrine" to bootstrap recreational trail use into a railroad easement is that hiking and biking trails were "technology" known in the 1890's when the easements were created. Hiking trails were known before railroads. This point was noted by Heftman, Jeffery M., RAILROAD RIGHT-OF-WAY EASEMENTS, UTILITY APPORTIONMENTS, AND SHIFTING TECHNOLOGICAL, REALITIES, Univ. of Illinois L. Rev. Vol 2002, p1401, 1420 (2002). "the doctrine would prove inapplicable in the proposed transition of railroad right-of-ways to recreational trails, which cannot be construed as a new method of transportation."

## VII. CONCLUSION

Thus, by reason of the STB's issuance of the NITU pursuant to the Trails Act, the Plaintiffs' "reversionary" right to their land was taken and their land was burdened with new easements for a public recreational trail and "railbanked" for a possible future railroad. The Plaintiffs are entitled under the Fifth Amendment to "just compensation" for this taking of their property. Accordingly, the Plaintiffs motion for summary judgment on the question of the government's liability should be granted and the government's cross-motion seeking to exonerate the government from liability for this taking of property without paying "just compensation" should be denied.

Respectfully submitted,

LATHROP & GAGE L.C.

/s/ Mark F. (Thor) Hearne, II
MARK F. (THOR) HEARNE, II
LINDSAY S.C. BRINTON
MEGHAN S. LARGENT
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
(314) 613-2500

(314) 613-2550 (fax)
Thornet@ix.netcom.com

ATTORNEYS FOR PLAINTIFFS

# Appendix "A"

## Other state court decisions holding similar instruments as conveying only an easement and not a fee estate in the land.

---

[1] *Brown v. Weare*, 348 Mo. 135, 152 S.W. 2d 649 (1941), ("There can be no dispute, nor is there any, that this deed so far as the right of way is concerned granted the railroad company an easement only. This is established by the terms of the deed granting a 'right of way' and then further clinched by the provision limiting the use of the grant for railroad purposes. The law is settled in this state that where a railroad acquires a right of way whether by condemnation, by voluntary grant or by a conveyance in fee upon a valuable consideration the railroad takes but a mere easement over the land and not the fee.") *Schuermann Enterprises, Inc. v. St. Louis County*, 436 S.W. 2d 666 (Mo. 1969) (In a case construing a Warranty Deed from a land owner to a railroad, the court held that only an easement was conveyed, notwithstanding the fact that the instrument was in the form of a general warranty deed and the railroad paid valuable consideration. "Railroads may hold, purchase, or convey the fee in land when the acquisition is by general warranty deed without any restriction on the quantum of title conveyed and for a valuable consideration, but where the acquisition is for right of way only, whether by condemnation, voluntary grant or conveyance in fee upon a valuable consideration, the railroad takes only an easement over the land and not the fee. Such easement is extinguished when the railroad ceases to run trains over the land, and, upon that occurrence, the use of the land is again in the original owner or his grantees, free of the burden of the easement." At 669 (citations omitted.),

*Buhl et. al v. U.S. Sprint Communications Co.* 840 S.W. 2d 904 (1992, Tenn), (Right-of-way acquired by condemnation "is a grant of an easement and the title to the easement, and nothing more... the fee, under this construction, remained with the owner, the railway acquiring a mere easement. *** An easement merely gives to a railroad company a right of way in the land – that is, the right to use the land for its purposes." At 909. (internal citations omitted),

*Highland Realty Co. v. City of San Rafael,* 46 Cal 2d 669, 298 P2d 15 (1956) ("the grant of land as a right of way recognizes nothing but an easement. *** [T]he grant by [fee owner] to the railroad of a right of way 'upon, over, and along a strip of land' conveyed only an easement, and not the underlying land. Further, the general rule is that 'in construing contracts and deeds for railroad rights of way such deeds are usually construed as giving a mere right of way, although the terms of the deed would be otherwise apt to convey a fee." at 298 P2d 20. (citing, *Cooper v. Selig*, 48 Cal. App. 228, 191 P. 983, *San Rafael Ranch Co. v. Ralph Rogers Co.* 154 Cal. 76, 96 P. 1092 (1908), *Coon v. Sonoma Magnesite Co.* 183 Cal. 597 189 P. 271 (1920), *People, By and Through Department of Public Works v. Thompson,* 43 Cal 2d 13, 271 P 2d 507 (1954), *Ocean Shore Railroad v. Doelger*, 127 Cal. App. 2d 392, 274 P.2d 23 (1954), *Moakley v. Los Angeles Pacific Ry. Co.* 139 Cal App 421, 34 P2d 218 (1934),

*Tamalpais Land & Water Co. v. Northwestern Pac. R. Co.* 73 Cal. App 2d 917, 167 P2d 825 (1946), *Thompson on Real Property*, Perm Ed., Vol. 2, pp. 11-12, s 461 and p. 14, s 462 and 132 A.L.R. 142-187.)

*Brown v. Penn Central Corp.* 510 N.E. 2d 641 (Ind. 1987), ("A deed that conveys a right generally conveys only an easement. The general rule is that a conveyance to a railroad of a strip, piece or parcel of land, without additional language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed, is to be construed as passing an estate in fee, but reference to a right-of-way in such a conveyance generally leads to its construction as conveying only an easement." At 644)(citing, *Richard S. Brunt Trust v. Plantz,* Ind. App. 458 N.E.2d 251 (1983), *L&G Realty & Construction Co. v. Indianapolis*, 127 Ind. App. 35, 139 N.E.2d 580 (1957).

*Neider v. Shaw* 138 Idaho 503, 65 P.3d 525 (Idaho, 2003) ("a substantive provision of the conveyance instrument, in handwriting, grants a "right of way" to the Railroad, which this Court has identified as language that creates an easement. The conveyance instrument from the Bows to the Railroad granted an easement to the Railroad rather than a fee simple." at 530.)

*Sherman v. Petroleum Exploration,* 280 Ky. 105, 132 S.W.2d 768 (1930) ("In the problem of construction of any deed, the test is that of intention, which is to be gathered from the context of the instrument, read in those lights which are properly employed in construing writings. We think it may be well said that an indefinite or ambiguous conveyance of land specifically for a railroad right of way is in its interpretation subject to the influence of a general knowledge that much railroad right of way is expressly or by operation of law limited to an easement, which has been usually found sufficient for the purpose desired." At 770.)

*Michigan Dept. of Natural Resources v. Carmody-Lahti Real Estate, Inc.*, 699 N.W.2d 272 (Mich. 2005). ("We think the court below was correct in holding that the deed conveyed an easement only, and not a fee. It does not purport to convey a strip of land 40 feet wide, etc., but the right of way over a strip 40 feet wide. ***

Although our sole concern is the intent of the parties as manifested in the plain language of the deed at issue here, it is worth noting that this analysis of the deed is consistent with our prior jurisprudence in this area. In general, this Court has construed deeds that purport to convey a right-of-way as transferring an easement. In fact, we have been unable to discover a *single* case in which this Court construed a deed conveying a "right of way" as transferring a fee estate, and plaintiff has directed us to none.

In *Jones v. Van Bochove,* 103 Mich. 98, 61 N.W. 342 (1894) for example, we considered a deed with a granting clause that conveyed

> "[a]ll that certain piece or parcel of land situate * * * and described as follows, to wit: The right of way for a railroad, running from the marl bed of said cement company to their works, on the west side of the Kalamazoo river, and described as follows: 'A strip of land 40 feet wide * * * and 952 feet in length.[']

*Id.* at 100, 61 N.W. 342. See also *Westman v. Kiell,* 183 Mich.App. 489, 494, 455 N.W.2d 45 (1990), holding that a deed conveying a " 'right of way *upon* and *across* lands of Henry Salee ... for the uses and purposes of said Railroad Company' " transferred an easement rather than a fee. (Emphasis in original.)

We held that this granting clause conveyed an easement rather than a fee, noting that the deed "does not purport to convey a strip of land 40 feet wide, etc., but *the right of way over a strip 40 feet wide.*" *Jones, supra* at 100, 61 N.W. 342 (emphasis added). Likewise, in *Mahar, supra,* we determined that the following language conveyed an easement rather than a fee estate:

> "That the said parties of the first part, for and in consideration of the future construction, continued maintenance and operation of a first-class, standard-gauge steam railroad (over which shall be transported passengers and freight) within the time, limits and conditions hereinafter to be defined, ... have granted, bargained, sold and conveyed and by these presents do grant, bargain, sell, convey and quitclaim unto the party of the second part, his successors or assigns, *for a right of way for a railroad forever ....*"

*Mahar, supra* at 139-140, 140 N.W. 535 (emphasis added).

at 282 – 283)

*See generally*, "Deed to Railroad Company As Conveying Fee or Easement", 6 A.L.R. 3d 973,