IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DOROTHY L. BIERY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 07-693L<br>(consolidated with No. 07-675L)<br><br>Honorable Nancy B. Firestone |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' THIRD SET OF PROPOSED FINDINGS OF UNCONTROVERTED FACT (DOC. 42)**

Pursuant to RCFC 56(h), Defendant submits these responses to Plaintiffs' third set of proposed findings of uncontroverted fact, filed by Plaintiffs with their summary judgment response brief (Doc. 42).[1] As detailed below, not all of the facts proposed by Plaintiffs in their most recent set of proposed facts are "additional statements of proposed findings" that were not covered in its prior submissions or the proposed findings of fact submitted by Defendant, as required by RCFC 56(h)(2). Accordingly, some of Defendant's responses refer to and incorporate by reference prior proposed facts and responses thereto. The prior filings referenced herein include:

(1) Plaintiffs' Proposed Findings of Uncontroverted Fact filed on April 30, 2008, prior to consolidation, in Biery v. United States, No. 07-693L (Doc. 24).

(2) Plaintiffs' Proposed Findings of Uncontroverted Fact filed on April 14, 2008, prior to consolidation, in Pankratz v. United States, No. 07-675L (Doc. 33).

[1]Unless otherwise noted, all PACER document references are to the PACER document numbers in the lead case, Biery v. United States, No. 07-693L.

(3) Defendant's Response to the Biery Plaintiffs' Proposed Findings of Fact, filed June 2, 2008 (Doc. 33).

(4) Defendant's Response to the Pankratz Plaintiffs' Proposed Findings of Fact, filed June 2, 2008 (Doc. 34).

(5) Defendant's Proposed Findings of Uncontroverted Fact filed in support of Defendant's Cross-Motion for Summary Judgment (Doc. 32)

(6) Plaintiffs' Response to Defendant's Proposed Findings of Uncontroverted Fact, filed July 25, 2008 (Doc. 40)

PANKRATZ FACTS

1. The right of way at issue in Pankratz (hereinafter the "Butler County Right of Way") was created by a Condemnation Decree dated November 4, 1879, and a conveyance from William and Ann Chase to the St. Louis Wichita & Western Railway, Co. dated November 3, 1879. A copy of the original and a transcribed version of the Condemnation Decree are attached as Tab 1 and Tab 1-A.

**Defendant's Response:** This proposed fact is duplicative of prior proposed facts and responses thereto. Accordingly, Defendant refers to and incorporates by reference its response to the Pankratz Plaintiffs' Proposed Fact Nos. 1 – 2 (Doc. 34).

2. The William and Ann Chase conveyance, attached to Defendant's Memorandum of Law in Support of its Cross Motion for Summary Judgment at Exhibit 10-2, is attached at Tab 2 and a transcribed version of this conveyance is attached at Tab 2-A.

**Defendant's Response:** This proposed fact is duplicative of prior proposed facts and responses thereto. Accordingly, Defendant refers to and incorporates by reference its response to the Pankratz Plaintiffs' Proposed Fact No. 4 (Doc. 34).

3. The parties agree that this Condemnation Decree and conveyance from William and Ann Chase conveyed to the railroad an easement and not fee simple title to the land underlying the easement.

**Defendant's Response:** This proposed fact is duplicative of statements in prior submissions. Accordingly, Defendant refers to and incorporates by reference the following response from its summary judgment memorandum:

> In Pankratz, the railroad acquired a small portion of the right-of-way abutting the property owned by Thad J. Colling by a quitclaim deed. See Def. Ex. 10-2 (Pankratz Straup Decl.). Applying the deed interpretation principles discussed above to this deed, Defendant concedes that the railroad acquired only an easement with regard to this small segment of the subject right-of-way because the legal description of the deed clearly shows that the use of the land was restricted for railroad purposes and the deed contains a reversionary clause. Id.

Defendant's Mem. In Support of Its Cross-Motion for Summary Judgment at 21-22 (filed June 2, 2008) (Doc. 31-2).

4. Plaintiffs Jerramy and Erin Pankratz paid taxes before the date of taking, and continue to pay taxes, on their property described in the Warranty Deed attached as Tab B to Plaintiffs' Proposed Findings of Fact. A copy of the Butler County, Kansas, tax records showing Jerramy and Erin Pankratz paid taxes on the land is attached at Tab 3.

**Defendant's Response:** Defendant does not dispute that the tax records attached to Plaintiffs' Proposed Facts at Tab 3 show that Jeremy and Erin Pankratz have paid the property taxes assessed against the property described in the referenced deed by Butler County. However, the payment of such taxes is not material to any issue before the Court in these summary judgment proceedings, as required by RCFC 56(h). Defendant has acknowledged that the Pankratzs have established that they own a parcel of land that abuts the subject right-of-way. See Def.'s Summ. Judg. Mem. at 24, 30; Def.'s Resp. to Pankratz Pls.' Proposed Fact No. 5-6 (Doc. 34). The referenced tax records do not establish that the Pankratzs have an ownership interest in the lands within the adjacent right-of-way, nor do the records show that the Pankratzs were being assessed taxes on such lands.

5. Butler County tax records show the railroad does not pay taxes on the portion of the Butler County Right of Way that runs over and across the Pankratz' land. See Tab 3-A, a copy of the tax records for the portion of the right of way abutting and underlying the Pankratz' property.

**Defendant's Response:** Defendant is unable to agree with this proposed fact as written. Defendant agrees that no taxes are presently assessed against the railroad company by Butler County with respect to the subject right-of-way and, accordingly, the railroad does not pay any such taxes. The records submitted by Plaintiffs in support of this proposed show that the right-of-way is owned by "Butler County Commissioners." Pls.' Tab 3-A. The fact that the County does not assess taxes against property that it owns is unremarkable and irrelevant in this case. Defendant also disagrees that the subject right-of-way "runs over and across" the Pankratzs' land, for the reasons previously stated in its summary judgment memorandum and its responses to Plaintiffs' prior proposed facts.

6. Plaintiffs Donald and Evangeline Wedell paid taxes before the date of taking, and continue to pay taxes, on their property described in the Warranty Deed attached as Tab E to Plaintiffs' Proposed Findings of Fact. A copy of the Butler County, Kansas, tax records showing Donald and Evangeline Wedell paid taxes on the land is attached at Tab 4.

**Defendant's Response:** Defendant does not dispute that the tax records attached to Plaintiffs' Proposed Facts at Tab 4 show that the Wedells have paid the property taxes assessed against the property described in the referenced deed by Butler County. However, the payment of such taxes is not material to any issue before the Court in these

summary judgment proceedings, as required by RCFC 56(h). Defendant has acknowledged that the Wedells have established that they own a parcel of land that abuts the subject right-of-way. See Def.'s Summ. Judg. Mem. at 24, 30; Def.'s Resp. to Pankratz Pls.' Proposed Fact No. 7–8 (Doc. 34). The referenced tax records do not establish that the Wedells have an ownership interest in the lands within the adjacent right-of-way, nor do the records show that the Wedells were being assessed taxes on such lands.

7. Butler County tax records show the railroad does not pay taxes on the portion of the Butler County Right of Way that runs over and across the Wedells' land. See Tab 4-A, a copy of the tax records for the portion of the right of way abutting and underlying the Wedells' property.

**Defendant's Response:** Defendant is unable to agree with this proposed fact as written. Defendant agrees that no taxes are presently assessed against the railroad company by Butler County with respect to the subject right-of-way and, accordingly, the railroad does not pay any such taxes. The records submitted by Plaintiffs in support of this proposed show that the right-of-way is owned by "Butler County Commissioners." Pls.' Tab 3-A. The fact that the County does not assess taxes against property that it owns is unremarkable and irrelevant in this case. Defendant also disagrees that the subject right-of-way "runs over and across" the Wedells' land, for the reasons previously stated in its summary judgment memorandum and its responses to Plaintiffs' prior proposed facts.

8. Plaintiffs Thad Colling and Jennifer McLaughlin paid taxes before the date of taking, and continue to pay taxes, on their property described in the Statutory Warranty Deed attached as Tab F to Plaintiffs' Proposed Findings of Fact. A copy of the Butler County, Kansas, tax records showing Thad Colling and Jennifer McLaughlin paid taxes on the land is attached at Tab 5.

**Defendant's Response:** Defendant does not dispute that the tax records attached to Plaintiffs' Proposed Facts at Tab 5 identify Thad Colling and Jennifer McLaughlin as the owners of the property described therein, or that the property taxes assessed against that property by Butler County have been paid for the years listed (1990-2006). Defendant does not agree that Jennifer McLaughlin is a named plaintiff in this case. See Pankratz Complaint. However, the payment of such taxes is not material to any issue before the Court in these summary judgment proceedings, as required by RCFC 56(h). Defendant has acknowledged that Colling has established that he is an owner of a parcel of land that abuts the subject right-of-way. See Def.'s Summ. Judg. Mem. at 24, 30; Def.'s Resp. to Pankratz Pls.' Proposed Fact No. 9–10 (Doc. 34). The referenced tax records do not establish that Colling (or McLaughlin) has an ownership interest in the lands within the adjacent right-of-way, nor do the records show that Colling was being assessed taxes on such lands.

9. Butler County tax records show the railroad does not pay taxes on the portion of the Butler County Right of Way that runs over and across the Thad Colling and Jennifer McLaughlin's land. See Tab 5-A, a copy of the tax records for the portion of the right of way abutting and underlying Thad Colling and Jennifer McLaughlin's property.

**Defendant's Response:** Defendant is unable to agree with this proposed fact as written. Defendant agrees that no taxes are presently assessed against the railroad company by Butler County with respect to the subject right-of-way and, accordingly, the railroad does not pay any such taxes. The fact that no taxes are assessed against the railroad is not material to any issues before the Court in these summary judgment proceedings. Defendant also disagrees that the subject right-of-way "runs over and across" the Colling's land, for the reasons previously stated in its summary judgment memorandum and its responses to Plaintiffs' prior proposed facts.

10. Plaintiff The Thick Gon Mar Trust paid taxes before the date of taking, and continues to pay taxes, on its property described in the Quitclaim Deed attached as Tab G to Plaintiffs' Proposed Findings of Fact. A copy of the Butler County, Kansas, tax records showing The Mar Trust paid taxes on the land is attached at Tab 6.

**Defendant's Response:** Defendant does not dispute that the tax records attached to Plaintiffs' Proposed Facts at Tab 6 show that the Thick Gon Mar Trust ("Mar Trust") has paid the property taxes assessed against the property described in the referenced deed by Butler County. However, the payment of such taxes is not material to any issue before the Court in these summary judgment proceedings, as required by RCFC 56(h).

Defendant has acknowledged that the Mar Trust have established that they own a parcel of land that is traversed by the subject right-of-way. See Def.'s Summ. Judg. Mem. at 32; Def.'s Resp. to Pankratz Pls.' Proposed Fact No. 11-12 (Doc. 34). However, the referenced tax records do not establish that the Mar Trust was being assessed taxes on the lands within the right-of-way. See Def.'s Resp. to Prop. Fact No. 11, *infra*.

11. Butler County tax records show the railroad does not pay taxes on the portion of the Butler County Right of Way that runs over and across The Mar Trust's land. See Tab 6-A, a copy of the tax records for the portion of the right of way crossing the Trust's property.

**Defendant's Response:** Defendant is unable to agree with this proposed fact as written. Defendant agrees that no taxes are presently assessed against the railroad company by Butler County with respect to the subject right-of-way and, accordingly, the railroad does not pay any such taxes. The records submitted by Plaintiffs in support of this proposed show that the right-of-way is owned by "Butler County Commissioners." Pls.' Tab 6-A. The fact that the County does not assess taxes against property that it owns is unremarkable and irrelevant in this case.

12. Plaintiffs Michael and Marcia Woods paid taxes before the date of taking, and continue to pay taxes, on its property described in the Warranty Deed attached as Tab H to Plaintiffs' Proposed Findings of Fact. A copy of the Butler County, Kansas, tax records showing Michael and Marcia Woods paid taxes on the land is attached at Tab 7.

**Defendant's Response:** Defendant does not dispute that the tax records attached to Plaintiffs' Proposed Facts at Tab 7 show that the Woods have paid the property taxes assessed against the property described in the referenced deed by Butler County. However, the payment of such taxes is not material to any issue before the Court in these summary judgment proceedings, as required by RCFC 56(h). Defendant has acknowledged that the Woods have established that they own a parcel of land that abuts the subject right-of-way. See Def.'s Summ. Judg. Mem. at 24, 30; Def.'s Resp. to Pankratz Pls.' Proposed Fact No. 13–14 (Doc. 34). The referenced tax records do not establish that the Woods have an ownership interest in the lands within the adjacent right-of-way, nor do the records show that the Woods were being assessed taxes on such lands.

13. Butler County tax records show the railroad does not pay taxes on the portion of the Butler County Right of Way that runs over and across Michael and Marcia Woods' land. See Tab 7-A, a copy of the tax records for the portion of the right of way abutting and underlying Michael and Marcia Woods' property.

**Defendant's Response:** Defendant is unable to agree with this proposed fact as written. Defendant agrees that no taxes are presently assessed against the railroad company by Butler County with respect to the subject right-of-way and, accordingly, the railroad does

not pay any such taxes. The fact that no taxes are assessed against the railroad is not material to any issues before the Court in these summary judgment proceedings. Defendant also disagrees that the subject right-of-way "runs over and across" the Woods' land, for the reasons previously stated in its summary judgment memorandum and its responses to Plaintiffs' prior proposed facts.

14. Plaintiffs Floyd and Becky Myers paid taxes before the date of taking, and continue to pay taxes, on its property described in the Quitclaim Deed attached as Tab I to Plaintiffs' Proposed Findings of Fact. A copy of the Butler County, Kansas, tax records showing Floyd and Becky Myers paid taxes on the land is attached at Tab 8.

**Defendant's Response:** Defendant does not dispute that the tax records attached to Plaintiffs' Proposed Facts at Tab 8 show that the Meyers have paid the property taxes assessed against the property described in the referenced deed by Butler County. However, the payment of such taxes is not material to any issue before the Court in these summary judgment proceedings, as required by RCFC 56(h). Defendant has acknowledged that the Meyers have established that they own a parcel of land that abuts the subject right-of-way. See Def.'s Summ. Judg. Mem. at 24, 30; Def.'s Resp. to Pankratz Pls.' Proposed Fact No. 15–16 (Doc. 34). The referenced tax records do not establish that the Meyers have an ownership interest in the lands within the adjacent right-of-way, nor do the records show that the Meyers were being assessed taxes on such lands.

15. Butler County tax records show the railroad does not pay taxes on the portion of the Butler County Right of Way that runs over and across Floyd and Becky Myers' land. See Tab 8-A, a copy of the tax records for the portion of the right of way abutting and underlying Floyd and Becky Myers' property.

**Defendant's Response:** Defendant is unable to agree with this proposed fact as written. Defendant agrees that no taxes are presently assessed against the railroad company by Butler County with respect to the subject right-of-way and, accordingly, the railroad does not pay any such taxes. The records submitted by Plaintiffs in support of this proposed show that the right-of-way is owned by "Butler County Commissioners." Pls.' Tab 8-A. The fact that the County does not assess taxes against property that it owns is unremarkable and irrelevant in this case. Defendant also disagrees that the subject right-of-way "runs over and across" the Myers' land, for the reasons previously stated in its summary judgment memorandum and its responses to Plaintiffs' prior proposed facts.

BIERY FACTS

16. The right of way at issue in the Biery case (hereinafter the "Reno County Right of Way") was created by two condemnation decrees and five subsequent conveyances.

**Defendant's Response:** This proposed fact is duplicative of prior proposed facts and responses thereto, as well as issues addressed in the parties' respective summary judgment briefs. Accordingly, Defendant refers to and incorporates by reference those prior filings, including but not limited to its response to the Biery Plaintiffs' Proposed Fact Nos. 1 – 4 (Doc. 34), and Plaintiffs' Responses to Defendant's Proposed Fact Nos. 27–28, and the exhibits cited therein.

17. The Government attaches the affidavit of Cindi A.R. Straup as Exhibit 22 to its Memorandum in Support of its Motion for Cross Summary Judgment. In this Exhibit, Ms. Straup references and attaches five additional subsequent conveyances. All of these subsequent conveyances granted only an easement to the railroad.

**Defendant's Response:** This proposed fact is duplicative and unnecessary in that it simply identifies and describes prior submissions, rather than stating a proposed undisputed material fact. In addition, the last sentence is not a proposed undisputed fact and is therefore improperly included as such. The question of whether the referenced conveyed fee title or an easement to the railroad is a question of law for the Court to resolve. It is also, without question, a disputed matter in this case. Defendant refers to and incorporates by reference its summary judgment memorandum (Doc. 31-2) and its summary judgment reply brief, which address this matter in detail and state Defendant's position.

18. The Rose Arnold Warranty Deed is attached to the Government's Memorandum in Support of its Cross Motion for Summary Judgment at Exhibit 22-2. A transcribed version of this deed is attached at Tab 9.

**Defendant's Response:** Defendant agrees that a copy of the referenced deed is attached to Defendant's summary judgment memorandum as Exhibit 22-2. However, this deed is not material to any issue in this case. As explained in Defendant's summary judgment reply, Plaintiffs erroneously state that Dorothy Biery is a successor in interest to Rose Arnold. Pls.' Prop. Facts ¶ 21 (Doc. 42, p. 6). Biery owns a 2-acre parcel of property

located in the Northwest 1/4 of Section 23 in Township 23 South, Range 6 West, in Reno County. Pls.' Prop. Facts, Tab D (Doc. 24). The deed to Rose Arnold conveys an 80-acre parcel described as the North ½ of the Northwest 1/4 of Section 11 in Township 22 Range 7 West of Reno County. Def. Ex. 22-2. Accordingly, Plaintiffs' interpretation of the Arnold deed has no bearing on the claim of Dorothy Biery, or any of the other Plaintiffs in this case.

19. In this deed, the Atchison Topeka & Santa Fe Railway Company conveyed fee simple absolute title to Rose Arnold in 80 acres of land in Reno County. See Tab 9.

**Defendant's Response:** This proposed fact is not material or relevant to any issue in this case. See Def.'s Resp. to Proposed Fact No. 18, *supra*, which Defendant incorporates herein by reference.

20. The Atchison Topeka & Santa Fe "reserved" for itself an easement over those 80 acres. See Tab 9.

**Defendant's Response:** This proposed fact is not material or relevant to any issue in this case. See Def.'s Resp. to Proposed Fact No. 18, *supra*, which Defendant incorporates herein by reference.

21. Rose Arnold, therefore, owned the land abutting and underlying the Reno County Right of Way in fee simple absolute. Therefore, Dorothy L. Biery, as a successor in interest to Rose Arnold, also owns the land abutting and underlying the Reno County Right of Way that was subject to this deed. An abstract of Dorothy L. Biery's Chain of Title is attached at Tab 10.

**Defendant's Response:** Defendant disagrees. For the reasons explained in Defendant's response to Proposed Fact No. 18, *supra*, which Defendant incorporates herein by reference, Dorothy L. Biery is no a successor in interest to Rose Arnold.

22. The Julia Fair Quitclaim Deed is attached at Exhibit 22-4 to Defendant's Memorandum in Support of its Cross Motion for Summary Judgment. A transcribed version of the Julia Fair Quitclaim Deed is attached here at Tab 11.

**Defendant's Response:** This proposed fact is duplicative and unnecessary in that it simply identifies and describes prior submissions, rather than stating a proposed undisputed material fact.

23. In 1889, Julia Fair's husband, Thomas Fair, conveyed an easement to the Hutchinson, Oklahoma & Gulf Railway Company by Condemnation Order. See Defendant's Exhibit 22-3 attached to its Memorandum in Support of its Cross Motion for Summary Judgment.

**Defendant's Response:** This proposed fact is largely duplicative and unnecessary in that it simply identifies and describes a condemnation order included in the parties' prior submissions. The parties' positions on the interpretation of this condemnation order are fully set forth in their prior submissions. Defendant refers to and incorporates by reference its summary judgment memorandum at 19 (Doc. 31-2), in which Defendant stated that it "does not dispute that, under Kansas law in effect at that time, the railroads acquired an easement to those segments of their rights-of-way acquired by condemnation in 1879 and 1899."

24. The condemnation order granted the railroad only an easement.

**Defendant's Response:** Defendant refers to and incorporates by reference its response to proposed fact number 23, *supra*.

25. In 1899, Julia Fair, then widowed, conveyed the same land by Quitclaim Deed to the Hutchinson & Southern Railway Company. See Tab 11.

**Defendant's Response:** This proposed fact is duplicative and unnecessary in that it simply restates matters already addressed by the parties in their prior submissions to the Court. Defendant refers to and incorporates by reference all of its prior submissions regarding the referenced 1899 quitclaim deed from Julia Ann Fair to the railroad, including but not limited to Defendant's responses to the Biery Plaintiffs' proposed fact numbers 10–11 (Doc. 33), Defendant's summary judgment memorandum at 23-24 (Doc. 31-2), and Defendant's summary judgment reply brief.

26. The Julia Fair Quitclaim Deed was necessary to preserve the railroad's easement as her husband was the only person on the condemnation order and her and her husband Thomas jointly owned the land. Therefore, such quitclaim deed was necessary for the railroad to secure title to the easement.

**Defendant's Response:** Defendant disagrees. The interpretation of the referenced deed is not a proposed undisputed material fact, as required by RCFC 56(h). Instead, the interpretation of the referenced deed is a question of law for the Court to resolve. The interpretation of the Julia Fair Deed is, without question, a disputed matter in this case. Defendant refers to and incorporates by reference its summary judgment memorandum (Doc. 31-2) and its summary judgment reply brief, which address this matter in detail and state Defendant's position.

27. The railroad did not gain any further interest in Ms. Fair's land than it held prior to the 1899 Julia Fair Quitclaim Deed. See Tab 11.

**Defendant's Response:** Defendant disagrees. The interpretation of the referenced deed is not a proposed undisputed material fact, as required by RCFC 56(h). Instead, the interpretation of the referenced deed is a question of law for the Court to resolve. The interpretation of the Julia Fair Deed is, without question, a disputed matter in this case. Defendant refers to and incorporates by reference its summary judgment memorandum (Doc. 31-2) and its summary judgment reply brief, which address this matter in detail and state Defendant's position.

28. The Julia Fair Quitclaim Deed appears in the chains of title of two plaintiffs: The Julia R. Chalfant Trust and K.A.K. Farms. The Julia R. Chalfant Trust's chain of title is attached at Tab 12. K.A.K Farms chain of title is attached at Tab 13.

**Defendant's Response:** This proposed fact is duplicative and unnecessary in that it simply restates matters already addressed by the parties in their prior submissions to the Court. Defendant refers to and incorporates by reference all of its prior submissions regarding the referenced 1899 quitclaim deed from Julia Ann Fair to the railroad, including but not limited to Defendant's responses to the Biery Plaintiffs' proposed fact numbers 10–11 (Doc. 33), Defendant's summary judgment memorandum at 23-24 (Doc. 31-2), and Defendant's summary judgment reply brief.

29. In 1901, the Irrigation Loan & Trust Co. quitclaimed to the Atchison Topeka & Santa Fe Railway Company real estate described as, "The West sixty-six (66) feet of the west half (½) of the South Quarter (1/4) of Section number Twenty-Three (23) in Township Number Twenty-Three (23). Range number six (6) East in Reno County, Kansas." The government has attached a copy of this quitclaim deed as Exhibit 22-5 to its Memorandum in Support of its Cross Motion for Summary Judgment. A transcribed copy is attached herein at Tab 14.

**Defendant's Response:** This proposed fact is duplicative and unnecessary in that it simply identifies and describes prior submissions, rather than stating a new or additional proposed undisputed material fact.

30. The quitclaim deed conveyed only an easement to the Atchison Topeka & Santa Fe Railway Company. See Tab 14.

**Defendant's Response:** Defendant disagrees. The interpretation of the referenced deed is not a proposed undisputed material fact, as required by RCFC 56(h). Instead, the interpretation of the referenced deed is a question of law for the Court to resolve. The interpretation of the 1901 deed from the Irrigation Loan & Trust Company to the railroad is, without question, a disputed matter in this case. Defendant refers to and incorporates by reference its summary judgment memorandum at 22-23 (Doc. 31-2) and its summary judgment reply brief at pages 10-12, which address this matter in detail and state Defendant's position.

31. The March 1901 Irrigation Loan & Trust Company Deed appears in the chain of title of two Plaintiffs: American Packaging Corporation and Collins Industries, Inc. A copy of the chain of title for American Packaging Corp. is attached at Tab 15. A copy of Collins Industries, Inc. chain of title is attached at Tab 16.

**Defendant's Response:** This proposed fact is duplicative and unnecessary in that it simply restates matters already addressed by the parties in their prior submissions to the Court. Defendant refers to and incorporates by reference all of its prior submissions regarding the referenced quitclaim deed from the Irrigation Loan & Trust Company to the railroad, including but not limited to Defendant's responses to the Biery Plaintiffs' proposed fact numbers 12–13 (Doc. 33), Defendant's summary judgment memorandum at 22-23 (Doc. 31-2), and Defendant's summary judgment reply brief at pages 10-12.

32. On or about 1896, E. L. Rowland quitclaimed a series of lots to the Hutchinson & Southern Railway Company. The government attached a copy of this quitclaim deed at Exhibit 22-6 to its Memorandum in Support of its Cross Motion for Summary Judgment. A transcribed copy of this quitclaim deed is attached herein at Tab 17.

**Defendant's Response:** This proposed fact is duplicative and unnecessary in that it simply identifies and describes prior submissions, rather than stating a proposed undisputed material fact. Defendant does not dispute that a quitclaim deed dated September 2, 1896, from E.L. Rowland to the railroad is included in the record as Defendant's Exhibit 22-6 (Doc. 31-8).

33. The quitclaim deed states that it is made "For and in consideration of $1.00 and the convenience of *all the right of way now occupied by said Railroad* in Blanchard's Third Addition to the City of South Hutchinson." See Tab 17.

**Defendant's Response:** Defendant agrees that the quitclaim deed included in the record as Defendant's Exhibit 22-6 includes the quoted language. However, as Plaintiffs have repeatedly stated in this case, "the intent and effect" of the deeds before the Court "is to be taken from the instrument as a whole and not from just extracted portions of the instrument." Pls.' Resp. to Def. Prop Facts Nos. 18-20, 23-24, 38-39 (Doc. 40). Moreover, the interpretation of the referenced deed is not a proposed undisputed material fact, as required by RCFC 56(h). Instead, the interpretation of the referenced deed is a question of law for the Court to resolve. The interpretation of the 1896 quitclaim deed from the E.L. Rowland to the railroad is, without question, a disputed matter in this case. Defendant refers to and incorporates by reference its prior submissions, including but not limited to its summary judgment reply brief at pages 10-12, which address this matter in detail and state Defendant's position.

34. This quitclaim deed conveyed to the Hutchinson & Southern Railway Company only an easement over the described lots listed in the deed. See Tab 17.

**Defendant's Response:** Defendant disagrees. The interpretation of the referenced deed is not a proposed undisputed material fact, as required by RCFC 56(h). Instead, the interpretation of the referenced deed is a question of law for the Court to resolve. The interpretation of the 1896 quitclaim deed from E.L. Rowland to the railroad is, without

question, a disputed matter in this case. Defendant refers to and incorporates by reference its prior submissions in this case, including but not limited to its summary judgment reply brief at pages 10–12, which addresses this matter in detail and state Defendant's position on this question of law.

35. The E. L. Rowland Quitclaim Deed appears in the chain of title of American Packaging Corp. (Tab 15) and Collins Industries, Inc.(Tab 16).

**Defendant's Response:** This proposed fact is duplicative and unnecessary in that it simply restates matters already addressed by the parties in their prior submissions to the Court. Defendant refers to and incorporates by reference all of its prior submissions regarding the referenced quitclaim deed from E.L. Rowland to the railroad, including but not limited to Defendant's summary judgment reply brief at pages 10-12.

36. The Irrigation Loan & Trust Company quitclaimed to the Atchison Topeka & Santa Fe Railway Company a series of lots in Blanchard's Third Addition to the City of South Hutchinson. A copy of this quitclaim deed is attached as Exhibit 22-7 to the Government's Memorandum in Support of its Cross Motion for Summary Judgment. A transcribed copy of this quitclaim deed is attached herein at Tab 18.

**Defendant's Response:** This proposed fact is duplicative and unnecessary in that it simply identifies and describes prior submissions, rather than stating a new or additional proposed undisputed material fact.

37. This quitclaim deed conveyed to the Atchison Topeka & Santa Fe Railway Company only an easement over the described series of lots listed in the deed. See Tab 18.

**Defendant's Response:** Defendant disagrees. The interpretation of the referenced deed is not a proposed undisputed material fact, as required by RCFC 56(h). Instead, the interpretation of the referenced deed is a question of law for the Court to resolve. The interpretation of the referenced quitclaim deed from the Irrigation Loan & Trust Company to the railroad is, without question, a disputed matter in this case. Defendant refers to and incorporates by reference its prior submissions in this case, including but not limited to its summary judgment reply brief at pages 10–12, which addresses this matter in detail and state Defendant's position on this question of law.

38. The October 1901 Irrigation Loan & Trust Co. Quitclaim Deed appears in the chain of title of American Packaging Corp. (Tab 15) and Collins Industries, Inc. (Tab 16).

**Defendant's Response:** This proposed fact is duplicative and unnecessary in that it simply restates matters already addressed by the parties in their prior submissions to the Court. Defendant refers to and incorporates by reference all of its prior submissions regarding the referenced quitclaim deed from the Irrigation Loan & Trust Company to the railroad, including but not limited to Defendant's summary judgment reply brief at pages 10-12.

39. Plaintiff Dorothy L. Biery paid taxes before the date of taking, and continues to pay taxes, on her property described in the Warranty Deed attached as Tab D to Plaintiffs' Proposed Findings of Fact. A copy of the Reno County, Kansas, tax records showing Dorothy L. Biery paid taxes on the land is attached at Tab 19.

**Defendant's Response:** Defendant does not dispute that the tax records attached to Plaintiffs' Proposed Facts at Tab 19 show that Dorothy L. Biery has paid the property taxes assessed against the property described in the referenced deed by Reno County. However, the payment of such taxes is not material to any issue before the Court in these summary judgment proceedings, as required by RCFC 56(h). Defendant has acknowledged that Biery has established that she owns a parcel of land that abuts land previously owned by the railroad. See Def.'s Summ. Judg. Mem. at 24, 30; Def.'s Resp. to Biery Pls.' Proposed Fact No. 7 (Doc. 33); Def.'s Summ. Judg. Reply at 8–10. The referenced tax records do not establish that Biery has an ownership interest in the lands within the adjacent right-of-way, nor do the records show that Biery was being assessed taxes on such lands.

40. Plaintiff Gordon Holloway paid taxes before the date of taking, and continues to pay taxes, on his property described in the Probate Order attached as Tab E to Plaintiffs' Proposed Findings of Fact. A copy of the Reno County, Kansas, tax records showing Gordon Holloway paid taxes on the land is attached at Tab 20.

**Defendant's Response:** Defendant disagrees. The tax records attached to Plaintiffs' Proposed Facts at Tab 20 are the results of a tax inquiry for George A. Holloway and George G. Holloway, Jr. Those records do show the property taxes assessed against the property described in the referenced deed by Reno County were paid. However, the payment of such taxes, including whether those taxes were paid by Gordon Holloway, as alleged, is not material to any issue before the Court in these summary judgment proceedings, as required by RCFC 56(h). Defendant has acknowledged that Holloway has established that he owns a parcel of land that abuts the subject right-of-way. See Def.'s Summ. Judg. Mem. at 24, 28 n.19; Def.'s Resp. to Biery Pls.' Proposed Fact No. 8 (Doc. 33); Def.'s Summ. Judg. Reply at 14 n.9. The referenced tax records do not establish that Holloway has an ownership interest in the lands within the adjacent right-of-way, nor do the records show that Holloway was being assessed taxes on such lands.

41. Gordon Holloway stipulates that he is claiming ownership to the land underlying the Reno County Right of Way that runs over and across the eastern boundary of his property. Accordingly, Mr. Holloway claims ownership of the western half of the Reno County Right of Way to the centerline. See Affidavit of Gordon A. Holloway attached at Tab 21.

**Defendant's Response:** Defendant disagrees that the subject right-of-way runs "over and across" Holloway's property, for the reasons set forth in Defendant's summary judgment submissions. However, Defendant recognizes and has accepted the related stipulations of Holloway and the Stacy Judy Trust that they are only claiming ownership to the centerline of the segment of the right-of-way that is located between their respective properties. See Def.'s Summ. Judg. Reply Brief at 14–16.

42. Plaintiff The Stacy E. Judy Trust paid taxes before the date of taking, and continues to pay taxes, on its property described in the Quitclaim Deed attached as Tab F to Plaintiffs' Proposed Findings of Fact. A copy of the Reno County, Kansas, tax records showing The Stacy E. Judy Trust paid taxes on the land is attached at Tab 22.

**Defendant's Response:** Defendant does not dispute that the tax records attached to Plaintiffs' Proposed Facts at Tab 22 show that the Stacy E. Judy Trust has paid the property taxes assessed against the property described in the referenced deed by Reno County. However, the payment of such taxes is not material to any issue before the Court in these summary judgment proceedings, as required by RCFC 56(h). Defendant has acknowledged that the Stacy E. Judy Trust has established that it owns a parcel of land that abuts the subject right-of-way. See Def.'s Summ. Judg. Mem. at 24, 30; Def.'s Resp.

to Biery Pls.' Proposed Fact No. 9 (Doc. 33); Def.'s Summ. Judg. Reply at 8–10. The referenced tax records do not establish that the Stacy E. Judy Trust has an ownership interest in the lands within the adjacent right-of-way, nor do the records show that the Trust was being assessed taxes on such lands.

43. The Stacy E. Judy Trust stipulates that it is claiming ownership to the land underlying the Reno County Right of Way that runs over and across the western boundary of its property. Accordingly The Stacy E. Judy Trust claims ownership of the eastern half of the Reno County Right of Way to the centerline. See Affidavit of William B. Tobin attached at Tab 23.

**Defendant's Response:** Defendant disagrees that the subject right-of-way runs "over and across" the Stacy E. Judy Trust's property, for the reasons set forth in Defendant's summary judgment submissions. However, Defendant recognizes and has accepted the related stipulations of Holloway and the Stacy E. Judy Trust that they are only claiming ownership to the centerline of the segment of the right-of-way that is located between their respective properties.[2] See Def.'s Summ. Judg. Reply Brief at 14–16.

[2]The affivadit filed by Plaintiffs for the Stacy E. Judy Trust on this matter is incomplete. See Pls.' Tab 23 (Doc. 42-12, p. 1 of 16). However, Plaintiffs have since provided Defendant with a complete copy of this affidavit, including the missing signature page.

44. Plaintiff The Julia R. Chalfant Trust paid taxes before the date of taking, and continues to pay taxes, on its property described in the Trust Deed attached as Tab G to Plaintiffs' Proposed Findings of Fact. A copy of the Reno County, Kansas, tax records showing The Julia R. Chalfant Trust paid taxes on the land is attached at Tab 24.

**Defendant's Response:** Defendant does not dispute that the tax records attached to Plaintiffs' Proposed Facts at Tab 24 show that the Julia R. Chalfant Trust has paid the property taxes assessed against the property described in the referenced deed by Reno County. However, the payment of such taxes is not material to any issue before the Court in these summary judgment proceedings, as required by RCFC 56(h). Defendant has acknowledged that the Julia R. Chalfant Trust has established that it owns a parcel of land that abuts the subject right-of-way. See Def.'s Summ. Judg. Mem. at 24, 30; Def.'s Resp. to Biery Pls.' Proposed Fact No. 10 (Doc. 33); Def.'s Summ. Judg. Reply at 6–8. The referenced tax records do not establish that the Chalfant Trust has an ownership interest in the lands within the adjacent right-of-way, nor do the records show that the Chalfant Trust was being assessed taxes on such lands.

45. Plaintiff K.A.K. Farms paid taxes before the date of taking, and continues to pay taxes, on its property described in the Warranty Deed attached as Tab H to Plaintiffs' Proposed Findings of Fact. A copy of the Reno County, Kansas, tax records showing K.A.K. Farms paid taxes on the land is attached at Tab 25.

**Defendant's Response:** Defendant does not dispute that the tax records attached to Plaintiffs' Proposed Facts at Tab 25 show that KAK Farms has paid the property taxes assessed against the property described in the referenced deed by Reno County. However, the payment of such taxes is not material to any issue before the Court in these summary judgment proceedings, as required by RCFC 56(h). Defendant has acknowledged that KAK Farms has established that she owns a parcel of land that abuts the subject right-of-way. See Def.'s Summ. Judg. Mem. at 24, 30; Def.'s Resp. to Biery Pls.' Proposed Fact No. 11 (Doc. 33); Def.'s Summ. Judg. Reply at 6–8. The referenced tax records do not establish that KAK Farms has an ownership interest in the lands within the adjacent right-of-way, nor do the records show that KAK Farms was being assessed taxes on such lands.

46. Plaintiff American Packaging Corp. paid taxes before the date of taking, and continues to pay taxes, on its property described in the Warranty Deed attached as Tab I to Plaintiffs' Proposed Findings of Fact. A copy of the Reno County, Kansas, tax records showing American Packaging Corp. paid taxes on the land is attached at Tab 26.

**Defendant's Response:** Defendant does not dispute that the tax records attached to Plaintiffs' Proposed Facts at Tab 26 show that American Packaging Corp. ("APC") has paid the property taxes assessed against the property described in the referenced deed by Reno County. However, the payment of such taxes is not material to any issue before the Court in these summary judgment proceedings, as required by RCFC 56(h). Defendant has acknowledged that APC has established that it owns a parcel of land that abuts the subject right-of-way. See Def.'s Summ. Judg. Mem. at 24, 30; Def.'s Resp. to Biery Pls.' Proposed Fact No. 12 (Doc. 33); Def.'s Summ. Judg. Reply at 10–12. The referenced tax records do not establish that APC has an ownership interest in the lands within the adjacent right-of-way, nor do the records show that APC was being assessed taxes on such lands.

47. Plaintiff Collins Industries Inc. paid taxes before the date of taking, and continues to pay taxes, on the property described in the Warranty Deed attached as Tab J to Plaintiffs' Proposed Findings of Fact. A copy of the Reno County, Kansas, tax records showing Collins Industries, Inc. paid taxes on the land is attached at Tab 27.

**Defendant's Response:** Defendant does not dispute that the tax records attached to Plaintiffs' Proposed Facts at Tab 27 show that the property taxes assessed against the property described in the referenced deed by Reno County have been paid. The tax inquiry is for "Collins Industries Inc." However, it is not clear that these documents indicate that Collins Industries, rather than another entity, paid the taxes on this property during the time period that it did not own the property. In any event, the payment of such taxes is not material to any issue before the Court in these summary judgment proceedings, as required by RCFC 56(h). For the reasons fully set forth in Defendant's prior submission, Collins Industries did not own any property abutting the subject right-of-way on the alleged date of taking. See Def.'s Summ. Judg. Mem. at 29–30; Def.'s Resp. to Biery Pls.' Proposed Fact No. 13 (Doc. 33); Def.'s Summ. Judg. Reply at 10–12, 16–17. The referenced tax records do not establish otherwise, nor do those records show that Collins has or had an ownership interest in the lands within the adjacent right-of-way, nor do the records show that Collins was or is being assessed taxes on such lands.

48. In 1984 Collins Industries Inc. conveyed the property to the City of South Hutchinson as shown in Tab J to Plaintiffs' Proposed Findings of Fact.

**Defendant's Response:** This proposed fact is duplicative and unnecessary in that it simply restates facts set forth in prior submissions, rather than stating a new or additional proposed undisputed material fact. Defendant does not dispute that a warranty deed dated July 31, 1984, by which Collins Industries conveyed a parcel of property west of the subject right-of-way to the City of South Hutchinson, Kansas is included in the record as Tab J to the Biery Plaintiffs' Proposed Facts.

49. On October 26, 2006, the City of South Hutchinson conveyed the property to Collins Bus Corporation to Collins Industries Inc. by the Special Warranty Deed attached at Tab 28.

**Defendant's Response:** Defendant disagrees. The referenced deed is a Special Warranty Deed dated October 26, 2006. However, the deed does not convey the referenced property from the City of South Hutchinson to Collins Industries, Inc., as Plaintiffs' state. Instead, the referenced deed conveys a parcel west of the subject right-of-way to Collins Bus Company. A copy of the referenced deed is included in the record as Defendant's Exhibit 24.

50. Five days later, on October 31, 2006, Collins Bus Corporation conveyed the land to Collins Industries Inc. by the Corporation General Warranty Deed attached as Tab 29.

**Defendant's Response:** This proposed fact is duplicative and unnecessary in that it simply restates facts set forth in prior submissions, rather than stating a new or additional proposed undisputed material fact. Defendant does not dispute that a general warranty deed dated October 31, 2006, by which Collins Bus Corporation conveyed a parcel of property west of the subject right-of-way to Collins Industries, Inc. is included in the record as Plaintiffs' Tab 29. A copy of this same deed was previously included in the record as Defendant's Exhibit 24.

51. Collins Industries Inc. did not have a deed to the property abutting and underlying the Reno County Right of Way on the date of taking. However, Plaintiffs maintain that Collins Industries Inc. has maintained all the indicia of ownership in that land, as shown by the fact that Collins Industries Inc. consistently paid taxes on this land over the past decade. See the tax records at Tab 27 which show a tax history of payment from 1997 through 2007.

**Defendant's Response:** Defendant agrees that the title records described above in Plaintiffs' proposed fact numbers 47–50, conclusively demonstrate that Collins Industries did not have a deed to any property abutting the subject right-of-way on the alleged date of taking. The question of whether Collins Industries has a compensable property interest in the property that it alleges has been taken from it is a threshold question of law that turns on the factual record. Defendant disagrees that Collins Industries Inc. has "maintained all the indicia of ownership" of the property in question by paying taxes on

that property. Under Kansas state law, the payment on taxes on property that Collins Industries does not own might, in some circumstances, support of claim of title by adverse possession. Renensland v. Ellenberger, 574 P.2d 217, 222 (Kan. App. 1977). However, Collins Industries has made no such claim in this case, nor could it as against its grantee, the City, because under Kansas law, "it is deemed that the possession of the grantor is held in subserviency to the grantee, and that [the grantor] does not intend to deny the title he has conveyed . . . ." Bowers v. Atchison, T. & S. F. Ry., 237 P. 913, 917 (Kan. 1925) (citation omitted). Accordingly, the payment of taxes by Collins Industries, if any, during a period of time when it did not hold title to the lands in question, does not constitute or give rise to a protected property interest.

52. Plaintiffs review of the tax records in Butler County did not reveal any portion of the right of way in which the railroad paid taxes. See results for all taxpayers in all three sections in which Plaintiffs' land is located in Township 23, Range 6 of Reno County: Section 35 at Tab 30; Section 23 Tab 30-A; and Section 26 at 30-B.

**Defendant's Response:** Defendant disagrees. The Butler County records do not show that the County assessed property taxes against the lands within the right-of-way. However, under Kansas state law, the property of public utilities, including railroad rights-of-way, is centrally appraised, valued and assessed taxes by the State of Kansas, not by the various individual counties in which such property is located. See generally In the Matter of the Protest of AG Services, Inc., 159 P.3d 1050 (Kan. App. 2007). Plaintiffs' proposed fact, and any inferences that Plaintiffs seek to have the Court draw from that proposed fact, is thus based on an erroneous legal premise.

53. The tracks and ties have been removed from the Reno County Right of Way. See Tab __, photographs of the Reno County Right of Way and affidavit of Richard Greever.

**Defendant's Response:** Defendant agrees that the pictures attached to and authenticated by the affidavit of Richard Greever show that the tracks and ties have been removed from the portions of the right-of-way shown in those pictures as of July 14, 2008, the date on which the pictures were taken.

54. The South Hutchinson Nature Trail now exists over the Reno County Right of Way. See Tab __.

**Defendant's Response:** Defendant agrees that the terms of the NITU and the relevant provisions of the Trails Act that apply to the subject right-of-way in Reno County authorize trail use of that right-of-way, but that interim use is subject to the right to reinstitute active rail service. Defendant agrees that some of the pictures attached to and authenticated by the affidavit of Richard Greene show signs stating "South Hutchinson

55. Signs along the trail designate the Reno County Right of Way as the "South Hutchinson Nature Trail." See Tab __.

**Defendant's Response:** Defendant agrees that the pictures attached to and authenticated by the affidavit of Richard Greever show two signs stating "South Hutchinson Nature Trail."

56. These signs invite the public onto the land designated as the South Hutchinson Nature Trail. See Tab __.

**Defendant's Response:** Defendant agrees that the pictures attached to and authenticated by the affidavit of Richard Greever show two signs stating "South Hutchinson Nature Trail." Neither the affidavit nor the pictures attached thereto provide any additional information regarding public access to and use of the subject right-of-way.

Dated: August 21, 2008

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

s/ Kristine S. Tardiff
KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577
E-MAIL: kristine.tardiff@usdoj.gov

AYAKO SATO
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
60 D Street, N.W., 3rd Flr. Room 3133
Washington, DC 20004
TEL: (202) 305-0239
FAX: (202) 305-0506
E-MAIL: ayako.sato@usdoj.gov

Attorneys for Defendant