# In the United States Court of Federal Claims

NOT FOR PUBLICATION
No. 07-693L and No. 07-675L
CONSOLIDATED
(Filed: November 27, 2012)

| | |
|---|---|
| DOROTHY L. BIERY, et al., | ) ) ) |
| and | ) ) |
| JERRAMY and ERIN PANKRATZ, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

**O P I N I O N**

Pending before the court are the parties' cross-motions for partial summary judgment on the proper methodology for determining the plaintiffs' attorneys' fees in this Rails to Trails case arising from the creation of recreational trails in Butler and Reno Counties, Kansas. The court previously ruled that the plaintiffs are entitled to "just compensation" under the Fifth Amendment because the trail use authorized by the federal government deprived them of a property interest. See Biery v. United States, 99 Fed. Cl. 565, 580 (2011). Under the terms of the Uniform Relocation Assistance and Real

1

Property Act of 1970, 42 U.S.C. § 4654(c) (2006) ("URA"),[1] the plaintiffs are also entitled to reimbursement of reasonable attorneys' fees.  The parties agree that the plaintiffs' attorneys' fees should be set based on the lodestar method, which multiplies the attorneys' reasonable hourly rates by their reasonable hours expended on the litigation.  The plaintiffs argue that in setting the reasonable hourly rate under the lodestar, the court should use the "forum rate."  More specifically, they contend that the court should use their firm's "national" hourly rates or, alternately, their firm's Washington, D.C. rates, on the grounds that the case was filed in the United States Court of Federal Claims in Washington, D.C.  The defendant ("United States" or "government") agrees that the court should employ the lodestar method but urges the court to reject the plaintiffs' proposed forum rates and instead to apply an hourly rate based on the prevailing attorneys' fee rate in St. Louis, Missouri.[2]  The government argues that an exception to the forum rate should be applied because the plaintiffs' attorneys performed the bulk of their work in St. Louis where the prevailing attorneys' fee rates are significantly lower than those in Washington, D.C.  The government also

---

[1] The relevant portion of the URA provides in part:

> The court rendering a judgment for the plaintiff in a proceeding . . . , awarding compensation for the taking of property by a Federal agency . . . , shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court . . . reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding.

42 U.S.C. § 4654(c).

[2] The court recognizes that plaintiffs' Missouri-based attorneys are actually located in Clayton, just outside of St. Louis.  Both parties consider this market as part of St. Louis and so will the court.

argues that the court should authorize further reductions, if applicable, to the St. Louis rate. Finally, the government argues that in calculating the plaintiffs' rates, the court should use the rates that prevailed during the course of the litigation rather than those current at the end of the case. The plaintiffs take a contrary view on both of these issues.

## I.     Background

On September 20, 2011, the court entered an order instructing the plaintiffs to file a motion for partial summary judgment to determine the method by which to calculate attorneys' fees and costs under the URA if the parties could not otherwise agree on the appropriate method under that statute. See Order, Sept. 20, 2011, ECF No. 112. The purpose of this order was to separate the issue of fees and costs into two sub-issues: 1) the methodology by which to calculate attorneys' fees and costs and 2) the ultimate amount of attorneys' fees and costs due to the plaintiffs' counsel from the United States. See Joint Status Rep. 4-6, Sept. 19, 2011, ECF No. 111. The parties subsequently filed cross-motions for partial summary judgment on the first issue along with associated responses. See Pls.' Cross-Mot. Partial Summ. J., ECF No. 126; Def.'s Cross-Mot. Partial Summ. J., ECF No. 149; Pls.' Resp., ECF No. 158; Def.'s Reply, ECF No. 164.

## II.    Standard of Review

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." RCFC 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986). The moving party carries the burden of establishing that there exists no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A "genuine"

dispute is one that "may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.  A material fact is one that "might affect the outcome of the suit under the governing law." Id. at 248.  In considering the existence of a genuine issue of material fact, a court must draw all inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  If no rational trier of fact could find for the non-moving party, a genuine issue of material fact does not exist and the motion for summary judgment may be granted.  Id.  With respect to cross-motions for summary judgment, each motion is evaluated on its own merits and reasonable inferences are resolved against the party whose motion is being considered. Marriot Intern. Resorts, L.P. v. United States, 586 F.3d 962, 969-70 (Fed. Cir. 2009). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987). Summary judgment is particularly appropriate where the issue decided is fundamentally a legal issue.  Huskey v. Trujillo, 302 F.3d 1307, 1310 (Fed. Cir. 2002) (citing Dana Corp v. United States, 174 F.3d 1344, 1347 (Fed. Cir. 1999) ("[s]ummary judgment was appropriate here because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law.")).

### III. Discussion

**A. The Lodestar Method Serves as the Analytical Framework for Determining Attorneys' Fees under the URA.**

It is well settled in the Federal Circuit that the lodestar method is the preferred means for calculating attorneys' fees under fee-shifting statutes such as the URA. See, e.g., Bywaters v. United States, 670 F.3d 1221, 1228-29 (Fed. Cir. 2012) (approving district court's general use of the lodestar); Avera v. Sec'y of Health and Human Servs., 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (applying the lodestar approach in a Vaccine Act case). As the Supreme Court has recently explained, the lodestar method is "readily administrable" and "objective," producing "reasonably predictable results." Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1672 (2010); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (noting that the lodestar "provides an objective basis on which to make an initial estimate of the value of a lawyer's services"). At its heart, the lodestar is a simple calculation wherein the court determines attorneys' fees by multiplying the attorneys' reasonable number of hours expended on the litigation by the reasonable hourly rate charged. Blum v. Stenson, 465 U.S. 886, 888 (1984). The hourly rates are to be calculated "according to the prevailing market rates in the relevant community." Id. at 895. The rates should be in line with those of other attorneys in the "relevant community" offering similar services with "reasonably comparable skill, experience, and reputation." Id. at 896 n.11.

For purposes of determining the "relevant community," the Federal Circuit has adopted the "forum rule."[3] See Avera, 515 F.3d at 1348 ("[T]he courts of appeals have uniformly concluded that, in general, forum rates should be used to calculate attorneys' fee awards under other fee-shifting statutes."). Under the "forum rule," the region in which the trial court is located typically defines the "relevant community" for purposes of identifying reasonable hourly rates under the lodestar method. Bywaters, 670 F.3d at 1233 (noting that a court should generally calculate the lodestar based on rates prevailing in the forum court's geographic location) (citing Avera, 515 F.3d at 1348); Donnell v. United States, 682 F.2d 240, 251-52 (D.C. Cir. 1982) ("[T]he proper rule is that the relevant community is the one in which the district court sits."). The Federal Circuit has recognized, however, that there may be situations in which the "relevant community," for purposes of determining reasonable hourly rates, is where the attorney practices rather than the forum in which the court sits. Specifically, in Avera, 515 F.3d at 1350, the Federal Circuit adopted and applied an exception to the forum rule recognized by the D.C. Circuit Court of Appeals in Davis County Solid Waste Management and Energy Recovery Special Service District v. United States Environmental Protection Agency, 169 F.3d 755, 758 (D.C. Cir. 1999). In Davis County, the D.C. Circuit held that where

---

[3] Avera involved a Cheyenne, Wyoming-based attorney seeking Washington, D.C. attorneys' fee rates under the fee-shifting provisions of the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-15(e)(1) ("Vaccine Act"). 515 F.3d at 1346. The Circuit noted that the Vaccine Act's fee-shifting provision does not specify what geographic location to use for the purposes of the lodestar calculation. Id. at 1348. The Court cited cases from other circuits that applied the forum rule in connection to other fee-shifting statutes, noting that they frequently use the same phrase—"reasonable attorneys' fees"—suggesting that the forum rule and its exceptions should be statute agnostic absent some reason to believe otherwise. 515 F.3d at 1348. The URA uses similar language. See supra note 1.

the bulk of the attorney's work is done outside of Washington, D.C. and in a locality where there is a substantially lower prevailing rate as compared to the prevailing rate in Washington, D.C., the attorney's local rate, and not the forum rate, should be used. 169 F.3d at 758. The Federal Circuit has applied the Davis County exception in several attorneys' fees cases arising under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-1 et seq. (2006) ("Vaccine Act"). See Hall v. Sec'y of Health and Human Servs., 640 F.3d 1351, 1355 (Fed. Cir. 2011); Masias v. Sec'y of Health and Human Servs., 634 F.3d 1283, 1288 (Fed. Cir. 2011). The Federal Circuit has also recognized the possible application of the Davis County exception when calculating fees under the URA in a Rails to Trails case. Bywaters v. United States, 670 F.3d 1221, 1233-34 (Fed. Cir. 2012).

While, as noted above, both parties agree that the court should follow the lodestar approach, they disagree as to how the court should determine the "relevant community" for purposes of setting fees. The plaintiffs contend that the court should simply apply the Federal Circuit's "forum rule" and acknowledge that attorneys' fees in this case should be calculated using the rates Arent Fox, the plaintiffs' attorneys' law firm, charges in Washington, D.C. and elsewhere as a "national" firm.[4] The plaintiffs contend that Arent

---

[4] The plaintiffs initially engaged counsel at Lathrop & Gage, a law firm based in Kansas City, Missouri with an office location in St. Louis, among other cities. Def.'s Reply at 3 n.2. During the course of this litigation, plaintiffs' counsel moved to Arent Fox, a law firm based in Washington, D.C. with an office in St. Louis. Pls.' Resp. at 14.

7

Fox's "national" firm rates fall within the range of rates typically charged by Washington, D.C. firms with comparable skill and expertise.[5]

The United States argues against adoption of the plaintiffs' "national" firm rate as the appropriate forum rate. According to the government, the Federal Circuit in Bywaters specifically recognized that, in Rails to Trails cases, the forum rate may be subject to the Davis County exception wherein the court will depart from the usual forum rate if the bulk of the work is performed outside of Washington, D.C. and the area where the work is performed has a substantially lower attorneys' fees rate than the prevailing rate in Washington, D.C. The government argues that if the billing records in this case confirm that the bulk of legal work was performed in St. Louis, the attorneys' fees should be based on St. Louis rates because St. Louis rates are significantly lower than those in Washington, D.C.

> **B. While "National" Law Firm Rates may Generally be Appropriate for Use in the Lodestar Calculation, the Davis County Exception will be Applied if the Bulk of the Work was Performed in St. Louis because the Court Finds that the Prevailing St. Louis Rates are "Substantially Lower" than the Prevailing Rates in Washington, D.C.**

In support of their request for use of their "national firm rate" as the appropriate rate, the plaintiffs have submitted the expert declaration of Dr. Laura Malowane, Vice

---

[5] The plaintiffs originally sought adoption of Arent Fox's "national" fee rate for this Rails to Trails case without regard to their attorneys' law firm's location or where the attorneys performed their work. Pls.' Cross-Mot. Summ. J. at 25-28. The plaintiffs argued that counsel should be reimbursed based upon a "national market" for legal counsel because the Court of Federal Claims is a court with nationwide jurisdiction and the issues associated with Rails to Trails litigations are particularly unique. Id. It became clear at oral argument, however, that plaintiffs had refined their position, instead arguing that the court should use the "national rates" charged by their law firm not based on a "national market" but rather based on the "national rate" charged by firms located in this local forum, Washington, D.C.

8

President of Economists Incorporated, an economic consulting firm in Washington, D.C. Dr. Malowane holds a Ph.D. in Economics from Princeton University and was asked to provide an opinion identifying the relevant market for determining fees in this case. She was also asked to determine whether the billing rates of the plaintiffs' attorneys are reasonable given current market rates. Dr. Malowane opined that in cases needing specialized counsel, like the present case, attorneys should be reimbursed based on their law firms' "national rates." Malowane Decl. at 4, ECF No. 127-21. Relying upon the 2010 National Law Journal's Annual Survey of the Nation's Largest Law Firms, which includes Arent Fox (135th) and Lathrop & Gage (150th), she concluded that Arent Fox has a "national" hourly partner rate of between $705 and $706[6] and hourly associate rates between $375 and $430. Id. at 5. Dr. Malowane determined that these rates are within the range of rates charged by comparable firms based on size and location (she identified Arent Fox as having its principal location in Washington, D.C.). Id. at 5-6. Specifically, Dr. Malowane concluded that "national" firms based in Washington, D.C. have an hourly rate range between $195 and $990 for partners and between $140 and $550 for associates. Id. Dr. Malowane thus concluded that the plaintiffs' rates for their attorneys at Arent Fox fall reasonably within the range of rates for comparable "national" firms.

Dr. Malowane also opined that "national" firms headquartered in Kansas City, Missouri would be most comparable for determining reasonable fees for attorney work performed by Lathrop & Gage, the firm initially hired by the plaintiffs for this case. Id.

---

[6] The government indicated at oral argument that it accepts this quoted rate as the rate in Washington, D.C. for the purposes of the Davis County exception.

9

at 5. Since she did not have sufficient data to determine reasonable "national" rates using Kansas City law firms exclusively, Dr. Malowane selected firms based in St. Louis as well as Kansas City as the relevant markets for comparing "national" rates. Id. She noted that the requested "national" rate of the Lathrop & Gage "of counsel" attorney, who had 29 years of experience and previously worked on this case, was reasonable because the requested rate of $450 per hour fell within the range of between $180 and $804 for hourly rates of partners at comparable "national" firms based in St. Louis. Id. at 6. Based on Dr. Malowane's affidavit, the plaintiffs argue that the "national" rates charged by Arent Fox for the attorneys currently associated with that firm and those for Lathrop & Gage for the attorney associated with that firm are each within the prevailing rate ranges for both cities. As such, the plaintiffs contend, their "national" rates are reasonable and adequately reflect the fair market rates of this case's forum, Washington, D.C.

The plaintiffs further contend that the government's arguments in favor of applying the Davis County exception[7] to depart from Washington, D.C. forum rates in

---

[7] The plaintiffs provide a list of reasons as to why the court should distinguish this case from Davis County:

> This case is different from Davis County in every fundamental respect. (1) Here, unlike Davis County, the landowners are represented by a Washington D.C.-based law firm, not a firm in Salt Lake City. (2) Here, unlike Davis County, these landowners and their law firm did not "contract" to bill their time at hourly rates 70% below the prevailing hourly rates in the forum. (3) This case, unlike Davis County, is not one in which "virtually all of the work was performed" out of the forum. (4) Here, unlike Davis County, "limiting [the landowners'] lawyers to less than their usual rates would present problems for private parties seeking help." And (5) Here, unlike Davis County, the supposed "home market rates" are not significantly lower than Washington D.C. rates for comparable work.

10

favor of the local St. Louis rate should be rejected. The plaintiffs argue that the forum rate is "presumptive" and that any party seeking to deviate from the forum rate bears the burden of proving that such a deviation is necessary. Pls.' Resp. at 15 (citing Bywaters, 670 F.3d at 1232-33). Here, the plaintiffs argue, the government has not met its burden, under Davis County, of demonstrating that the prevailing rates for comparable firms in St. Louis are "very significantly lower" than rates for attorneys in Washington, D.C., the forum in this case. The plaintiffs argue that Dr. Malowane's affidavit shows that partners in Washington, D.C. charge rates of between $300 and $990 an hour while partners in St. Louis typically charge between $230 and $804 per hour. Pls.' Resp. at 17; see also Malowane Decl. at 5-6. The plaintiffs argue that this evidence demonstrates that attorneys' fee rates in St. Louis are not "significantly lower" than the rates identified for Washington, D.C. Pls.' Resp. at 17. Moreover, they proffer the affidavit of Alan Norman, an intellectual property attorney who works for the St. Louis-based law firm Thompson Coburn, to underscore that the requested "national" rates would be reasonable to attract comparable attorneys in St. Louis or Washington, D.C. Norman Decl. at 1, ECF No. 158-3. Mr. Norman states his belief that law firms with offices in St. Louis, such as Arent Fox and Lathrop & Gage, would require rates comparable to those cited by Dr. Malowane and that significantly lower rates would not attract comparable firms for comparable litigation. Id. at 4.

---

Pls.' Resp. at 17 (emphasis in original) (citations omitted).

11

The government argues in response that the court should apply the <u>Davis County</u> exception because the evidence will show that the bulk of the work was performed in St. Louis and that, contrary to the plaintiffs' contention, attorneys' fee rates are significantly lower in St. Louis than in Washington, D.C.[8]  Def.'s Cross-Mot. Summ. J. at 17.  The government points to Dr. Malowane's findings, which indicate that, based on "national" law firm data, the Washington, D.C hourly rate charged by Arent Fox partners ($705-$706) is $500 more than the low range typically charged by "national" firms located in St. Louis ($230) and only $100 less than the absolute high end of the St. Louis rate range ($804).  Def.'s Reply at 16 (noting that the range provided for St. Louis is so wide as to be rendered "completely meaningless").  In addition, the government argues that a survey of six recent cases litigated in the St. Louis area demonstrates that attorneys' fees in the St. Louis area are generally between $250 and $380 per hour for partners and between $150 and $250 per hour for associates.[9]  Def.'s Cross-Mot. Summ. J. at 23-24.  These amounts are significantly less than $706 an hour.  Thus, the government argues, the St. Louis cases demonstrate that the plaintiffs are seeking fees that are potentially more than twice the rate charged by comparable attorneys in St. Louis.  Def.'s Cross-Mot. Summ. J. at 23-25.  The government concludes that the evidence established by the survey of six

---

[8] The government argues that currently available billing information, through April 15, 2009, demonstrates that, according to the government, over 90 percent of the work performed by plaintiffs' counsel was performed by attorneys based in St. Louis.  Def.'s Cross-Mot. Summ. J. at 20-21 (citing billing data provided by the plaintiffs in communications between the parties).

[9] The court also notes plaintiffs' objections regarding use of these data, recognizing that the subject matter and experience of each of these attorneys do not necessarily line up with those of the attorneys in this case.  <u>See</u> Pls.' Resp. at 20-22.

recent St. Louis cases is confirmed by a 2011 Missouri Bar Economic survey, which shows that the vast majority of attorneys in St. Louis County (87 percent) and St. Louis City (80 percent) charge an hourly rate of between $101 and $350.[10]  Id. at 28. According to the defendant, these data establish that St. Louis rates are very significantly lower than the $706 rate the plaintiffs seek for partners.

As an initial matter, the court agrees with the government that the Davis County exception is a relevant and even mandatory gloss on the forum rule analysis in the Federal Circuit.  Hall v. Sec'y of Health and Human Servs., 640 F.3d 1351, 1356 (noting "failure to apply the Davis County exception . . . would be incorrect as a matter of law."). The court must therefore determine whether, under the two-part Davis County exception, the forum rate of Washington, D.C. or the local rate of St. Louis, Missouri should apply in this case.  Given the evidence before the court, the court agrees with the government that to the extent the evidence establishes that the majority of the hours billed were incurred in St. Louis, the Davis County exception will apply.

As noted above, under the Davis County exception, the court will use the local rate, rather than the forum rate, if there is a very significant difference between the two rates. Here the existing evidence on rates establishes that there is a very significant difference in forum rates charged for comparable legal services between Washington, D.C. and St. Louis.  In Hall v. Secretary of Health and Human Services, the Federal Circuit declined

---

[10] The plaintiffs object to the government's use of this survey, noting that charts presented by the government are taken outside of the context of the entire report and do not disaggregate the data by law firm type, practice area, or experience.  Pls.' Resp. at 23.  The court finds that the government's use of the survey is proper as its disaggregation of data by county and rate charged provides context as to the rates generally charged by trial attorneys in Missouri.

to set a rule defining what constitutes a "very significant" difference between local and forum hourly rates. 640 F.3d at 1357 (opining that such a rule would be "stifling and impractical"). The Hall court did, however, cite with approval a set of cases that found that a 46 to 60 percent difference between the forum and local rates represented "very significant" differences.[11] Id. Here, the court finds, based on Dr. Malowane's data, that while the requested forum rate of $706 is in the mid-range for "national" law firms with principal offices in Washington, D.C., the rate is at the very top of the St. Louis range ($804 per hour) for "national" firms based in St. Louis. The plaintiffs' own requested rates highlight the significant differences between the two forums. Specifically, the requested $706 per hour for Washington, D.C.-based Arent Fox is more than 50 percent higher, using the same approach to calculation as in Hall, than the $450 per hour rate sought for the experienced "of counsel" attorney at Kansas City-based Lathrop & Gage. In fact, the $450 figure would still put the plaintiffs' attorneys roughly within the top 15 percent of all attorneys practicing in St. Louis according to the Missouri Bar Economics Survey cited by the government. The plaintiffs' requested "national" rate of between $705 and $706 would place their attorneys in the top 0.9 percent in the City of St. Louis and in the top 0.5 percent in St. Louis County. This counsels the court to give little weight to Mr. Norman's affidavit and to conclude that such a rate would at best be an outlier for St. Louis. This further supports the government's contention that prevailing

---

[11] The Hall court used calculations that determined the percentage difference between forum rates by calculating the difference between the lower local hourly rate and the higher forum hourly rate and then dividing that figure by the local hourly rate. 640 F.3d 1357.

St. Louis rates are significantly lower than those in Washington, D.C. (and by extension the requested "national" rates) for purposes of the Davis County exception.

In light of the evidence presented, the court concludes that, assuming the bulk of the hours worked were incurred in St. Louis, the plaintiffs will be entitled to attorneys' fees based on the rates for attorneys of comparable skill and experience who practice in St. Louis, Missouri.[12]  The court cannot, however, without further evidence, rule on specific reasonable rates for St. Louis.

### C. Only upon Proof of Extraordinary Circumstances will the Court Consider Using the Johnson Factors to Adjust the Lodestar.

The defendant argues that the court, in determining reasonable attorneys' fees, should also consider making further adjustments based on twelve factors ("Johnson factors") established in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974).[13]  Def.'s Cross-Mot. Partial Summ. J. at 7-11.  The government contends that the lodestar calculation is only the "initial" estimate of reasonable

---

[12] Obviously, if the bulk of the hours were incurred in Washington, D.C., the government will not have met its burden with regard to the first prong of the Davis County exception and the court will use Washington, D.C. rates in the lodestar calculation.

[13] The twelve Johnson factors used to determine a reasonable attorneys' fee are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  Johnson, 488 F.2d at 717-19.

Bywaters, 670 F.3d at 1229 n.5.

attorneys' fees. Id. at 7 (citing Blum, 465 U.S. at 888). Specifically, the government argues, that courts may adjust the lodestar calculation by integrating the Johnson factors into the lodestar analysis during the pre-calculation phase if the factors are not otherwise "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." Hensley, 461 U.S. at 434 n.9. The government cites, for example, the recent holding in Bywaters, in which the Federal Circuit, while rejecting arguments that adjustments may be made after the lodestar calculation, 670 F.3d at 1231-32, identified certain Johnson factors that may be incorporated into the pre-lodestar calculation through adjustments to attorneys' rates and hours worked. Here, the government argues that the court should not foreclose the possibility of making adjustments to the plaintiffs' fee calculations if it appears from the plaintiffs' billing records that such adjustments are appropriate. Def.'s Cross-Mot. Partial Summ. J. at 10 ("Defendant is unable to address all of the pertinent factors because Plaintiffs have not yet produced any billing records or other details on its fee request in this case.").

The plaintiffs argue that any use of the Johnson factors is "outdated and no longer valid," Pls.' Resp. at 25, and thus the court should not consider any adjustments to the basic lodestar calculation. Specifically, the plaintiffs argue that the Supreme Court, in Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662 (2010), held that fees should be based on the lodestar method and not the Johnson approach. Id. at 1672. The Federal Circuit in Bywaters noted that in Perdue the Supreme Court limited the situations in which a court may alter the lodestar calculation based on external factors. 670 F.3d at 1229 ("Adjustments [to the lodestar] are warranted only where the lodestar figure fails to take

16

into account a relevant consideration."). The plaintiffs contend that the Federal Circuit made clear in Bywaters that adjustments to the lodestar approach are "proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." Bywaters, 670 F.3d at 1229 (citing Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)). The plaintiffs argue that there is no evidence to support adjustments in this case based on the Johnson factors.

The court concludes, based on the most recent case law, that the parties may seek to adjust the fees and hours submitted to the lodestar only if that party can demonstrate that there are "rare" and "exceptional" circumstances justifying such an adjustment. Perdue, 130 S. Ct. at 1673 (citations omitted). The party seeking to adjust the lodestar will bear the burden of persuading the court that the lodestar is unreasonable. Perdue, 130 S. Ct. at 1669. Any adjustment to fees in advance of applying the lodestar fee rate will require specific evidence that the lodestar does not incorporate a factor necessary for determining a reasonable fee. Id. at 1673 (noting that there is a "strong presumption" that the lodestar is reasonable). In sum, while the court is not foreclosing an offer of proof for an adjustment to the lodestar prior to the calculation, the likelihood of approving any adjustment is quite small.

> **D. The Court will Calculate the Attorneys' Fee Award Based on Historical Rates because the No-Interest Rule Bars Recovery of Delay Compensation without Express Waiver of Sovereign Immunity.**

The government also argues that in reimbursing reasonable fees, the court should require the plaintiffs' counsel to use the historical rates at which they would have charged

the plaintiff-landowners had fees been paid during the course of litigation rather than at the end of litigation.[14] Def.'s Cross-Mot. Partial Summ. J. at 42. The government contends that if the plaintiffs are allowed to recover fees based on rates current at the end of the litigation, they would be in effect collecting "interest" on those fees, a practice which is not authorized under the URA and thus barred by principles of sovereign immunity . Id. (citing Library of Congress. v. Shaw, 478 U.S. 310, 311 (1986) ("The no-interest rule is to the effect that interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest.")). In Library of Congress v. Shaw, the Supreme Court held that delay compensation and interest share the same function and are therefore both prohibited by the no-interest rule. 478 U.S. at 322. The Federal Circuit has applied the no-interest rule to bar the reimbursement of attorneys' fees at current rates under the Equal Access to Justice Act ("EAJA"). See Chiu v. United States, 948 F.2d 711, 719-20 (1991) (holding that the no-interest rule bars the use of a fee rate calculated based on the rate charged on the final day of judgment under the EAJA). The government argues that the same reasoning must apply to fee reimbursement under the URA. Def.'s Cross-Mot. Partial Summ. J. at 42.

The plaintiffs contend that Shaw does not support the government's argument and that more recent authority suggests the appropriateness of delay compensation as an

---

[14] The government cites the letters of engagement sent to plaintiffs, which state "[t]he hourly rate will be the rate in effect at the time the statutory fees are actually paid not the rate in effect when the professional services are rendered." Letter from Steven Wald, Attorney, Lathrop & Gage, L.C., to Dorothy L. Biery (Sept. 18, 2007).

18

element of "just compensation" even in cases where the government has not expressly waived sovereign immunity. Pls.' Resp. at 28. Specifically, the plaintiffs point to Missouri v. Jenkins, 491 U.S. 274, 283-84 (1989), which held that an adjustment for delay was appropriate under the Civil Rights Attorney's Fees Awards Act in a case against the State of Missouri. More recently, the Supreme Court in Perdue found that the "exceptional delay" in the payment of attorneys' fees warranted an enhancement where the defense unjustifiably delayed payment. 130 S. Ct. at 1675.

    The court agrees with the government that the long-standing no-interest rule, as reaffirmed in Shaw, bars award of delay compensation based on the plaintiffs' proposed use of current legal fees without an express waiver of immunity by the United States. 478 U.S. at 322. Courts construe waivers of sovereign immunity strictly in favor of the federal government. Id. at 318 (citing McMahon v. United States, 342 U.S. 25, 27 (1951)). A statute, such as the URA, that contains language "allowing costs, and within that category, attorney's fees, does not provide the clear affirmative intent of Congress to waive the sovereign's immunity [for the payment of interest]." Id. at 321. Therefore, by its terms, the URA does not permit a fee enhancement for delays.

    The court also finds the plaintiffs' reliance on Jenkins misplaced. Jenkins applied specifically to actions against a state government and not against the United States. 491 U.S. at 283 (finding that "[a]n award against a State of a fee that includes such an enhancement for delay is not, therefore, barred by the Eleventh Amendment") (emphasis added). The sovereign immunity of the United States was not addressed. Perdue similarly involved a case brought against a state government. As such, the court finds

that these cases are not relevant to resolving the pending claim for attorneys' fees to be awarded against the United States. The award to the plaintiffs will be calculated based on historical rates, rather than the rates charged at the close of litigation.

### IV.     Conclusion

For all of the foregoing reasons, the court finds that the Davis County exception will apply and that the lodestar will be determined using St. Louis rates if the government presents evidence demonstrating that the bulk of the plaintiffs' attorneys' work occurred in St. Louis. The court further finds that attorneys' fee awards will be calculated based on historical rates in effect throughout the litigation. Finally, the court will not foreclose consideration of adjustments to the lodestar if a party can establish an extraordinary or rare circumstance which would warrant such an adjustment. Such adjustments are not encouraged. The government's motion is hereby **GRANTED subject to the limitations set forth above**. The motion of the plaintiffs is **DENIED**.

**IT IS SO ORDERED.**

                                                                s/Nancy B. Firestone
                                                                NANCY B. FIRESTONE
                                                                Judge